**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 27, 2024**

_____

**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-10120-smr |
| | § | |
| Texas REIT, LLC, | § | |
| | § | |
| Debtor. | § | Chapter 11 |

---

### ORDER GRANTING DEBTOR'S MOTION TO AMEND ORDER
#### (Relates to ECF Nos. 401 & 425)

On December 3, 2024, the Court entered its *Order Granting the Debtor's Amended Motion to Sell* (the "Original Order" at ECF No. 401). On December 17, 2024, the Debtor filed a *Motion to Amend Order* (the "Motion to Amend" at ECF No. 425) and requested minor changes to the Court's Original Order at ECF No. 401. Upon review, the Court has determined that the Debtor's Motion to Amend should be granted, and the Court shall amend its *Order Granting the Debtor's Amended Motion to Sell* entered on December 3, 2024 at ECF No. 401 in this matter.

**IT IS THEREFORE ORDERED** that the *Order Granting the Debtor's Amended Motion to Sell* entered at ECF No. 401 shall be amended by the Amended Order attached below as "Exhibit 1" to this Order.

**IT IS FURTHER ORDERED** that should any dispute arise relating to the *Order Granting the Debtor's Amended Motion to Sell* entered at ECF No. 401, the terms of the Amended Order attached below as "Exhibit 1" to this Order shall control.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

# Exhibit 1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TEXAS REIT, LLC | § | Case No. 24-10120 |
| Debtor | § | |
| | § | |

**AMENDED ORDER GRANTING**
**AMENDED MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF**
**LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES**
**(8098 Westheimer)**

CAME ON TO BE HEARD on August 19, 2024, Debtor's Amended Motion to Sell Real Property Free and Clear of Liens, Claims, Interests and Encumbrances ("*Motion*") pursuant to Section 363(b) and (f) of the Bankruptcy Code. The Courtentered an Order Approving the Sale on December 3, 2024. This Amended Order is entered to approve a slightly revised form of contract .

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The Debtor is hereby authorized to sell the real property and improvements commonly known as 8098 Westheimer, Houston, Texas 77063 (the "Real Property")  to Amina Properties, L.L.C., or its assigns (the "Purchaser"), for $5,500,000.00 (the "Purchase Price") pursuant to the terms of the Commercial Contract—Improved Property (the "Contract") by and among the Debtor the Purchaser (the "Sale") t h e  f o r m  o f w h i c h  i s  attached hereto as Exhibit A.

2. The closing ("Closing") of the Sale of the Real Property shall occur through and at Post Oak Title, 4543 Post Oak Place Drive #222, Houston, Texas 77027 (the "Title Company").

3. Notice of the Motion has been timely, adequate, sufficient, and appropriate under the particular circumstances and satisfies the requirements of the Bankruptcy Code and Bankruptcy Rules, and a reasonable opportunity under the particular circumstances to object to or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities.

4. To the extent any party or entity filed a timely objection, all such objections have been resolved, withdrawn, or overruled and the time to exercise any consent rights to the sale, such objection deadline has expired. To the extent that any such party did not timely file an objection by the applicable deadline, such party was deemed to have consented to the Sale and assignment of such Real Property and waived any consent right, preferential right to purchase or any similar right or restraint with respect to such Real Property.

5. Under the circumstances set forth above and reflected on the official record of this Bankruptcy Case, the Debtor's sale proposal under the Motion to proceed with the

Sale to the Purchaser constitutes the best and highest offer available to the estate to preserve its equity in the property.

6.  The sale process undertaken by the Debtor and its professionals with respect to the Real Property has been adequate and appropriate under the particular circumstances, and the Purchase Price with the Purchaser represents the highest and best proposal received by the Debtor under the particular circumstances, thereby maximizing the value of the Real Property for the Debtor's Estate. Furthermore, the Purchase Price is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable laws of the United States or any of its jurisdictions or subdivision.

7.  The Purchase Price was negotiated by the Debtor and the Purchaser without collusion, in good faith, and at arm's length. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Price to be avoided under section 363(n) of the Bankruptcy Code. Neither the Purchaser, nor any of its affiliates or representatives, is an "insider" of the Debtor as such term is defined in section 101(31) of the Bankruptcy Code. The Debtor, the Purchaser, and their respective professionals and advisors have acted in good faith with respect to the Sale in all respects.

8.  The Purchaser, to the extent it timely and fully closes and performs the Sale, is hereby deemed to be a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, shall be entitled to all of the protections afforded thereby.

9.  Further, given that the Purchaser is acquiring the Real Property free and clear of all liens, claims, and encumbrances pursuant to section 363(f), the Purchaser is not and cannot be a successor in interest to the Debtor as to any other creditor or other parties-in-interest as to such liens, claims, and encumbrances.

10. There are no unexpired leases or executory contracts related to the Real Property, and to the extent that any such unexpired leases or executory contracts exist, they are deemed rejected as of the date of closing.

11. Ali Choudri is authorized on behalf of the Debtor to execute any further amendments or modifications to the Contract so long as there is no material change to the Purchase Price.

12. By agreement of the required parties, the Declaration of Easements and Restrictions dated December 20, 2018, and recorded in the Harris County Real Property records under file no. RP-2018-579810 (the "2018 Declarations") shall be modified and amended at Closing (the "First Amended Declaration"). The form of the First Amended Declaration is attached as <u>Exhibit C</u> to the Contract and incorporated herein by reference. Closing shall be subject to execution and recording of the First Amended Declaration.

13. The Debtor is authorized to execute all Sale documents on behalf of the Seller, and all such documents reasonably necessary to effectuate the terms of this Order, including but not limited to the First Amended Declaration and the Contract.

14. The Sale to the Purchaser shall be free and clear of liens, claims, interests and encumbrances, except as specifically provided herein.

15. The following liens shall be paid at closing:

> Ad valorem taxes for 2023, including post-petition interest through closing;
> Caz Creek Holdings 2, LLC (or its successors in interests or assigns), including post-petition interest through closing in the amount of approximately $915,000.00; and
> FGMS Holdings, LLC, including post-petition interest through closing in the amount of approximately $155,000.00.

16. The Debtor is authorized to pay all usual and necessary closing costs, including broker's fees to buyer's broker, Walzel Properties equal to 1.75% of the sales price.

17. The Debtor shall pay attorney's fees and expenses to Caz Creek Holdings 2, LLC and FGMS Holdings, LLC upon entry of an order approving such fees. The liens of Caz Creek Holdings 2, LLC and FGMS Holdings, LLC shall remain attached to the Sales Proceeds until same are paid.

18. The vendor's lien retained in the deed filed June 3, 2008, as Instrument No. 20080284811, of the County Clerk's Official Records of Harris County, Texas, and lien secured by Deed of Trust filed June 3, 2008 in/under Instrument File No. 20080284812, of the County Clerk's Official Records of Harris County, Texas, as modified by instrument filed June 9, 2010, recorded in as Instrument No. 20100241902, of the County Clerk's Official Records of Harris County, Texas, as further modified by instrument filed August 10, 2016 recorded in as Instrument No. RP-2016-352698, of the County Clerk's Official Records of Harris County, Texas, as further modified by and assigned to Dalio Holdings I LLC by instrument filed June 4, 2018, recorded as Instrument No. RP-2018-246789, of the County Clerk's Official Records of Harris County, Texas, as further modified by the instrument filed June 5, 2018, recorded as Instrument No. RP-2018-247661, of the County Clerk's Official Records of Harris County, Texas, as further modified by the instrument filed June 12, 2018, recorded as Instrument No. RP-2018-259370, of the County Clerk's Official Records of Harris County, Texas, as further modified by the instrument filed April 21, 2020, recorded in as Instrument No. RP-2020-168569, of the County Clerk's Official Records of Harris County, Texas, as further modified by instrument filed February 12, 2021, recorded in as Instrument No.RP-2021-

78764, of the County Clerk's Official Records of Harris County, Texas, are released, expunged and extinguished as to the Real Property (as defined above) only.

19. The lien, claim or assignment asserted in the Assignment of Rents and Leases, executed by Texas Reit LLC, recorded June 3, 2008, as Instrument No. 20080284818, of the County Clerk's Official Records of Harris County, Texas, is released, expunged and extinguished as to the Real Property only.

20. The lien asserted in the Deed of Trust filed June 4, 2008, recorded as Instrument No. 20080287817, of the County Clerk's Official Records of Harris County, Texas, and having been modified by the instrument filed April 10, 2013, recorded in as Instrument No. 20130168550, of the County Clerk's Official Records of Harris County, Texas, is released, expunged and extinguished as to the Real Property only..

21. The lien asserted in the Deed of Trust filed July 3, 2018, recorded as Instrument No. RP-2018-299282, of the County Clerk's Official Records of Harris County, Texas, is released, expunged and extinguished as to the Real Property only.

22. Any and all liens asserted in the tax lien contract dated January 31, 2020, recorded February 12, 2020, recorded as Instrument No. RP-2020-64833, of the County Clerk's Official Records of Harris County, Texas, as modified by the instrument dated February 11, 2020, recorded March 12, 2020, as Instrument No. RP-2020-112639, of the County Clerk's Official Records of Harris County, Texas are released, expunged and extinguished.

23. Any and all liens asserted in the Release of Lien recorded on 08/20/2021 under Instrument File No. RP-2021-475481, Official Records of Harris County, Texas, and Rescission of Release of Lien recorded on 02/02/2022 under Instrument File No. RP-

2022-95984, Official Records of Harris County, Texas, are released, expunged and extinguished.

24. Any and all liens asserted in the tax lien contract executed dated February 27, 2021, recorded March 12, 2021, recorded as Instrument No. RP-2021-129453, of the County Clerk's Official Records of Harris County, Texas, are released, expunged and extinguished

25. Any and all liens asserted in the tax lien contract dated August 25, 2023, recorded October 5, 2023, recorded as Instrument No. RP-2023-384064, of the County Clerk's Official Records of Harris County, Texas, and as further reflected in the transfer of tax lien dated August 29, 2023, recorded November 21, 2023, as Instrument No. RP-2023-442356, of the County Clerk's Official Records of Harris County, Texas, are released, expunged and extinguished.

26. The Lis Pendens filed and recorded under the Harris County Clerk's File Nos. RP-2018-299313 and RP-2020-168569 of the Official Public Records of Harris County, Texas against the Real Property, and any lien asserted therein, are released, expunged and extinguished.

27. The Lis Pendens filed and recorded under the Harris County Clerk's File No. RP-2019-16842 of the Official Public Records of Harris County, Texas against the Real Property, and any lien asserted therein, are released, expunged and extinguished.

28. The Lis Pendens filed and recorded under the Harris County Clerk's File No. RP-2019-383778 of the Official Public Records of Harris County, Texas against the Real Property, and any lien asserted therein, is released, expunged and extinguished.

29. The Lis Pendens filed and recorded under the Harris County Clerk's File No. RP-2023-286308 of the Official Public Records of Harris County, Texas against the Real Property, and any lien asserted therein, is released, expunged and extinguished.

30. The Lis Pendens filed and recorded under the Harris County Clerk's File No. RP-2023-286309 of the Official Public Records of Harris County, Texas against the Real Property, and any lien asserted therein, is released, expunged and extinguished.

31. The Lis Pendens filed and recorded under the Harris County Clerk's File No. RP-2023-322023 of the Official Public Records of Harris County, Texas against the Real Property, and any lien asserted therein, is released, expunged and extinguished.

32. The Lis Pendens filed and recorded under the Harris County Clerk's File No. RP-2019-386452 of the Official Public Records of Harris County, Texas against the Real Property, and any lien asserted therein, is released, expunged and extinguished.

33. The Amended Lis Pendens filed and recorded under the Harris County Clerk's File No. RP-2019-392070 of the Official Public Records of Harris County, Texas against the Real Property, and any lien asserted therein, is released, expunged and extinguished.

34. The Lis Pendens filed and recorded under the Harris County Clerk's File No. RP-2024-249043 of the Official Public Records of Harris County, Texas against the Real Property, and any lien asserted therein, is released, expunged and extinguished.

35. The Abstract Judgment recorded on 08/30/2022, under Instrument File No. RP-2022-441250, Official Records of Harris County, Texas, and any lien asserted therein, is released, expunged and extinguished.

36. The Abstract Judgment recorded on 12/11/2023, under Instrument File No. RP-2023-464206, Official Records of Harris County, Texas, and any lien asserted therein, is released, expunged and extinguished.

37. The Abstract Judgment recorded on 12/11/2023, under Instrument File No. RP-2023-464207, Official Records of Harris County, Texas, and any lien asserted therein, is released, expunged and extinguished.

38. The Abstract Judgment recorded on 12/11/2023, under Instrument File No. RP-2023-464208, Official Records of Harris County, Texas, and any lien asserted therein, is released, expunged and extinguished.

39. The Abstract Judgment recorded on 12/21/2023, under Instrument File No. RP-2023-481068, Official Records of Harris County, Texas, and any lien asserted therein, is released, expunged and extinguished.

40. The Abstract Judgment recorded on 02/27/2024, under Instrument File No. RP-2024-67325, Official Records of Harris County, Texas, and any lien asserted therein, is released, expunged and extinguished.

41. The Abstract Judgment recorded on 04/29/2024, under Instrument File No. RP-2024-152502, Official Records of Harris County, Texas, and any lien asserted therein, is released, expunged and extinguished.

42. The ad valorem taxes for year 2024 pertaining to the Real Property shall be prorated in accordance with the Contract and shall become the responsibility of the Purchaser and the year 2024 ad valorem tax lien shall be retained against the Real Property until said taxes are paid in full (the "Assumed Liabilities").

43. All other liens, claims, interests and encumbrances will attach to the proceeds from the Sale to the same extent, priority and validity as existed on the petition date pending further order of the Court.

44. Other than ordinary closing costs paid at the time of closing, the foregoing payments to be made at closing or after entry of an order approving fees and expenses to Caz

Creek Holdings 2, LLC and FGMS Holdings, LLC, Debtor shall not use any proceeds from the Sale of the Real Property without further order of the Court.

45. All proceeds other than those disbursed at closing by the Title Company shall be deposited into a client trust account held by Barron & Newburger, P.C., attorneys for Debtor to be held pending further Order of the Court.

46. The Debtor shall file a Report of Sale within three business days of Closing.

47. No bulk sales law or any similar law of any state or jurisdiction shall apply in any way to the Sale or the transaction encompassed thereby.

48. This Order shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, the Debtor, any holders of liens, claims, encumbrances, and/or interests in, against, or on all or any portion of the Real Property, all successors and assigns of the Purchaser, the Debtor, and any subsequent trustees appointed in the Chapter 11 case, or any subsequent Chapter 7 case, and shall not be subject to rejection. Unless expressly agreed to in writing by the Purchaser, nothing contained in any subsequent order in this bankruptcy case shall conflict with or derogate from the provisions of this Order, and to the extent of any conflict or derogation between this Order and such future order, the terms of this Order shall control.

49. Effective upon the Closing, this Order (i) is and shall be effective as a determination that all liens, claims, encumbrances, or interests, including but not limited to any interest asserted in any Lis Pendens and Abstracts of Judgment (other than Assumed Liabilities) of any kind or nature whatsoever existing as to the Real Property prior to the Closing Date have been unconditionally released, discharged, and terminated (with such liens, claims, encumbrances, or interests attaching to the proceeds with the same

nature, validity, priority, extent, perfection, force and effect that such claims, encumbrances, liens or liabilities encumbered the Real Property immediately prior to the entry of this Order) and that the conveyances described herein have been effected, (ii) is and shall be binding upon and shall govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Real Property conveyed to the Purchaser (all such entities being referred to as "Recording Officers"), and all recorded claims, encumbrances, liens, liabilities, Lis Pendens or Abstract of Judgments (other than the Assumed Liabilities) against the Real Property shall be deemed stricken from such entities records, official and otherwise. All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens, pledges, Lis Pendens, Abstract of Judgments and other interests against the Real Property recorded prior to the date of this Order. A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens, pledges, Lis Pendens, Abstracts of Judgment and other interests against the Real Property recorded prior to the date of the Closing. All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary, advisable or appropriate to consummate the transactions contemplated by the Contract, subject to the payment of any filing or other fee imposed under non-bankruptcy law.

50.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and, sufficient cause having been shown, waives any such stay, and expressly directs entry of judgment as set forth herein.

51.      Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments in connection with or necessary to consummate the Sale. Except as otherwise provided in this Order, to the greatest extent available under applicable law upon the Closing, the Purchaser shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Real Property, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Purchaser as of the Closing. No governmental unit may revoke or suspend any lawful right, license, trademark, or other permission relating to the use of the Real Property sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of this chapter 11 case or the consummation of the sale of the Real Property.

52.     The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

### ###

Approved:

_/s/Stephen W. Sather__
Stephen W. Sather
Attorney for Debtor

_/s/Howard Marc Spector_
Howard Marc Spector
Attorney for Caz Creek Holdings 2, LLC and FGMS Holdings, LLC


_/s/ T. Josh Judd_____
T. Josh Judd
Counsel for Amina Properties, L.L.C.


Order Submitted By:

Stephen W. Sather
Barron & Newburger, P.C.
7320 N. MoPac Expwy., Suite 400
Austin, TX 78731

**EXHIBIT A – COMMERCIAL CONTRACT**



## TEXAS REALTORS

## COMMERCIAL CONTRACT - IMPROVED PROPERTY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2022

1. **PARTIES:** Seller agrees to sell and convey to Buyer the Property described in Paragraph 2. Buyer agrees to buy the Property from Seller for the sales price stated in Paragraph 3. The parties to this contract are:

Seller: Texas REIT, LLC

Address: 11509 S Lou Al Drive, Houston, TX 77024

Phone: _____ E-mail: _____

Mobile: _____ Fax or Other: _____

Buyer: Amina Properties, LLC and/or Assigns

Address: 711 Elmhurst Court, Sugar Land, TX 77479

Phone: _____ E-mail: _____

Mobile: _____ Fax or Other: _____

2. **PROPERTY:**

A. "Property" means that real property situated in Harris County _____ County, Texas at 8098 Westheimer Road, Houston, TX 77063 _____ *(address)* and that is legally described on the attached Exhibit_____ A & B _____ or as follows:

RES A1-1 BLK 1
OLD FARM CROSSING SEC 1

HCAD Account #: 1187090010007
Per Harris County Appraisal District

B. Seller will sell and convey the Property together with:
   (1) all buildings, improvements, and fixtures;
   (2) all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, and rights-of-way;
   (3) Seller's interest in all leases, rents, and security deposits for all or part of the Property;
   (4) Seller's interest in all licenses and permits related to the Property;
   (5) Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
   (6) Seller's interest in any trade names, if transferable, used in connection with the Property; and
   (7) all Seller's tangible personal property located on the Property that is used in connection with the Property's operations except:_____.
   Any personal property not included in the sale must be removed by Seller prior to closing.

   *(Describe any exceptions, reservations, or restrictions in Paragraph 12 or an addendum.)*
   *(If mineral rights are to be reserved an appropriate addendum should be attached.)*
   *(If the Property is a condominium, attach Commercial Contract Condominium Addendum (TXR-1930) or (TXR-1946).)*

3. **SALES PRICE:** At or before closing, Buyer will pay the following sales price for the Property:

   A. Cash portion payable by Buyer at closing ............................................................$ 5,500,000.00

   B. Sum of all financing described in Paragraph 4 ........................................................$ _____

   C. Sales price (sum of 3A and 3B) ............................................................................$ 5,500,000.00

(TXR-1801) 07-08-22          Initialed for Identification by Seller: [initials] and Buyer: [initials] Initial          Page 1 of 15

Patrick Dumar

Commercial Contract - Improved Property concerning 8098 Westheimer Road, Houston, TX 77063

**4. FINANCING:** Buyer will finance the portion of the sales price under Paragraph 3B as follows:

☐ A. <u>Third Party Financing</u>: One or more third party loans in the total amount of $_____. This contract:
    ☑ (1) is <u>not</u> contingent upon Buyer obtaining third party financing.
    ☐ (2) is contingent upon Buyer obtaining third party financing in accordance with the attached Commercial Contract Financing Addendum (TXR-1931).

☐ B. <u>Assumption</u>: In accordance with the attached Commercial Contract Financing Addendum (TXR-1931), Buyer will assume the existing promissory note secured by the Property, which balance at closing will be $_____.

☐ C. <u>Seller Financing</u>: Buyer will deliver a promissory note and deed of trust to Seller under the terms of the attached Commercial Contract Financing Addendum (TXR-1931) in the amount of $_____.

**5. EARNEST MONEY:**

A. Not later than 3 days after the effective date, Buyer must deposit $55,000.00 as earnest money with Post Oak Title (title company) at 4543 Post Oak Place Drive #222, Houston, TX 77027 (address) Zeeshan Jivani (closer). If Buyer fails to timely deposit the earnest money, Seller may terminate this contract or exercise any of Seller's other remedies under Paragraph 15 by providing written notice to Buyer before Buyer deposits the earnest money.

B. Buyer will deposit an additional amount of $_____with the title company to be made part of the earnest money on or before:
    ☐ (i)_____days after Buyer's right to terminate under Paragraph 7B expires; or
    ☐ (ii)_____.
Buyer will be in default if Buyer fails to deposit the additional amount required by this Paragraph 5B within 3 days after Seller notifies Buyer that Buyer has not timely deposited the additional amount.

C. Buyer may instruct the title company to deposit the earnest money in an interest-bearing account at a federally insured financial institution and to credit any interest to Buyer.

**6. TITLE POLICY, SURVEY, AND UCC SEARCH:**

A. <u>Title Policy</u>:

    (1) Seller, at Seller's expense, will furnish Buyer an Owner's Policy of Title Insurance (the title policy) issued by any underwriter of the title company in the amount of the sales price, dated at or after closing, insuring Buyer against loss under the title policy, subject only to:
        (a) those title exceptions permitted by this contract or as may be approved by Buyer in writing; and
        (b) the standard printed exceptions contained in the promulgated form of title policy unless this contract provides otherwise.

    (2) The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary lines, or any encroachments or protrusions, or any overlapping improvements:
        ☐ (a) will not be amended or deleted from the title policy.
        ☑ (b) will be amended to read "shortages in areas" at the expense of   ☑ Buyer ☐ Seller.

    (3) Within  7  days after the effective date, Seller will furnish Buyer a commitment for title insurance (the commitment) including legible copies of recorded documents evidencing title exceptions. Seller authorizes the title company to deliver the commitment and related documents to Buyer at Buyer's address.

Commercial Contract - Improved Property concerning <u>8098 Westheimer Road, Houston, TX 77063</u>

B. <u>Survey</u>: Within _____7_____ days after the effective date:

☐ (1) Buyer will obtain a survey of the Property at Buyer's expense and deliver a copy of the survey to Seller. The survey must be made in accordance with the: (i) ALTA/NSPS Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition. Seller will reimburse Buyer_____*(insert amount)* of the cost of the survey at closing, if closing occurs.

☐ (2) Seller, at Seller's expense, will furnish Buyer a survey of the Property dated after the effective date. The survey must be made in accordance with the: (i) ALTA/NSPS Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

☑ (3) Seller will deliver to Buyer and the title company a true and correct copy of Seller's most recent survey of the Property along with an affidavit required by the title company for approval of the existing survey. If the existing survey is not acceptable to the title company, ☐ Seller ☑ Buyer (updating party), will, at the updating party's expense, obtain a new or updated survey acceptable to the title company and deliver the acceptable survey to the other party and the title company within 30 days after the title company notifies the parties that the existing survey is not acceptable to the title company. The closing date will be extended daily up to 30 days if necessary for the updating party to deliver an acceptable survey within the time required. The other party will reimburse the updating party _ 0.00 _____*(insert amount or percentage)* of the cost of the new or updated survey at closing, if closing occurs.

C. <u>UCC Search</u>:

☐ (1) Within_____days after the effective date, Seller, at Seller's expense, will furnish Buyer a Uniform Commercial Code (UCC) search prepared by a reporting service and dated after the effective date. The search must identify documents that are on file with the Texas Secretary of State and the county where the Property is located that relate to all personal property on the Property and show, as debtor, Seller and all other owners of the personal property in the last 5 years.

☑ (2) Buyer does not require Seller to furnish a UCC search.

D. <u>Buyer's Objections to the Commitment, Survey, and UCC Search</u>:

(1) Within ___30___ days after Buyer receives the last of the commitment, copies of the documents evidencing the title exceptions, any required survey, and any required UCC search, Buyer may object to matters disclosed in the items if: (a) the matters disclosed are a restriction upon the Property or constitute a defect or encumbrance to title to the real or personal property described in Paragraph 2 other than those permitted by this contract or liens that Seller will satisfy at closing or Buyer will assume at closing; or (b) the items show that any part of the Property lies in a special flood hazard area (an "A" or "V" zone as defined by FEMA). If the commitment or survey is revised or any new document evidencing a title exception is delivered, Buyer may object to any new matter revealed in such revision or new document. Buyer's objection must be made within the same number of days stated in this paragraph, beginning when the revision or new document is delivered to Buyer. If Paragraph 6B(1) applies, Buyer is deemed to receive the survey on the earlier of: (i) the date Buyer actually receives the survey; or (ii) the deadline specified in Paragraph 6B.

(2) Seller may, but is not obligated to, cure Buyer's timely objections within 15 days after Seller receives the objections. The closing date will be extended as necessary to provide such time to cure the objections. If Seller fails to cure the objections by the time required, Buyer may terminate this contract by providing written notice to Seller within 5 days after the time by which Seller must cure the

Commercial Contract - Improved Property concerning 8098 Westheimer Road, Houston, TX 77063

objections. If Buyer terminates, the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer.

(3) Buyer's failure to timely object or terminate under this Paragraph 6D is a waiver of Buyer's right to object except that Buyer will not waive the requirements in Schedule C of the commitment.

## 7. PROPERTY CONDITION:

A. Present Condition: Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing: AS IS.

B. Feasibility Period: Buyer may terminate this contract for any reason within_____days after the effective date (feasibility period) by providing Seller written notice of termination.

(1) Independent Consideration. *(Check only one box and insert amounts.)*

☐ (a) If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer less $_____ that Seller will retain as independent consideration for Buyer's unrestricted right to terminate. Buyer has tendered the independent consideration to Seller upon payment of the amount specified in Paragraph 5A to the title company. The independent consideration is to be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(1) or if Buyer fails to deposit the earnest money, Buyer will not have the right to terminate under this Paragraph 7B.

☐ (b) Not later than 3 days after the effective date, Buyer must pay $_____ as independent consideration for Buyer's right to terminate by tendering such amount to the title company. Buyer authorizes escrow agent to release and deliver the independent consideration to Seller at any time upon Seller's request without further notice to or consent from Buyer. If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer and Seller will retain the independent consideration. The independent consideration will be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(1)(b) or if Buyer fails to pay the independent consideration, Buyer will not have the right to terminate under this Paragraph 7B.

☐ (2) Feasibility Period Extension: Prior to the expiration of the initial feasibility period, Buyer may extend the feasibility period for a single additional period of _____ days by delivering $_____ to the title company as additional earnest money.

(a) $_____ of the additional earnest money will be retained by Seller as additional independent consideration for Buyer's unrestricted right to terminate, but will be credited to the sales price only upon closing of the sale. If Buyer terminates under this Paragraph 7B, the additional earnest money will be refunded to Buyer and Seller will retain the additional independent consideration.

(b) Buyer authorizes escrow agent to release and deliver to Seller the following at any time upon Seller's request without further notice to or consent from Buyer:
(i) The additional independent consideration.
(ii) *(Check no boxes or only one box.)*
☐ all or ☐ $_____ of the remaining portion of the additional earnest money, which will be refunded to Buyer if Buyer terminates under this Paragraph 7B or if Seller defaults under this contract.

Patrick Dumar

Commercial Contract - Improved Property concerning <u>8098 Westheimer Road, Houston, TX 77063</u>

<u>If no dollar amount is stated in this Paragraph 7B(2) as additional earnest money or as additional independent consideration, or if Buyer fails to timely deliver the additional earnest money, the extension of the feasibility period will not be effective.</u>

C. <u>Inspections, Studies, or Assessments</u>:

    (1) During the feasibility period, Buyer, at Buyer's expense, may complete or cause to be completed any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer.

    (2) Seller, at Seller's expense, will turn on all utilities necessary for Buyer to make inspections, studies, or assessments.

    (3) Buyer must:
        (a) employ only trained and qualified inspectors and assessors;
        (b) notify Seller, in advance, of when the inspectors or assessors will be on the Property;
        (c) abide by any reasonable entry rules or requirements of Seller;
        (d) not interfere with existing operations or occupants of the Property; and
        (e) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

    (4) Except for those matters that arise from the negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of action, and expense resulting from Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph. This paragraph survives termination of this contract.

D. <u>Property Information</u>:

    (1) <u>Delivery of Property Information</u>: Within_____7_____days after the effective date, Seller will deliver to Buyer the following to the extent in Seller's possession: *(Check all that apply.)*
    ☐ (a) a current rent roll of all leases affecting the Property certified by Seller as true and correct;
    ☐ (b) copies of all current leases, including any mineral leases, pertaining to the Property, including any modifications, supplements, or amendments to the leases;
    ☑ (c) a current inventory of all personal property to be conveyed under this contract and copies of any leases for such personal property;
    ☑ (d) copies of all notes and deeds of trust against the Property that Buyer will assume or that Seller will not pay in full on or before closing;
    ☑ (e) copies of all current service, utility, maintenance, and management agreements relating to the ownership and operation of the Property;
    ☑ (f) copies of current utility capacity letters from the Property's water and sewer service provider;
    ☐ (g) copies of all current warranties and guaranties relating to all or part of the Property;
    ☐ (h) copies of fire, hazard, liability, and other insurance policies that currently relate to the Property;
    ☐ (i) copies of all leasing or commission agreements that currently relate to the tenants of all or part of the Property;
    ☑ (j) a copy of the "as-built" plans and specifications and plat of the Property;
    ☐ (k) copies of all invoices for utilities and repairs incurred by Seller for the Property in the 24 months immediately preceding the effective date;
    ☐ (l) a copy of Seller's income and expense statement for the Property from _____ to _____;
    ☑ (m) copies of all previous environmental assessments, geotechnical reports, studies, or analyses made on or relating to the Property;

Commercial Contract - Improved Property concerning <u>8098 Westheimer Road, Houston, TX 77063</u>

☐ (n) real and personal property tax statements for the Property for the previous 2 calendar years;
☐ (o) Tenant reconciliation statements including, operating expenses, insurance and taxes for the Property from_____to_____; and
☐ (p) _____

(2) <u>Return of Property Information</u>: If this contract terminates for any reason, Buyer will, not later than 10 days after the termination date: *(Check all that apply.)*
☑ (a) return to Seller all those items described in Paragraph 7D(1) that Seller delivered to Buyer inother than an electronic format and all copies that Buyer made of those items;
☑ (b) delete or destroy all electronic versions of those items described in Paragraph 7D(1) that Seller delivered to Buyer or Buyer copied in any format; and
☑ (c) deliver to Seller copies of all inspection and assessment reports related to the Property that Buyer completed or caused to be completed.
This Paragraph 7D(2) survives termination of this contract.

E. <u>Contracts Affecting Operations</u>: Until closing, Seller: (1) will operate the Property in the same manner as on the effective date under reasonably prudent business standards; and (2) will not transfer or dispose of any part of the Property, any interest or right in the Property, or any of the personal property or other items described in Paragraph 2B or sold under this contract. After the feasibility period ends, Seller may not enter into, amend, or terminate any other contract that affects the operations of the Property without Buyer's written approval.

## 8. LEASES:

A. Each written lease Seller is to assign to Buyer under this contract must be in full force and effect according to its terms. Seller may not enter into any new lease, fail to comply with any existing lease, or make any amendment or modification to any existing lease without Buyer's written consent. Seller must disclose, in writing, if any of the following exist at the time Seller provides the leases to the Buyer or subsequently occur before closing:
(1) any failure by Seller to comply with Seller's obligations under the leases;
(2) any circumstances under any lease that entitle the tenant to terminate the lease or seek any offsets or damages;
(3) any non-occupancy of the leased premises by a tenant;
(4) any advance sums paid by a tenant under any lease;
(5) any concessions, bonuses, free rents, rebates, brokerage commissions, or other matters that affect any lease; and
(6) any amounts payable under the leases that have been assigned or encumbered, except as security for loan(s) assumed or taken subject to under this contract.

B. <u>Estoppel Certificates</u>: Within_____days after the effective date, Seller will deliver to Buyer estoppel certificates signed not earlier than_____by each tenant that leases space in the Property. The estoppel certificates must include the certifications contained in the current version of TXR Form 1938 – Commercial Tenant Estoppel Certificate and any additional information requested by a third party lender providing financing under Paragraph 4 if the third party lender requests such additional information at least 10 days prior to the earliest date that Seller may deliver the signed estoppel certificates.

Commercial Contract - Improved Property concerning 8098 Westheimer Road, Houston, TX 77063

## 9. BROKERS:

A. The brokers to this sale are:

| **Principal Broker**: | **Cooperating Broker**: Walzel Properties |
|---|---|
| Agent: | Agent: Patrick J. Dumar |
| Address: | Address: 15420 Ridge Park Drive / Houston, TX 77095 |
| Phone & Fax: | Phone & Fax: 281-979-7290 |
| E-mail: | E-mail: patrick@walzelhtx.com |
| License No.: | License No.: 730020 |

Principal Broker: *(Check only one box)*
☐ represents Seller only.
☐ represents Buyer only.
☐ is an intermediary between Seller and Buyer.

Cooperating Broker represents Buyer.

B. <u>Fees</u>: *(Check only (1) or (2) below.)*
*(Complete the Agreement Between Brokers on page 15 only if (1) is selected.)*

☐ (1) Seller will pay Principal Broker the fee specified by separate written commission agreement between Principal Broker and Seller. Principal Broker will pay Cooperating Broker the fee specified in the Agreement Between Brokers found below the parties' signatures to this contract.

☑ (2) At the closing of this sale, Seller will pay:

| Principal Broker a total cash fee of: | Cooperating Broker a total cash fee of: |
|---|---|
| ☐ _____ % of the sales price. | ☑ 1.75% of the sales price. |
| ☐ _____. | ☐ _____. |

The cash fees will be paid in Harris _____ County, Texas. Seller authorizes the title company to pay the brokers from the Seller's proceeds at closing.

*NOTICE: Chapter 62, Texas Property Code, authorizes a broker to secure an earned commission with a lien against the Property.*

C. The parties may not amend this Paragraph 9 without the written consent of the brokers affected by the amendment.

## 10. CLOSING:

A. The date of the closing of the sale (closing date) will be on or before the later of:
(1) ☐ _____ days after the expiration of the feasibility period.
☐ _____ *(specific date).*
☑ Within 5 business days of the bankruptcy court order approving this sale becoming a final, non-appealable order _____.
(2) 7 days after objections made under Paragraph 6D have been cured or waived.

B. If either party fails to close by the closing date, the non-defaulting party may exercise the remedies in Paragraph 15.

Commercial Contract - Improved Property concerning 8098 Westheimer Road, Houston, TX 77063

C. At closing, Seller will execute and deliver to Buyer, at Seller's expense, a ☐ general ☑ special warranty deed. The deed must include a vendor's lien if any part of the sales price is financed. The deed must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Paragraph 6 or other provisions of this contract. Seller must convey the Property:

  (1) with no liens, assessments, or Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the sales price, unless securing loans Buyer assumes;

  (2) without any assumed loans in default; and

  (3) with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers except tenants under the written leases assigned to Buyer under this contract.

D. At closing, Seller, at Seller's expense, will also deliver to Buyer:

  (1) tax statements showing no delinquent taxes on the Property;

  (2) a bill of sale with warranties to title conveying title, free and clear of all liens, to any personal property defined as part of the Property in Paragraph 2 or sold under this contract;

  (3) an assignment of all leases to or on the Property;

  (4) to the extent that the following items are assignable, an assignment to Buyer of the following items as they relate to the Property or its operations:

    (a) licenses and permits;

    (b) service, utility, maintenance, management, and other contracts; and

    (c) warranties and guaranties;

  (5) a rent roll current on the day of the closing certified by Seller as true and correct;

  (6) evidence that the person executing this contract is legally capable and authorized to bind Seller;

  (7) an affidavit acceptable to the title company stating that Seller is not a foreign person or, if Seller is a foreign person, a written authorization for the title company to: (i) withhold from Seller's proceeds an amount sufficient to comply with applicable tax law; and (ii) deliver the amount to the Internal Revenue Service together with appropriate tax forms; and

  (8) any notices, statements, certificates, affidavits, releases, and other documents required by this contract, the commitment, or law necessary for the closing of the sale and the issuance of the title policy, all of which must be completed and executed by Seller as necessary.

E. At closing, Buyer will:

  (1) pay the sales price in good funds acceptable to the title company;

  (2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;

  (3) sign and send to each tenant in the Property a written statement that:

    (a) acknowledges Buyer has received and is responsible for the tenant's security deposit; and

    (b) specifies the exact dollar amount of the security deposit;

  (4) sign an assumption of all leases then in effect; and

  (5) execute and deliver any notices, statements, certificates, or other documents required by this contract or law necessary to close the sale.

F. Unless the parties agree otherwise, the closing documents will be as found in the basic forms in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

**11. POSSESSION:** Seller will deliver possession of the Property to Buyer upon closing and funding of this sale in its present condition with any repairs Seller is obligated to complete under this contract, ordinary wear and tear excepted. Any possession by Buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

Commercial Contract - Improved Property concerning 8098 Westheimer Road, Houston, TX 77063

**12. SPECIAL PROVISIONS:** The following special provisions apply and will control in the event of a conflict with other provisions of this contract. *(If special provisions are contained in an Addendum, identify the Addendum here and reference the Addendum in Paragraph 22D.)*

As a condition to closing, the Seller and Purchaser have agreed to amend the Declaration of Easements and Restrictions dated December 20, 2018, and recorded in Clerk's File No. RP-2018-579810 in the Official Public Records of Real Property of Harris County, Texas (the "First Amendment"). The form of the agreed upon First Amendment is attached hereto as Exhibit C and incorporated by reference. Property is sold AS-IS where IS, no warranty or representation, expressed or implied.

**13. SALES EXPENSES:**

A. <u>Seller's Expenses</u>: Seller will pay for the following at or before closing:
  (1) releases of existing liens, other than those liens assumed by Buyer, including prepayment penalties and recording fees;
  (2) release of Seller's loan liability, if applicable;
  (3) tax statements or certificates;
  (4) preparation of the deed and any bill of sale;
  (5) one-half of any escrow fee;
  (6) costs to record any documents to cure title objections that Seller must cure; and
  (7) other expenses that Seller will pay under other provisions of this contract.

B. <u>Buyer's Expenses</u>: Buyer will pay for the following at or before closing:
  (1) all loan expenses and fees;
  (2) preparation fees of any deed of trust;
  (3) recording fees for the deed and any deed of trust;
  (4) premiums for flood and hazard insurance as may be required by Buyer's lender;
  (5) one-half of any escrow fee; and
  (6) other expenses that Buyer will pay under other provisions of this contract.

**14. PRORATIONS:**

A. <u>Prorations</u>:
  (1) Interest on any assumed loan, taxes, rents, and any expense reimbursements from tenants will be prorated through the closing date.
  (2) If the amount of ad valorem taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year. If the taxes for the year in which the sale closes vary from the amount prorated at closing, the parties will adjust the prorations when the tax statements for the year in which the sale closes become available. This Paragraph 14A(2) survives closing.
  (3) If Buyer assumes a loan or is taking the Property subject to an existing lien, Seller will transfer all reserve deposits held by the lender for the payment of taxes, insurance premiums, and other charges to Buyer at closing and Buyer will reimburse such amounts to Seller by an appropriate adjustment at closing.

B. <u>Rollback Taxes</u>: If Seller's use or change in use of the Property before closing results in the assessment of additional taxes, penalties, or interest (assessments) for periods before closing, the assessments will be the obligation of Seller. If this sale or Buyer's use of the Property after closing results in additional assessments for periods before closing, the assessments will be the obligation of Buyer. This Paragraph 14B survives closing.

(TXR-1801) 07-08-22          Initialed for Identification by Seller: [    ] and Buyer:  [    ]          Page 9 of 15

Patrick Dumar

Commercial Contract - Improved Property concerning 8098 Westheimer Road, Houston, TX 77063

C. Rent and Security Deposits: At closing, Seller will tender to Buyer all security deposits and the following advance payments received by Seller for periods after closing: prepaid expenses, advance rental payments, and other advance payments paid by tenants. Rents prorated to one party but received by the other party will be remitted by the recipient to the party to whom it was prorated within 5 days after the rent is received. This Paragraph 14C survives closing.

## 15. DEFAULT:

A. If Buyer fails to comply with this contract, Buyer is in default and Seller, as Seller's sole remedy(ies), may terminate this contract and receive the earnest money, as liquidated damages for Buyer's failure except for any damages resulting from Buyer's inspections, studies or assessments in accordance with Paragraph 7C(4) which Seller may pursue, or
*(Check if applicable)*
☐ enforce specific performance, or seek such other relief as may be provided by law.

B. If, without fault, Seller is unable within the time allowed to deliver the estoppel certificates, survey or the commitment, Buyer may:
(1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or
(2) extend the time for performance up to 15 days and the closing will be extended as necessary.

C. Except as provided in Paragraph 15B, if Seller fails to comply with this contract, Seller is in default and Buyer may:
(1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or
(2) enforce specific performance, or seek such other relief as may be provided by law, or both.

## 16. CASUALTY LOSS AND CONDEMNATION:

A. If any part of the Property is damaged or destroyed by fire or other casualty after the effective date, Seller must restore the Property to its previous condition as soon as reasonably possible and not later than the closing date. If, without fault, Seller is unable to do so, Buyer may:

(1) terminate this contract and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer;
(2) extend the time for performance up to 15 days and closing will be extended as necessary; or
(3) accept at closing: (i) the Property in its damaged condition; (ii) an assignment of any insurance proceeds Seller is entitled to receive along with the insurer's consent to the assignment; and (iii) a credit to the sales price in the amount of any unpaid deductible under the policy for the loss.

B. If before closing, condemnation proceedings are commenced against any part of the Property, Buyer may:
(1) terminate this contract by providing written notice to Seller within 15 days after Buyer is advised of the condemnation proceedings and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer; or
(2) appear and defend the condemnation proceedings and any award will, at Buyer's election, belong to: (a) Seller and the sales price will be reduced by the same amount; or (b) Buyer and the sales price will not be reduced.

## 17. ATTORNEY'S FEES: If Buyer, Seller, any broker, or the title company is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 17 survives termination of this contract.



Patrick Dumar

Commercial Contract - Improved Property concerning 8098 Westheimer Road, Houston, TX 77063

## 18. ESCROW:

A. At closing, the earnest money will be applied first to any cash down payment, then to Buyer's closing costs, and any excess will be refunded to Buyer. If no closing occurs, the title company may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of the title company from all parties.

B. If one party makes written demand for the earnest money, the title company will give notice of the demand by providing to the other party a copy of the demand. If the title company does not receive written objection to the demand from the other party within 15 days after the date the title company sent the demand to the other party, the title company may disburse the earnest money to the party making demand, reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and the title company may pay the same to the creditors.

C. The title company will deduct any independent consideration under Paragraph 7B(1) before disbursing any earnest money to Buyer and will pay the independent consideration to Seller.

D. If the title company complies with this Paragraph 18, each party hereby releases the title company from all claims related to the disbursal of the earnest money.

E. Notices under this Paragraph 18 must be sent by certified mail, return receipt requested. Notices to the title company are effective upon receipt by the title company.

F. Any party who wrongfully fails or refuses to sign a release acceptable to the title company within 7 days after receipt of the request will be liable to the other party for: (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

G. ☐ Seller ☐ Buyer intend(s) to complete this transaction as a part of an exchange of like-kind properties in accordance with Section 1031 of the Internal Revenue Code, as amended. All expenses in connection with the contemplated exchange will be paid by the exchanging party. The other party will not incur any expense or liability with respect to the exchange. The parties agree to cooperate fully and in good faith to arrange and consummate the exchange so as to comply to the maximum extent feasible with the provisions of Section 1031 of the Internal Revenue Code. The other provisions of this contract will not be affected in the event the contemplated exchange fails to occur.

## 19. MATERIAL FACTS: To the best of Seller's knowledge and belief: *(Check only one box.)*

☐ A. Seller is not aware of any material defects to the Property except as stated in the attached Commercial Property Condition Statement (TXR-1408).

☑ B. Except as otherwise provided in this contract, Seller is not aware of:
    (1)   any subsurface: structures, pits, waste, springs, or improvements;
    (2)   any pending or threatened litigation, condemnation, or assessment affecting the Property;
    (3)   any environmental hazards or conditions that materially affect the Property;
    (4)   whether the Property is or has been used for the storage or disposal of hazardous materials or toxic waste, a dump site or landfill, or any underground tanks or containers;
    (5)   whether radon, asbestos containing materials, urea-formaldehyde foam insulation, lead-based paint, toxic mold (to the extent that it adversely affects the health of ordinary occupants), or other pollutants or contaminants of any nature now exist or ever existed on the Property;
    (6)   any wetlands, as defined by federal or state law or regulation, on the Property;
    (7)   any threatened or endangered species or their habitat on the Property;
    (8)   any present or past infestation of wood-destroying insects in the Property's improvements;
    (9)   any contemplated material changes to the Property or surrounding area that would materially and detrimentally affect the ordinary use of the Property;

Patrick Dumar

Commercial Contract - Improved Property concerning <u>8098 Westheimer Road, Houston, TX 77063</u>

    (10)  any material physical defects in the improvements on the Property; or
    (11)  any condition on the Property that violates any law or ordinance.

      *(Describe any exceptions to (1)-(11) in Paragraph 12 or an addendum.)*

**20. NOTICES:** All notices between the parties under this contract must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, sent by a national or regional overnight delivery service that provides a delivery receipt, or sent by confirmed facsimile transmission to the parties addresses or facsimile numbers stated in Paragraph 1. The parties will send copies of any notices to the broker representing the party to whom the notices are sent.

☑ A.  Seller also consents to receive any notices by e-mail at Seller's e-mail address stated in Paragraph 1.
☑ B.  Buyer also consents to receive any notices by e-mail at Buyer's e-mail address stated in Paragraph 1.

**21. DISPUTE RESOLUTION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator. This paragraph survives termination of this contract. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**22. AGREEMENT OF THE PARTIES:**

  A.  This contract is binding on the parties, their heirs, executors, representatives, successors, and permitted assigns. This contract is to be construed in accordance with the laws of the State of Texas. If any term or condition of this contract shall be held to be invalid or unenforceable, the remainder of this contract shall not be affected thereby. All individuals signing represent that they have the authority to sign on behalf of and bind the party for whom they are signing.

  B.  This contract contains the entire agreement of the parties and may not be changed except in writing.

  C.  If this contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

  D.  Addenda which are part of this contract are: *(Check all that apply.)*
    ☑ (1)  Property Description Exhibit identified in Paragraph 2;
    ☐ (2)  Commercial Contract Condominium Addendum (TXR-1930) or (TXR-1946);
    ☑ ~~(3)  Commercial Contract Financing Addendum (TXR-1931);~~
    ☐ (4)  Commercial Property Condition Statement (TXR-1408);
    ☐ (5)  Commercial Contract Addendum for Special Provisions (TXR-1940);
    ☐ (6)  Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (TXR-1906);
    ☐ (7)  Notice to Purchaser of Real Property in a Water District (MUD);
    ☐ (8) Addendum for Coastal Area Property (TXR-1915);
    ☐ (9) Addendum for Property Located Seaward of the Gulf Intracoastal Waterway (TXR-1916);
    ☑ (10) Information About Brokerage Services (TXR-2501;
    ☐ (11) Information About Mineral Clauses in Contract Forms (TXR-2509);
    ☐ (12) Notice of Obligation to Pay Improvement District Assessment (TXR-1955, PID);
    ☑ (13) Wire Fraud Warning
             First Amendment (Exhibit C)

    *(Note: Counsel for Texas REALTORS® has determined that any of the foregoing addenda which are promulgated by the Texas Real Estate Commission (TREC) or published by Texas REALTORS® are appropriate for use with this form.)*

Commercial Contract - Improved Property concerning 8098 Westheimer Road, Houston, TX 77063

E. Buyer ☑ may ☐ may not assign this contract. If Buyer assigns this contract, Buyer will be relieved of any future liability under this contract only if the assignee assumes, in writing, all of Buyer's obligations under this contract.

23. **TIME:** Time is of the essence in this contract. The parties require strict compliance with the times for performance. If the last day to perform under a provision of this contract falls on a Saturday, Sunday, or Federal Reserve Bank holiday, the time for performance is extended until the end of the next day which is not a Saturday, Sunday,or Federal Reserve Bank holiday.

24. **EFFECTIVE DATE:** The effective date of this contract for the purpose of performance of all obligations is the date the title company receipts this contract after all parties execute this contract.

25. **ADDITIONAL NOTICES:**

A. Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

B. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fees of the district before final execution of this contract.

C. Notice Required by §13.257, Water Code: "The real property, described below, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you willbe required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in the notice or at closing of purchase of the real property." The real property is described in Paragraph 2 of this contract.

D. If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included as part of this contract *(the Addendum for Coastal Area Property (TXR-1915) may be used)*.

E. If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract *(the Addendum for Property Located Seaward of the Gulf Intracoastal Waterway (TXR-1916) may be used)*.

F. If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

G. If apartments or other residential units are on the Property and the units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract *(the Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (TXR-1906) may be used)*.

Patrick Dumar

Commercial Contract - Improved Property concerning 8098 Westheimer Road, Houston, TX 77063

H. Section 1958.154, Occupations Code requires Seller to provide Buyer a copy of any mold remediation certificate issued for the Property during the 5 years preceding the date the Seller sells the Property.

I. Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services. Buyer should review local building codes, ordinances and other applicable laws to determine their effect on the Property. Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers. Brokers are not qualified to determine the credit worthiness of the parties. NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

J. PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller is required by §5.014, Property Code to give Buyer a written notice concerning the obligation to pay assessments. The form of the required notice is available as a part of the Notice of Obligation to Pay Improvement District Assessment (TXR-1955).

K. LICENSE HOLDER DISCLOSURE: Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as a trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____

**26. CONTRACT AS OFFER:** The execution of this contract by the first party constitutes an offer to buy or sell the Property. Unless the other party accepts the offer by 5:00 p.m., in the time zone in which the Property is located, on _____12/01/2024_____, the offer will lapse and become null and void.

**READ THIS CONTRACT CAREFULLY. The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction. CONSULT your attorney BEFORE signing.**

Seller: Texas REIT, LLC _____    Buyer: Amina Properties, LLC and/or Assigns

_____

By: Texas REIT, LLC      By: Amina Properties, LLC

    By (signature): _____    By (signature): Liyakat Maknojia

    Printed Name: Ali Choudhri    Printed Name: Liyakat Maknojia

    Title: Director/Manager    Title: Manager

By: _____    By: _____

    By (signature): _____    By (signature): _____

    Printed Name: _____    Printed Name: _____

    Title: _____    Title: _____

Patrick Dumar

Commercial Contract - Improved Property concerning 8098 Westheimer Road, Houston, TX 77063

### AGREEMENT BETWEEN BROKERS
*(use only if Paragraph 9B(1) is effective)*

Principal Broker agrees to pay _____
(Cooperating Broker) a fee when the Principal Broker's fee is received. The fee to be paid to
Cooperating Broker will be:

☐ $_____, or
☐ _____% of the sales price, or
☐ _____% of the Principal Broker's fee.

The title company is authorized and directed to pay Cooperating Broker from Principal Broker's
fee at closing. This Agreement Between Brokers supersedes any prior offers and agreements for
compensation between brokers.

Principal Broker: _____ Cooperating Broker: _____

By: _____ By: _____

### ATTORNEYS

Seller's attorney: _____ Buyer's attorney: _____

Address: _____ Address: _____

Phone & Fax: _____ Phone & Fax: _____

Email: _____ Email: _____

Seller's attorney requests copies of
documents, notices, and other information:
☐ the title company sends to Seller.
☐ Buyer sends to Seller

Buyer's attorney requests copies of
documents, notices, and other information:
☐ the title company sends to Buyer.
☐ Seller sends to Buyer

### ESCROW RECEIPT

The title company acknowledges receipt of:
☐ A. the contract on this day_____(effective date);
☐ B. earnest money in the amount of $ 55,000.00 in the form of_____on_____

Title company: Fidelity National Title   Address: 440 Louisiana Street #1100
Houston, TX 77002

By: _____ Phone & Fax: _____
Assigned file number (GF#): _____ E-mail: _____

(TXR-1801) 07-08-22

Patrick Dumar

# Exhibit A



BOUNDARY SURVEY

1.5741 ACRES

OLD FARM CROSSING
SECTION ONE

JOHN D. TAYLOR LEAGUE
ABSTRACT NO. 72

Docusign Envelope ID: 3DD768FE-E729-4385-B2DB-5D62DB8977DE

Print Details

# Exhibit B

HARRIS CENTRAL APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**1187090010007**

Tax Year: 2024

🖨 **Print**

| Owner and Property Information | | |
|---|---|---|
| Owner Name & Mailing Address: | **DALIO HOLDINGS I LLC**<br>**% WALGREEN CO REAL ESTATE TAX DEPT**<br>**11509 S LOU AL DR**<br>**HOUSTON TX 77024-2707** | Legal Description:    **RES A1-1 BLK 1 OLD FARM CROSSING SEC 1**<br><br>Property Address:    **8098 WESTHEIMER RD HOUSTON TX 77063** |

| State Class Code | Land Use Code | Building Class | Total Units | Land Area | Building Area | Net Rentable Area | Neighborhood | Market Area | Map Facet | Key Map^Ⓐ® |
|---|---|---|---|---|---|---|---|---|---|---|
| F1 -- Real, Commercial | 8001 -- Land Neighborhood Section 1 | E | 0 | 68,566 SF | 15,120 | 0 | 5909 | 5021 -- Galleria | 5056B | 490V |

### Value Status Information

| Value Status | Notice Date | Hearing Status | Shared CAD |
|---|---|---|---|
| Noticed | 4/19/2024 | Informal : 6/18/2024 10:05:00 AM | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2023 Rate | 2024 Rate |
|---|---|---|---|---|---|---|
| **None** | 001 | HOUSTON ISD | | Not Certified | 0.868300 | |
| | 040 | HARRIS COUNTY | | Not Certified | 0.350070 | |
| | 041 | HARRIS CO FLOOD CNTRL | | Not Certified | 0.031050 | |
| | 042 | PORT OF HOUSTON AUTHY | | Not Certified | 0.005740 | |
| | 043 | HARRIS CO HOSP DIST | | Not Certified | 0.143430 | |
| | 044 | HARRIS CO EDUC DEPT | | Not Certified | 0.004800 | |
| | 048 | HOU COMMUNITY COLLEGE | | Not Certified | 0.092231 | |
| | 061 | CITY OF HOUSTON | | Not Certified | 0.519190 | |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway**.

### Valuations

| | Value as of January 1, 2023 | | | Value as of January 1, 2024 | | |
|---|---|---|---|---|---|---|
| | Market | Appraised | | | Market | Appraised |
| Land | 3,085,470 | | Land | | 3,085,470 | |
| Improvement | 1,219,571 | | Improvement | | 1,238,339 | |
| Total | 4,305,041 | 4,305,041 | Total | | 4,323,809 | 4,323,809 |

### Land

| | | | Market Value Land | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 8001 -- Land Neighborhood Section 1 | 4376 | SF | 68,566 | 1.00 | 1.00 | 1.00 | Corner or Alley | 1.00 | 45.00 | 45.00 | 3,085,470.00 |

### Building

Docusign Envelope ID: 3DD768FE-E729-4385-B2DB-5D62DB8977DE

Print Details

# Exhibit B

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1998 | Drugstore (Freestanding) | Drug Store | Good | 15,120 | Displayed |

Building Details (1)

| Building Data | |
|---|---|
| Element | Detail |
| Cooling Type | Central / Forced |
| Economic Obsolescence | Normal |
| Functional Utility | Fair |
| Heating Type | Hot Air |
| Partition Type | Normal |
| Physical Condition | Fair |
| Plumbing Type | Adequate |
| Sprinkler Type | None |
| Exterior Wall | Brick / Stone |
| Market Index Adjustment | 100% No Mkt Index Adjustment |
| Element | Units |
| Wall Height | 18 |
| Sprinkler: Wet | 1 |
| Interior Finish Percent | 100 |

| Building Areas | |
|---|---|
| Description | Area |
| BASE AREA PRI | 15,120 |
| CNPY ROOF W/ SLAB -C | 1,664 |
| BANK CANOPY -C | 540 |

**Extra Features**

| Line | Description | Quality | Condition | Units | Year Bulit |
|---|---|---|---|---|---|
| 1 | Paving - Heavy Concrete | Average | Average | 41,606.00 | 1998 |
| 2 | CANOPY ROOF AND SLAB | Average | Average | 1,664.00 | 1998 |
| 3 | Bank Canopy - Drive Thru | Average | Average | 540.00 | 1998 |



# Exhibit C

## FIRST AMENDMENT TO DECLARATION OF EASEMENTS AND RESTRICTIONS

This First Amendment to Declaration of Easements and Restrictions (this "*Amendment*") is made and entered into effective as of _____, 2024 (the "*Effective Date*"), by **Texas REIT LLC**, a Texas limited liability company ("*REIT*").

## RECITALS

A.     Reference is hereby made to that certain Declaration of Easements and Restrictions dated December 20, 2018, and recorded in Clerk's File No. RP-2018-579810 in the Official Public Records of Real Property of Harris County, Texas (the "*Declaration*"). Capitalized terms used herein and not otherwise defined shall have the meanings assigned to such terms in the Declaration.

B.     Pursuant to Section 13 of the Declaration, the Declaration may be amended only by an instrument executed by all Owners of the Parcels identified therein.

C.     REIT is the current, sole Owner of the Parcels, and REIT desires to amend the Declaration as further set forth herein.

**NOW, THEREFORE**, in consideration of the above premises, the receipt and sufficiency of which are hereby acknowledged and confessed, REIT hereby declares as follows:

1.     Amendment to Section 4. Section 4 of the Declaration, as well as all other references in the Declaration to the Parking Easement and Parking Areas, are hereby deleted in their entirety, and the Owner of Parcel 2 is hereby released from any further obligations under the Declaration involving the Parking Easement and/or Parking Areas.  Section 4 of the Declaration is hereby replaced with the following:

"No fence, curb, other barrier or obstruction shall be constructed or allowed to remain on Parcel 2 that would unreasonably restrict the Access Easement in such a way as to prevent the passage of pedestrian or vehicular traffic among and between the Parcels and access, ingress and egress to Parcel 1 from Old Farm Road."

2.     Amendment to Section 5. Section 5 of the Declaration is hereby deleted in its entirety and is hereby replaced with the following:

"No temporary building or structure shall be installed or maintained on Parcel 2 except in connection with approved construction on Parcel 2 and in such event, such temporary buildings or structures shall not be allowed to remain for more than twelve (12) months. The following restrictions are hereby imposed on Parcel 2:

a.     Nuisance and Hazardous Activities.  No activities shall be conducted on Parcel 2 and no improvements shall be constructed or allowed to remain on Parcel 2 which are or might be unsafe or hazardous to any person or property.  Without limiting the generality of the foregoing, (a) no firearms shall be discharged upon any part of Parcel 2, (b) no explosives shall be kept or used on any part of Parcel 2, (c) no open fires shall be lighted or permitted on Parcel 2, and (d) no toxic substances shall be dumped or discharged onto or into any part of the Parcel 2. Notwithstanding the foregoing, nothing in this Declaration shall be interpreted to prohibit or restrict the use or operation of fuel canopies, pumps, air machines, or any other standard equipment and facilities generally found at convenience stores and/or fuel stations, all of which are expressly permitted by this Declaration.

# Exhibit C

b.      All landscaping on Parcel 2 must be kept mowed, trimmed, pruned, and free of trash and other unsightly material. All Improvements on Parcel 2 shall at all times be kept in good condition and repair and adequately painted or otherwise maintained at the sole expense of the Owner thereof.

c.      No litter, rubbish, debris, or trash (other than that to be picked up by a collection/disposal or recycling service) shall be kept or stored on Parcel 2; and no odors shall be permitted to arise therefrom so as to render Parcel 2 or any portion thereof unsanitary, offensive or detrimental to any other nearby property or to its occupants. Refuse, garbage and trash shall be kept at all times in covered containers. Under no circumstance shall trash be disposed of through burning on any portion of Parcel 2.

d.      No mobile homes, manufactured housing, motor homes, travel trailers, or recreational vehicles shall be parked or placed on any part of Parcel 2 or used as a residence or for the operation of a business, either temporary or permanent, at any time. This paragraph shall not prevent the legal operation of food trucks on Parcel 2.

e.      Any dishes or antennae for electromagnetic reception/transmission on Parcel 2 must be 24" in diameter or less. No radio signals, television signals, or any other form of electromagnetic radiation shall originate from any portion of Parcel 2 which may unreasonably interfere with the reception of any television, electromagnetic or radio signal on Parcel 1. All fuel storage tanks on a Parcel must be buried and not be conspicuous from the adjacent roadways. No above-ground storage tanks are allowed on either Parcel, provided, however, that this paragraph does not apply to storage tanks offered for retail sale, such as the retail sale of portable propane tanks.

f.      No abandoned or junked motor vehicles, nor vehicles on blocks, shall be allowed on a Parcel. An abandoned or junked motor vehicle is one without a current, valid state inspection sticker and license plate.

g.      Unless otherwise approved by the Owners of both Parcels in a recorded instrument, no part of either Parcel will be used for, and the Owner of such Parcel will not permit the use of any portion thereof, as an adult book store or store selling sexually explicit material (other than in connection with a bookstore or other store selling books and/or periodicals of general circulation, rather than those sold primarily in connection with an adult bookstore)."

3.      <u>Right of First Refusal</u>.

a.      If The Owner of Parcel 2 shall receive a bona fide offer from any third party for the purchase or acquisition of Parcel 2 or any part thereof or interest therein, which offer the Owner of Parcel 2 desires to accept, the Owner of Parcel 2 shall promptly deliver to the Owner of Parcel 1, at _____ (or such other address as the Owner of Parcel 1 may designate by written notice to the Owner of Parcel 2), a written notice (the "**Offer Notice**") setting forth the full terms and conditions of the proposed transaction, and a copy of such offer. The Owner of Parcel 1 may, within 15 days after receipt of the Offer Notice elect to purchase or acquire Parcel 2 or such portion thereof or interest therein which is the subject of the Offer Notice (the "**Offer Property**") on the same terms and conditions as those set forth in the Offer Notice (the "**Right of First Refusal**"); provided, however, that (a) the Owner of Parcel 1 shall not be entitled to any inspection period, feasibility period, or similar provision

# Exhibit C

granting said Owner a termination right under the corresponding purchase agreement (other than as a remedy for a seller default), (b) the sale will be on an "as is, where is" basis and the Parcel 2 Owner will convey the applicable Offer Property to the Parcel 1 Owner in its then existing physical condition, and (c) the Parcel 2 Owner will make no representations or warranties of any kind or nature, other than its special warranty of title contained in a special warranty deed. If the Offer Notice includes a copy of the proposed purchase agreement for the Offer Property (which may be modified by the Parcel 2 Owner for the aforementioned terms), then the Owner of Parcel 1 must sign and deliver to the Parcel 2 Owner the Parcel 1 Owner's counterpart to such purchase agreement within the 15-day period in order to exercise the Right of First Refusal for that Offer Notice. The failure of the Owner of Parcel 1 to exercise this Right of First Refusal with respect to any proposed sale or other transfer by the Owner of Parcel 2 shall not result in termination of this Right of First Refusal with respect to Parcel 2 or any portion thereof or interest therein sold, leased or transferred but this Right of First Refusal shall be a continuing right binding upon the Owner of Parcel 2 and all succeeding owners of Parcel 2 with respect to all subsequent proposed sales or transfers of Parcel 2 or any portion thereof or interest therein. Furthermore, in the event that any proposed sale or other transfer as to which the Owner of Parcel 1 did not exercise its Right of First Refusal as above provided, is not completed and closed by the Owner of Parcel 2 substantially in accordance with the terms of the offer (but subject to the right of the Owner of Parcel 2 and the other party to extend the closing of the transaction and to make other amendments which do not materially change the transaction), or if prior to the closing of such transaction the terms available to the proposed purchaser or transferee are modified and made materially more favorable to such party, then the Offer Property must be reoffered to the Owner of Parcel 1 in the same manner provided above, and the Owner of Parcel 1 shall have 15 days from receipt of the Owner of Parcel 2's modified Offer Notice within which to exercise the Right of First Refusal. Failure by the Owner of Parcel 1 to timely respond to any Offer Notice in accordance with this paragraph shall be deemed an election by the Parcel 1 Owner not to purchase Parcel 2 pursuant to said Offer Notice.

b.      Notwithstanding the foregoing, this Right of First Refusal shall not be effective and the Parcel 1 Owner shall have no prior right to acquire any interest in Parcel 2 as a result of (i) any transfer of an interest in Parcel 2 by will, inheritance, or intestate succession, provided the legatee, devisee, or recipient of such interest is related, by blood or marriage, to the transferor of such interest, or (ii) the sale or transfer of Parcel 2 to any affiliate entity controlled by, controlling, or under common control with the Parcel 2 Owner or its principals (the foregoing transfer and transferees are hereafter called "**Permitted Transfers**" and "**Permitted Transferees**", respectively). Notwithstanding anything else in this Agreement to the contrary, this Right of First Refusal shall be effective with respect to any transfer of any interest in Parcel 2 by a Permitted Transferee to any person that is not a Permitted Transferee.

c.      In the event of the purchase of Parcel 2 or any Offer Property by the Parcel 1 Owner pursuant to any of the provisions of this Section 3, the Owner of Parcel 2 shall convey to the Owner of Parcel 1 or its designee by its special warranty deed, good and indefeasible title to the real property purchased, subject only to (i) the easements, rights-of-way, covenants, agreements, restrictions, reservations, and other matters which affect Parcel 2, but excepting any monetary liens, and (ii) real estate taxes which are not delinquent. The purchase price shall be paid in cash by wire transfer of immediately available funds at the time of the closing.

# Exhibit C

d.      The covenants and agreements set forth in this Section 3 shall be covenants running with the land and shall be binding upon and inure to the benefit of the Owner of Parcel 1 and The Owner of Parcel 2 and their respective successors and assigns.

e.      It is hereby agreed by the Owner of Parcel 2 that irreparable harm will result to the parcel 1 Owner by reason of any breach of the agreements, covenants and restrictions set forth in this Section 3, and, therefore, the Owner of Parcel 1 shall be entitled to relief by way of injunction or specific performance to enforce the provisions of this section 3, as well as any other relief available at law or equity. The failure of the Owner of Parcel 1, in any one or more instances, to insist upon compliance with any of the terms and conditions of this Section 3, or to exercise any right or privilege conferred in this Section 3, shall not constitute or be construed as the waiver of such or any similar restriction, right, option, or privilege, but the same shall continue and remain in full force and effect as if no such forbearance had occurred.

f.      The provisions of this Section 3 shall be governed, construed, and enforced in accordance with the laws of the State of Texas. Exclusive venue for any judicial action shall be Harris County, Texas. If any covenant, condition, restriction or other provision of this Section 3 shall be unlawful, void or voidable for the violation of any rule of law, including, but not limited to, the rule against perpetuities, any law regarding unreasonable restraints on alienation or any similar rule of law, then such provision shall continue only until the date that is twenty-one (21) years after the death of the last survivor of the now-living lineal descendants of Elizabeth II, Queen of Great Britain.

g.      Notwithstanding anything to the contrary in this Section 3, in the event the Owner of Parcel 1 exercises its option to purchase the Offer Property pursuant to this Section 3, and said Owner thereafter defaults in its obligation to purchase Parcel 2 (pursuant to the terms of the corresponding purchase agreement), then upon such default the Right of First Refusal described in this Section 3 shall be automatically deemed null and void and of no further force and effect, and the Owner of Parcel 2 may thereafter file an affidavit or other instrument of record evidencing such termination.

4.      <u>Parcel 2 Access Easement</u>. REIT hereby declares and establishes a non-exclusive, perpetual easement over and across the access driveways, passages, aisles, sidewalks, curb cuts, and similar improvements located on Parcel 1 from time to time (collectively, the "***Parcel 1 Easement Area***") for the purpose of vehicular and pedestrian access, ingress and egress by the Owner of Parcel 2 and its respective Permittees to and from both Parcels and Westheimer Road (the "***Parcel 2 Access Easement***"). The Parcel 2 Access Easement shall be non-exclusive in all respects, and the Owner of Parcel 1 shall have the right to use the Parcel 1 Easement Area for any purposes which do not materially and unreasonably interfere with the use and enjoyment of the Parcel 2 Access Easement by the Owner of Parcel 2 and its Permittees. Nothing contained herein or in the Declaration shall be construed to give an Owner or its Permittees any right to park on the Parcel of any other Owner. For the sake of clarity, it is REIT's intent by this paragraph to grant Parcel 2 the same access easement rights to Westheimer Road over and upon Parcel 1 as currently exist for the benefit of Parcel 1 over and across Parcel 2 pursuant to Section 3 of the Declaration for access rights to Old Farm Road, resulting in such access easement rights being reciprocal across and between both Parcels. No fence, curb, other barrier or obstruction shall be constructed or allowed to remain on Parcel 1 that would unreasonably restrict the Parcel 1 Access Easement in such a way as to prevent the passage of pedestrian or vehicular traffic among and between the Parcels.

5.      <u>Maintenance</u>. The following is hereby added to the end of Section 6 of the Declaration:

# Exhibit C

"The Owner of Parcel 1 agrees to keep and maintain the driveways, curbs, gutters, and other surface improvements within the Parcel 1 Easement Area in good order and condition, including, without limitation: (i) keeping the surfaces of all such areas in a good, operable, and reasonably orderly condition; (ii) removing when reasonable and necessary debris from the surface of the Parcel 1 Easement Area; (iii) repairing, replacing, and renewing, as needed, any paving and concrete on the surface of the Parcel 1 Easement Area, including curbs, pans, gutters and landscaping, all in keeping with the quality of the development of the Parcels; (iv) maintaining any striping on the surface of the Parcel 1 Easement Area; and (v) maintaining the Parcel 1 Easement Area in compliance with applicable laws, ordinances, and regulations."

6.   <u>Miscellaneous</u>.

a.   <u>Ratification</u>.   Except as expressly modified by this Amendment, the terms, conditions and restrictions of the Declaration shall remain in full force and effect, and the Declaration, as herein amended, is ratified and confirmed in all other respects.

b.   <u>Conflict</u>. In the event of any conflict between the terms of the Declaration and this Amendment, the terms of this Amendment shall prevail.

c.   <u>Successors and Assigns</u>. The provisions of the Declaration, as amended by this Amendment, shall be binding upon and inure to the benefit of the parties hereto and all Owners and their permittees, as well as their respective successors and assigns.

*[Remainder of Page Left Blank; Signature Page Follows]*

# <u>Exhibit C</u>

      **EXECUTED** as of the date set forth in the acknowledgment below, to be effective as of the date first written above.

REIT:

**Texas REIT LLC,**
a Texas limited liability company

By: _____
Name: _____
Title: _____

| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF _____ | § |

      This instrument was acknowledged before me, the undersigned authority, on this _____ day of _____, 2024, by _____, as _____ of **Texas REIT LLC**, a Texas limited liability company, on behalf of said limited liability company.

[S E A L]             _____

                       Notary Public, State of Texas

4854-8852-5271, v. 6

Docusign Envelope ID: 3DD768FE-E729-4385-B2DB-5D62DB8977DE



## TEXAS REALTORS®

### WIRE FRAUD WARNING

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2018

## Buyers and Sellers Beware:
## Criminals are targeting real estate transactions.
## Don't be a victim of wire fraud.

**What is wire fraud and how does it occur?** Criminals are targeting real estate transactions by gaining access to electronic communications or sending emails that appear to be from a real estate agent, a title company, a lender, or another trusted source. These fraudulent emails seem legitimate and direct you to wire funds to a fraudulent account. Once you wire funds to the fraudulent account, your money is gone.

**How can you protect yourself from wire fraud?** You should not send personal information, such as bank account numbers or other financial information, via email or other unsecured electronic communication.

If you receive any electronic communication regarding wiring instructions, even if the communication appears to come from a legitimate source, you should verify the communication's authenticity prior to the transfer of funds in person or via phone call using a recognized phone number that is not found in the communication.

**Notice: This brokerage will never use any electronic communications, such as email, text messages, or social media messages, to ask you to wire funds or provide personal information.**

**If you think you are being targeted in a wire fraud scam, immediately notify law enforcement, your lender, the title company, and your agent.**

This form was provided by:

By signing below I acknowledge that I received, read, and understand this information and notice.

Shelly Walzel
Broker's Printed Name

☐ Seller ☑ Buyer                                    Date

By _Patrick Dumar_
Broker's Associate's Signature          Date

☑ Seller ☐ Buyer                                   Date

(TXR 2517) 2-1-18                                                              Page 1 of 1

Patrick Dumar

Docusign Envelope ID: 3DD768FE-E729-4385-B2DB-5D62DB8977DE



# Information About Brokerage Services

11-2-2015

*Texas law requires all real estate license holders to give the following information about brokerage services to prospective buyers, tenants, sellers and landlords.*

**TYPES OF REAL ESTATE LICENSE HOLDERS:**

- **A BROKER** is responsible for all brokerage activities, including acts performed by sales agents sponsored by the broker.
- **A SALES AGENT** must be sponsored by a broker and works with clients on behalf of the broker.

**A BROKER'S MINIMUM DUTIES REQUIRED BY LAW (A client is the person or party that the broker represents):**

- Put the interests of the client above all others, including the broker's own interests;
- Inform the client of any material information about the property or transaction received by the broker;
- Answer the client's questions and present any offer to or counter-offer from the client; and
- Treat all parties to a real estate transaction honestly and fairly.

**A LICENSE HOLDER CAN REPRESENT A PARTY IN A REAL ESTATE TRANSACTION:**

**AS AGENT FOR OWNER (SELLER/LANDLORD):** The broker becomes the property owner's agent through an agreement with the owner, usually in a written listing to sell or property management agreement. An owner's agent must perform the broker's minimum duties above and must inform the owner of any material information about the property or transaction known by the agent, including information disclosed to the agent or subagent by the buyer or buyer's agent.

**AS AGENT FOR BUYER/TENANT:** The broker becomes the buyer/tenant's agent by agreeing to represent the buyer, usually through a written representation agreement. A buyer's agent must perform the broker's minimum duties above and must inform the buyer of any material information about the property or transaction known by the agent, including information disclosed to the agent by the seller or seller's agent.

**AS AGENT FOR BOTH - INTERMEDIARY:** To act as an intermediary between the parties the broker must first obtain the written agreement of each party to the transaction. The written agreement must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. A broker who acts as an intermediary:

- Must treat all parties to the transaction impartially and fairly;
- May, with the parties' written consent, appoint a different license holder associated with the broker to each party (owner and buyer) to communicate with, provide opinions and advice to, and carry out the instructions of each party to the transaction.
- Must not, unless specifically authorized in writing to do so by the party, disclose:
  - that the owner will accept a price less than the written asking price;
  - that the buyer/tenant will pay a price greater than the price submitted in a written offer; and
  - any confidential information or any other information that a party specifically instructs the broker in writing not to disclose, unless required to do so by law.

**AS SUBAGENT:** A license holder acts as a subagent when aiding a buyer in a transaction without an agreement to represent the buyer. A subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first.

**TO AVOID DISPUTES, ALL AGREEMENTS BETWEEN YOU AND A BROKER SHOULD BE IN WRITING AND CLEARLY ESTABLISH:**

- The broker's duties and responsibilities to you, and your obligations under the representation agreement.
- Who will pay the broker for services provided to you, when payment will be made and how the payment will be calculated.

**LICENSE HOLDER CONTACT INFORMATION:** This notice is being provided for information purposes. It does not create an obligation for you to use the broker's services. Please acknowledge receipt of this notice below and retain a copy for your records.

| Walzel Properties | 9004621 | walzelproperties@gmail.com | (832) 674-4960 |
|---|---|---|---|
| Licensed Broker/Broker Firm Name or Primary Assumed Business Name | License No. | Email | Phone |
| Shelly Walzel | 0469868 | walzelproperties@gmail.com | (832) 674-4960 |
| Designated Broker of Firm | License No. | Email | Phone |
| Shelly Walzel | 0469868 | walzelproperties@gmail.com | (832) 674-4960 |
| Licensed Supervisor of Sales Agent/ Associate | License No. | Email | Phone |
| Patrick Dumar | 0730020 | patrick@walzelhtx.com | (281) 979-7290 |
| Sales Agent/Associate's Name | License No. | Email | Phone |

Buyer/Tenant/Seller/Landlord Initials        Date

**Regulated by the Texas Real Estate Commission**          Information available at www.trec.texas.gov

IABS 1-0
TAR 2501