# Exhibit 1

OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

1

1          IN THE UNITED STATES BANKRUPTCY COURT

2          FOR THE WESTERN DISTRICT OF TEXAS

3                    AUSTIN DIVISION

4

5    In re:                        Chapter 11

6    TEXAS REIT, LLC               Case No.

7    Debtor                        24-10120-smr

8

9

10

11               REMOTE DEPOSITION OF

12                    OMAR KHAWAJA

13

14

15

16               September 11, 2024
                     10:15 a.m.

17

18

19          5051 Westheimer, Suite 1200
                 Houston, Texas

20

21

22

23

24

25    Cheryl Madriaga, Shorthand Reporter



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

2

```
1                    APPEARANCES OF COUNSEL:

2

   On behalf of Debtor, Texas Reit, LLC:
3
       STEPHEN W. SATHER, ESQ.
4      BARRON & NEWBURGER, P.C.
       7320 N. Mopac Expy, Suite 400
5      Austin, TX 78731
       (512) 476-9103
6      ssather@bn-lawyers.com

7

   On behalf of Deponent, Omar Khawaja:
8
       MICHAEL BALLASES, ESQ.
9      HOOVER SLOVACEK, LLP
       5051 Westheimer, Suite 1200
10     Houston, Texas 77056
       (713) 977-8686
11     ballases@hooverslovacek.com

12

   On behalf of Dalio Holdings I and II, LLC:
13
       LORI A. HOOD, ESQ.
14     SHACKELFORD, MCKINLEY & NORTON, LLP
       717 Texas Avenue, 27th Floor
15     Houston, TX 77002
       (832) 669-6081
16     lhood@shackelford.law

17

   Also Present:
18
       Dwayne Mason, Esq., Greenberg Traurig, LLP -
19     prospective counsel for Dalio Holdings I and II, LLC

20     Ali Chouhdri, pro se - in his individual capacity

21     Gene McCubbin - assistant to Lori Hood

22     Tammy Luu - assistant to Ali Choudhri

23     Osama Abdullatif - noticed deponent

24     John Quinlan - noticed deponent

25
```

OMAR KHAWAJA                                September 11, 2024
TEXAS REIT LLC                                              3

1                    INDEX TO EXAMINATION

2    EXAMINATION                                    PAGE

3    Examination by Mr. Sather              6
     Examination by Ms. Hood               47
4    Examination by Ms. Hood               72
     Examination by Mr. Choudhri          126
5    Reporter's Certificate               229

6

7                    INDEX OF EXHIBITS

8    DEBTOR'S           DESCRIPTION              PAGE

9

     Exhibit 1     Proof of Claim               9
10
     Exhibit 2     Supplemental Notice of Lis   35
11                 Pendens for 8052 Westheimer

12   Exhibit 3     Supplemental Notice of Lis   37
                   Pendens for 8098 Westheimer
13
     Exhibit 4     Adversary Complaint - George Lee   38
14
     Exhibit 5     Debtor's Objection to Claim  44
15
     Exhibit 6     Motion for Leave to Withdraw 45
16                 Claim Number 9

17

18

19

20

21

22

23

24

25


ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

```
1              P R O C E E D I N G S

2         THE REPORTER:  We are on the record.  The date

3    is September 11th, 2024.  This begins the deposition

4    of Omar Khawaja.

5              My name is Cheryl Madriaga, representing

6    Esquire Deposition Solutions.

7              Will counsel please state their name on the

8    record and whom they represent?

9         MR. SATHER:  Stephen Sather --

10        MR. BALLASES:  Michael Ballases --

11        MR. SATHER:  -- attorney for --

12        MR. BALLASES:  -- (unintelligible) Khawaja --

13        THE REPORTER:  Sorry --

14        MR. BALLASES:  -- John Quinlan, and Osama

15   Abdullatif.

16        THE REPORTER:  Okay.  Sorry.  I just had two

17   people speaking at once.  Could I start with one

18   counsel, please?

19        MR. BALLASES:  Sure.  Michael Ballases,

20   counsel of record for the deponent, Omar Khawaja, also

21   John Quinlan, also Osama Abdullatif.

22        THE REPORTER:  Thank you.

23        MR. SATHER:  Stephen Sather --

24        MR. BALLASES:  You're welcome.

25        MR. SATHER:  -- for Texas REIT, LLC, the
```



1  debtor in this case.

2          MS. HOOD:  Lori Hood of Dalio Holdings, a

3  creditor in the case.

4          MR. CHOUDHRI:  Ali Choudhri, a creditor in the

5  case.

6          THE REPORTER:  Okay.  Is there anything else,

7  or are we ready to have me swear in the witness?

8          MR. BALLASES:  Now, there are other people on

9  the call.  They need to make an appearance.

10          MR. MASON:  This is Dwayne Mason, prospective

11  counsel for Dalio with Greenberg Traurig.

12          MR. MCCUBBIN:  Gene McCubbin, assistant to

13  Lori Hood.

14          MR. BALLASES:  Okay.  I'm going to object --

15  this is Michael Ballases.  I'm going to object to Lori

16  Hood, her assistant, Ali Choudhri, and Dwayne Mason

17  being present on the call.  They're not -- they don't

18  represent Texas REIT.  They're not parties, they don't

19  have standing, and they cannot participate.  And this

20  is not a creditors' meeting.  So I want that to be on

21  the record.

22          MR. SATHER:  All right.  Your objection is

23  noted.  Let's proceed.

24          THE REPORTER:  Okay.  And just before we go on

25  the record, I just ask that we please do our best not



1   to speak over one another.

2          Mr. Khawaja, please keep your voice nice and

3   loud, allow counsel to finish his completely before

4   you begin your answer, and all answers must be verbal.

5   Thank you.

6          MR. CHOUDHRI:  Just confirming, Madam Court

7   Reporter, we are on the record; right?

8          THE REPORTER:  Yes, we are.

9          MR. SATHER:  All right.

10         MR. CHOUDHRI:  Okay.

11         MR. SATHER:  If you would swear in the

12  witness, please.

13                     OMAR KHAWAJA,

14  having been first duly sworn, was examined and

15  testified as follows:

16                     EXAMINATION

17         MR. BALLASES:  Real quick before we get

18  started -- this is Michael Ballases -- I assume we

19  have an agreement to take this deposition by the

20  Federal Rules of Civil Procedure and also the Court's

21  limiting instruction.

22         MR. SATHER:  Yes.

23         MR. BALLASES:  Okay.

24  BY MR. SATHER:

25         Q.  All right.  Mr. Khawaja, have you ever given a



1  deposition before?

2      A.  I don't think so, no.

3      Q.  All right.  But are you familiar with the

4  process for taking a deposition, sir?

5      A.  Yes.  Yes, I am.

6      Q.  And do you understand that your testimony

7  today is under oath?

8      A.  Yes, I do.

9      Q.  And is there anyone present in the room with

10  you where you are giving your testimony?

11      A.  Yes, my attorney, Michael Ballases, and the

12  other two parties, Osama Abdullatif and John Quinlan.

13      Q.  All right.  And, Mr. Khawaja, do you

14  understand that you cannot confer with any of the

15  parties in the room with respect to your answers?

16      A.  Yes, I do.

17      Q.  Tell me what you do for a living.

18      A.  I'm an attorney.

19      Q.  And are you familiar with a company called

20  Texas REIT, LLC?

21      A.  Yes, I am.

22      Q.  And how are you familiar with Texas REIT, LLC?

23      A.  So an entity that Ali Choudhri owns.

24      Q.  Okay.

25      A.  Or controls.



1      Q.   And have you ever entered into a business

2  transaction with Texas REIT, LLC?

3      A.   No, I have not.

4      Q.   Do you claim to be an owner of Texas REIT,

5  LLC?

6      A.   No, I don't.

7      Q.   Have you ever filed a notice of lis pendens on

8  behalf of any party against Texas REIT, LLC?

9      A.   I may have, yes.

10     Q.   Okay.  And are you familiar with what a notice

11  of lis pendens is?

12     A.   Yes.

13     Q.   Are you familiar with Ali Choudhri, who is

14  present here today?

15     A.   Yes.

16     Q.   And how are you familiar with Mr. Choudhri?

17     A.   I have litigation against him.  He's defrauded

18  me.  He's defrauded people I know.  I represent people

19  against him.  And, you know, we're sitting here in

20  this case today, so I know him because I am a party in

21  this case.

22     Q.   All right.  Are you familiar with Jetall

23  Companies?

24     A.   Yes.

25     Q.   And how are you familiar with Jetall



1  Companies?

2      A.  It's an entity that Ali Choudhri controls or

3  owns, and I have judgments against them.

4          MR. SATHER:  All right.  I'm going to share my

5  screen and show Exhibit 1.

6          (Debtor's Exhibit No. 1 was marked for

7  identification.)

8      Q.  (BY MR. SATHER)  I have previously provided

9  this document to the court reporter and your counsel.

10         And so can you see Exhibit Number 1 on the

11 screen, sir?

12     A.  Yes, I do.

13         THE WITNESS:  Do you have a physical copy too,

14 Michael?

15     Q.  (BY MR. SATHER)  All right.  Now, are you

16 familiar -- are you aware that this is a proof of

17 claim filed with the United States Bankruptcy Court?

18     A.  Yes, I am.

19     Q.  And are you one of the claimants listed on

20 this proof of claim?

21     A.  I am.

22     Q.  And as I read the proof of claim, there are

23 three individuals who are listed as the current

24 creditor:  John Quinlan, Omar Khawaja, and Osama

25 Abdullatif.  What is the relationship between the



1    three individuals with respect to the proof of claim?

2        A.   They're just judgment orders.

3        Q.   Okay.  But do each of you assert the claim

4    jointly and severally, or do each of you have

5    different pieces of the claim?

6        A.   You know, jointly and severally.

7        Q.   All right.  Now, do you have an agreement

8    between the three of you as to how any monies received

9    on the claim will be divided?

10       A.   Not particularly.  I mean, you know, we don't

11   have a written agreement, from my understanding.

12       Q.   Okay.  Now, if I could go --

13           MR. BALLASES:  (Unintelligible) Ballases.  I'm

14   going to object.  You're violating -- you're being

15   harassing and oppressive and that you're violating the

16   Court's limiting instruction.

17           I'm going to give you a little bit of leeway

18   to get into all this just because it's background, but

19   the purpose of this deposition is for you to ascertain

20   why my clients filed the proof of claim and why they

21   now want to withdraw it.  And so I'll give you some

22   leeway, but I'm just letting you know.

23           MR. SATHER:  All right.  I disagree with that

24   contention.  I've listened to Judge Robinson's ruling.

25   I think it's broader.  But I'm going to continue on,



```
 1    and if we run into a problem, we may have to take that
 2    up with the Court.   But let me move on with my
 3    questions.
 4         Q.   (BY MR. SATHER)   Mr. Khawaja, did you sign the
 5    proof of claim?
 6         A.   I don't recall signing it.   I may have.   I
 7    don't know.
 8         Q.   Okay.   Did you authorize filing the proof of
 9    claim?
10         A.   Yes, I did.
11         Q.   Did you read the proof of claim before it was
12    filed?
13         A.   Yes.
14         Q.   What steps did you take to ensure that the
15    proof of claim was accurate?
16         A.   I read it.
17         Q.   All right.   Now, I'm going to go down to Box 7
18    on the claim, and that has a dollar amount.   Do you
19    see that?
20         A.   Yes.
21         Q.   And do you know how that number was
22    calculated?
23         A.   I don't recall.
24         Q.   Going to page 8 of 54, there is a summary of
25    damages.   Does that refresh your recollection as to
```



1  how the proof of claim numbers were calculated?

2       A.  Can you enlarge it just a little bit so I can

3  look at it carefully?

4       Q.  Sure I can.  It does depend on my ability to

5  work this.  Does that help?

6       A.  Yeah, that -- that helps.  Thank you.

7       Q.  And so do you know where -- and let me scroll

8  up here.

9       A.  Sure.

10      Q.  Do you know where these numbers came from?

11      A.  This appears to be numbers that my counsel

12  provided.

13      Q.  And for the record, who is your counsel who

14  provided the numbers?

15      A.  Michael Ballases with Hoover Slovacek.

16      Q.  And have you taken any steps personally to

17  verify that these amounts are correct?

18      A.  I mean, I looked at the judgments before we

19  filed them.

20      Q.  Anything else?

21      A.  That's it.

22      Q.  Now I'm going to go to Box 9 and -- now, on

23  this page, it asks:  Is any -- all or any part of the

24  claim secured?  And it's not checked, but I'd like to

25  go to a subsequent page.  It may be a prior page.



1    Excuse me.

2         Okay.  Here we go.  Looking at Box 9, do you

3    see where the box of, Is the claim secured, checked

4    "Yes."  Do you see that, sir?

5         A.  I do see that.

6         Q.  What is the basis for the claim being secured

7    according to the proof of claim?

8         A.  I mean, I'd have to ask my attorney.

9         Q.  Okay.  But it says -- and I believe this is

10   probably a typo, but it says "les pendens."  You think

11   that's a reference to filing of a notice of lis

12   pendens?

13        A.  It could be.

14        Q.  And is it your contention that filing a notice

15   of lis pendens creates an interest in property?

16        A.  It doesn't create -- it doesn't create an

17   interest in property.

18        Q.  All right.  What do you believe that it does?

19        A.  It secures a potential claim against property.

20        Q.  Okay.  Now, it's my understanding that the

21   proof of claim is based upon three separate judgments.

22   Is that your understanding?

23        A.  I think that's accurate.

24        Q.  Now, would you agree with me that none of

25   these judgments were taken against Texas REIT, LLC,



1    the debtor in this case?

2         A.  I believe that's correct.

3         Q.  Now, I'm going to go down and look at the

4    different judgments, and I'm going to ask you some

5    questions about them.  And actually I'm just going to

6    start with the summary here.

7              Number 1 is -- Judgment 1 is called the "Davy

8    and Heil Judgment."  Do you see that?

9         A.  I do.

10        Q.  And this appears to be -- actually, I am going

11   to go to the judgment.  I apologize.  This appears to

12   be a judgment in a case from the Court of Appeal

13   styled Jetall Companies, Inc., Appellant, versus

14   Richard Heil, Todd Oakum, and Renee Davy, formerly

15   known as Renee Davy, formally known as Renee Oakum.

16             Do you see that?

17        A.  I do.

18        Q.  Now, you were not a party to this judgment,

19   were you, sir?

20        A.  I was not.

21        Q.  And what is your connection to the judgment

22   that would give you the authority to submit a proof of

23   claim in this case?

24        A.  The judgment was assigned to me.

25        Q.  Okay.  And is that -- was that a written



1   assignment of judgment?

2       A.  Yes.

3       Q.  And I will represent to you that the

4   assignment of judgment is not part of the proof of

5   claim.  Do you know why that assignment was not

6   included?

7       A.  I don't know why.

8       Q.  And if we were to look at the assignment of

9   the judgment, would the assignee be just Omar Khawaja,

10  or would it be someone else?

11      A.  I believe my assignment would have my name on

12  it.  I'm not sure about the other assignments.

13      Q.  Okay.  So for this particular judgment, it was

14  assigned to you, Omar Khawaja?

15      A.  I don't have it in front of me.  It's possible

16  that Mr. Abdullatif and Mr. Quinlan's name are on the

17  assignment.

18      Q.  All right.  How much did you pay to have the

19  judgment assigned to you?

20      A.  I don't recall.

21      Q.  And did you pay anything to acquire the

22  judgment?

23      A.  Yes, I did.

24      Q.  Now, do you agree with me that this judgment

25  is against Jetall Companies and not Texas REIT?



1           MR. BALLASES:  Objection.  Form.

2      A.  This particular judgment is against Jetall;

3  that is correct.

4      Q.  (BY MR. SATHER)  All right.  And so do you

5  contend that Texas REIT, LLC, is liable for a judgment

6  against Jetall Companies, Inc.?

7      A.  Yes, I do.

8      Q.  And why do you contend that, sir?

9      A.  Because all of the entities that Mr. Choudhri

10 either controls or is involved in are essentially

11 shell companies for his own personal finances, so

12 any --

13     Q.  (Unintelligible)

14     A.  Any company are -- I'm sorry.  Would you like

15 me to continue, or --

16     Q.  Yes, please.

17     A.  -- do you want to --

18     Q.  I did not mean to cut you off.

19     A.  Sorry.  I was saying any entity that

20 Mr. Choudhri controls or owns is treated as if it is

21 his own personal asset with no respect for the

22 corporate form and, I believe, is responsible for --

23 one entity is responsible for the other entity's

24 conduct.

25     Q.  Now I'd like to scroll down to the second



1   judgment.  And this document says it's a judgment from

2   the 14th Court of Appeals in Jetall Companies, Inc.

3   Versus Hoover Slovacek, LLP.  Are you familiar with

4   this judgment?

5        A.  Yes, I am.

6        Q.  Is Hoover Slovacek the law firm that is

7   representing you today in connection with this

8   deposition?

9        A.  Yes, it is.

10           MR. BALLASES:  Objection.  Form.

11       Q.  (BY MR. SATHER)  You can answer.

12       A.  Yes.

13       Q.  What is your connection to -- your connection,

14  if any, to this judgment?

15       A.  I believe I acquired it.

16       Q.  Did you acquire it by way of a written

17  assignment?

18       A.  Yes.

19       Q.  And did you pay any consideration to Hoover

20  Slovacek to acquire their judgment?

21       A.  Yes.

22       Q.  And how much did you pay them to acquire this

23  judgment?

24       A.  I don't recall how much I paid.

25       Q.  And is it a regular part of your business to



1    purchase judgments?

2        A.  Yes, it is.

3        Q.  Now, I may have asked this already, in which

4    case I apologize, but do you have a written assignment

5    of judgment?

6        A.  Yes -- yes, I believe there is one.  I don't

7    have it in front of me.

8        Q.  Is there a reason that assignment was not

9    included with the proof of claim?

10       A.  I don't know.

11       Q.  And do you know whether the assignment would

12   have been in favor of you, John Quinlan, Osama

13   Abdullatif, or some combination of the three of you?

14       A.  I believe all three of us.  It was assigned to

15   all three of us on the same instrument.

16       Q.  Now, do you agree with me that this judgment

17   is against Jetall Companies and not Texas REIT, LLC?

18       A.  Yes.

19       Q.  And why do you contend that Texas REIT, LLC,

20   is liable for a judgment against Jetall Companies?

21       A.  Because Texas REIT, LLC, is an alter ego of

22   Jetall Companies, Inc.

23       Q.  Now I'm going to go to the third judgment.

24   And this is a judgment in a case -- well, first of

25   all, do you see the judgment that I have up on the



1  screen?

2      A.  I do.

3      Q.  And that appears to be a judgment in a case,

4  Osama Abdullatif, individually, and Abdullatif &

5  Company, LLC, versus Ali Choudhri and Houston Real

6  Estate Properties, LLC; is that correct?

7      A.  That's correct.

8      Q.  And do you have an interest in this judgment,

9  or is this just Mr. Abdullatif's judgment?

10     A.  This particular judgment is Mr. Abdullatif's

11  judgment.

12     Q.  All right.  So do you have any interest in

13  this judgment whatsoever?

14     A.  No, I do not.

15         MR. BALLASES:  Objection.  Form.

16     Q.  (BY MR. SATHER)  All right.  Do you assert an

17  interest in the judgment in Cause Number 2013-41273?

18     A.  No.

19         MR. BALLASES:  Objection.  Form.

20     Q.  (BY MR. SATHER)  Now, of the three judgments

21  we went through, you assert an interest in the first

22  two, but not the third; is that correct?

23         MR. BALLASES:  Objection.  Form.

24     A.  That's correct.

25     Q.  (BY MR. SATHER)  Now, continuing down in the



1  claim, there is a copy of an adversary proceeding that

2  was filed in the United States Bankruptcy Court for

3  the Southern District of Texas.  Are you familiar with

4  this adversary proceeding?

5      A.  Vaguely.

6      Q.  Okay.  And I see that you are named as one of

7  the movants in the adversary proceeding.  Do you see

8  that?

9      A.  Yes, I do.

10     Q.  Did you authorize the adversary proceeding to

11  be filed listing you as one of the participants?

12     A.  Yes, I did.

13     Q.  Did you read it before it was signed?

14     A.  Yes, I did.

15     Q.  Now, so what is your understanding of the role

16  that this adver -- or that this original complaint

17  plays with respect to the proof of claim that was

18  filed on your behalf?

19     A.  I mean, I'm not a bankruptcy attorney.  We're

20  doing whatever we need to do to try to collect our

21  judgment.

22     Q.  So you're an attorney; right?

23     A.  Yes.

24     Q.  And you -- when you represent clients, you

25  file pleadings on their behalf; correct?



1        A.    That's correct.

2        Q.    And -- but your clients need to understand

3    what you're filing for them, don't they?  Isn't that

4    part of the rules regarding filing lawsuits?

5        A.    Yes.

6        Q.    What steps did you take to familiarize

7    yourself with the allegations in this adversary

8    proceeding?

9        A.    I reviewed the judgments, and I reviewed the

10   complaint.

11       Q.    And after reviewing them, did you conclude

12   that the allegations were true and correct?

13       A.    Yes, I did.

14       Q.    Now I'm going to read you a statement in

15   paragraph 1 of the adversary proceeding, which says:

16            This lawsuit shall prove that Jetall

17            Companies, Inc., Arabella PH 3201, LLC,

18            9201 Memorial Drive, LLC, 2727 Kirby 26L,

19            LLC, Texas REIT, LLC, Dalio Holdings I,

20            LLC, Dalio Holdings II, LLC, Houston Real

21            Estate Properties, LLC, Shahnaz Choudhri,

22            Ali Choudhri, Shepherd-Huldy

23            Development I, LLC, Shepherd-Huldy

24            Development II, LLC, and Galleria Loop

25            Note Holder, LLC, (collectively the



1          Choudhri defendants) are alter egos of

2          each other and intentionally acting in a

3          manner to defraud creditors and evade

4          legal obligations through a series of

5          fraudulent transfers.  The evidence will

6          demonstrate that Ali Choudhri is the

7          puppeteer controlling his web of business

8          entities, which hold his various

9          properties and other assets.  This web

10          includes Houston Real Estate Properties,

11          LLC, and Jetall Companies, Inc., as well

12          as the other named defendants.

13   Did I read that correctly?

14        A.   Yes, you did.

15        Q.   Do you have an understanding of what it means

16   to say that one person or company is the alter ego of

17   another person or company?

18        A.   Yes.

19        Q.   And what is your understanding?

20        A.   That one entity pays the debts or obligations

21   of another.  They commingle funds, commingle assets.

22   One principal is taking actions on behalf of any of

23   the various alter egos at any given time with no

24   respect for the corporate form.  Yeah, that's my --

25   that's my understanding.



1    Q.  All right.  Now, is it your contention that

2    each of the 13 persons and companies named as

3    defendants is the alter ego of every other one of the

4    persons and companies named?

5    A.  That's what --

6        MR. BALLASES:  Objection.  Form.

7    A.  Yes.

8    Q.  (BY MR. SATHER)  So are you contending that

9    Texas REIT is the alter ego of Jetall Companies?

10       MR. BALLASES:  Objection.  Form.

11   A.  That's what it says.  Yes.

12   Q.  (BY MR. SATHER)  And are you alleging that

13   Texas REIT is the alter ego of Arabella PH 3201, LLC?

14   A.  Yes.

15       MR. BALLASES:  Objection.  Form.

16   Q.  (BY MR. SATHER)  Are you alleging that Texas

17   REIT is the alter ego of Dalio I Holdings (sic), LLC?

18       MR. BALLASES:  Objection.  Form.

19   A.  Yes.

20   Q.  (BY MR. SATHER)  And would your answers be the

21   same if I went through all of the rest of the names of

22   the defendants in this case?

23   A.  Yes, because Ali Choudhri controls all of

24   them.

25   Q.  All right.  And so are you alleging that Ali



1  Choudhri and Shahnaz Choudhri are alter egos of each

2  other?

3       A.  Yes.

4            MR. BALLASES:  Objection.  Form.

5       Q.  (BY MR. SATHER)  So are you -- it's your

6  contention that any company or entity in which Ali

7  Choudhri has an interest is an alter ego of Ali

8  Choudhri?

9            MR. BALLASES:  Objection.  Form.

10      A.  I don't know if there's any.  I mean, are

11  there entities that I don't know about?  I don't know.

12      Q.  (BY MR. SATHER)  Were you aware that there was

13  an amended complaint filed that names 17 defendants?

14      A.  I believe --

15           MR. BALLASES:  Objection.  Form.

16      A.  I believe so.

17      Q.  (BY MR. SATHER)  And is it your contention

18  that each of the 17 defendants is the alter ego of

19  each of the other 17 defendants?

20      A.   If that's what the petition says, yes, that's

21  my contention.

22      Q.  The complaint alleges that each of the claimed

23  alter egos were, quote (Reading:)  ...intentionally

24  acting in a manner to defraud creditors and evade

25  legal obligations through a series of fraudulent



1  transfers.

2        Did I read that right?

3     A.  Yes, you did.

4     Q.  So are you claiming that every one of these 13

5  or 17 persons and companies listed made fraudulent

6  transfers to each and every other one of the persons

7  and companies listed?

8     A.  Yes.

9     Q.  So, for example, are you claiming that Shahnaz

10  Choudhri made fraudulent transfers to 2727 Kirby 26L,

11  LLC?

12     A.  I don't know about that.

13     Q.  As we sit here today, do you know of any

14  fraudulent transfers that any of these defendants made

15  to Texas REIT, LLC, the debtor in this case?

16     A.  I don't.

17     Q.  And so with respect to that particular

18  allegation about making fraudulent transfers, you're

19  not aware of any involving the debtor in this case;

20  correct?

21     A.  I'm not aware of any sitting as -- as I'm

22  sitting here right now.  But any specific one?  No.

23     Q.  And what would you need to do --

24        THE WITNESS:  Oh, Mr. Sather, I'm sorry.  I

25  need to just take a quick restroom break if you don't



1  mind.

2          MR. SATHER:  All right --

3          MR. CHOUDHRI:  No.  No.  No.  Hold on.  Let's

4  finish this line of questioning.  Please ask your

5  question --

6          MR. SATHER:  Mr. Choudhri -- Mr. Choudhri,

7  it's my questions.  I decide whether we're going to

8  take a bathroom break or not.

9          I don't have a problem with taking a break,

10  but do not discuss your testimony with your attorney

11  while we're off the record.

12          THE WITNESS:  Not a problem.

13          MR. SATHER:  All right.  And so five minutes?

14          THE WITNESS:  Five minutes should be good.

15          MR. SATHER:  All right.  Madam Reporter, we

16  will be off the record for five minutes.

17          THE REPORTER:  Off the record.

18          (A recess was taken.)

19          THE REPORTER:  All right.  We are back on the

20  record.

21      Q.  (BY MR. SATHER)  And, Mr. Khawaja, I want to

22  follow up on something I asked you earlier.  When I

23  asked you how you knew Ali Choudhri, you said that he

24  defrauded you.  Can you tell me what transaction that

25  he defrauded you with regard to?



1          MR. BALLASES:  Objection.  Form.

2      A.  It was an apartment complex that my family

3  owned.

4      Q.  (BY MR. SATHER)  And was it you personally, or

5  was it your family?

6          MR. BALLASES:  I'm going to instruct the

7  witness not to answer.  He's here to answer the basis

8  for his proof of claim and why he wants to withdraw

9  it.  That's not a part of his claim.  It's not alleged

10  in any of the documents, and therefore, it's outside

11  the scope of the judge's limiting instruction.

12      Q.  (BY MR. SATHER)  Is this prior transaction --

13  have anything to do with this case?

14      A.  I'm sorry.  Can you repeat that question?

15      Q.  Yes.  Does the prior transaction where you say

16  Mr. Choudhri defrauded you or your family -- does that

17  have anything to do with the proof of claim against

18  Texas REIT?

19      A.  No.

20      Q.  Now, earlier I asked you about whether your

21  business involved purchasing judgments, and I also --

22  you also testified that you're an attorney.  Are those

23  separate businesses that you're involved in?

24      A.  No.

25      Q.  And so do you purchase judgments through your



1 law firm?

2     A. Yes.

3     Q. And about how many judgments have you

4 purchased in, say, the last five years?

5         MR. BALLASES: Objection. Form.

6     A. I don't know. I'm not sure, to be honest with

7 you.

8     Q. (BY MR. SATHER) More than ten?

9     A. No, probably not more than ten.

10     Q. And --

11         MR. BALLASES: Objection. Form.

12     Q. (BY MR. SATHER) -- have you -- do you

13 purchase judgments against anyone other than entities

14 related to Ali Choudhri?

15         MR. BALLASES: Objection. Form.

16     A. Not that I can recall.

17     Q. (BY MR. SATHER) All right. So when we talk

18 about your purchase of judgments, that -- at least as

19 you recall today, those relate to your dealings with

20 Ali Choudhri.

21     A. Yes.

22     Q. And how would you describe your relationship

23 with Mr. Choudhri?

24         MR. BALLASES: Objection. Form.

25     A. What do you -- what do you mean?



1      Q.  (BY MR. SATHER)  Is it cordial?  Unpleasant?

2  Adversarial?

3          MR. BALLASES:  Objection.  Form.

4      A.  He owes me money.  I mean, that's about it.

5      Q.  (BY MR. SATHER)  Going back to the adversary

6  proceeding that's part of the proof of claim, I'm

7  going to go to paragraph 22.  And it's kind of a long

8  paragraph, so I'm just going to read you some

9  sentences towards the end where it says, quote

10 (Reading:)  Choudhri views HREP, Jetall, and himself,

11 as well as the other named defendants, as one and the

12 same and utilizes them in such a fashion.  In other

13 words, there is unity between Choudhri, HREP, Jetall,

14 and his other business entities such that the

15 separateness of the business entities has ceased, and

16 thus this Court should treat the Choudhri defendants

17 accordingly to protect plaintiffs/the creditors.  And

18 this is where the lawsuit begins.

19          So did I read that correctly?

20     A.  Yes.

21     Q.  And so what is the basis for your statement

22 that Mr. Choudhri views all of the Choudhri defendants

23 as one and the same?

24          MR. BALLASES:  Objection.  Form.

25     A.  It's in the petition, Counsel.  All of the



1  bases that we have are listed out in very clear, you

2  know, language, just like you read.

3      Q.  (BY MR. SATHER)  Can you articulate what any

4  of those bases are?

5      A.  It's -- I mean --

6          MR. BALLASES:  Objection.  Form.

7      A.  -- do you want me to -- do you want me to

8  start reading the petition for you?  I'm happy to read

9  it for you, but it's in the petition.

10     Q.  (BY MR. SATHER)  I'm asking you -- I mean,

11 without reading the petition, do you know what the

12 basis for the allegations is?

13     A.  I mean the -- without reading the petition,

14 the purpose of the petition was to articulate the

15 basis of the petition.  So it's in the petition

16 itself.  I'm happy to read through the petition for

17 you if you'd like me to, but in -- in plain language,

18 he treats every entity that he controls or owns as a

19 personal piggy bank, just like the petition states.

20 And that's the basis of the alter ego claim that we're

21 making.

22     Q.  All right.  And so your allegation is also

23 that he views his mother as one and the same with

24 himself?

25         MR. BALLASES:  Objection.  Form.



1      A.  Yes.

2      Q.  (BY MR. SATHER)  Now, you obviously don't

3  contend that they're the same person; right?  You --

4  they are different human beings.

5          MR. BALLASES:  Objection.  Form.

6          (Crosstalk)

7      A.  Sorry.  Is that a -- was that -- do you really

8  want me to answer that question?  I'm not sure.

9      Q.  (BY MR. SATHER)  Yes, I do.  I wouldn't have

10  asked it if I --

11      A.  You mean like Norman Bates, that kind of thing

12  or -- is that what -- I'm sorry.  It's just a

13  stupid --

14      Q.  (BY MR. SATHER)  I just want you to

15  acknowledge that these are two different human beings,

16  sir.

17      A.  Yes, sir.  Yes, they're two different human

18  beings.

19      Q.  And so is it your contention that there's no

20  separateness between, say, Houston Real Estate

21  Properties, LLC, and Texas REIT, LLC?

22          MR. BALLASES:  Objection.  Form.

23      A.  Again, I'm gonna -- I'm gonna refer you back,

24  Mr. Sather, to the petition.  That's what the petition

25  states.



1     Q.  (BY MR. SATHER)  All right.  And you contend

2  that -- and you stand by the allegations in the

3  petition.

4     A.  Yes, sir.  I stand by each and every

5  allegation in the petition.

6          MR. BALLASES:  Objection.  Form.

7     Q.  (BY MR. SATHER)  And so is everything that you

8  know about this allegation of alter ego contained in

9  the petition?

10     A.  I mean, we don't -- I don't believe we

11  finished discovering the process, sir, so we're -- I'm

12  sure we're gonna get to learn a lot more about the

13  alter-ego basis on which Mr. Choudhri operates and the

14  other defendants.

15     Q.  And so did the petition set forth all of the

16  bases that you knew about at the time it was filed?

17     A.  In a good faith manner, yes.

18     Q.  All right.  What does that mean, "in a good

19  faith manner"?

20          MR. BALLASES:  Objection.  Form.

21     A.  To the best of our ability, right, on some --

22  on some evidence that we've been able to muster.

23     Q.  (BY MR. SATHER)  Did you intentionally omit

24  any bases for making an allegation of alter ego?

25     A.  No.



1      MR. BALLASES:  No, I instruct the client not

2   to answer, simply because you're invading attorney

3   work product, legal privileges.  What we decided to

4   put in or not in our petition is subject to work

5   product and privilege.  Don't invade our privilege,

6   please.

7      Q.  (BY MR. SATHER)  All right.  Do you know of

8   any evidence that you decided not to include in the

9   petition?

10      MR. BALLASES:  Same assertion of privilege.

11      Q.  (BY MR. SATHER)  You can answer, sir.

12      MR. BALLASES:  It's work product and

13   privilege.  I'm instructing him not to answer.  It's

14   invading a legal privilege that he enjoys.

15      THE REPORTER:  And I'm sorry.  Counsel, if I

16   could just get you to just speak up a little bit as

17   well.  You're just sounding a little bit muffled.

18      MR. BALLASES:  Yes, ma'am.

19      THE REPORTER:  Thank you.

20      Q.  (BY MR. SATHER)  I'd like to go to

21   paragraph 23 where it says (Reading:)  Plaintiffs are

22   upstanding, honest, and respectable businessmen, real

23   estate developers, attorneys, and/or a combination of

24   all.

25      Which of those categories do you fall into,

1  sir?

2      A.   (Reading:)  Plaintiffs are upstanding, honest,

3  respectable businessmen, attorneys --

4          A combination.

5      Q.   Okay.  A combination of what?

6      A.   Of all.

7      Q.   Okay.  So you're a businessman, real estate

8  developer, and attorney?

9      A.   But I'm also upstanding, honest, and

10  respectable.

11     Q.   Okay.  Now, was it upstanding, honest, and

12  respectable for you to sponsor Mr. Choudhri's ex-wife

13  to claim to still be married to him and file notices

14  of lis pendens against all of his properties?

15          MR. BALLASES:  I'm going to instruct the

16  client not to answer.  You are violating the Court's

17  limiting instruction as to this deposition, and the

18  purpose of this deposition is to find the basis for

19  the filing of the proof of claim and why we are

20  willing to withdraw it now.  I'll let you go on and

21  get past that, but I'm going to start putting stops to

22  it if this is the kind of stuff we're going to have.

23     Q.   (BY MR. SATHER)  Okay.  But it's your

24  contention that you are, in fact, an upstanding,

25  honest, and respectable businessman, real estate



1  developer, and attorney, sir.

2      A.  Yes --

3          MR. BALLASES:  Objection.  Form.

4          MR. SATHER:  Now, I'm going to move on to a

5  different exhibit, Exhibit Number 2, assuming I can

6  bring it up on the screen.

7          (Debtor's Exhibit No. 2 was marked for

8  identification.)

9      Q.  (BY MR. SATHER)  Actually, one thing I didn't

10 ask you, Mr. Khawaja:  How old of a man are you?

11     A.  46.

12     Q.  And are you licensed to practice law in the

13 state of Texas?

14     A.  Yes, I am.

15     Q.  And when were you licensed?

16         MR. BALLASES:  Objection.  Form.

17     A.  2010.

18     Q.  (BY MR. SATHER)  I've brought up on the screen

19 what we've marked as Exhibit 2, which is titled

20 "Supplemental Notice of Lis Pendens."  Are you

21 familiar with this document?

22         MR. BALLASES:  Mr. Sather, we don't have

23 copies of that.  Could you please e-mail that to

24 myself and Steve Leyh and any other exhibits you'd

25 like to use?



```
1           MR. SATHER:  Sure.  Those should've been
2   provided to you in a ShareFile yesterday.
3           MR. BALLASES:  Could you resend them?
4           MR. SATHER:  I will -- yes, I will resend
5   those --
6           MR. BALLASES:  Please send them to Steve and
7   myself.
8           MR. SATHER:  My computer is lagging just a
9   little bit, so it'll take a second for them to load.
10  But I had tried to provide these to you ahead of time
11  so we could avoid this.
12          Okay.  And as you can see from the screen
13  share, I have sent the e-mail to you.
14          THE WITNESS:  Michael, I think he's addressing
15  you on the e-mail.
16          MR. BALLASES:  That's fine.
17      Q.  (BY MR. SATHER)  Now, what we've marked as
18  Exhibit Number 2 is a supplemental notice of lis
19  pendens.  And I'm going to scroll down to the end of
20  it, and do you see the real property description
21  there?
22      A.  I do, yes.
23      Q.  And are you aware that that is real property
24  owned by Texas REIT, LLC?
25      A.  Yes.
```



1      Q.  And are you familiar with this notice of

2   lis pendens?

3      A.  I believe I looked at it before it was filed,

4   yes.

5      Q.  And it looks like it's filed by

6   Mr. Abdullatif, and he is one of the parties to the

7   proof of claim; correct?

8      A.  Yes.

9          MR. BALLASES:  Objection.  Form.

10     Q.  (BY MR. SATHER)  And did you approve of the

11  filing of this notice?

12     A.  I must have if it was filed.

13     Q.  And what's your understanding of the purpose

14  of this notice?

15     A.  To make sure that we secure any proceeds that

16  could potentially come to Ali Choudhri or his entities

17  that he owes to us.

18     Q.  And do you know why it was filed?

19     A.  For that reason.

20         MR. SATHER:  I'm going to show you another lis

21  pendens which we have marked as Exhibit Number 3.

22         (Debtor's Exhibit No. 3 was marked for

23  identification.)

24     Q.  (BY MR. SATHER)  And are you familiar with

25  this document?



ESQUIRE
DEPOSITION SOLUTIONS
800.211.DEPO (3376)
EsquireSolutions.com

1     A.  Exhibit Number 3.  Sorry.  Yes.

2     Q.  And I see this was signed by Osama Abdullatif

3  as well.

4     A.  Yes.

5     Q.  And would your questions be the same -- or

6  your answers be the same with regard to this notice of

7  lis pendens as with the prior one?

8     A.  Yes.

9     MR. SATHER:  I'm going to switch gears now and

10  go to Exhibit Number 4, which is an adversary

11  complaint filed by George Lee against Texas REIT, LLC,

12  and Ali Choudhri -- or at Exhibit 4.  Excuse me.

13     (Debtor's Exhibit No. 4 was marked for

14  identification.)

15     Q.  (BY MR. SATHER)  Do you know George Lee?

16     MR. BALLASES:  I'm going to object to this

17  line of questioning and instruct the witness not to

18  answer as it exceeds the scope of the limited

19  deposition the judge granted you.  This has nothing to

20  do with our proof of claim or adversary proceeding.

21     Q.  (BY MR. SATHER)  Are you going to take your

22  counsel's advice?

23     A.  I am.

24     Q.  So let me just ask you by way of background.

25  Do you know George Lee?

1    MR. BALLASES: Objection. Form. Same -- same

2  instruction.

3    Q.  (BY MR. SATHER) Are you refusing --

4    MR. CHOUDHRI: So (unintelligible) --

5    Q.  (BY MR. SATHER) -- to answer that you know

6  George Lee?

7    MR. BALLASES: Objection to form. Same

8  objection; this has nothing to do with our claim, and

9  you're exceeding the scope of the limited deposition

10  the judge granted.

11    A.  I'm taking my counsel's advice.

12    MR. CHOUDHRI: I just want to make sure the

13  record is clear. Are you instructing the witness not

14  to answer?

15    MR. SATHER: Mr. Choudhri, let me --

16    MR. BALLASES: Mr. Choudhri, please be quiet.

17  You're not a party involved in this. You have no

18  standing to be here.

19    MR. SATHER: He actually does under the

20  Court's ruling. But, Mr. Ballases --

21    MR. CHOUDHRI: Wait a second. Wait -- wait --

22  wait a second. I want to get this on the record.

23    Mr. Ballases, I am here, and I have a standing

24  to object. Okay? And so --

25    MR. BALLASES: (Unintelligible)



1        MR. CHOUDHRI:  -- I have a standing to be

2   here.  So are you telling me on the record that you

3   are not going to cooperate and allow me to ask

4   questions on a deposition that I've cross-noticed?

5        MR. BALLASES:  That is correct.  You have no

6   party -- you're not a party in this proceeding.  You

7   have no standing.  We've also objected to your

8   cross-notice, so you better bet your bottom dollar.

9        MR. CHOUDHRI:  Okay.  Besides betting my

10  bottom dollar, Mr. Ballases, you understand that the

11  Honorable Judge Robinson made a ruling --

12       MR. BALLASES:  You're wasting your time --

13       MR. CHOUDHRI:  -- and said that --

14       MR. BALLASES:  -- (unintelligible) with the

15  judge's ruling.  Why don't you let your counsel ask

16  questions.

17       MR. CHOUDHRI:  No, no.  I'm here representing

18  myself pro se as a creditor.  I have filed a proof of

19  claim.  I'm a creditor.  I have standing.

20       Are you saying on the record that you are

21  going to instruct your client not to answer any of my

22  questions?  I just want to get this on the record so

23  it's clear.  Are you instructing your client not to

24  answer any questions, and is your client going to take

25  your advice?



1       MR. BALLASES:  Yeah, so the way this

2   proceeding words, there's a court reporter who writes

3   down everything we say.  I've been clear in my speech

4   and what I say in my objections.  If you're confused,

5   you can ask the court reporter to read it back, or you

6   can just take better notes.  Be quiet, and let your

7   counsel ask questions.

8       MR. CHOUDHRI:  So just so the record is

9   crystal clear, Mr. Ballases, you are instructing your

10  client, Omar Khawaja, who is a deponent today, to not

11  answer any questions that I'm gonna have, and you're

12  also obstructing my ability to object or make any

13  objections in this deposition.  Is that all correct?

14  I just want to make sure the record is very crystal

15  clear.

16      MR. BALLASES:  Let Mr. Sather ask his

17  questions.  Please be quiet.

18      MR. CHOUDHRI:  Sir, I just want to clarify,

19  because I have a right to be here and object, and you

20  are --   .

21      MR. BALLASES:  Let --

22      MR. CHOUDHRI:  -- telling me to be quiet.

23      MR. BALLASES:  -- (unintelligible) questions.

24  So let your counsel ask questions.  You're wasting

25  everybody's time.



OMAR KHAWAJA
TEXAS REIT LLC

```
 1            MR. CHOUDHRI:  Okay.  Just so the record is
 2   clear, you are refusing to allow me to participate and
 3   object and ask questions in this deposition that I've
 4   cross-noticed; is that correct?  So we're clear, is
 5   that correct or not?
 6            MR. BALLASES:  You are not a party.  You do
 7   not --
 8            THE REPORTER:  I'm --
 9            MR. BALLASES:  Let me make it very clear for
10   you.  You are not a party to this dispute.  You are
11   not an attorney.  You lack standing.  This is not a
12   creditors' meeting.  We've objected to your
13   cross-notice.  Is that clear enough for you, buddy?
14            MR. CHOUDHRI:  Mr. Sather, please proceed.
15   We'll -- we'll deal with this on the record later and
16   deal with the Court.
17            And -- and as you know, Mr. Ballases, counsel
18   for Dalio is also on the line.  Are you also objecting
19   for them -- for Dalio's counsel to ask questions?  Is
20   that your --
21            MR. BALLASES:  Yeah.
22            MR. CHOUDHRI:  -- position?
23            MR. BALLASES:  Yeah.
24            MR. CHOUDHRI:  And you're gonna instruct your
25   client, Omar Khawaja, to not answer questions --
```



1    MR. BALLASES:  Mr. Choudhri, my point is you

2    like to play attorney, but you're not an attorney, and

3    you don't know the legal procedure or the rules or

4    regulations of court.  So please be quiet and let the

5    deposition proceed.  You're wasting everybody's time.

6    MR. CHOUDHRI:  Okay, Mr. Ballases.  You don't

7    have to be disrespectful.  I was -- you know, the

8    rules apply to all of us.  If I'm pro se or if -- or

9    if you're a lawyer, the rules apply equally.  And I

10   have to follow the rules, just like you have to follow

11   the rules.  And when a judge makes a ruling, it

12   applies, and it says what it says.  We all got to

13   honor it.  But you're refusing to honor the judge's

14   ruling.  I understand that.  You're refusing to honor

15   what --

16   MR. BALLASES:  (Unintelligible).

17   MR. CHOUDHRI:  -- Judge Robinson said on his

18   oral order.

19          THE REPORTER:  Sorry.  Just one person at a

20   time.

21          Mr. Ballases, I can hear you speaking in the

22   background, but I can't hear what you're saying while

23   Mr. Choudhri is speaking.

24          So just one person at a time if you'd like

25   this on the record, please.



1          MR. BALLASES:  Mr. Sather, please continue.

2          Q.  (BY MR. SATHER)  Mr. Khawaja, I have brought

3    back up Exhibit Number 1, the proof of claim.  When

4    you authorized the proof of claim to be filed, did you

5    understand that it was being filed under penalty of

6    perjury?

7          A.  Yes.

8          Q.  And as a lawyer, do you know what penalty of

9    perjury means?

10         A.  Yes.

11         MR. BALLASES:  Objection.  Form.

12         Q.  (BY MR. SATHER)  Now, what was your purpose in

13   filing the proof of claim?

14         A.  The purpose in filing the proof of claim?  I

15   mean, it's to collect monies that are owed to us.

16         Q.  Any other purpose?

17         A.  No, that's it.

18         Q.  Now, I'm going to show you Exhibit Number 5,

19   and I'm going to try to make it bigger.

20         (Debtor's Exhibit No. 5 was marked for

21   identification.)

22         Q.  (BY MR. SATHER)  Were you aware that Texas

23   REIT, LLC, filed an objection to the proof of claim?

24         A.  Yes.

25         Q.  And were you aware that you have not filed a



1  response to this objection to proof of claim?

2      A.  No.

3      Q.  And do you see that this was filed with

4  negative notice language?

5      A.  I'm not sure what that means, sir.

6      Q.  Okay.  Fair question.

7          Next, I'd like to show you what we've marked

8  as Exhibit Number 6, which is --

9      A.  Yes.

10     Q.  -- a motion for leave to withdraw Claim

11  Number 9.

12         (Debtor's Exhibit No. 6 was marked for

13  identification.)

14     Q.  (BY MR. SATHER)  Do you see that?

15     A.  Yes, sir, I do.

16     Q.  And what is your understanding of the reason

17  why you filed a -- well, let me ask you this:  Did you

18  authorize the motion for leave to withdraw Claim

19  Number 9?

20     A.  I did.

21     Q.  And why did you authorize the claim to be

22  withdrawn?

23     A.  It appears there's no money in Texas REIT,

24  LLC.

25     Q.  Any other reason?



1      A.  No, sir.  That's it.

2      Q.  And do you understand that the consequence of

3  withdrawing the claim means that you're not able to

4  assert a claim to any of the property in the Texas

5  REIT bankruptcy estate?

6          MR. BALLASES:  Objection.  Form.  You're going

7  beyond the scope of the limited purpose of this

8  deposition.

9          MR. SATHER:  I don't believe so.

10     Q.  (BY MR. SATHER)  Are you aware that Texas REIT

11  has objected to withdrawal of the proof of claim

12  unless it is withdrawn with prejudice?

13     A.  I wasn't aware of that, no.

14     Q.  All right.  Do you know what "with prejudice"

15  means?

16     A.  Yes, I do.

17     Q.  And you understand that if the claim is

18  withdrawn with prejudice, you can never make these

19  allegations against Texas REIT again.

20     A.  Yes, I understand that.

21          MR. SATHER:  All right.  At this point I will

22  pass the witness.  I know there are other counsel

23  present who wish to ask questions, and so I'm not

24  concluding the deposition.  I'm giving the other

25  parties present an opportunity to ask their questions.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

47

1      BY MS. HOOD:

2          Q.   Mr. Khawaja, my name is Lori Hood, and I

3      represent Dalio Holdings.  Nice to meet you.

4          MR. BALLASES:  Ms. Hood --

5          A.   Nice to meet you.

6          MR. BALLASES:  -- I'm going to go ahead and

7      just object.  I'm not going to let you ask questions.

8      You're not a party to this dispute, and you lack

9      standing to be here.  This isn't a creditors' meeting,

10     and so -- and of course, your notice was just filed

11     this morning, which we're going to object to.  So I'm

12     not going to let you ask questions.

13         MS. HOOD:  All right.  Mr. Ballases, my notice

14     was this morning because you failed to give notice to

15     all the creditors that this was taking place.

16         In my understanding -- and my client is a

17     creditor.  In my understanding of the judge's ruling,

18     it allows for creditors to be in attendance at this

19     deposition and to ask questions of your clients as to

20     the basis and motivation of their filing the proof of

21     claim.  We can argue all day long about whether you

22     agree with that or not.  If you don't allow me to take

23     questions -- ask questions today, then we're going to

24     have a do-over because we're going to go back to the

25     court and seek a motion to compel your client's



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
48

1       attendance at a deposition where I will ask my

2       questions.

3              MR. BALLASES:  So that's not the Court's

4       order.  The Court's order was to allow Mr. Sather to

5       take questions -- or to ask questions to determine the

6       basis to -- as to why we filed the proof of claim and

7       why it has been requested to be withdrawn.

8              It is not for creditors to ask questions.  The

9       creditors -- this isn't a creditors' meeting, and so

10      I'm not going to let you ask -- I mean, you can ask

11      him, but I'm going to instruct him not to answer

12      because I think you're violating the Court's ruling,

13      and I'm going to abide by the Court's ruling.

14             MS. HOOD:  So you're -- no matter what

15      question I ask him, you're going to tell him not to

16      answer me?

17             MR. BALLASES:  Yes, ma'am.

18             MS. HOOD:  Okay.  And that's --

19             MR. BALLASES:  You're violating the Court's

20      ruling, and I want to abide by it.

21             MS. HOOD:  All right.  So you want to abide by

22      the Court's ruling, and we have a difference of

23      opinion as to the impact and the breadth of the

24      Court's ruling.

25             I'm going to tell you I'm going to file a



1    motion to compel your client's attendance at a

2    deposition where I'm going to be allowed to ask

3    questions.  And when I do so, I'm going to ask for

4    compensation of my attorney's fees.  Do you understand

5    that?

6              MR. BALLASES:  I understand.

7              MS. HOOD:  All right.  And just to be clear on

8    the record, Madam Court Reporter, Mr. Ballases is

9    stating to me on the record that he's going to

10   instruct his client not to answer any of my questions

11   that I have prepared for today, all relating to the

12   filing of the proof of claim and the motivation for

13   filing the proof of claim and the motivation for

14   withdrawing the proof of claim, all of which go into

15   the merits of the judge's order.

16             And I'm objecting to Mr. Ballases' refusal to

17   allow me to take questions -- or ask questions of his

18   client and putting him on notice that I am going to

19   seek my attorney's fees as compensation for me having

20   to do a do-over with his client.

21             MR. BALLASES:  For the record -- so again,

22   this is Michael Ballases -- I believe Ms. Hood is

23   misinterpreting the judge's ruling.  She's not a party

24   to this -- her client is not a party to this dispute.

25   They lack standing.  This is not a creditors' meeting.



1  The basis of this deposition was for a limited purpose

2  to allow the debtor to inquire as to why we filed the

3  proof of claim and why we now want to withdraw it.  We

4  are abiding by the judge's ruling, and we will not

5  deviate from it.

6  　　　　MS. HOOD:  Mr. Ballases, please don't put

7  words in my mouth.  And just because, you know, we're

8  here taking a deposition doesn't mean you always have

9  to get the last word in.  We are in a disagreement

10  about your statements.  You're not going to allow --

11  you're going to instruct your client not to answer my

12  questions.  There's not much I can do about it if he's

13  going to sit here and not answer my questions.

14  　　　　I will go back to the Court and ask for him to

15  reappear and answer my questions related to the

16  subject of this deposition of which I represent a

17  creditor, and we are entitled to ask questions.

18  　　　　Your client's proof of claim has unnecessarily

19  complicated the underlying chapter proceeding and

20  gummed up a lot of other issues with regard to the

21  debtor's property, and even today they haven't

22  withdrawn their -- or released their lis pendens.  So

23  there's a lot to talk to him about with regard to the

24  filing of the proof of claim, the motivation, and

25  everything else.  And I've read the judge's

1  instructions on this issue, and I believe I'm

2  completely within my rights to ask these questions.

3          And you really don't have to answer, because I

4  don't need you to answer.  We're in a disagreement,

5  and I'm going to file the motion to compel.  So I

6  do --

7          MR. BALLASES:  (Unintelligible)

8          MS. HOOD:  I do not -- I do not pass the

9  witness.  I reserve my rights.

10          MR. CHOUDHRI:  And --

11          MR. BALLASES:  Thank you for telling me --

12          MR. CHOUDHRI:  -- I would like to make the

13  record -- I would also like to make the record very

14  clear.

15          So the record is clear, Mr. Khawaja, are you

16  taking your attorney's -- are you following your

17  attorney's instructions, and are you going to refuse

18  to answer any questions asked by Lori Hood or by my --

19  or any questions that I may ask you?

20          MR. BALLASES:  So no question's on the table,

21  Mr. Choudhri, so I think you're confused --

22          MR. CHOUDHRI:  Mr. Ballases -- Mr. Ballases,

23  please --

24          (Crosstalk)

25          THE REPORTER:  Sorry.  Just --



1        MR. CHOUDHRI:  Hang on a second.  I just

2   want --

3        THE REPORTER:  Sorry.  One at a time, please.

4   Thank you.

5        MR. CHOUDHRI:  I just want to make sure that,

6   Mr. Ballases, your client can affirm that he's taking

7   your instructions, and he's not going to answer any

8   questions, so we don't have to sit here and ask

9   questions if your instructions are going to be for him

10  to not answer any of my questions that I've properly

11  cross-noticed this deposition on pursuant to the

12  Court's order.  I just want to make sure the record is

13  clear that your client's not answering any questions

14  that I may ask.

15        MR. BALLASES:  For the record, the record is

16  clear.  I made the same objection that I made to

17  Ms. Hood as to you.  You are not a party.  You do not

18  have standing.  You're not an attorney.  This isn't a

19  creditors' meeting.  We are here to answer --

20        MR. CHOUDHRI:  Okay --

21        MR. BALLASES:  -- the debtor's questions about

22  the proof of claim --

23        MR. CHOUDHRI:  I'm --

24        MR. BALLASES:  -- and that's it.

25        MR. CHOUDHRI:  Okay.  We have the audio of the



1  order, oral ruling of Judge Robinson.  I would like to

2  play that at this point for the record.  So, please,

3  if we can play that for the record --

4          MR. BALLASES:  That's not --

5          (Crosstalk)

6          THE REPORTER:  I'm --

7          MR. CHOUDHRI:  Tammy or Gene, can y'all play

8  that?

9          THE REPORTER:  I'm sorry.  Sorry.  I have two

10  people speaking at once.  I can hear Mr. Ballases, and

11  I can hear Mr. Choudhri.  Could I please just get one

12  speaker on the record at a time.

13          MR. CHOUDHRI:  So I was speaking --

14          MR. BALLASES:  That's not --

15          MR. CHOUDHRI:  -- and --

16          (Crosstalk)

17          THE REPORTER:  Sorry.

18          MR. CHOUDHRI:  So the quote from the ruling

19  is -- and I'm quoting the judge (Reading:)  I'm going

20  to grant the motion as to the date and time of the

21  examinations, and my order is going to be very simple.

22  It's going to say that.  It's also going to further

23  order that the debtor and any creditor -- any other

24  creditor, for that matter, that cross-noticed this

25  deposition is permitted to take a deposition --



1         -- participate.  So I just want to be clear,

2   Mr. Ballases.  I want to give you one more chance so

3   we can conclude --

4              MR. BALLASES:  It's not unclear --

5              MR. CHOUDHRI:  -- and complete the deposition.

6         (Crosstalk)

7              MR. CHOUDHRI:  Can I finish?

8              MR. BALLASES:  You're being --

9              MR. CHOUDHRI:  Mr. --

10             MR. BALLASES:  You're being investigated

11  (unintelligible).  You're being investigated by the

12  Department of Justice.  You've been found by courts to

13  file lawsuits for improper purposes and harassment.

14  You're founded by courts and juries to have committed

15  fraud and libel, and you were just, on Monday, held by

16  Judge Norman to be a forger and a liar.  So anything

17  you say, I don't believe --

18             MS. HOOD:  How about if I -- how about if I

19  say it?

20         (Crosstalk)

21             THE REPORTER:  Sorry.  I'm sorry.  No --

22  sorry.  Sorry.  I need one person speaking at a time.

23  The record is not clear when I have multiple speakers.

24  Thank you.

25             MR. CHOUDHRI:  So let me just respond,



1   Mr. Ballases.  First of all, you are supporting

2   perjury.  Okay?  Mr. Ballases, your client has

3   solicited --

4           MR. BALLASES:  (Unintelligible)

5           MR. CHOUDHRI:  -- solicited people -- so,

6   please, all of this is all supported and solicited by

7   your client, and we'll get to the bottom of it --

8           MR. BALLASES:  (Unintelligible)

9           MR. CHOUDHRI:  -- which is why your client

10  doesn't want to answer questions.  I understand that.

11          THE WITNESS:  You'll be a great jailhouse

12  lawyer.

13          MR. CHOUDHRI:  This is proper --

14          THE REPORTER:  I'm sorry --

15          MR. BALLASES:  Can we start the next --

16          MR. CHOUDHRI:  Sorry?

17          MR. BALLASES:  -- deposition?  Can we start --

18          MR. CHOUDHRI:  Hold on.

19          MR. BALLASES:  -- the next deposition --

20          THE WITNESS:  You're going to be a great

21  lawyer --

22          MR. BALLASES:  -- if Mr. Sather doesn't have

23  any more questions?

24          THE WITNESS:  You'll be a great lawyer in

25  jail, man.



1         MR. CHOUDHRI:  Okay.  So -- so that's your

2  goal --

3         MR. BALLASES:  (Unintelligible)

4         MR. CHOUDHRI:  -- going around telling

5  people --

6         THE REPORTER:  I'm sorry --

7         MR. BALLASES:  -- let's jump to the next

8  witness --

9         MR. CHOUDHRI:  Please --

10         THE REPORTER:  I'm sorry.  Sorry.  Sorry.  I

11  am not getting Mr. Ballases' words on the record.

12         Mr. Ballases, if you have something to say, I

13  need just one speaker at a time.  I'm not getting

14  anything you're saying at this point.

15         MR. BALLASES:  Okay.  What I'm saying is --

16         MR. CHOUDHRI:  Please, Mr. Ballases, go ahead.

17         MR. BALLASES:  -- (unintelligible) remains the

18  same.  And if Mr. Sather has more questions, we're

19  happy to answer them.  If he doesn't, then let's go to

20  the next witness.

21         MR. CHOUDHRI:  No, no.  We're -- we're not --

22  we're not playing any games here.  Please play the

23  audio from the Court's ruling.  Let's do that right

24  now --

25         MR. BALLASES:  Okay (unintelligible) --



1          MR. CHOUDHRI:  -- so the record is crystal

2   clear.

3          THE WITNESS:  This is getting ridiculous.

4          MR. BALLASES:  I'm going to end the deposition

5   if Mr. Sather doesn't have any more questions, and we

6   can jump to --

7          MR. CHOUDHRI:  You can't end the deposition --

8          (Crosstalk)

9          MR. CHOUDHRI:  Unless all parties agree to go

10  off the record, we stay on the record.  That's the

11  rule, Mr. Ballases.  The rule applies to everyone.

12          Please play --

13          MR. BALLASES:  (Unintelligible)

14          MR. CHOUDHRI:  -- the audio --

15          (Crosstalk)

16          MR. CHOUDHRI:  Please play the audio --

17          MR. BALLASES:  I'm going to shut it down if

18  you don't take control of your client in the

19  deposition.  Your choice, Mr. Sather.

20          MR. CHOUDHRI:  I'm here as a creditor.  We're

21  going to play the audio --

22          MR. BALLASES:  (Unintelligible) Okay.

23          MR. CHOUDHRI:  Mr. --

24          MR. BALLASES:  We're going to -- we're all

25  ready to go forward with the next witness.  We're



 1   here, and we're ready to go forward.

 2           Mr. Sather, if you have more questions, let me

 3   know, and he will stay and answer them.

 4           MR. SATHER:  I am adjourning the deposition --

 5           MR. CHOUDHRI:  I have the floor.  I have the

 6   floor.  I'm a creditor.  I've cross-noticed this

 7   deposition.  Please play --

 8           MR. BALLASES:  (Unintelligible)

 9           MR. CHOUDHRI:  -- the oral ruling from the

10   Court right now.  Go ahead.

11           MR. BALLASES:  Mr. Sather --

12           (Crosstalk)

13           (Audio file played.)

14           THE REPORTER:  I'm sorry.  Sorry.  I -- I'm

15   sorry.  Mr. McCubbin, I cannot hear anybody when I

16   have multiple speakers at once.  I don't know if you

17   want this on the record, but it's going in as

18   crosstalk because it's not coming through clearly.

19           MR. CHOUDHRI:  Yes, Madam Court Reporter.

20           MR. BALLASES:  Mr. Sather --

21           MR. CHOUDHRI:  I have the floor.

22           MR. BALLASES:  -- (unintelligible) the

23   questioning --

24           MR. CHOUDHRI:  Please stop interrupting,

25   Mr. Ballases.



1          MR. BALLASES:  -- (unintelligible) not going

2    to the next witness.

3          MR. CHOUDHRI:  I am -- I am making the record.

4    Mr. Ballases, please let me speak, and please don't

5    interrupt me.  Okay?  Please --

6          MR. BALLASES:  Okay --

7          MR. CHOUDHRI:  -- play the audio ruling of

8    Judge Robinson --

9          MR. BALLASES:  We're going to --

10          MR. CHOUDHRI:  -- so it's clear on the record.

11   Go ahead.

12          (Audio file played.)

13          MR. CHOUDHRI:  No, we're -- we're --

14          (Audio file continues playing.)

15          MR. MCCUBBIN:  He just said any other

16   creditor (unintelligible) --

17          THE REPORTER:  I'm sorry, Mr. McCubbin.  You

18   just cut out for a second.

19          MR. MCCUBBIN:  He just said --

20          MR. CHOUDHRI:  Go and play that,

21   Mr. McCubbin --

22          MR. MCCUBBIN:  -- any other creditor --

23          MR. CHOUDHRI:  -- just so the record is clear.

24   Please go ahead --

25          MR. MCCUBBIN:  The judge just stated any other



1  creditor.  I can replay it.

2          MR. CHOUDHRI:  Please replay it for the record

3  so the record is crystal clear, and it's the judge --

4          So, Madam Court Reporter, so the record is

5  clear, we are about to begin playing the oral ruling

6  of Judge Robinson.

7          THE REPORTER:  Okay.  So are you wanting me to

8  transcribe --

9          MR. CHOUDHRI:  Yes.

10         THE REPORTER:  -- this audio into the record?

11         MR. CHOUDHRI:  Yes.  Yes, Madam Court

12  Reporter.  He's about -- we're about to play the

13  judge's ruling -- oral ruling on the record so that

14  way we can have a simple and clean completion of this

15  deposition and end this shenanigan and argument with

16  Mr. Ballases.

17         Please, Mr. -- please, sir, please proceed

18  with the record -- the audio ruling of Judge Robinson.

19  Go ahead.

20         (Audio file played.)

21         THE REPORTER:  I'm sorry.  Sorry --

22         (Audio file continues playing.)

23         THE REPORTER:  Sorry.  The audio is not clear.

24  The audio is not crystal clear.  I hear Mr. Sather

25  responding on the audio, and it's not clear.



1    Typically in a transcript, we do not

2  transcribe audio played.

3    MR. BALLASES:  And I'm going to object --

4    MR. CHOUDHRI:  Time out.

5    MR. BALLASES:  I'm objecting --

6    MR. CHOUDHRI:  We're going to e-mail you --

7  Court Reporter, we're going to e-mail you this audio

8  right now, and he's going to adjust the volume and

9  play it again.

10    Go ahead.  Play it again, please.

11    And, Court Reporter, let us know if you're

12  getting a clear --

13    MR. BALLASES:  Mr. Sather --

14    MR. CHOUDHRI:  -- read on it.  Okay?

15    MR. BALLASES:  -- take control of the depo.

16  This is a waste of time.  It's a waste of the client's

17  time --

18    MR. CHOUDHRI:  Mr. Ballases, please -- please

19  stop talking.

20    MR. BALLASES:  -- (unintelligible) control of

21  the deposition --

22    MR. CHOUDHRI:  I have the floor --

23    MR. SATHER:  You don't have it yet,

24  Mr. Choudhri.

25    (Crosstalk)



1      MR. BALLASES:  Let's just jump to the next

2  witness.  I'm not allowing the questions to be asked.

3  So it's not going to change.  We're just wasting

4  time --

5      MR. CHOUDHRI:  We're playing the oral ruling

6  of Judge Robinson.  Please, Mr. Ballases, be quiet so

7  we can play the ruling of Judge --

8      MR. BALLASES:  (Unintelligible)

9      MR. CHOUDHRI:  -- Judge Robinson's ruling.

10     MR. BALLASES:  (Unintelligible) we're not

11 going to play -- we're not -- that's not how

12 depositions work, Mr. Choudhri.  I'm sorry you like to

13 play an attorney --

14     MR. CHOUDHRI:  Well, please --

15     MR. BALLASES:  -- but that's not how this

16 works.  So either I'm going to --

17     MR. CHOUDHRI:  No.  No, no.  Please stop.

18     MR. BALLASES:  Again, I'm going to get off --

19 if you'd like to have another -- if you'd like to ask

20 questions of my other clients, I'm happy to do that,

21 and you're happy to ask questions, Mr. Sather.  But

22 these shenanigans are not --

23     MR. CHOUDHRI:  If your --

24     MR. BALLASES:  -- going to happen.

25     MR. CHOUDHRI:  -- responses, Mr. Ballases, is



1  gonna -- the shenanigans are yours, Mr. Ballases.  If

2  your responses are gonna be the same and you're not

3  going to allow cross-notice creditors who are here,

4  want to ask questions, then let's clarify this right

5  now so we can complete the deposition properly,

6  Mr. Ballases.  Please don't obstruct the discovery

7  right now.

8         Go ahead and play the oral ruling of Judge

9  Robinson.

10        MR. BALLASES:  I'm going to object --

11        (Audio file played.)

12        THE REPORTER:  I'm sorry.  I'm sorry.  I

13  cannot hear when Mr. Ballases is speaking --

14        MR. CHOUDHRI:  Mr. Ballases --

15        THE REPORTER:  I need one person --

16        MR. CHOUDHRI:  Mr. Ballases --

17        THE REPORTER:  -- at a time.

18        MR. CHOUDHRI:  -- intentionally --

19  Mr. Ballases intentionally interferes, interrupts when

20  we play the ruling of Judge Robinson that is gonna

21  clarify this issue that cross-notice creditors are not

22  allowed to participate and ask questions.

23        So please play the ruling of Judge Robinson.

24        And, Mr. Ballases, please refrain and be

25  quiet, because the court reporter cannot take



1   different people talking at the same time.

2            So please play the audio of Judge Robinson.

3            THE REPORTER:  Sorry --

4            MR. CHOUDHRI:  Go ahead.

5            THE REPORTER:  Sorry.  One second, please,

6   before you play it.

7            Mr. Sather, this is your deposition

8   transcript.  Normally if I can't hear, I can't

9   transcribe what's being said.  It would need to be

10  transcribed separately, because I'm not transcribing

11  this on the record right now if I cannot hear it

12  clearly.

13           MR. SATHER:  All right.  If you're unable to

14  hear it clearly, I suggest that we move on.  The judge

15  said what he said.  I do have one more question for --

16           MR. CHOUDHRI:  Hold on, Mr. Sather.  Just one

17  second, please, before we conclude anything here.  I

18  do want to take a break before we do conclude

19  anything, but I want to play this, and I think he can

20  do it a little bit louder.

21           Let's try if you can hear it again.  Ms. Court

22  Reporter, let's try one more time.

23           MR. BALLASES:  (Unintelligible)

24           MR. CHOUDHRI:  Go ahead.  Play the recording.

25           THE REPORTER:  I'm sorry.  Mr. Ballases --



OMAR KHAWAJA
TEXAS REIT LLC

1      MR. BALLASES:  The court reporter is saying

2  (unintelligible).

3      THE REPORTER:  I'm sorry.  Mr. Ballases, could

4  you please repeat that?

5      MR. BALLASES:  Sure.  I just was telling

6  Mr. Choudhri that you have instructed him you cannot

7  take it down in this manner, and so I'm just trying to

8  tell him that he's wasting more time.

9      Mr. Sather --

10      MR. CHOUDHRI:  Mr. Ballases, that's not what

11  she said.

12      MR. BALLASES:  -- if you want to go --

13      MR. CHOUDHRI:  Mr. Ballases, we're going to

14  try for her to hear it.  Okay?

15      MR. BALLASES:  Okay.  Call us when you're

16  ready --

17      MR. CHOUDHRI:  So she's being very cooperative

18  and polite.

19      Please, Mr. Ballases, be quiet.

20      Go ahead, Mr. -- sir.  Please play the -- play

21  the audio for the judge's ruling.

22      (Audio file played.)

23      MR. MCCUBBIN:  He said, And any other

24  creditor.

25      MR. CHOUDHRI:  Can you please --



1         MR. SATHER:  Madam Reporter --

2         MR. CHOUDHRI:  Please play the -- please play

3    the whole recording.

4         MR. MCCUBBIN:  The recording is starting --

5         MR. SATHER:  Okay.  Stop.  Stop.

6         Madam Reporter, were you able to get the last

7    excerpt?

8         MR. BALLASES:  Ms. Court Reporter, you told us

9    you couldn't take anything down in that manner.  It'd

10   have to be transcribed by the person who noticed the

11   deposition, Mr. Sather.  I assume you're going to

12   stick by what you stated earlier.

13        THE REPORTER:  Okay.  It's not crystal clear.

14   And because it's being played, I'm not sure where the

15   audio and where it is stopping.

16        MR. CHOUDHRI:  Well, let's take a five-,

17   ten-minute break.  Let's e-mail it to you, Madam Court

18   Reporter, and so we can be efficient, and that way we

19   don't have to interrupt the deposition and come back a

20   different day and go seek court intervention.  We can

21   save the Court's time and not bother the Court.

22        But if Mr. Ballases insists that we have to

23   bother the Court, then we'll seek emergency relief

24   from the Court.  But why don't we go ahead and e-mail

25   you right now.



1       And let's not allow anybody to bully anybody

2   here.  So, Mr. Ballases, please don't put words in her

3   mouth.

4       So let's go ahead and take -- because at this

5   point, this is -- I've cross-noticed the depo, and I

6   want the record to be clear.  If Mr. Ballases is going

7   to continue to not allow questions despite the order

8   by the judge being shown and heard for him -- so the

9   record is clear.  But we'll go ahead and take a --

10  let's go and take a ten-minute break.

11      Madam Court Reporter, we're going to e-mail

12  you the audio oral ruling of Judge Robinson so we can

13  have a smooth deposition and complete discovery, and

14  no one can obstruct this process.  Okay?  So can you

15  provide your e-mail address, Madam Court Reporter,

16  just so I have it?

17      MR. BALLASES:  Mr. Sather, are we moving on to

18  the next witness?

19      MR. SATHER:  Yeah, I don't think this is

20  productive.  Mr. Ballases has indicated that he is not

21  going to allow you to ask questions regardless of what

22  the Court ruled, and so it is my intent at this time

23  to adjourn the deposition subject to any future

24  rulings from Judge Robinson.  If Judge Robinson

25  allows --



1    MR. CHOUDHRI: Well --

2    MR. SATHER: -- the other parties to ask

3  questions, I may have -- I reserve the right to ask

4  follow-up questions.

5    MR. CHOUDHRI: So -- so I --

6    MR. BALLASES: Would you like to ask --

7    MR. CHOUDHRI: No, no. Hold --

8    MR. BALLASES: Would you like to proceed --

9    (Crosstalk)

10    THE REPORTER: I'm sorry. I can't --

11    MR. BALLASES: -- with Osama Abdullatif or

12  John Quinlan next?

13    THE REPORTER: Mr. Ballases -- sorry --

14    MR. CHOUDHRI: Hang on a second.

15    THE REPORTER: -- Mr. Ballases --

16    MR. CHOUDHRI: I have --

17    THE REPORTER: -- could you --

18    MR. CHOUDHRI: -- contacted the Court. I'll

19  be e-mailing the Court right now. We are not

20  suspending this deposition. I want to go ahead and

21  pause the deposition. We are going to contact the

22  Court. Okay?

23    Madam Court Reporter, would you give us your

24  e-mail address, please?

25    THE REPORTER: And I just want to note,



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

69

1   Mr. Ballases, I did not get anything you just said as

2   you were speaking at the same time as Mr. Choudhri.

3   So do you have anything to put on the record?

4         MR. BALLASES: Myself, me?

5         THE REPORTER: Yes. I did not get what you

6   were saying while -- after what Mr. Sather said.

7         MR. BALLASES: Sure. I just asked Mr. Sather

8   if we're ready to move to the next witness. I think

9   he indicated he was before Mr. Choudhri interrupted.

10   And so that's all I'm asking.

11         MR. CHOUDHRI: So --

12         MR. BALLASES: Do we want to move to the next

13   witness, Steve?

14         MR. CHOUDHRI: So this part is -- at this

15   moment, I'd like to e-mail the court reporter the

16   judge's oral ruling, and let's take a 15-minute break.

17   And I've already reached out to the Court. The Court

18   has asked for us to e-mail the Court for relief so we

19   can complete the deposition and not waste the Court's

20   time or disrupt the deposition and have to come back a

21   different day. Everybody's schedules are -- are very

22   important.

23         Mr. Ballases, in the event we are able to

24   resume or reschedule the deposition, can you provide

25   us dates?



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

70

1         MR. BALLASES:  Steve, can we move on?  Can you

2  control your client to any degree?  I mean --

3         MR. SATHER:  Mr. Choudhri --

4         MR. CHOUDHRI:  I'm not his client.

5         MR. SATHER:  -- is not my client in his

6  individual capacity, and therefore --

7         MR. BALLASES:  I understand he's a principal

8  of Texas REIT, the debtor.

9         MR. SATHER:  He's also asserting his right to

10  appear as a pro se creditor and that I do not have any

11  control over that capacity.  If he wishes to contact

12  the Court, that is his business.

13         MR. BALLASES:  I understand that, but you've

14  noticed the deposition.  Do we want to proceed with

15  the next witness?  I've got my --

16         MR. CHOUDHRI:  And we --

17         MR. BALLASES:  -- clients here.  We've

18  rearranged our schedules for you.  Do you want to take

19  the deposition or not?  It's up to you, Steve.

20         MR. SATHER:  I want to proceed --

21         MR. CHOUDHRI:  We are resuming.  We are

22  pausing the deposition, and we're going to have a

23  conversation, and we'll come back in 15 minutes on the

24  record.

25         But in the meantime, Court Reporter, can I



```
 1   have your e-mail address so we can e-mail you the

 2   audio ruling of the judge?  And I think that'll solve

 3   any issues and resolve the -- the objection or

 4   position that Mr. Ballases is taking that the judge

 5   said something the judge didn't say, so it's clear.

 6   If I can get your e-mail address, we can e-mail you

 7   the audio right now, and we can resume.

 8         Let's -- let's resume the deposition at noon.

 9   It's 11:40 right now.

10         THE REPORTER:  Okay.  May I go off the record,

11   please?  If we're pausing?

12         MR. CHOUDHRI:  Please.

13         MR. SATHER:  Yes, you may.  Yes.

14         MR. BALLASES:  Yes, you can go off the record.

15         THE REPORTER:  Okay.  So I am off the record.

16   (Discussion held off the record.)

17   (A recess was taken.)

18         THE REPORTER:  Back on the record.

19         MR. BALLASES:  So this is Michael Ballases,

20   counsel for John Quinlan, Omar Khawaja, and Osama

21   Abdullatif.  There is no written order, but I did

22   listen to the recording, and it appears he did say

23   "creditors."  And so I was mistaken, and so I will

24   allow creditors to ask questions, however, in the

25   limited capacity that he stated in the oral hearing.
```



1   So we can go forth with Mr. Khawaja.

2           Ms. Hood, if you want to ask questions, go for

3   it.

4           MS. HOOD:  Thanks.  Okay.  Steve, I may use

5   your exhibits, so if you can have those by the --

6           MR. SATHER:  I'm happy to --

7           MS. HOOD:  -- by the ready for me, I

8   appreciate it.

9           MR. SATHER:  -- put them up on the screen if

10  you need them.

11          MS. HOOD:  Thank you.

12  BY MS. HOOD:

13      Q.  Mr. Khawaja, my name is Lori Hood.  We've

14  never met before; correct?

15      A.  That's correct.

16      Q.  And I understand that you are an attorney

17  licensed in the state of Texas; correct?

18      A.  That's also correct.

19          MR. BALLASES:  Objection.  Form.

20      Q.  (BY MS. HOOD)  And do you practice law?

21      A.  Yes, ma'am.

22          MR. BALLASES:  Objection.  Form.

23      Q.  (BY MS. HOOD)  And do you have -- where do you

24  practice law?

25          MR. BALLASES:  Objection --



```
1        A.   At my own law firm.

2        Q.   (BY MS. HOOD)   And what is the name of that

3   law firm?

4        A.   The Law Offices of -- and my name.

5        Q.   And where is that?   Where are your offices

6   located?

7             MR. BALLASES:  Objection.  Form.

8        A.   On Richmond and Sage.

9             MS. HOOD:  If you'll -- thanks, Steve.  Can

10  you scroll down, Steve?

11            MR. SATHER:  Certainly.

12       Q.   (BY MS. HOOD)   In the proof -- if I understand

13  your testimony correctly, you stated that your proof

14  of claim is based upon some judgments that you had

15  assigned to you by virtue of purchasing those

16  judgments from third parties; is that correct?

17            MR. BALLASES:  Objection.  Form.

18       A.   Yes.

19            MS. HOOD:  Mr. Ballases, what is the basis of

20  your objection?

21            MR. BALLASES:  Asked and answered.  We've gone

22  through all this.

23            MS. HOOD:  And I understand that,

24  Mr. Ballases, but you were objecting quite frequently

25  to Mr. Sather's questions, and I just want to make
```



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
74

1  sure that the record is clear with regard to what your

2  objection is.  I didn't know what your objection was

3  during his questioning, and so I'm just trying to make

4  sure that if the question needs to be rephrased or has

5  come out at a different angle, that the question is

6  clear to your client and that we're not going to deal

7  with objections in the transcript later on.  Is that

8  fair?

9          MR. BALLASES:  I'm going to make my objections

10 according to the rules.  You can respond how you think

11 appropriate pursuant to the rules.

12         MS. HOOD:  Okay.  I appreciate that.

13         Oops.  What's that?  No, take that down.

14         MR. SATHER:  Sorry.

15     Q.  (BY MS. HOOD)  All right.  So -- okay.  So

16 this proof of claim is your individual proof of claim;

17 is that correct?

18     A.  My individual proof of claim?  It looks like

19 my name is on there as well as Mr. Quinlan's and

20 Mr. Abdullatif's.

21     Q.  Right.  But this isn't a proof of claim you

22 filed on behalf of your law office; correct?

23     A.  Oh, yeah.  Yeah, that's filed on my behalf,

24 correct.  Mm-hmm.

25     Q.  And if I understand your testimony, the value



1  of the property that is included in Section 9 consists

2  of the total of the three judgments that form the

3  basis of your proof of claim; correct?

4       A.  That's right.

5       Q.  And you've used these three judgments as the

6  basis for filing an adversary action in the Southern

7  District but also attached the adversary action to

8  your proof of claim; is that correct?

9       A.  That sounds correct.

10      Q.  Okay.  So if I can drill down, we've got --

11 the basis for your proof of claim was, one, three

12 judgments and, two, an adversary action; is that

13 correct?

14      A.  That sounds correct.

15      Q.  All right.  And the basis of the adversary

16 action were the three judgments; is that correct?

17           MR. BALLASES:  Objection.  Form.

18      A.  Sorry.  Can you repeat the question?

19      Q.  (BY MS. HOOD)  Yeah.  The basis of your

20 adversary action is the three judgments that you claim

21 you're unable to collect; is that correct?

22      A.  That's correct.

23           MR. BALLASES:  I'm going to object to form.

24           MS. HOOD:  And what is the basis of your

25 objection?



1       MR. BALLASES:  I think it's vague and

2    ambiguous and misstates the evidence.  I mean, the

3    petition or the complaint speaks for itself.

4       MS. HOOD:  So last time I checked, documents

5    don't talk.  So let me correct my question just to

6    make it clear.

7       Q.  (BY MS. HOOD)  Mr. Khawaja, in your adversary

8    action which is attached to your proof of claim, you

9    reference three judgments; is that correct?

10      A.  Yes.

11      Q.  And you testified earlier, when Mr. Sather was

12   asking you questions, that the reason you brought the

13   adversary action was your inability to collect on

14   those judgments and that somehow all of these related

15   entities are alter egos of Mr. Choudhri; correct?

16      A.  Yes.

17      Q.  Okay.  Let me drill down on the judgments.

18      You state that you're an assignee of two of

19   these judgments; is that correct?

20      A.  That's correct.

21      MR. BALLASES:  Objection.  Form.

22      MS. HOOD:  All right.  What is the basis of

23   your objection?

24      MR. BALLASES:  Asked and answered.  This has

25   been already discussed and answered clearly by



```
 1    Mr. Sather.

 2            MS. HOOD:  Okay.  I disagree --

 3            MR. BALLASES:  You're just rehashing --

 4            MS. HOOD:  -- but -- okay.  Let me finish.

 5        Q.  (BY MS. HOOD)  You have --

 6            MS. HOOD:  Steve, can you go to the basis of

 7    the damages that were attached?  And thank you for

 8    being my paralegal.  I appreciate it.

 9        Q.  (BY MS. HOOD)  All right.  So Judgment

10    Number 1, you have an assigned interest in; correct?

11        A.  Yes.

12            MR. BALLASES:  Objection.  Form.

13        Q.  (BY MS. HOOD)  Before you purchased your

14    assignment, did you do any due diligence on the

15    underlying pleadings in the case?

16            MR. BALLASES:  Objection.  Form.

17        A.  Yes.

18        Q.  (BY MS. HOOD)  And because you did underlying

19    due diligence in the case, you understand that nowhere

20    in that case is there any allegation of fraudulent

21    transfer; correct?

22        A.  In which case?

23        Q.  Judgment Number 1, Davy versus Heil.

24        A.  I mean, I didn't get into the facts of that

25    case.  There's a final judgment, I purchased it, and
```



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

78

1  it was assigned to me.  Why do I care what happened in

2  that case?

3     Q.  Okay.  Well, I just asked you if you looked at

4  the underlying pleadings in the case, and you said

5  yes.  So now your testimony is that you did not look

6  at the underlying pleadings.

7     A.  I mean, I skimmed through them.

8     Q.  And as you were skimming through them, did you

9  understand that there was no cause of action for

10 fraudulent transfers?

11    A.  I don't recall.

12    Q.  Have you read the judgment?

13    A.  Yes, I have.

14    Q.  And did you read it before you purchased it?

15    A.  Yes, I did.

16    Q.  And do you understand that nowhere in that

17 judgment is there a finding of fraudulent transfers?

18    A.  Okay.  If you say so.

19    Q.  Well, no, I'm asking you if you've read it and

20 if you understand that.

21       MR. BALLASES:  Objection.  Form.

22    A.  I mean, if there isn't, I'm gonna take your

23 word for it and say there isn't.

24    Q.  (BY MS. HOOD)  Okay.  Well, take my word for

25 it.  There isn't.



1          Did you purchase this judgment at a discount?

2          MR. BALLASES:  Objection.  Form.

3     A.   I don't recall.

4          MS. HOOD:  What's the basis for your

5     objection?

6          MR. BALLASES:  Lacking relevance.  The purpose

7     of the deposition is to understand why the proof of

8     claim was filed and why it is now being withdrawn.

9          MS. HOOD:  All right.  Well, I think --

10         (Crosstalk)

11         MR. BALLASES:  (Unintelligible) an underlying

12    matter in the Southern District.

13         MS. HOOD:  All right.  I disagree with your

14    analysis, but we can argue that another day.

15    Q.   (BY MS. HOOD)  So you don't recall how much

16    you purchased the judgment for.

17    A.   Correct.

18    Q.   And you are one of three assignees of this

19    judgment; correct?

20    A.   That's correct.

21         MR. BALLASES:  Objection.  Form.

22    Q.   (BY MS. HOOD)  Before you purchased the

23    judgment, did you have an agreement with the other two

24    claimants, Mr. Quinlan and Mr. Abdullatif, as to why

25    you were purchasing the judgment?



OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                       80

1          MR. BALLASES:  Objection.  Form.

2      A.  Did I have an agreement as to why we were

3  purchasing the judgment?  I mean, the purpose of

4  purchasing the judgment is to collect on a judgment,

5  so that was the agreement.

6      Q.  (BY MS. HOOD)  So you sat down with the other

7  two gentlemen, and the three of you decided to

8  purchase this judgment together.

9      A.  I don't recall if we sat down together

10  anywhere and had that -- a sit-down discussion about

11  what was gonna happen.  I think maybe that did.

12      Q.  Maybe it did, or maybe it didn't?

13      A.  Yeah.  Maybe it was a phone call; maybe it was

14  a sit-down meeting.

15      Q.  When did you --

16          MR. BALLASES:  And just for the record --

17      Q.  (BY MS. HOOD)  Can you tell us when the

18  judgment --

19          MR. BALLASES:  Just so that I have --

20          THE REPORTER:  I'm sorry.  I'm sorry.

21          MS. HOOD:  Sorry.

22          THE REPORTER:  I hear somebody else speaking.

23          MR. BALLASES:  Sure.  I just -- I wanted to

24  caution Ms. Hood.

25          You're getting real close to attorney-client



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
81

1  privilege and/or work product legal privilege.  So I

2  don't think you're there yet, but you're close, so I

3  just wanted to warn you to keep that in mind.

4      Q.  (BY MS. HOOD)  Sure.  And, Mr. Khawaja, please

5  understand that I don't want to know what you talked

6  about with your lawyers, okay, ever, or what your

7  lawyers have discussed with you regarding their

8  strategy.  Okay?  So if you feel like·you have to

9  reveal that kind of information in response to my

10 question, I don't want to know that stuff.  Okay?

11     And certainly you understand as a lawyer that

12 you have the right to discuss this kind of response

13 with your lawyer prior to answering; right?

14     A.  Yes.

15     Q.  Can you tell us when you -- when you purchased

16 the judgment?

17     A.  Sometime before this proof of claim was filed.

18 I don't recall exactly when, no.

19     Q.  Do you recall the year?

20     A.  I think it was --

21     MR. BALLASES:  Objection.  Form.

22     A.  I think it was 2023.

23     Q.  (BY MS. HOOD)  And how did it come about that

24 this judgment came across your desk to be purchased?

25     MR. BALLASES:  Objection.  Form.



800.211.DEPO (3376)
EsquireSolutions.com

OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
82

1      Q.   (BY MS. HOOD)  You can answer.

2      A.   I mean, that's -- that's privileged

3    information that I'm not gonna discuss.

4           MR. BALLASES:  I'll go ahead and assert the

5    attorney work product, attorney-client privilege.  I'm

6    going to instruct him not to answer.

7      Q.   (BY MS. HOOD)  How do you typically learn of

8    judgments that are available for you to purchase?

9      A.   I would say typically it is something that's

10   brought to my attention by a third party.

11     Q.   And which third party brought this particular

12   judgment to your attention?

13          MR. BALLASES:  Objection.  Form.  Assertion of

14   attorney-client and work product legal privileges.

15   Instruct client not to answer.

16     Q.   (BY MS. HOOD)  Did Mr. Abdullatif bring this

17   judgment to your attention?

18          MR. BALLASES:  Same assertion of privilege,

19   same instruction to the client not to answer.  It

20   violates attorney-client and attorney work product.

21     Q.   (BY MS. HOOD)  Mr. Khawaja, do you have any

22   sort of agreement with Mr. Abdullatif or Mr. Quinlan

23   regarding a joint prosecution of this proof of claim?

24     A.   We do.

25     Q.   And is that in writing?



```
1            MR. BALLASES:  Also joint litigation
2    privilege, I'll assert.
3            Q.  (BY MS. HOOD)  Okay.
4            A.  I'm not gonna answer.
5            Q.  Is your -- is your agreement in writing?
6            MR. BALLASES:  Instruct client not to answer.
7    He doesn't need to give work product, attorney-client,
8    or joint litigation privilege information away.
9            Q.  (BY MS. HOOD)  Back to my question.
10   Mr. Khawaja, do you have an agreement in writing with
11   Mr. Abdullatif and Mr. Quinlan with regard to pursuing
12   this proof of claim?
13           MR. BALLASES:  I'm going object again to the
14   question and assert the legal privileges of
15   attorney-client, work product, also joint litigation
16   privilege and instruct the client not to answer.
17           Q.  (BY MS. HOOD)  Mr. Khawaja, are you adhering
18   to your -- to your counsel's instruction?
19           A.  I am.
20           Q.  And refusing to answer my question?
21           A.  On advice of counsel, yes.
22           Q.  With regard to this particular Davy-Heil
23   judgment, do you know Mr. Heil?
24           A.  I don't.
25           Q.  Do you know Mr. Oakum?
```



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
84

1      A.  I don't.

2      Q.  Do you know Renee Davy?

3      A.  Not personally.

4      Q.  Not personally?  How else would you know her?

5      A.  I've seen videos of her online.

6      Q.  Doing what?

7      A.  Stating that Mr. Choudhri's a fraud and a

8  thief and shouldn't be trusted.

9      Q.  Have you ever spoken to her?

10     A.  I have not.

11     Q.  When you purchased this judgment, who did you

12  pay?

13          MR. BALLASES:  Objection.  Form.

14          I'm going to also -- it's harassing and

15  oppressive.  I'm also going to assert the

16  attorney-client, attorney work product, and joint

17  litigation privilege and instruct the client not to

18  answer.

19     Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

20  follow your attorney's instruction and not answer my

21  question?

22     A.  I am.

23     Q.  When you guys purchased your assignment of

24  this judgment, the Davy-Heil judgment, did you each

25  provide separate payment, or did it come from one



1   source?

2        MR. BALLASES:  I'm going to assert the same

3   objection and the same assertions of legal privilege

4   and instruct the client not to answer, as I did to the

5   question before.

6        Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

7   follow your counsel's instruction and refuse to answer

8   my question?

9        A.  I am.

10       Q.  Mr. Khawaja, when you purchased your interest

11  in this judgment, did you purchase it via wire

12  transfer or a check?  Cash?  How did you purchase it?

13       MR. BALLASES:  I'm going to assert the same

14  legal objections and the same assertions of legal

15  privilege and instruct client not to answer, as I did

16  with the previous question.

17       Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

18  adhere to your client's (sic) instruction and refuse

19  to answer my question?

20       A.  My counsel's.  Yes, I am.

21       Q.  Mr. Khawaja, do you know a gentleman by the

22  name of Wayne Dolcefino?

23       A.  I've seen him online.

24       Q.  And was it one of Mr. Dolcefino's videos in

25  which Ms. Davy appeared?



1        A.   I think so, yes.

2             MR. BALLASES:   Objection.   Form.

3        Q.   (BY MS. HOOD)   Have you ever met

4   Mr. Dolcefino?

5        A.   I've met him, yes.

6             MR. BALLASES:   Objection --

7        Q.   (BY MS. HOOD)   In connection with any of your

8   cases related to Mr. Choudhri?

9        A.   No.

10            MR. BALLASES:   Objection.   Form.

11       Q.   (BY MS. HOOD)   With regard to this Judgment

12  Number 1 that was assigned to you, how much of -- how

13  much do you own of this judgment?

14            THE WITNESS:   I think that goes to the

15  privilege again.

16            MR. BALLASES:   I'm going to object to the

17  question as being oppressive and harassing and assert

18  the attorney-client, attorney work product, and joint

19  litigation privilege and instruct him not to answer.

20       Q.   (BY MS. HOOD)   Mr. Khawaja, are you going to

21  adhere to your lawyer's instruction not to answer my

22  question?

23       A.   I am.

24       Q.   As you sit here today, you're not going to

25  tell me how much of this $501,513.85 judgment that you



1   own.

2           MR. BALLASES:   Objection.  Form.

3       A.  On advice of counsel, I will not answer that

4   question.

5       Q.  (BY MS. HOOD)  And you testified that you

6   purchased this judgment sometime last year; correct?

7           MR. BALLASES:   Objection.  Form.

8       A.  I believe so, yes.

9       Q.  (BY MS. HOOD)  Okay.  And what have you done

10  to try and collect this judgment?

11      A.  Well, we filed --

12          MR. BALLASES:   Objection.  Form.

13      A.  -- in Bankruptcy Court or, I guess, in our

14  proof of claims.  And I think -- I think that's it at

15  this stage.

16      Q.  (BY MS. HOOD)  Have you filed any

17  post-judgment discovery in the underlying lawsuit in

18  the 152nd?

19      A.  I don't -- I don't -- I'm not aware of that.

20      Q.  Have you hired a lawyer to pursue

21  post-judgment discovery or collection of this

22  judgment?

23      A.  The only lawyer I've hired is Mr. Ballases.

24      Q.  And you're certainly not aware of Mr. Ballases

25  doing anything to try to collect this judgment outside



1    of the bankruptcy action; correct?

2            MR. BALLASES:  Objection.  Form.

3        Q.  (BY MS. HOOD)  You can answer.

4        A.  I'm not aware.

5        Q.  As an attorney in the state of Texas,

6    certainly you're aware of the fact that, as a judgment

7    creditor, you have the right to pursue post-judgment

8    collection efforts within the confines of the Court

9    that issued the judgment; correct?

10       A.  Sure.

11       Q.  And you've chosen not to avail yourselves of

12   those opportunities; correct?

13           MR. BALLASES:  I'm going to go ahead and

14   object to the question as misleading, also oppressive

15   and harassing, and assert attorney-client, attorney

16   work product, and joint litigation privilege.

17           What we do for collection, you do not get to

18   ask about to aid Mr. Choudhri and Jetall and his

19   companies to hide assets any further.  So we're not

20   going to answer that.

21           MS. HOOD:  All right.  I object to any

22   commentary about me helping anybody do anything.  All

23   right?  I'm here representing a creditor, and I'm

24   trying to determine the basis for the filing of this

25   proof of claim.  And part of that issue is any attempt

1  by the judgment creditor to collect the judgment

2  outside of filing a proof of claim in a bankruptcy

3  action, that has nothing to do with the underlying

4  judgment.

5      Q.  (BY MS. HOOD)  Mr. Khawaja, do you personally

6  know of any action taken in the public forum by you to

7  collect this judgment outside of this bankruptcy

8  action?

9      A.  I'm not aware of any.

10         MR. BALLASES:  I'm further going to instruct

11  you:  Don't answer any more questions regarding what

12  we've done to collect because that gets into attorney

13  work product, also attorney-client, and joint

14  litigation privilege.

15         THE WITNESS:  I understand.

16         MS. HOOD:  And certainly, Mr. Ballases, I

17  appreciate the nuances and everything else.  And

18  again, I don't want to know anything about your

19  strategy or anything else.  That's why I asked for

20  public record, because I can't find anything in the

21  public record that shows any attempt to try to collect

22  this judgment.  And so I'm just trying to clarify and

23  get commentary and testimony from your client

24  confirming that.

25         MR. BALLASES:  I appreciate that, but we don't



1    need to get into anything that could aid your client

2    or the principal who owns your client to hide assets

3    any further.

4         MS. HOOD:   I'm going to object to the sidebar

5    commentary there.

6         Q.   (BY MS. HOOD)   The judgment that you bought,

7    the judgment debtor is Jetall Companies, Inc.;

8    correct?

9         A.   Correct.

10        Q.   Certainly that judgment does not include my

11   client as a judgment debtor; correct?

12        A.   Yeah, it's not -- does not include?  Correct.

13        Q.   It certainly doesn't include Mrs. Choudhri as

14   a judgment debtor; correct?

15        A.   It does not include them as a judgment debtor,

16   correct.

17        Q.   It doesn't include Texas REIT as a judgment

18   debtor either; right?

19        A.   Correct.

20        Q.   On Judgment Number 2, I think you testified

21   that you don't own any part of that judgment; correct?

22        A.   Judgment Number 2, I believe I do own part of

23   it.

24        Q.   The Abdullatif judgment?

25        A.   Okay.  No, I do not.  Sorry.

1      Q.  Okay.  Are you aware of the fact that that

2  judgment has been bonded around?

3      A.  I'm not aware of --

4          MR. BALLASES:  Objection.  Form.

5      A.  I'm not aware of that.

6      Q.  (BY MS. HOOD)  And when you filed the proof of

7  claim that included Judgment Number 2, did you do any

8  due diligence on that judgment in order to satisfy

9  yourself that that judgment was not bonded around?

10         MR. BALLASES:  Objection.  Form.

11     A.  I -- minimally, not -- minimally.

12     Q.  (BY MS. HOOD)  What do you mean "minimally"?

13     A.  Meaning it was a final judgment, and that's

14  how I -- that was what I understood it to be.

15     Q.  Certainly as a lawyer in the state of Texas,

16  you understand that when a judgment is superceded,

17  that that stays any collection activities; correct?

18         MR. BALLASES:  I'm going to object to the

19  question as misleading and harassing and oppressive.

20     Q.  (BY MS. HOOD)  You can answer --

21     A.  I'm not aware of that --

22     Q.  You're not aware of that?

23     A.  I'm not aware of that being -- I'm not aware

24  of the judgment being superceded.

25     Q.  And did you take any independent actions to



1   determine whether or not this judgment, which is on

2   appeal, had been superceded?

3       A.   No.

4       Q.   Judgment Number 3, this HSLLP judgment.

5       A.   Yes.

6       Q.   All right.  That judgment, when did you

7   purchase that judgment?

8       A.   I think 2023, if I recall correctly.

9       Q.   And how did you become aware that that

10  judgment was available to purchase?

11          MR. BALLASES:  Objection.  Form.  Harassing

12  and oppressive.  I'm also going to assert

13  attorney-client, attorney work product, and joint

14  litigation privilege and instruct the client not to

15  answer.

16      Q.   (BY MS. HOOD)  Mr. Khawaja, are you going to

17  adhere to your client's -- excuse me -- to your

18  lawyer's instructions?

19      A.   I am.

20      Q.   And if I understand your testimony, you are

21  one of three owners also of this judgment; is that

22  correct?

23          MR. BALLASES:  Objection.  Form.

24      A.   That's correct.

25      Q.   (BY MS. HOOD)  And can you tell me how you



1  paid for the purchase of this judgment?

2       MR. BALLASES:  I'm going to object to the

3  question again as harassing and oppressive, assert the

4  attorney-client legal privilege, the work product

5  legal privilege, and the joint litigation legal

6  privilege and instruct the client not to answer.

7       Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

8  adhere to your lawyer's instruction?

9       A.  Yes.

10      Q.  Mr. Khawaja, can you tell me whether you paid

11  for -- excuse me.  Strike that.

12       Can you tell me who you paid when you

13  purchased this assignment of this judgment?

14       MR. BALLASES:  I'm going to assert the same

15  objection I just levied to the prior question as well

16  as the same assertion of legal privileges to the prior

17  question and instruct the client not to answer, just

18  like the prior question.

19      Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

20  adhere to your lawyer's instruction and not answer my

21  question as to who you paid for the purchase of this

22  judgment?

23      A.  I am.

24      Q.  I see that this judgment -- the judgment

25  creditor is Hoover Slovacek; correct?



1       A.   That appears correct.

2       Q.   And that's the same law firm that is

3    representing you here today; correct?

4       A.   That's correct.

5            MR. BALLASES:   Objection.   Form.

6       Q.   (BY MS. HOOD)   Do you have any joint defense

7    agreements with Hoover Slovacek?

8            MR. BALLASES:   Objection.   Form.   I think --

9    well, objection.   Form.

10      A.   I'm not aware.

11      Q.   (BY MS. HOOD)   Do you have any prosecution

12   agreements with Hoover Slovacek?

13           MR. BALLASES:   Objection.   Form.

14      A.   I'm not aware of any.

15      Q.   (BY MS. HOOD)   At the time that you purchased

16   this judgment, were you represented by Hoover

17   Slovacek?

18           MR. BALLASES:   Objection.   Form.

19      A.   At the time I purchased the judgment, I was

20   represented by nobody.

21      Q.   (BY MS. HOOD)   So you were representing

22   yourself?

23      A.   Correct.

24      Q.   Who drafted the assignments?

25           MR. BALLASES:   Objection.   Form.

1        A.   I think that's a privileged answer.

2             MR. BALLASES:  Also assert the same legal

3    privileges we asserted in the previous questions,

4    which would be attorney-client, attorney work product,

5    and joint litigation and instruct the client not to

6    answer.

7        Q.   (BY MS. HOOD)  Mr. Khawaja, are you going to

8    adhere to your lawyer's instructions and not answer my

9    question?

10       A.   Yes.

11       Q.   When you purchased the assignment of this

12   judgment and the other two also purchased their

13   portion of the judgment, was it all done at one time?

14            MR. BALLASES:  Objection.  Form.

15            I'm also going to assert the same legal

16   privileges and instruct the client not to answer, as I

17   did with the previous question.

18       Q.   (BY MS. HOOD)  Mr. Khawaja, are you going to

19   adhere to your client's instruction and not answer my

20   question as to the timing of the purchase of the

21   assignment by the three of you?

22       A.   Yes.

23       Q.   Did you purchase the assignment of this

24   judgment from Mr. Abdullatif?

25            MR. BALLASES:  Objection.  Form.  Same



1   objections, same assertions of legal privilege, same

2   instruction not to answer based on those legal

3   privileges as the question before.

4        Q.  (BY MS. HOOD)  Are you going to follow your

5   lawyer's instruction and not answer my question as to

6   who you purchased the assignment from?

7        A.  Yes.

8        Q.  When you purchased the assignment and you were

9   representing yourself, what lawyers did you deal with

10  for the other purchasers?

11       MR. BALLASES:  Objection.  Form.  I'm also

12  going to assert the same attorney work product and

13  attorney -- joint litigation legal privilege and

14  instruct the client not to answer.

15       Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to

16  adhere to your lawyer's instructions and not answer my

17  questions?

18       A.  Yes.

19       Q.  Okay.  When you purchased your assignment, was

20  Mr. Abdullatif represented by counsel?

21       MR. BALLASES:  Objection.  Form.

22       Asserting the same legal privileges as the

23  previous question and instructing client not to answer

24  as I did with the previous question.

25       Q.  (BY MS. HOOD)  Mr. Khawaja, are you going to



1    adhere to your client's instruction -- or to your

2    lawyer's instruction and not answer my question as to

3    whether or not Mr. Abdullatif had a lawyer at the time

4    of the purchase?

5        A.  Yes.

6        Q.  At the time you purchased your assignment of

7    this judgment, was Mr. Quinlan represented by counsel?

8            MR. BALLASES:  Objection.  Form.

9            I'm also going to assert the same legal

10   privileges as I did before and instruct the client not

11   to answer.

12       Q.  (BY MS. HOOD)  Mr. Khawaja, are you adhering

13   to your counsel's instructions and not answering my

14   question as to whether or not Mr. Quinlan was

15   represented by counsel at the time of the assignment

16   of the judgment?

17       A.  Yes.

18       Q.  Does your assignment include just your

19   signature, or is it an assignment that includes the

20   other purchasers' signatures?

21           MR. BALLASES:  I'm going to object to the

22   question -- object to the form of the question.

23   Excuse me.

24       A.  I don't -- I don't recall.

25       Q.  (BY MS. HOOD)  Do you have a physical copy, or



1    do you have the original of this assignment?

2        A.  I believe I do somewhere, not with me today.

3    I'm sure it was provided to me.

4        Q.  The copy or the original?

5        A.  The copy.

6        Q.  Do you know who holds the original of the

7    assignment?

8        A.  I don't.

9        Q.  Because you don't know who holds the original

10   of the assignment, you can't tell us whether or not

11   the assignment has been paid; correct?

12           MR. BALLASES:  Objection.  Form.

13           I'm going to assert the attorney-client and

14   attorney work product and attorney joint -- or excuse

15   me -- joint litigation privilege and instruct the

16   client not to answer.

17       A.  I'm going to follow advice of counsel.

18       Q.  (BY MS. HOOD)  And as you sit here today, you

19   can't tell us who holds the original of this

20   assignment.

21       A.  I can't.

22           MR. BALLASES:  Objection.  Form.

23       Q.  (BY MS. HOOD)  You can't?

24       A.  I cannot.

25           MR. BALLASES:  Objection.  Form.



1      Q.  (BY MS. HOOD)  Can you tell me why you didn't

2  include a copy of the assignment with your proof of

3  claim?

4          MR. BALLASES:  Objection.  Form.

5          Just -- and I'm -- and I apologize because I

6  know I'm not supposed to talk right now, but it's

7  attached to the actual complaint in the Southern

8  District, so you can pull it up.  It's public record.

9          MR. CHOUDHRI:  Mr. Ballases, please stop

10  coaching the witness.

11          MR. BALLASES:  Be quiet.

12          MR. CHOUDHRI:  I'm sorry.  Mr. Khawaja, did

13  you say something?

14          MS. HOOD:  Okay --

15          MR. BALLASES:  No, I told you to be quiet.

16  This is Mr. Ballases.

17          MS. HOOD:  Okay.  This is my time.  Okay?  You

18  guys can bicker and do your little boy thing when I'm

19  not talking.

20      Q.  (BY MS. HOOD)  So if I understand correctly,

21  this adversary action, which is based upon two

22  judgments that you claim to have an assignment in, was

23  originally filed in the Southern District of Texas; is

24  that correct?

25      A.  That's correct.

1      Q. And then you took that adversary and used it

2 as -- as an exhibit to your proof of claim that you

3 then filed in this action; correct?

4      A. That's correct.

5      Q. And if I understand your testimony, along with

6 this adversary action, you filed lis pendens against

7 the debtor's property in this action; correct?

8      A. That's correct.

9      Q. And if I remember the lis pendens, you did not

10 sign that lis pendens; correct?

11      A. Correct.

12      Q. Did Mr. Abdullatif have your permission to

13 sign that lis pendens that was filed against the

14 debtor's property in this action?

15      A. Yes.

16      Q. And when did you give him permission to file

17 that lis pendens?

18      A. I'm not sure. I'm assuming sometime before it

19 was filed.

20      Q. Was it done prior to the time that you brought

21 the adversary action in the Southern District of

22 Texas?

23      A. I don't know.

24      MS. HOOD: Steve, my trustee paralegal, can

25 you bring up the first lis pendens, the supplemental



1  lis pendens, which I think is Exhibit -- yeah --

2  Exhibit 2, yeah.  Can you go down to the signature

3  page?

4          MR. SATHER:  Yes.

5      Q.  (BY MS. HOOD)  All right.  So Exhibit 2 is the

6  supplemental lis pendens that you authorized

7  Mr. Abdullatif to file against the debtor's property

8  in this action; correct?

9      A.  That's correct.

10      Q.  All right.  And the date of that says

11  August 22nd, 2023.  Do you agree with me?

12      A.  Yes.

13      Q.  Okay.  And would it be fair to say that you

14  gave Mr. Abdullatif your authority to sign on your

15  behalf somewhere around August 22nd, 2023?

16      A.  It could've been before that, but it sounds

17  correct.

18      Q.  Did you have a conversation with

19  Mr. Abdullatif about the filing of the lis pendens?

20          MR. BALLASES:  I'm going to object to the

21  question.  I'm also going to assert the

22  attorney-client, attorney work product, and joint

23  litigation privilege and instruct the client not to

24  answer.

25      A.  On advice of counsel, I'm not answering any



1  questions regarding my conversations with

2  Mr. Abdullatif or Mr. Quinlan.

3       Q.   (BY MS. HOOD)  Did you prov -- the authority

4  that you provided to Mr. Abdullatif for you -- for him

5  to sign on your behalf this lis pendens, was that

6  given verbally or in writing?

7            MR. BALLASES:  Objection.  Form.

8            Same assertion of legal privilege, same

9  instruction not to answer.

10      Q.   (BY MS. HOOD)  Mr. Khawaja, are you going to

11 adhere to your client's (sic) instructions and not

12 answer my question about how you gave permission to

13 Mr. Abdullatif --

14      A.   Yes, I am.

15           MS. HOOD:  Steve, can you bring up the --

16 Exhibit Number 3?

17      Q.   (BY MS. HOOD)  Exhibit Number 3 is the second

18 supplemental lis pendens that was filed also on the

19 debtor's property, and it looks to me that that also

20 is dated August 22nd, 2023.  Is that accurate?

21      A.   That looks accurate.

22      Q.   All right.  And is it fair to say that you

23 again gave Mr. Abdullatif permission or authorized him

24 to sign on your behalf somewhere around August 22nd of

25 2023?



1    A.  Or prior to that, yes.

2    Q.  Certainly you didn't give him permission to

3  file it before you actually were an owner in the

4  judgment; correct?

5    A.  That's correct.

6    Q.  And again, just to summarize your testimony,

7  you think you recall purchasing your assignment in

8  this judgment sometime in 2023; correct?

9    A.  That's correct.

10    Q.  So we've got somewhere between January and

11  August 22nd that you purchased your interest in this

12  judgment; correct?

13    A.  That sounds right.

14    MR. BALLASES:  Ms. Hood, I don't mean to

15  derail your testimony, but if you look at the

16  complaint itself, it says when he obtained the

17  assignment.  It's February 17th, 2023.  You can read

18  it for yourself.  It's Exhibit 1.

19    MS. HOOD:  So I appreciate that, Mr. Ballases.

20  I'm trying to get your client's testimony on these

21  issues, not what's in a document that you wrote.  I

22  want his testimony, but I appreciate it.  He said he

23  couldn't recall, and that's fine with me.

24    Q.  (BY MS. HOOD)  On this judgment that you

25  purchased from Hoover Slovacek, prior -- prior --



OMAR KHAWAJA
TEXAS REIT LLC

1   sorry; my mouth is not working -- prior to your

2   purchase of the assignment, did you review the

3   underlying pleadings related to the lawsuit?

4       A.  Not really.

5       Q.  Can you be more specific than "not really"?

6   Is that you didn't look at them at all, or you kind of

7   looked at them?

8       A.  I may have briefly skimmed through them.

9       Q.  And by skimming through them, were you aware

10  that there were no causes of action for fraudulent

11  transfer, et cetera, against Jetall?

12      A.  No, I wasn't, but I'll take your word for it

13  that there were not.

14      Q.  And would you agree with me that the judgment

15  debtor in Judgment Number 3 is Jetall Companies, Inc.?

16      A.  Yes.

17      Q.  And the judgment debtor is not Arabella PH

18  3201; correct?

19      A.  No, they're an alter ego of Jetall Companies.

20          MS. HOOD:  Objection.  Non-responsive.

21      Q.  (BY MS. HOOD)  Arabella PH 3201 is not a

22  judgment debtor; correct?

23          MR. BALLASES:  Objection.  Form.

24      A.  That's correct.

25      Q.  (BY MS. HOOD)  9201 Memorial Drive is not a



OMAR KHAWAJA
TEXAS REIT LLC

```
 1   judgment creditor; correct?

 2        A.   Correct.

 3             MR. BALLASES:   Objection.   Form.

 4        Q.   (BY MS. HOOD)  2727 Kirby 26L, LLC, is not a

 5   judgment debtor; correct?

 6             MR. BALLASES:   Objection.   Form.

 7        A.   Correct.

 8        Q.   (BY MS. HOOD)   Texas REIT, LLC, is not a

 9   judgment debtor; correct?

10        A.   Correct.

11             MR. BALLASES:   Objection.   Form.

12        Q.   (BY MS. HOOD)   Dalio Holdings I is not a

13   judgment debtor; correct?

14        A.   Correct.

15             MR. BALLASES:   Objection.   Form.

16        Q.   (BY MS. HOOD)   Dalio Holdings II is not a

17   judgment debtor; correct?

18        A.   Correct.

19             MR. BALLASES:   Objection.   Form.

20        Q.   (BY MS. HOOD)   Houston Real Estate Properties,

21   LLC, is not a judgment debtor; correct?

22        A.   (Unintelligible)

23             MR. BALLASES:   Objection.   Form.

24             THE REPORTER:   Sorry.   Was that "correct"?

25        Q.   (BY MS. HOOD)   What was your -- yeah, I didn't
```



```
 1    hear your --

 2         A.   That's correct.

 3         Q.   -- answer either.  Yeah.

 4         A.   Correct.  Correct.

 5              MR. BALLASES:  And I object to the form.

 6         Q.   (BY MS. HOOD)  Shahnaz Choudhri is not a

 7    judgment debtor; correct?

 8         A.   Correct.

 9              MR. BALLASES:  Objection.  Form.

10         Q.   (BY MS. HOOD)  Ali Choudhri is not a judgment

11    debtor; correct?

12         A.   Correct.

13              MR. BALLASES:  Objection.  Form.

14         Q.   (BY MS. HOOD)  Shepherd-Huldy Development I is

15    not a judgment debtor; correct?

16         A.   Correct.

17              MR. BALLASES:  Objection.  Form.

18         Q.   (BY MS. HOOD)  Shepherd-Huldy Development II

19    is not a judgment debtor; correct?

20         A.   Correct.

21              MR. BALLASES:  Objection.  Form.

22         Q.   (BY MS. HOOD)  Galleria Loop Note Holder, LLC,

23    is not a judgment debtor; correct?

24         A.   Correct.

25              MR. BALLASES:  Objection.  Form.
```



1    Q.  (BY MS. HOOD)  What due diligence did you do,

2  if any, before you alleged in this adversary action,

3  which forms the basis of your proof of claim, that my

4  client, Dalio Holdings, LLC, is the alter ego of

5  Houston Real Estate Properties?

6    A.  What due diligence did I do personally?

7    Q.  Yeah.

8    A.  I mean, I think it's stated pretty clearly in

9  the petition what evidence we have.  There's a whole

10 court history of fraudulent transfers, commingling of

11 assets; you know, fraudulent, unethical conduct that

12 we have available as public record as to Mr. Choudhri

13 and, by extension, your client's conduct.  And that's

14 the due diligence I did to make these claims.

15   Q.  Okay.  So you based your due diligence off

16 your allegation that this is all public record.

17   A.  That's correct.

18       MR. BALLASES:  Objection.  Form.

19   Q.  (BY MS. HOOD)  What public records did you

20 look at?

21   A.  Well, if you -- everything that's stated in

22 the petition.  If you look at Lawsuit 2013-41273,

23 Harris County District Court, he was found to have

24 committed fraud, filed a fraudulent lien, and there

25 was no promissory note, and that was an entity that he

1  controlled, HREP.  If you look at -- on February 16th,

2  2017, in Case Number 2017-1 --

3      Q.  Let's go -- let's go back to the first one.

4  You --

5          MR. BALLASES:  I'm going to --

6      Q.  (BY MS. HOOD)  -- said that there was a --

7          THE REPORTER:  I'm sorry.

8      Q.  (BY MS. HOOD)  You claim to have a finding --

9          (Crosstalk)

10      Q.  (BY MS. HOOD)  You claim there's a finding of

11  fraud --

12          MR. BALLASES:  Ms. Hood --

13          THE REPORTER:  Sorry --

14          MR. BALLASES:  -- can you let my client answer

15  the question, please?

16          MS. HOOD:  I -- it's my question-and-answer,

17  and if I want to cut him off, I can.

18          MR. BALLASES:  Okay.  So you want to --

19          MS. HOOD:  I want to -- I want to drill down

20  on the first one.  Well, he's referencing a pleading

21  that I'm assuming that you wrote, so I just want to

22  find out what he knows personally about some of this

23  stuff.

24          MR. BALLASES:  Objection (unintelligible).

25      Q.  (BY MS. HOOD)  So you reference a lawsuit --



1    hang on.  Let me find it.

2            Is that the lawsuit involving HREP?

3    A.  Yes.

4    Q.  Okay.  And were you involved in that lawsuit?

5    A.  I was not.

6    Q.  So everything you know about that lawsuit, you

7    read as a matter of public record.

8    A.  That's correct.

9    Q.  Was there a finding of fraudulent transfers in

10   that case?

11           MR. BALLASES:  Objection.  Form.

12   A.  Other fraud, but I don't know if fraudulent

13   transfer was part of that.

14   Q.  (BY MS. HOOD)  I didn't see it.

15           MR. BALLASES:  Objection.  Sidebar.

16   Q.  (BY MS. HOOD)  All right.  That's the first

17   lawsuit that you said you looked at for public record

18   in order to determine that my client is somehow the

19   alter ego of all these other things; correct?

20   A.  That's correct.

21   Q.  Okay.  What other -- what other public records

22   did you review?

23   A.  There's also these videos by a guy named Wayne

24   Dolcefino I saw.

25   Q.  So you looked at videos.

1        A.   Yes.

2        Q.   Anything else you reviewed?

3        A.   I think just generally people in the community

4   know that your client commits fraud.  He's known as a

5   fraudster.

6        Q.   Who are these --

7        A.   So many people have approached me.

8        Q.   Okay.  Who are these people?

9        A.   Yeah, I can't -- many people that he's

10  defrauded over the years.

11       Q.   Name one.

12       A.   Well, Judge Norman is one.  I don't know if

13  you know him.  He's in the Southern District.

14       Q.   Okay.  Who else?

15       A.   Let's see.  Who else in the community have

16  called him a fraudster?

17            Judge Landrum, Judge Michael Landrum in the

18  Harris County District Court, 164th District Court.

19  He considers your client a fraud.

20       Q.   And is that in relation to the HREP case?

21       A.   I just think generally.

22       Q.   Okay.  So Judge Landrum has spoken to you

23  about Mr. Choudhri being a fraudster?

24       A.   It's in a final judgment.  I can read that for

25  you if you'd like.



1    Q.   No, I'm asking --

2    A.   Do you want me to read it to you?

3    Q.   No, no, no.  I'm asking you.  You said people

4  have told you; many people have told you.  So I'm

5  asking who --

6    A.   Yes.

7    Q.   -- who's had a conversation with you about

8  Mr. Choudhri being a fraudster?  And you've said Judge

9  Norman, and I'm assuming you didn't --

10   A.   Yes.

11   Q.   -- talk personally with Judge Norman.  That's

12  out of an opinion; right?

13   A.   Yes.

14   Q.   Okay.  The same as --

15   A.   Members of the community --

16   Q.   Okay.  So who --

17   A.   I'm sorry --

18       THE REPORTER:  Sorry.  One at a time, please.

19  Thank you.

20   Q.   (BY MS. HOOD)  What community?

21       MR. BALLASES:  Objection.  Form.

22   A.   The real estate community, the Pakistani

23  community, basically anyone Mr. Choudhri has come in

24  contact with and done business with, people from those

25  communities.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

112

1       Q.   (BY MS. HOOD)   Okay.   So we've got the real

2    estate community.   We've got the Pakistani community.

3       A.   His family members.   His own family members

4    have said the same.

5       Q.   Family members.

6            All right.   So who in the real estate

7    community have you had a specific conversation with

8    that have informed you that he's -- that he -- that my

9    client fraudulently -- my client, Dalio, is -- has

10   been the recipient or the instigator of fraudulent

11   transfers such that they're the alter ego of

12   Mr. Choudhri?

13      A.   Harold Polk.

14      Q.   Who?

15      A.   So just a -- Harold Polk.

16      Q.   And who is Mr. Polk?

17      A.   Somebody that your client knows that he ripped

18   off, I guess.

19      Q.   Well, how do you know him?

20      A.   He came to me and told me that your client

21   ripped him off.

22      Q.   Okay.   He came to you just out of the blue?

23      A.   Yeah.   I mean, you know, I don't know why he

24   came to me, but yeah, he did.

25      Q.   When did you have this --



1          A.  He probably saw the --

2          Q.  When did you have this conversation with

3    Mr. Polk?

4          A.  Years ago.

5              MR. BALLASES:  Objection.  Form.

6          A.  I can't remember.

7          Q.  (BY MS. HOOD)  Years ago?  Okay.

8          A.  Yes.

9          Q.  Okay.  Who else?

10             MR. BALLASES:  Objection.  Form.

11         A.  I don't -- I can't recall.  I mean, a lot of

12   people.  A lot of people.

13             MR. BALLASES:  I'm going to object to the

14   question as exceeding the scope of the judge's

15   limiting order.

16             Can we please just stick to the basis for the

17   proof of claim and why we are willing to withdraw it?

18             MS. HOOD:  Objection.  Sidebar.

19             I've asked him, what due diligence did he do

20   in order to craft together the adversary proceeding,

21   which was attached to the proof of claim as evidence

22   supporting his proof of claim.  And I've got, so far,

23   two public lawsuits and some people in the community

24   that have spoken to him, one of whose name is Harold

25   Polk.  And he can't remember anybody else's name



1    because there's just so many over so many years.

2         Q.  (BY MS. HOOD)  Is that correct?

3              MR. BALLASES:  No, he's identified several

4    people.

5              I'm going to object to sidebar.

6              If you want to engage in discovery in the

7    Southern District, we can do that, but right now we're

8    just trying to understand why we filed the proof of

9    claim and why we're willing to withdraw it.

10             MS. HOOD:  Yeah, I understand.

11             And I object to your sidebar.

12        Q.  (BY MS. HOOD)  Mr. Khawaja, certainly your

13   lawyer and Mr. Abdullatif had your permission to file

14   this proof of claim; correct?

15             MR. BALLASES:  Objection.  Form.

16        A.  Yes.

17        Q.  (BY MS. HOOD)  And you understand the proof of

18   claim was filed under penalty of perjury.

19        A.  Yes.

20             MR. BALLASES:  Objection.  Form.

21        Q.  (BY MS. HOOD)  And you understand that the

22   amount in the proof of claim is based upon these three

23   judgments; correct?

24        A.  Yes.

25        Q.  And we've run through the three judgments, and



1  one of which you don't even have an interest in;

2  correct?

3       A.  Yes, that's correct.

4       Q.  And you don't know anything about the

5  substance of that judgment; correct?

6       A.  That's (unintelligible).

7            MR. BALLASES:  Objection.  Form.

8            MS. HOOD:  Excuse me.  What was the answer?

9       A.  That was correct.

10      Q.  (BY MS. HOOD)  Do you own an assigned interest

11  in any other judgment related to any of these entities

12  that you claim are alter egos of Mr. Choudhri?

13      A.  I don't think so.

14           MR. BALLASES:  I object to the form of the

15  question.

16      Q.  (BY MS. HOOD)  Is it your habit to -- strike

17  that.

18           If one of these judgments became available to

19  purchase, would you buy it?

20           MR. BALLASES:  Objection.  Form.

21      A.  I don't know.  I don't know how much money

22  your client has.  It just depends.  Collectibility

23  matters, so...

24      Q.  (BY MS. HOOD)  Collectibility matters?

25      A.  Yes.



1     Q.  Did collectibility matter to you when you

2  purchased the assignment of the judgments that form

3  the basis of your proof of claim?

4     A.  Yes.

5         MR. BALLASES:  Objection.  Form.

6     Q.  (BY MS. HOOD)  Did you do any due diligence

7  prior to filing your proof of claim in this lawsuit as

8  to the debtor's ability to pay these judgments?

9     A.  Yes.

10        MR. BALLASES:  Objection.  Form.

11    Q.  (BY MS. HOOD)  What due diligence did you do?

12    A.  Reviewed public documents, spoke to people,

13  watched videos of Wayne Dolcefino online.

14    Q.  Okay.  So the public documents that you

15  reviewed prior to filing your proof of claim in this

16  lawsuit --

17    A.  Yes.

18    Q.  -- that -- let me finish -- that supported

19  your proof of claim regarding collectibility were

20  public records and the --

21    A.  Yes.

22    Q.  -- Dolcefino videos.

23    A.  That's correct.

24        MR. BALLASES:  Objection.  Form.

25    Q.  (BY MS. HOOD)  When did you learn that your

1    proof of claim was uncollectible?

2            MR. BALLASES:  Objection.  Form.

3        A.   I think the Texas REIT judge in that case said

4    that there wasn't enough money in the Texas REIT

5    matter to pay us.

6        Q.   (BY MS. HOOD)  When you filed your proof of

7    claim, how much money was in Texas REIT?

8            MR. BALLASES:  Objection.  Form.

9        A.   I'm not sure.  No idea.

10       Q.   (BY MS. HOOD)  If I understand correctly,

11   bankrupt debtors have to file documents that outline

12   their assets; correct?

13       A.   Yes.

14           MR. BALLASES:  Objection.  Form.

15       Q.   (BY MS. HOOD)  Did you look at any of those

16   filings by the debtor?

17       A.   I believe I did, but a lot of what your client

18   files is fraudulent, so -- or the debtor in this case.

19   So it's hard to trust those documents.

20           MS. HOOD:  Objection.  Non-responsive.

21       Q.   (BY MS. HOOD)  Did you look at any of the

22   documents filed by the debtor, the accounting

23   documents, prior to filing your proof of claim?

24           MR. BALLASES:  Objection.  Form.

25       A.   Yes.



1    Q.  (BY MS. HOOD)  Which documents did you look

2    at?

3    A.  I'm sure I reviewed the schedules.  I don't --

4    I can't recall specifically what I looked at.

5           MR. BALLASES:  I'm going to go ahead on this

6    line of questioning and instruct him not to answer

7    because it gets into attorney work product.

8           MS. HOOD:  I'm just asking what he looked at.

9    I don't want to know what you looked at or what you

10   talked to him about.

11          MR. BALLASES:  I understand.

12          MR. CHOUDHRI:  I'm gonna object.

13          Mr. Ballases, you continue to coach the

14   witness, so I'm gonna object.  Please stop coaching

15   the witness.

16          MR. BALLASES:  What's your legal basis, sir,

17   for your objection?

18          MR. CHOUDHRI:  Mr. Ballases, because you're

19   making sidebar, coaching the witness.  Keep your

20   objections limited.  Don't coach the witness.  You've

21   been doing it throughout the whole depo, and you're

22   also objecting on a frivolous basis.  But regardless,

23   please stop coaching the witness.

24          MR. BALLASES:  Okay.  So what's your formal

25   objection for the record?



1    MR. CHOUDHRI:  For the record, you're

2  improperly coaching the witness.  Refrain your

3  objections --

4    MR. BALLASES:  Okay.

5    MR. CHOUDHRI:  -- to just objections.

6    MR. BALLASES:  I want to make sure.  Okay.  I

7  just want to make sure your formal objection was on

8  the record.

9    THE WITNESS:  He's just buying time for his

10  lawyer to make up questions.

11    MS. HOOD:  What?  Mr. --

12    MR. CHOUDHRI:  Mr. Khawaja, what did you say?

13    MS. HOOD:  Yeah.  Excuse me, Mr. Choudhri.

14  This is my time.

15    Q.  (BY MS. HOOD)  First of all, there's no

16  requirement that I pepper you incessantly directly.

17  I'm going through my notes.  I don't need time to come

18  up with questions for you.

19    I'd actually like it if you would answer my

20  questions, but you've chosen not to do that.  So I'm

21  going through my notes to see if I can actually ask

22  some questions that you would be kind enough to answer

23  relating to your proof of claim and why you filed it.

24  So when you --

25    MR. BALLASES:  (Unintelligible) and what

OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
120

1  you're doing, okay, or your sidebar.  And we are

2  answering questions.  I'm sorry you don't like them.

3        MS. HOOD:  You're not answering them.  You're

4  objecting.

5     Q.  (BY MS. HOOD)  At the time that you filed your

6  proof of claim, you had satisfied yourself that you'd

7  be able to collect your judgments through this debtor.

8     A.  Yes.

9        MR. BALLASES:  Objection.  Form.

10     Q.  (BY MS. HOOD)  Do you understand that in order

11  to collect your judgments through this debtor, you

12  would have to win on your adversary claim regarding

13  the alter egos?

14     A.  Yes.

15     Q.  And if I read your adversary complaint, it's

16  your assertion that Mr. Choudhri keeps his entities

17  devoid of assets in order to keep creditors from

18  collecting their judgments.  Is that a fair statement?

19     A.  I mean, I think that's one of many tactics

20  that he uses, but yes.

21     Q.  And certainly you have these judgments at your

22  ready; correct?

23        MR. BALLASES:  Objection.  Form.

24     A.  Yeah.  I'm sorry.  I didn't -- I didn't quite

25  understand the question.



1      Q.  (BY MS. HOOD)  Yeah, bad question.

2          You have these judgments that you own that you

3  could go out and try to collect absent filing

4  documents in Bankruptcy Court; correct?

5      A.  I guess.

6      Q.  And you've not chosen to pursue any

7  post-judgment collection of these judgments in Texas

8  State Court; correct?

9          MR. BALLASES:  Objection.  Form.

10         I'm going to instruct the client not to

11  answer.

12         You're invading attorney-client, work

13  privilege -- attorney-client, and you're also getting

14  into joint litigation privilege.  We're not going to

15  help Mr. Choudhri hide more assets.

16     A.  On advice of counsel, I will not answer that

17  question.

18     Q.  (BY MS. HOOD)  It's not -- okay.  The question

19  is this.  Okay?  Based upon public records, I find no

20  activity by you to collect these judgments in Texas

21  State Courts; is that an accurate statement?

22     A.  Yes.

23         MR. BALLASES:  I object to the form.

24     Q.  (BY MS. HOOD)  And rather than pursue

25  opportunities in State Court, you and your co-owners



1  have chosen to pursue unrelated third parties in

2  Bankruptcy Court; correct?

3          MR. BALLASES:  Objection.  Form.

4      A.  No, that's not correct.  "Unrelated"?  What do

5  you mean "unrelated"?  What is that supposed to mean?

6      Q.  (BY MS. HOOD)  Texas (sic) Real Estate

7  Properties, LLC, is not a judgment debtor; correct?

8  You've already admitted this.

9      A.  Does that mean -- you said "unrelated."

10  That's not -- they're very related.

11     Q.  In your mind, but they don't -- they're not a

12  party to the judgment; correct?

13         MR. BALLASES:  Objection.  Sidebar.

14     A.  In reality and on public record.

15     Q.  (BY MS. HOOD)  The debtor in this case is not

16  a judgment debtor; correct?

17     A.  Asked and answered.

18     Q.  Okay.  Now you're objecting to your own

19  questions?  Are you a lawyer or a witness?

20     A.  I am a lawyer, but I mean --

21     Q.  Okay.  Answer my question.

22     A.  -- just answering --

23     Q.  Answer my question.

24     A.  No, I'm not gonna answer that question.

25     Q.  This debtor is not a judgment debtor to you;



1  correct?

2         THE WITNESS:  Do you want me to answer?

3         MR. BALLASES:  Objection.  Form.

4         You can answer.

5    A.  No.

6    Q.  (BY MS. HOOD)  And yet you chose to pursue

7  this debtor to try to collect your judgments that are

8  in the name of others; correct?

9    A.  This -- yes.  This debtor is an alter ego of

10  all the other debtor -- all the other defendants in

11  this case.

12    Q.  Tell me where there's a finding by a court of

13  law that this debtor is the alter ego of one of the

14  two entities in which you hold an assigned interest.

15    A.  We will prove it in this case.

16    Q.  Okay.  That's not my question.  Tell me where

17  I can find as a matter of law that Ali Choudhri and

18  Houston Real Estate Properties, LLC, are one and the

19  same.

20         MR. BALLASES:  Objection.  Form.

21    A.  We don't have that.

22    Q.  (BY MS. HOOD)  Tell me where I can find as a

23  matter of public record that Jetall is one and the

24  same with this debtor.

25         MR. BALLASES:  Objection --



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
124

1    A.   Based on his testimony in multiple cases.

2         MR. BALLASES:   Objection.   Form.

3    Q.   (BY MS. HOOD)   Tell me where I can find as a

4    matter of public record a finding by a trier of fact

5    that Jetall Companies is one and the same as this

6    debtor.

7         MR. BALLASES:   Objection.   Form.

8    A.   I don't -- I'm not sure if we'll find that.

9    Q.   (BY MS. HOOD)   There isn't one, is there?

10        MR. BALLASES:   Objection.   Form.

11   A.   We have multiple public record documents

12   indicating that Ali Choudhri is one and the same as

13   all of his entities.

14   Q.   (BY MS. HOOD)   And there's not a finding by a

15   trier of fact that this debtor is one and the same

16   with Jetall Companies, is there?

17   A.   Only admissions by your client.   That's it.

18        MR. BALLASES:   Objection.   Form.

19   Q.   (BY MS. HOOD)   There's no finding by a trier

20   of fact that this debtor is one and the same as Jetall

21   Companies; correct?

22        MR. BALLASES:   Objection.   Form.

23        (Phone ringing.)

24   A.   (Unintelligible)

25        THE REPORTER:   I'm sorry.   I'm sorry.   I



1  did -- sorry.  I did not hear your answer.  Could you

2  please restate your answer?

3       A.  I said -- I said, Correct, not by a trier of

4  fact, but by admissions through your client.

5            MS. HOOD:  Objection.  After "correct" --

6  objection.  Non-responsive after "correct."

7            Mr. Khawaja, I fully expect to go back to the

8  Court and try to get him to compel you to answer some

9  of my questions that I think were improperly objected

10 to, and so I can go through that with your lawyer

11 through motion practice.  I appreciate your time

12 today.  Based upon whether or not the other lawyers

13 and Mr. Choudhri have questions, I may or may not get

14 another pass at you, and I appreciate your time.

15           THE WITNESS:  Thank you.

16           MS. HOOD:  I'm going to pass the witness to

17 the next creditor in line, and I reserve my right to

18 come back and ask questions -- follow-up questions if

19 I deem necessary.

20           THE REPORTER:  Sorry.  Just before we go to

21 Mr. Choudhri, would it be possible to just take two

22 minutes to go to the bathroom?

23           MS. HOOD:  Oh, absolutely.  You're in charge.

24 You're the one doing the hard work.

25           THE REPORTER:  Thank you.  Just two minutes.



OMAR KHAWAJA                                 September 11, 2024
TEXAS REIT LLC                                        126

```
 1   Thanks.
 2            MR. CHOUDHRI:  Absolutely, Cheryl.  Take your
 3   time.
 4            THE REPORTER:  Thank you.
 5            (A recess was taken.)
 6   BY MR. CHOUDHRI:
 7        Q.  Mr. Khawaja, good afternoon.  How are you?
 8        A.  I'm good, man.  Just -- let's get to your
 9   questions.  I don't -- we don't have time for
10   formalities.  Thank you.
11        Q.  Mr. Khawaja, you're not looking at -- first of
12   all, who is present with you in the room there?
13            MR. BALLASES:  We've already answered that.
14            Objection.  Form.
15            We're also having trouble hearing you, so you
16   might want to turn up your volume --
17        A.  Yeah, you need to turn your speaker up.
18        Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, can you hear
19   me now?
20        A.  Better, but you still need to speak up a
21   little bit.
22        Q.  So can you identify who's in the room there
23   with you, Mr. Khawaja?
24            MR. BALLASES:  Objection.  Form.
25        A.  Mr. Quinlan is here; my attorney, Michael
```



1  Ballases.

2      Q.   Is Osama Abdullatif in the room with you?

3      A.   He has --

4          MR. BALLASES:  Objection.  Form.

5      A.   He's not in the room, like, at this minute.

6      Q.   (BY MR. CHOUDHRI)  But throughout this

7  deposition, you've had Osama Abdullatif and John

8  Quinlan sitting in the room with you, present;

9  correct?

10     A.   Yes.

11         MR. BALLASES:  Objection.  Form.

12         We've already answered that and said that.

13  Quit wasting everybody's time.

14         MR. CHOUDHRI:  Mr. Ballases, I would ask you

15  to please calm down and allow me to ask my questions.

16         MR. BALLASES:  Objection.  Sidebar.

17     Q.   (BY MR. CHOUDHRI)  Mr. Khawaja, you had -- as

18  we started this deposition, you had said that I had

19  defrauded you?

20     A.   Ali, I'm sorry.  You're really going to have

21  to turn up your sound because I can't hear you and

22  neither can the people in the room.

23         MR. CHOUDHRI:  Is everybody -- can everybody

24  hear me okay?

25         Cheryl, can you hear me?



```
 1            THE REPORTER:  I can hear you.

 2            MR. CHOUDHRI:  Okay.  Maybe it's only

 3   Mr. Khawaja who can't hear me, then.

 4            THE WITNESS:  Osama, can you hear him?

 5            MR. BALLASES:  It's difficult to hear you.

 6            MR. ABDULLATIF:  No, I can't hear him without

 7   hearing aid.

 8        A.  Mr. Quinlan can't hear you and neither can

 9   Osama, and they need to hear you.

10        Q.  (BY MR. CHOUDHRI)  Well, the court reporter

11   can hear me.  If they want me to come closer, they

12   can.  I would actually object to them even being there

13   and handing you notes, but we'll try to --

14            MR. BALLASES:  Objection.  Sidebar.

15            MR. CHOUDHRI:  -- get on with the deposition.

16            MR. BALLASES:  (Unintelligible)

17            MR. CHOUDHRI:  The court reporter could hear

18   me just fine.

19            THE WITNESS:  Okay.

20        Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, how do you

21   know John Quinlan?

22            MR. BALLASES:  Objection.  Form.

23        A.  I'm not gonna answer that question.

24        Q.  (BY MR. CHOUDHRI)  You're not gonna answer the

25   question of how you know John Quinlan?
```



1      A.   I -- I met him in the real estate community.

2      Q.   When did you meet Mr. Quinlan?

3           MR. BALLASES:  Objection.

4           Ali, can you show yourself?  If you're going

5   to be asking questions, you need to show yourself.

6           THE WITNESS:  Yes.

7           MR. BALLASES:  Thank you.

8           MR. CHOUDHRI:  Okay.  Can you all see me now?

9   Is that okay?

10          MR. BALLASES:  Yes.

11     Q.   (BY MR. CHOUDHRI)  Okay.  Mr. Khawaja, you

12  were present earlier during the deposition when you

13  were being asked questions.  Did you happen to listen

14  to Judge Robinson's oral ruling?

15          MR. BALLASES:  Objection.  Form.

16     A.   I don't know what that has to do with

17  anything.

18     Q.   (BY MR. CHOUDHRI)  The deposition that we're

19  here on, Mr. Khawaja, is --

20     A.   Yes.

21     Q.   -- subject to a court order.  Do you

22  understand that?

23          MR. BALLASES:  Objection.  Form.

24          This has nothing to do with the proof of

25  claim.  Move on.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

130

1       A.  Please get to the proof of claim,

2   Mr. Choudhri.

3       Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, this is my

4   deposition.  I get to ask you questions, and you can

5   answer them.  This is my opportunity.

6           MR. CHOUDHRI:  And so, again, Court Reporter,

7   would you please repeat the question?

8           THE REPORTER:  The question is (Reading:)  The

9   deposition that we're here on, Mr. Khawaja, is subject

10  to a court order.  Do you understand that?

11      A.  I didn't -- I have not seen a court order.

12      Q.  (BY MR. CHOUDHRI)  Are you aware, earlier

13  today, that an oral ruling on an audio from the Court

14  was sent to your attorney, Michael Ballases?

15      A.  It -- it may have been.

16          MR. BALLASES:  Objection.  Form.

17      Q.  (BY MR. CHOUDHRI)  And are you aware, whether

18  written or oral, we are here pursuant to a court

19  order?  Are you aware of that?

20          MR. BALLASES:  Objection.  Form.

21      A.  Might -- that might be the case.

22      Q.  (BY MR. CHOUDHRI)  But you're not aware that

23  we're here pursuant to a court order.

24          MR. BALLASES:  Objection.  Form.

25      A.  It could possibly be the case.



1    Q.  (BY MR. CHOUDHRI)  But you don't know?

2    A.  I don't know.

3    Q.  And I've asked you earlier as how you know

4  Mr. Quinlan, and your answer was you're not going to

5  answer that; is that correct?

6        MR. BALLASES:  Objection.  Form.

7    A.  I think I told you after -- after that that I

8  met him in the real estate community.

9    Q.  (BY MR. CHOUDHRI)  And when did you meet him?

10        MR. BALLASES:  Objection.  Form.

11        Are you going to ask every question two or

12  three times?  Ask good questions.

13        MR. CHOUDHRI:  Mr. --

14    A.  I can't remember.

15        MR. CHOUDHRI:  Mr. Ballases -- Mr. Ballases,

16  for the record, I would ask you to please stop

17  interfering and obstructing the deposition.

18        MR. BALLASES:  Objection.  Sidebar.

19        So I would just request that you comply with

20  the judge's instruction to tailor the questions

21  narrowly to the reasons why the proof of claim was

22  filed and why it was withdrawn and not ask why he

23  knows people and who he knows people and not ask

24  things three times.

25    Q.  (BY MR. CHOUDHRI)  Is John Quinlan a



1  co-claimant on the proof of claim?

2      A.  I believe so.

3          MR. BALLASES:  Objection.  Form.

4      Q.  (BY MR. CHOUDHRI)  Is Osama Abdullatif a

5  co-claimant on the proof of claim?

6          MR. BALLASES:  Objection.  Form.

7      A.  I believe so, yes.

8      Q.  (BY MR. CHOUDHRI)  When did you meet Osama

9  Abdullatif?

10         MR. BALLASES:  Objection.  Form.

11     A.  Maybe 2010.  2009 or '10, something like that.

12  I'm not sure.  Around the time you deprived me of my

13  property, I think.

14     Q.  Which property is that, Mr. Khawaja?

15     A.  The Avondale property.

16         MR. BALLASES:  Objection.  Form.

17     Q.  (BY MR. CHOUDHRI)  Can you tell us a little

18  bit about that, because you've mentioned it several

19  times in this deposition, and so I'd like you to tell

20  us a little more about the Avondale property.

21     A.  No --

22         MR. BALLASES:  Objection.  Form.

23         I'm going to instruct him not to answer

24  because you're violating the judge's instruction as to

25  this limited deposition.



1      Please stick to the proof of claim and the

2  reason why it's being withdrawn.

3      MR. CHOUDHRI:  Mr. Ballases, he's opening the

4  door.  He's answering my questions.  I have a right to

5  ask him questions.  Okay?

6      MR. BALLASES:  Yeah, so you're not a lawyer.

7  You don't know what you're talking about.

8      MR. CHOUDHRI:  Mr. Ballases, please be

9  respectful, sir.  I know it's difficult, but please be

10  respectful.

11      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

12      MR. BALLASES:  I am.

13      Q.  (BY MR. CHOUDHRI)  -- are you going to answer

14  my --

15      MR. BALLASES:  I'm respecting my client --

16      Q.  (BY MR. CHOUDHRI)  -- questions --

17      MR. CHOUDHRI:  Mr. Ballases, please stop

18  disrupting the deposition.

19      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, you said you

20  met Mr. Osama Abdullatif when I deprived you of your

21  property.  Is that -- did I hear that correct?

22      MR. BALLASES:  Objection.  Form.

23      A.  Yes.

24      MR. BALLASES:  I'm going to instruct you not

25  to answer.



1        We're not going to talk about this.

2        THE WITNESS:  Okay.  Sorry.

3        MR. BALLASES:  It has nothing to do with the

4   proof of claim.  It has nothing to do for the reason

5   for filing it.  It has nothing --

6      A.  Ali, we can grab a cup of coffee afterwards.

7   You can ask me all about that.  Let's please stick to

8   the purpose of this.  Okay?

9        MR. CHOUDHRI:  Let's have some decorum,

10  gentlemen.  This is a formal deposition.  I'm asking

11  the questions.  Mr. Khawaja just said yes, so why the

12  proof of claim was filed is very relevant.  And

13  Mr. Khawaja just answered that, so I have an

14  opportunity to explore that.

15       Mr. Ballases, you have a law license.  You

16  have to follow the creed that you've been licensed by,

17  so please don't frivolously object and coach the

18  witness.  Okay?  I --

19       MR. BALLASES:  Objection.  Sidebar.

20       MR. CHOUDHRI:  -- would like -- if everybody

21  wants, I'm happy to play the audio of the judge's oral

22  ruling so Mr. Khawaja is aware -- and so are you,

23  Mr. Ballases -- and we don't have to waste more time

24  like we did this morning about what the scope of the

25  deposition is about.  Would you like me to do that,



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
135

1   Mr. Ballases, so you can stop --

2            MR. BALLASES:  Objection.  Sidebar --

3            MR. CHOUDHRI:  -- interfering --

4            MR. BALLASES:  The only reason you're asking

5   questions is because I heard it.  So why don't you be

6   quiet and focus on asking questions if it's relevant

7   to the judge's scope.  Thank you.

8            MR. CHOUDHRI:  Madam Court Reporter, do you

9   have a -- do you have an ability to play at a certain

10  point of the audio?  Is that something you're able to

11  do for us?

12           THE REPORTER:  I am actually not authorized to

13  be playing audio or sharing exhibits during the

14  deposition.

15           MR. CHOUDHRI:  Okay.  Well, maybe we can then

16  play the audio at 23 minutes and 14 seconds, and then

17  we'll play it at 28 minutes and 12 seconds.

18       Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, you -- you

19  have indicated that you have not heard the oral

20  ruling, why we're here, by Judge Robinson; is that

21  correct?

22       A.  Let's assume for purposes of this question I

23  have.  What would you like me to answer?

24       Q.  Well, I just want to clarify because you keep

25  not answering, and Mr. Ballases keeps interfering and



1   interrupting, so I want to go ahead and get the

2   judge's ruling on the record, so --

3       A.  Just ask me the questions that you want the

4   answers to.  I'm happy to answer the questions.

5       Q.  Were you present or on the phone when the

6   hearing took place with Judge Robinson?

7       A.  I was not.

8           MR. BALLASES:  Objection.  Form.

9           MR. CHOUDHRI:  Let's go ahead and play at

10  23 minutes and 14 seconds.

11          Gene, can you play that right now?

12          MR. BALLASES:  So just for the record, we --

13  as I've told your counsel, we have to cut if off at

14  4:30.  If this is how you want to use your time, by

15  all means.  It's your dime.

16          MR. CHOUDHRI:  Mr. Ballases, you've been

17  interfering with the depo all day, and we're going to

18  do this by the rules and what the rules -- the federal

19  rules are and the timing.  So if you want to walk out

20  of a depo, that's really your choice --

21          MR. BALLASES:  (Unintelligible)

22          MR. CHOUDHRI:  -- and you'll suffer the

23  consequences.

24          THE REPORTER:  Okay.  So just before we play

25  the audio, as I let everybody know in the e-mail, I



1  cannot transcribe anything I cannot clearly hear.  If

2  you would like a separate transcription of this audio,

3  then you can contact our office.

4         MR. CHOUDHRI:  No -- no problem, Cheryl.

5  We'll do the best we can.

6         THE REPORTER:  Okay.  Thank you.

7         MR. CHOUDHRI:  And I'm sure you will too.  And

8  if it works, great.

9         THE REPORTER:  Thank you.

10        MR. CHOUDHRI:  So while we're getting ready to

11  do that -- go ahead, Gene.  Are you ready?

12        MR. MCCUBBIN:  Yeah.  You said 23:14.

13        MR. CHOUDHRI:  Correct, at 23 minutes and

14  14 seconds.  Let's start there.

15        MR. MCCUBBIN:  Yeah, this is, I think, 23:10.

16  Here we go.

17            (Audio file played.)

18        MR. MCCUBBIN:  There you go.

19        MR. CHOUDHRI:  Would you go to 23 minutes and

20  18 -- 28 minutes and 12 seconds, please?

21        MR. MCCUBBIN:  Yeah, give me a second.

22        MR. CHOUDHRI:  28 minutes and 12 seconds.

23  Let's get that on the record.  Go ahead.

24        MR. MCCUBBIN:  Okay.

25            (Audio file played.)



1             MR. MCCUBBIN:  There you go.

2        Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, were you able

3   to hear the judge, Robinson?

4        A.  Yes.

5        Q.  Does that help you understand a little more

6   about what we're here about?

7        A.  What's your question?

8        Q.  Did you --

9             MR. BALLASES:  Objection (unintelligible) --

10       Q.  (BY MR. CHOUDHRI)  -- hear him say motivations

11  of filing the proof of claim?  Do you understand what

12  that means, motivations of filing the proof --

13       A.  Yes.

14       Q.  -- of claim?  Okay.

15       A.  Yes.

16       Q.  So again, I want to go back to some of my

17  questions, Mr. Khawaja.  You said that I defrauded you

18  of your property.

19       A.  Yes.

20       Q.  So can you explain how I defrauded you of your

21  property?  I want to understand the motivations here.

22       A.  I think we got a trial --

23            MR. BALLASES:  Objection.  Form.

24       A.  -- on that case coming up in a month.  Let's

25  wait till trial.  Let's wait till we get to trial on



1  that.

2      Q.  (BY MR. CHOUDHRI)  Well, Mr. Khawaja, you

3  filed this proof of claim in the Texas REIT bankruptcy

4  case; correct?

5      A.  Yes.

6          MR. BALLASES:  Objection.  Form.

7      Q.  (BY MR. CHOUDHRI)  And so your motivation,

8  when I asked you earlier -- and we can go back and

9  have the court reporter reread some of your answers

10  earlier in the deposition.  I've taken notes as well.

11  I just want to make sure the record is good and clear;

12  there's no confusion.

13          MR. BALLASES:  Objection.  Form.

14          Objection.  Sidebar.

15      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, I just want to

16  understand today; you're under no medication.  Right?

17      A.  Yes.

18          MR. BALLASES:  Objection.  Form.

19      Q.  (BY MR. CHOUDHRI)  And you're here and able to

20  answer truthfully under oath?

21      A.  Yes.

22          MR. BALLASES:  Objection.  Form.

23      A.  Yes.

24      Q.  (BY MR. CHOUDHRI)  And you understand you're

25  under oath as if you were in a courtroom; correct?



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
140

1          MR. BALLASES:  Objection.  Form.

2      A.  Like I'm in front of a jury, yes.

3      Q.  (BY MR. CHOUDHRI)  Or a judge.

4      A.  Or a judge.

5      Q.  Okay.  So, Mr. Khawaja, can you tell us about

6  when you say, You defrauded me of my property, and you

7  said Avondale.  Did I hear that correctly?

8          MR. BALLASES:  Objection --

9      A.  Mr. Choudhri, here's the thing --

10         MR. BALLASES:  Objection.  Form.

11         I'm going to instruct my client not to answer

12  because it exceeds the scope of the deposition as to

13  what -- the judge's order.

14         Plus, as I understand it, based on what was

15  just said --

16         THE WITNESS:  There's a trial coming.

17         MR. BALLASES:  -- he got a trial coming up,

18  and I'm not going to let you ask him -- get a second

19  deposition of him in a wholly separate matter that's

20  irrelevant to our proof of claim.  Move along, please,

21  sir.

22         MR. CHOUDHRI:  Mr. Ballases, you have been

23  disrupting this deposition the entire time.  You

24  refused to let me answer -- ask questions, Ms. Lori

25  Hood.  We had to send you the audio.  You misstated



1   what the judge said.  You continue to disrupt the

2   deposition.  We're allowed -- I played the audio

3   ruling.  The judge says the motivation of filing the

4   proof of claim, and he says, Because you defrauded me

5   of my property, Avondale.  So I have a right to get

6   into that.

7          When he answers a question, Mr. Ballases, I

8   have a right to explore that because that's his

9   answer.  He opened the door.  Throughout this depo, he

10  opened the door, Mr. Ballases, so I am entitled to ask

11  those questions.  And if you're going to continue --

12         MR. BALLASES:   (Unintelligible)

13         MR. CHOUDHRI:   -- to instruct him wrongfully

14  to not answer that, then just instruct him, but stop

15  doing what you're doing and making talking objections.

16  Either object or instruct him not to answer, and we'll

17  keep moving on.  But keep your objections limited to

18  what's correct and not frivolous --

19         MR. BALLASES:  What's your legal objection,

20  sir -- what's your legal objection, sir, because I

21  didn't hear it.

22         MR. CHOUDHRI:  You continue to do sidebars

23  throughout the deposition and disrupt and frustrate

24  the deposition.  We're trying to have a smooth

25  deposition; you continue to have sidebars.  So please



1    refrain from that, Mr. Ballases.

2        Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, when you

3    said --

4            MR. BALLASES:  Objection.  Sidebar.

5        Q.  (BY MR. CHOUDHRI)  -- you -- Mr. Khawaja, what

6    is the Avondale property?

7            MR. BALLASES:  Objection.  Form.

8            This has nothing do to with the proof of claim

9    or the withdrawal --

10           (Crosstalk)

11       A.  We're getting ready to stop this depo -- you

12   need to get to your questions.  We're not talking

13   about cases that are going to trial.  You know better

14   than that.  I'm not doing it.  So get to the questions

15   you have about this proof of claim.  I'm happy to

16   answer those, or we're done.

17       Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, are you going

18   to comply with the Court's order on this --

19       A.  Yes.

20       Q.  -- now getting into motivations for filing the

21   claim?  And when asked, you said, Because you

22   defrauded me of my property.

23       A.  No, I didn't.  That's not true.  You asked

24   me --

25       Q.  That's not --



1    A.  -- when did I meet Osama -- you asked me when

2  did I meet Osama Abdullatif, and I said, Around the

3  time you defrauded me of my property.

4    Q.  And when I -- when you said "my property,"

5  you're defining your property as Avondale; is that

6  correct?

7        MR. BALLASES:  Objection.  Form.

8    A.  Yeah, I'm not going to -- again, we're getting

9  ready to shut the depo down, so it's up to you.

10   Q.  (BY MR. CHOUDHRI)  So you're refusing to

11  answer these questions; correct?

12   A.  I'm refusing to answer questions that are

13  outside the scope of what you're permitted to ask,

14  correct.

15        MR. BALLASES:  Objection.  Form.

16   A.  You're not an attorney.

17   Q.  (BY MR. CHOUDHRI)  So because I'm not an

18  attorney, I can't ask you questions per the Court's

19  ruling --

20   A.  Outside --

21   Q.  -- is your objection?

22   A.  -- of the scope -- outside of the scope,

23  you're not.  That's correct.

24   Q.  So are you saying motivations for filing the

25  claim and you opening the door is outside the scope?



1      A.  Yes.

2      Q.  Okay.

3          MR. BALLASES:  Objection.  Form.

4      Q.  (BY MR. CHOUDHRI)  And you're gonna refuse --

5   you're gonna refuse to answer any of those questions;

6   correct?

7          MR. BALLASES:  Objection.  Form.

8      A.  You've only asked me one that I'm not gonna

9   talk about because there's a trial coming up.  I think

10  the judge will understand that.  Your -- if your --

11  any of the attorneys that you're paying that are here

12  with you would care to speak up, they'll tell you,

13  Mr. Choudhri, you can't ask those questions.  So you

14  should ask them too.

15         MR. BALLASES:  I object to the form of the

16  question.

17     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, did you -- you

18  mentioned Wayne Dolcefino; correct?

19     A.  Yes.

20         MR. BALLASES:  Objection.  Form.

21     Q.  (BY MR. CHOUDHRI)  And, Mr. Khawaja, is

22  somebody in the room coaching you?  Because you keep

23  looking at somebody else and talking and -- who's in

24  front of you right now that you keep looking at and

25  talking --



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

145

1       A.   I don't need to be coached to answer your

2    silly questions, no.

3            MR. BALLASES:   Objection.   Sidebar.

4       A.   I can answer them with my eyes closed.   Do you

5    want me to do that?

6       Q.   (BY MR. CHOUDHRI)   Mr. Khawaja, you can answer

7    them however you want.   I just want you to answer them

8    truthfully --

9       A.   Yes.

10      Q.   -- and honestly.

11      A.   Yes.

12      Q.   When did you meet Mr. Ballases?

13           MR. BALLASES:   Objection.   Form.

14      A.   I don't know, to be hon -- but, you know, you

15   understand he's my attorney, and this is all --

16   anything I discussed with him, ever, including when I

17   met him or where I met him, is protected by

18   attorney-client privilege.   You can't ask me those

19   questions.

20      Q.   (BY MR. CHOUDHRI)   So are you going to refuse

21   to answer my question on when you met Mr. Ballases?

22      A.   Yes, I am.

23      Q.   Mr. Khawaja, are you aware -- let's --

24           MR. CHOUDHRI:   Steve, are you there?   Would

25   you pull up that proof of claim, Steve?



OMAR KHAWAJA                                September 11, 2024
TEXAS REIT LLC                                           146

1           MR. SATHER:  Just give me just a moment.  I

2     need to turn my sharing back on.

3           MR. CHOUDHRI:  No problem.

4           THE REPORTER:  And just while he's doing that,

5     Mr. Khawaja, could you spell Avondale for me, please?

6           THE WITNESS:  A-V-O-N-D-A-L-E.

7           THE REPORTER:  Thank you.

8           MR. SATHER:  Okay.  I'm there.

9           MR. CHOUDHRI:  Would you go down, Mr. Sather?

10    Just scroll down a little bit, please.  Keep going.

11    Go to paragraph 9.  Stop right there.

12        Q.   (BY MR. CHOUDHRI)  Mr. Khawaja, what does

13    Number 9 say on the proof of claim?

14        A.   9 --

15          MR. CHOUDHRI:  Time out.  Time out.  Before we

16    go there, Mr. Sather, would you scroll up just for a

17    second a little bit?  Stop right there.

18        Q.   (BY MR. CHOUDHRI)  Mr. Khawaja, what does that

19    captioning say?  It starts at "24-10120."  Would you

20    read that, please, into the record?

21        A.   24-1010 (sic), and this is at Number 4?  Oops.

22    Sorry.  One second here.

23          MR. BALLASES:  Steve, would you mind -- this

24    is Michael Ballases.  Will you make it bigger?  I

25    can't read it on the screen.  Please.



OMAR KHAWAJA                              September 11, 2024
TEXAS REIT LLC                                         147

```
 1        Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, my question is
 2   to you.
 3            MR. BALLASES:  Thank you.
 4            MR. CHOUDHRI:  Stop, please.
 5        Q.  (BY MR. CHOUDHRI)  What does it say?  Claim
 6   Number -- what exactly does that say?  Would you read
 7   that -- that entire header --
 8        A.  (Reading:)  Read the --
 9        Q.  -- into the record?
10        A.  (Reading:)  Read the instructions before
11   filling out this form.  This form is for making a --
12        Q.  No --
13        A.  (Reading:)  -- claim for payment in a
14   bankruptcy case --
15        Q.  No.
16        A.  Which one?
17        Q.  No, Mr. Khawaja.  No, Mr. Khawaja.  Look on
18   top where it says -- where it has a case number,
19   starts off with a case number.  And then --
20        A.  Yes.
21        Q.  -- that's what -- would you read what's
22   highlighted, Mr. Khawaja, into the record?
23        A.  Yeah, twenty -- okay.  (Reading:)
24   24-10120-smr, Claim Number 9-1, filed 06/04/24, Main
25   Document page 1 of 3.
```



1    Q.  Yes.  Is that what you authorized to be filed?

2    A.  Yes.

3         MR. BALLASES:  Objection.  Form.

4         MR. CHOUDHRI:  Scroll down, Mr. Sather.

5    Scroll down, Mr. Sather.  Okay.  Stop right there.

6    Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, what does it

7    say on paragraph 9?

8    A.  (Reading:)  Is all or part of the claim

9    secured?  Yes.  The claim is secured by a lien on

10   property.

11        Is that what you're referring to?

12   Q.  Yes.

13        MR. CHOUDHRI:  Stop right there.

14   Q.  (BY MR. CHOUDHRI)  So it's your contention

15   that your claim is secured by a lien on the property;

16   is that correct?

17   A.  I believe so, if that's what we filed.

18   Q.  Okay.  And you understand -- at least what

19   you're representing here is that a lis pendens is a

20   lien on property; correct?

21   A.  I'm assuming that's what we're referring to,

22   yes.

23   Q.  Okay.  Mr. Khawaja, you're familiar with the

24   property Texas REIT that --

25   A.  Yes.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

149

1   Q.  Let me strike that.  Let me strike that.  It's

2   a bad question.  Let me clear the record here.  Okay?

3        Mr. Khawaja, you're aware that debtor, Texas

4   REIT, LLC, is in the Western District of the

5   Bankruptcy Court.

6        MR. BALLASES:  Objection.  Form.

7   A.  I guess.  I mean, that's -- if that's where

8   you chose to file it.  I'm not sure.

9   Q.  (BY MR. CHOUDHRI)  You understand --

10  A.  The property's located here in Houston, Harris

11  County.

12  Q.  So my question, Mr. Khawaja, is that you are

13  aware that Texas REIT is the debtor that's in

14  bankruptcy in the Western District.

15  A.  Yes.

16  Q.  And Texas REIT owns a property.  Are you

17  familiar with the property that Texas REIT owns?

18  A.  Yes.

19  Q.  What do you know about the property that Texas

20  REIT owns?

21       MR. BALLASES:  Objection.  Form.

22  A.  That you have defrauded your partners out of

23  money in that property, that it's -- Walgreens left.

24  It's falling apart; a lot of homeless, a lot of crack

25  addicts in the area now.  It's not maintained



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
150

1  properly.  It's part of this case, that there's a

2  judgment against you on it, and it's basically -- and

3  it's in Houston, yeah.  It's in Houston, Texas, too.

4      Q.  Anything else that you want to add to it?

5      A.  No, that's it.

6      Q.  When did you become familiar with this

7  property?

8      A.  I think in the course of just monitoring

9  litigation against you.

10     Q.  And remind me what kind of lawyer you are,

11 Mr. Khawaja.

12         MR. BALLASES:  Objection.  Form.

13     A.  I do plaintiff's work.

14     Q.  (BY MR. CHOUDHRI)  Is that personal injury

15 mainly, what your --

16     A.  Yes.

17     Q.  -- focus is?

18     A.  Yes, correct.

19     Q.  Personal injury attorney?

20     A.  Yes, correct.

21         MR. BALLASES:  Objection.  Form.

22     Q.  (BY MR. CHOUDHRI)  And, Mr. Khawaja, so you

23 became familiar with this property through the course

24 of litigation, you said?

25     A.  Yes, just monitoring litigation.



OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                151

1       Q.  When did you first become familiar with this

2   property?

3       A.  I couldn't say --

4           MR. BALLASES:  Objection.  Form.

5       A.  I couldn't say when.

6       Q.  (BY MR. CHOUDHRI)  Were you involved in any

7   way, shape, or form of filing any lis pendenses (sic)

8   on this property?

9       A.  No.

10          MR. BALLASES:  Objection.  Form.

11      Q.  (BY MR. CHOUDHRI)  You've never been involved

12  of filing any lis pendenses on this property?

13      A.  You mean --

14          MR. BALLASES:  Objection.  Form.

15      A.  You mean other than the one that's in this --

16  or is part of the bankruptcy case?

17      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, my question is

18  very simple.  Are you or have you ever been involved

19  in filing, directly or indirectly, lis pendenses

20  against the property that the debtor owns?

21      A.  Not to my -- not to my understanding, no.

22          MR. BALLASES:  Objection.  Form.

23      A.  I'm not sure what that has to do with the

24  scope of this deposition either, by the way.

25      Q.  (BY MR. CHOUDHRI)  Do you know what a



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
152

1    bankruptcy stay is, Mr. Khawaja?  Do you know what an

2    automatic --

3         A.  Yes.

4         Q.  -- stay is?

5         A.  Yes.

6              THE REPORTER:  I'm sorry.  Do you know what

7    a --

8              MR. BALLASES:  Objection.  Form.

9              THE REPORTER:  -- what is?  I'm sorry.  Mr. --

10             MR. CHOUDHRI:  An automatic -- an automatic

11   stay.

12             THE REPORTER:  Okay.  Thank you.

13        A.  You have more experience than I do on that,

14   but I do know what it is, yes.

15        Q.  (BY MR. CHOUDHRI)  Have you violated any

16   automatic stays?

17             MR. BALLASES:  Objection.  Form.

18        A.  No, absolutely not.

19        Q.  (BY MR. CHOUDHRI)  Do you believe filing --

20   okay.  Who is Hira Azhar?

21             MR. BALLASES:  Objection.  Form.  And instruct

22   the client not to answer --

23             THE WITNESS:  (Unintelligible)

24             MR. BALLASES:  -- because it has nothing to

25   do --



1          A.   It's not --

2              MR. BALLASES:   -- with our proof of claim or

3     the withdrawal of it, and it exceeds the judge's

4     limitations on this depo.   So I'm going to object to

5     the question as harassing and oppressive and instruct

6     the client not to answer.

7              THE WITNESS:   Thank you.

8          Q.   (BY MR. CHOUDHRI)   Did you participate with

9     Hira Azhar of filing a lis pendens against the subject

10    property?

11             MR. BALLASES:   Same objection, same assertions

12    of privilege, same assertions of -- same objections

13    and same instruction not to answer.

14         Q.   (BY MR. CHOUDHRI)   You can answer,

15    Mr. Khawaja.   What's your answer?

16         A.   I will not answer on advice of counsel.

17         Q.   Are you aware of any lis pendenses filed by

18    Hira Azhar against the debtor's property?

19             MR. BALLASES:   Objection.   Same objections,

20    same assertions of privilege, same instruction not to

21    answer.   This has nothing to do with the proof of

22    claim in this matter or the reason for withdrawal.

23         A.   I'm not going to answer.

24         Q.   (BY MR. CHOUDHRI)   Mr. Khawaja, has it been

25    your motivation to prevent me or any of my entities



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
154

```
 1   from transacting business?
 2         MR. BALLASES:  Objection.  Form.
 3      A.  No.
 4      Q.  (BY MR. CHOUDHRI)  Is it your -- is it your
 5   habit to contact people that me or my entities are
 6   doing business with and tell them not to do business
 7   with me?
 8      A.  Never --
 9         MR. BALLASES:  Objection.  Form.
10      A.  Never done that.
11         MR. BALLASES:  Can we please ask questions
12   about the purpose for the deposition today, the reason
13   for the filing of the proof of claim and the reason
14   for the withdrawal, sir?
15         MR. CHOUDHRI:  Mr. Ballases, stop wasting
16   time.  Keep it to objections.
17      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, do you -- what
18   is your phone number?
19         MR. BALLASES:  Object -- don't answer that.
20   Objection --
21      Q.  (BY MR. CHOUDHRI)  Your cell --
22      A.  You know my number.  You've called me.
23         MR. BALLASES:  Objection.  Stop.  Stop.
24         I'm going to instruct you not to answer.  Your
25   cell phone is not relevant to this proceeding today.
```



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
155

1    You don't need to give it on the record.

2            It's oppressive -- objection of oppressive and

3    harassing.

4        Q.    (BY MR. CHOUDHRI)   Mr. Khawaja, are you not

5    gonna answer the question about what your cell phone

6    is on the record today --

7        A.    Correct.

8        Q.    You refuse to answer --

9        A.    Yeah, on advice of counsel --

10           THE REPORTER:   I'm sorry --

11       A.    On advice of counsel --

12           THE REPORTER:   Just --

13       A.    On advice of counsel --

14           THE REPORTER:   -- one person --

15           THE WITNESS:   Sorry.

16           THE REPORTER:   -- at a time, please.   Thank

17   you.

18           THE WITNESS:   On answering the question that

19   Mr. Choudhri just asked, on advice of counsel, I will

20   not answer that question.

21       Q.    (BY MR. CHOUDHRI)   Isn't it true that you've

22   been involved with over 50 lis pendenses relating to

23   Texas REIT or any other entity that I have ownership

24   or control of?

25       A.    No --



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
156

```
 1           MR. BALLASES:  Objection.  Form.

 2      A.  -- not true.

 3      Q.  (BY MR. CHOUDHRI)  You have not participated

 4  in any slander of title or fraudulent liens or

 5  lis pendenses on any properties that Texas REIT or I

 6  own or control.

 7           MR. BALLASES:  Objection.  Form.

 8      A.  Correct.

 9      Q.  (BY MR. CHOUDHRI)  You've not participated or

10  been involved with any filing of any lis pendenses

11  relating to the debtor's property.

12      A.  That's correct.

13           MR. BALLASES:  Objection.  Form.

14           Are you referring to -- aside from the lis

15  pendens filed --

16           MR. CHOUDHRI:  Sir -- no, Mr. Ballases.  Stop.

17  Stop.  Stop coaching the witness.

18           I'm going to object to you, your sidebar.

19           You're continually coaching the witness.

20  Please stop.

21      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, do you use --

22           MR. BALLASES:  (Unintelligible)

23      Q.  (BY MR. CHOUDHRI)  -- text messaging as a form

24  of communication --

25           (Crosstalk)
```



```
1            THE REPORTER:  Sorry.  I'm sorry.  I'm getting
2   two speakers again.
3            MR. BALLASES:  Sure.  I just -- I'm just
4   trying to help Mr. Choudhri answer questions --
5            MR. CHOUDHRI:  No, please don't help.
6            MR. BALLASES:  -- on our --
7            MR. CHOUDHRI:  Please don't help me.  I don't
8   need your help, Mr. Ballases.  Please stop talking.
9   Object and limit your objections.  Stop talking.
10           Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, do you use
11  text messaging as a form of communication?
12           MR. BALLASES:  Objection.  Form.
13           A.  Occasionally, sure.  I think we all do.
14           Q.  (BY MR. CHOUDHRI)  Have you texted Wayne
15  Dolcefino?
16           A.  No.
17           MR. BALLASES:  Objection.  Form.
18           Q.  (BY MR. CHOUDHRI)  Have you received any text
19  messages from Wayne Dolcefino?
20           A.  No.
21           MR. BALLASES:  Objection.  Form.
22           Q.  (BY MR. CHOUDHRI)  What's your answer,
23  Mr. Khawaja?
24           A.  No.
25           MR. BALLASES:  Objection.  Form.
```



1        Q.   (BY MR. CHOUDHRI)   Have you ever paid Wayne

2    Dolcefino directly or indirectly, in any way?

3             MR. BALLASES:   Objection.   Form.

4        A.   (Unintelligible) no.

5             MR. BALLASES:   I'm going to -- your answer is

6    what?

7             THE WITNESS:   My answer is no.

8             MR. BALLASES:   The answer is no, but I'm going

9    to instruct him not to answer any more questions that

10   have nothing to do with the scope and purpose of this

11   deposition pursuant to the judge's instruction.

12            MR. CHOUDHRI:   Stop frivolously objecting,

13   Mr. Ballases.   He said he learned based on Wayne

14   Dolcefino's videos, so I definitely have an

15   opportunity to get into the line of questions that I

16   need to get into, and you're going to continue to

17   object and instruct him not to answer.   Is that what

18   you're going to say on the record?

19            MR. BALLASES:   Objection.   Sidebar.

20       Q.   (BY MR. CHOUDHRI)   Mr. Khawaja, just so the

21   record is clear, you have not ever, in any way, shape

22   or form, paid Wayne Dolcefino any amount of money or

23   consideration?

24       A.   I'm not answering that question.

25            MR. BALLASES:   Objection.   Form.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
159

```
 1            I'm going to instruct the client --
 2            MR. CHOUDHRI:  I --
 3            MR. BALLASES:  -- not to answer because it is
 4   oppressive and harassing and has nothing to do with
 5   the limited scope of the deposition, and he's already
 6   answered it.
 7            Move along.
 8            Q.  (BY MR. CHOUDHRI)  Are you not going to answer
 9   any questions relating to Wayne Dolcefino?
10            A.  That means, yes.  I'm not going to answer any
11   questions relating to Wayne Dolcefino.  He has nothing
12   to do with this case at all.
13            Q.  Well, can I ask you why?  When Ms. Hood was
14   asking you, you mentioned that you -- you mentioned
15   Wayne Dolcefino and how you --
16            A.  He --
17            MR. BALLASES:  Objection.  Form.
18            (Crosstalk)
19            THE REPORTER:  I'm sorry.  One at a time,
20   please.
21            THE WITNESS:  I'm sorry.  Go ahead.
22            MR. BALLASES:  Objection.  Form, for the
23   record.
24            A.  Well, can I answer?  You asked very -- she
25   asked me very specifically where did I learn about the
```



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
160

1    potential for the claims that -- the basis of the

2    claims that we filed against you in this case, and I

3    answered, Through multiple sources, including Wayne

4    Dolcefino. That's a factual answer.

5         Q. (BY MR. CHOUDHRI) And have you paid Wayne

6    Dolcefino any amount of money --

7              MR. BALLASES: Objection. Form.

8         Q. (BY MR. CHOUDHRI) -- or consideration,

9    directly or indirectly --

10             (Crosstalk)

11             MR. BALLASES: -- (unintelligible) not to

12   answer your question.

13             MR. CHOUDHRI: Mr. Ballases --

14             THE REPORTER: I'm --

15             MR. CHOUDHRI: Mr. Ballases, would you please

16   let the court reporter take her turn -- please take

17   turns. When I'm asking the question, wait till my

18   question is over before you need to --

19             MR. BALLASES: So you've asked -- you've asked

20   this question three times, and he's answered it three

21   times. And all three times, I've told him -- I've

22   objected and told him not to answer. So you don't

23   need to ask it a fourth time.

24             It's on the record clear. I know you're not

25   an attorney, and you're not familiar with this, but



OMAR KHAWAJA
TEXAS REIT LLC

1       it's on the record and it's clear, I promise.  Move
2       along.
3              Q.  (BY MR. CHOUDHRI)  So the record is clear,
4       when I've asked you, Have you been -- have you paid
5       Wayne Dolcefino any amount of money, directly or
6       indirectly, for any consideration, your answer is:  I'm
7       not going to answer that question.  Is that -- is that
8       clear --
9              MR. BALLASES:  Objection --
10       Q.  (BY MR. CHOUDHRI)  -- for the record?
11             MR. BALLASES:  Objection.  Form.  I've --
12       A.  I'm not going to answer that question.
13             MR. BALLASES:  -- objected --
14       A.  I've already asked it -- answered.
15             MR. BALLASES:  -- to the form.  It's
16       oppressive and harassing.  The client's already
17       answered it.  I'm instructing him not to answer
18       because it's exceeding the scope of the deposition,
19       and it's oppressive and harassing, and it's asked and
20       answered.
21             Did you hear me, Mr. Choudhri?
22             MR. CHOUDHRI:  Mr. Ballases, throughout today,
23       you have been frustrating this deposition.
24             MR. BALLASES:  Objection.  Sidebar.
25             MR. CHOUDHRI:  You have been disrupting -- so



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
162

```
1    please refrain from your -- your sidebar and your
2    objections.  Limit to your objections as form.
3         Q.  (BY MR. CHOUDHRI)  So, Mr. Khawaja --
4              MR. BALLASES:  Objection.  Sidebar.
5         Q.  (BY MR. CHOUDHRI)  -- have you paid --
6    Mr. Khawaja, have you paid -- no, let me back up.
7              Mr. Khawaja, who is Wayne Dolcefino?  What
8    does he do?
9              MR. BALLASES:  Objection --
10        A.  I'm not going to answer these questions.
11             MR. BALLASES:  Objection.  Form.
12        A.  I'm sorry.  You've got to move on to the
13   claim -- claim questions, Ali, or we're gonna end
14   this.
15        Q.  (BY MR. CHOUDHRI)  So, Mr. Khawaja, are you
16   going to tell me that you're not going to describe --
17        A.  Yes.
18        Q.  -- who Wayne --
19        A.  I'm not going to.
20        Q.  -- Dolcefino is, and you're not --
21        A.  Correct.
22             MR. BALLASES:  Objection.  Form.
23             I'm going to instruct him not to answer
24   because your questions are oppressive and harassing,
25   and they exceed the scope of the limited deposition.
```



1       I'm instructing him not to answer.  I'm doing

2  it, Mr. Ballases.

3       Q.  (BY MR. CHOUDHRI)  Are you taking his

4  instructions and not answering any questions as it

5  relates to Wayne Dolcefino, Mr. Khawaja?

6       A.  Yes, sir.  Yes.  I'm not.  I will follow

7  advice of counsel.

8       Q.  Who is Chris Wyatt, Mr. Khawaja?

9       A.  Again, that has nothing to do with this case.

10      Q.  So Chris Wyatt has nothing to do with this

11  case.  So -- I want the record clear.

12      A.  I -- Chris Wyatt is a witness, and he is a --

13  he was your former chief financial officer, and that's

14  how I know him -- or chief operating officer.

15      Q.  Has he ever given you documents from the

16  Jetall server?

17      A.  From the Jetall server?  I don't -- I don't

18  know that.  I don't know the answer to that question.

19      Q.  Has Mr. Wyatt --

20      A.  I don't know what the Jetall server is.

21      Q.  Has Mr. Wyatt ever given you any documents?

22      A.  No.

23      Q.  Mr. Chris Wyatt has never given you any

24  documents; that's a true statement?

25      A.  I cannot discuss anything pertaining to Chris



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

164

1  Wyatt because of attorney-client privilege, so we're

2  not talking about Chris Wyatt.

3        Q.  What is the privilege, Mr. Khawaja, with you

4  and Chris Wyatt?

5        A.  Attorney-client privilege.

6        Q.  Is Chris Wyatt an attorney?

7        A.  No, no.  I'm the attorney; he's the client.

8  He sought counsel from me, which I provided,

9  pertaining to this case, and I will not discuss

10  anything further regarding him.

11        Q.  Pertaining to this case, the case we're here

12  for today.

13        A.  No, pertaining to other matters involving you

14  and him.

15        Q.  So Chris Wyatt is your client, is that

16  correct?

17        A.  Yes.

18            MR. BALLASES:  Objection --

19        Q.  (BY MR. CHOUDHRI)  And Hira Azhar is your

20  client, correct?

21        A.  Yes.

22        Q.  And Azeemah Zaheer is your client, correct?

23        A.  Yes.

24            MR. BALLASES:  Objection.  Form.

25        Q.  (BY MR. CHOUDHRI)  And Osama -- and Osama



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

165

1    Abdullatif is your client; correct?

2         A.   Yes.

3              MR. BALLASES:   Objection.   Form.

4         Q.   (BY MR. CHOUDHRI)   Is David Tang your client?

5         A.   No.

6              MR. BALLASES:   Objection.   Form.

7         A.   He's just a friend.

8         Q.   (BY MR. CHOUDHRI)   Is Rodney Drinnon your

9    client?

10             MR. BALLASES:   Objection.   Form.

11        A.   No.

12        Q.   (BY MR. CHOUDHRI)   Is Harold Polk --

13        A.   He's an attorney.

14        Q.   -- your client?  Is Harold Polk your client?

15             MR. BALLASES:   Objection.   Form.

16        A.   No, he's not.

17        Q.   (BY MR. CHOUDHRI)   Harold Polk is not your

18   client.

19        A.   Correct.

20             MR. BALLASES:   Objection.   Form.

21        Q.   (BY MR. CHOUDHRI)   How did you meet Chris

22   Wyatt?

23             MR. BALLASES:   Objection.   Form.

24        A.   Yeah, I can't talk about that.  I'm sorry.

25        Q.   (BY MR. CHOUDHRI)   Why can't you talk about



 1    how you met Chris Wyatt?

 2         A.   That's protected.

 3         Q.   By what?

 4         A.   Attorney-client privilege.

 5         Q.   Are you refusing to answer when you met Chris

 6    Wyatt?

 7         A.   Yes.

 8         Q.   When did the attorney-client privilege start

 9    with Chris Wyatt?

10              MR. BALLASES:  Objection.  Form.

11         A.   Since I met him.

12         Q.   (BY MR. CHOUDHRI)  And when did you meet him?

13              MR. BALLASES:  Objection.  Form.

14         A.   Sometime after he left your employment.

15         Q.   (BY MR. CHOUDHRI)  You never met him while he

16    was employed as a paralegal for me?

17         A.   No.

18              MR. BALLASES:  Objection.  Form.

19         Q.   (BY MR. CHOUDHRI)  You never saw him come to

20    court in the divorce case when you were representing

21    the -- Hira Azhar?

22              MR. BALLASES:  Objection.  Form.

23         A.   No, I didn't, actually, to be honest with you.

24    No.

25         Q.   (BY MR. CHOUDHRI)  And you're not aware that



OMAR KHAWAJA
TEXAS REIT LLC

1    Chris Wyatt worked on the case that Jetall has against

2    Khawaja?

3         A.  No --

4             MR. BALLASES:  Objection.  Form.

5         A.  I'm not aware of that.

6         Q.  (BY MR. CHOUDHRI)  You're not aware of that --

7         A.  If he --

8         Q.  -- is that correct?

9         A.  Correct.  If he did, he never discussed it

10   with me.

11        Q.  So you're not aware that Chris Wyatt did legal

12   work for me while he was employed for me.

13            MR. BALLASES:  Objection.  Form.

14        A.  No.

15        Q.  (BY MR. CHOUDHRI)  Isn't it true that Jetall

16   Companies has a judgment against Khawaja?

17            MR. BALLASES:  Objection.  Form.

18        A.  Against Khawaja, what does that mean?

19        Q.  (BY MR. CHOUDHRI)  Against Khawaja Partners.

20        A.  Possibly.

21            MR. BALLASES:  Objection.  Form.

22        Q.  (BY MR. CHOUDHRI)  And that judgment has not

23   been appealed and not been superceded.

24        A.  Yes.

25        Q.  Is that one --



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
168

1          MR. BALLASES:  Objection.  Form.

2      Q.  (BY MR. CHOUDHRI)  -- of your motivations,

3  Mr. Khawaja?

4          MR. BALLASES:  Objection.  Form.

5      A.  No.

6      Q.  (BY MR. CHOUDHRI)  So Jetall owns an asset --

7  Jetall Companies owns an asset, and that's a judgment

8  against Khawaja Partners, correct?

9          MR. BALLASES:  Objection.  Form.

10     A.  I don't know if Jetall owns an asset or --

11  Jetall doesn't seem to be doing too well right now.

12     Q.  (BY MR. CHOUDHRI)  And how do you know that?

13         MR. BALLASES:  Objection.  Form.

14     A.  I mean, there was a great article about you

15  the other day in The Real Deal.  I don't know if you

16  saw that.

17     Q.  (BY MR. CHOUDHRI)  Have you spoken to The Real

18  Deal?

19     A.  I haven't --

20         MR. BALLASES:  Objection.  Form.

21     A.  -- but I read that article.

22         THE REPORTER:  Sorry --

23     A.  It's not a good look.

24     Q.  (BY MR. CHOUDHRI)  You haven't spoken --

25         THE REPORTER:  Sorry.  Sorry.  Just one at a



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
169

1    time, please.  Thank you.

2        A.  I haven't, no.

3        Q.  (BY MR. CHOUDHRI)  Has anybody on your behalf,

4    indirectly or directly, spoken to The Real Deal?

5            MR. BALLASES:  Objection.  Form.

6        A.  No, but a lot of people sent me that article,

7    like real estate -- people in real estate, legal.  A

8    lot of people sent it to me.

9        Q.  (BY MR. CHOUDHRI)  And Chris Wyatt testified

10   at the that hearing; correct?

11           MR. BALLASES:  Objection.  Form.

12       A.  I don't --

13           MR. BALLASES:  What hearing are you talking

14   about, sir?  I mean, come on.

15           MR. CHOUDHRI:  Mr. Ballases --

16       A.  You're all over the place.

17           MR. CHOUDHRI:  -- can you --

18       Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, The Real Deal

19   quotes an order and mentions Chris Wyatt.

20           MR. BALLASES:  Objection.  Form.

21       A.  Okay.  Anything else you want to share with me

22   about the article?  I mean, that's fine.

23       Q.  (BY MR. CHOUDHRI)  And so have you paid Chris

24   Wyatt any money?

25       A.  No.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

170

```
1              MR. BALLASES:  Objection.  Form.
2         Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, you had
3    mentioned that you're in the business of buying
4    judgments.  Do you recall that line of testimony
5    earlier?
6         A.  Yes.
7         Q.  And you've bought less than ten judgments; is
8    that correct?
9         A.  I think so.
10         Q.  And your answers earlier were -- and I just
11    want to make sure the record is clear --
12              MR. BALLASES:  Objection.  Sidebar.
13         Q.  (BY MR. CHOUDHRI)  -- that the only --
14    Mr. Khawaja, are you done looking at your phone?
15         A.  Yes.  Sorry.  Go ahead.
16              MR. CHOUDHRI:  Just for the record, throughout
17    the deposition, Mr. Khawaja has been continuing to
18    look at his phone and make communications with other
19    people in the room and has constantly looked at his
20    phone throughout the entire duration of this
21    deposition.
22         Q.  (BY MR. CHOUDHRI)  So, Mr. Khawaja, I just ask
23    you to please refrain from looking at your phone.
24    Okay?
25              MR. BALLASES:  Objection.  Sidebar.
```



OMAR KHAWAJA                                        September 11, 2024
TEXAS REIT LLC                                                      171

1          Don't instruct my client anything, and you are

2    incorrect with your assertions.

3          MR. CHOUDHRI:  Mr. Ballases, please stop

4    talking.

5          Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, can you please

6    stop looking at your phone?

7          MR. BALLASES:  Objection.  Sidebar.

8          A.  I've got a sick relative in the hospital right

9    now.  That's what I'm worried about, so --

10         Q.  (BY MR. CHOUDHRI)  Well, I'm sorry about your

11   relative.  I hope they get better.

12         Mr. Khawaja, which judgments -- strike that.

13         Mr. Khawaja, it's your contention that any

14   entity that I -- at least if I heard your testimony

15   correctly earlier, that any entity that Ali Choudhri

16   has ownership or control in is an alter ego.  Is that

17   your contention --

18         A.  Of Ali --

19         Q.  -- Mr. Khawaja?

20         A.  Yes, it is.

21         MR. BALLASES:  Objection.  Form.

22         Q.  (BY MR. CHOUDHRI)  So any entity that Ali

23   Choudhri has any ownership or control of is an alter

24   ego of Ali Choudhri, correct?

25         A.  I believe that -- I believe that to be the



OMAR KHAWAJA
TEXAS REIT LLC

1   case, yes.

2          MR. BALLASES:  Objection.  Form.

3       Q.  (BY MR. CHOUDHRI)  Okay.  Mr. Khawaja, which

4   judgments have you acquired?

5          MR. BALLASES:  Objection.  Form.

6       A.  You mean other than yours?  Other than the

7   Jetall judgments?

8       Q.  (BY MR. CHOUDHRI)  Again, Mr. Khawaja --

9       A.  Are you there?

10       Q.  -- I believe your answers earlier were that

11   you have not acquired any judgments other than

12   judgments relating to Jetall or Ali Choudhri.

13       A.  I think that's --

14       Q.  Is that true?

15       A.  -- correct.  That's true.

16          MR. BALLASES:  Objection.  Form.

17       Q.  (BY MR. CHOUDHRI)  So what I want to do is I

18   want to go down, because your contention is Texas REIT

19   is an alter ego of Ali Choudhri; correct?

20       A.  Yes.

21          MR. BALLASES:  Objection.  Form.

22       Q.  (BY MR. CHOUDHRI)  So basically what you're

23   saying is any obligations of Ali Choudhri or any of

24   Ali Choudhri's entities are the obligations of Texas

25   REIT; is that correct?



OMAR KHAWAJA                                         September 11, 2024
TEXAS REIT LLC                                                      173

1          A.  Yes.  That's correct, yes.

2          Q.  So it's just basically one big pot.

3          A.  That's the way you've treated them, yes.

4          Q.  And that's your contention, and that's the --

5          A.  I believe the evidence will show that.  Yes.

6          Q.  And outside what's in your pleading, you don't

7    have any other evidence that --

8               MR. BALLASES:  Objection.  Form.

9          A.  Well, we've got to do discovery -- we have to

10   do discovery, sir, which you're obstructing, but yes.

11         Q.  (BY MR. CHOUDHRI)  Okay.  So the record is

12   clear, outside your pleading, there's no other

13   evidence other than the discovery you're yet to do.

14              MR. BALLASES:  Objection.  Form.

15         Q.  (BY MR. CHOUDHRI)  Is that correct?

16         A.  We're in the -- we're in the middle of

17   discovery.

18              MR. BALLASES:  Objection.  Form.

19         Q.  (BY MR. CHOUDHRI)  Is that correct?

20              MR. BALLASES:  Objection.  Form.

21         A.  Outside the pleading?  The pleading contains a

22   lot of evidence.  I don't know if you've seen the

23   attachments or not, but there's a lot.  There's a lot

24   more that will have to be done.

25         Q.  (BY MR. CHOUDHRI)  And so you're refusing to



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
174

1    answer any questions relating to Chris Wyatt; correct?

2        A.  Yes.

3            MR. BALLASES:   Objection.   Form.

4        A.  That's -- that encompasses attorney-client

5    privilege.  Correct.

6        Q.  (BY MR. CHOUDHRI)  So anything I would ask you

7    today about Chris Wyatt, you would refuse to answer.

8        A.  That's correct.

9            MR. BALLASES:  Objection.  Form.

10       Q.  (BY MR. CHOUDHRI)  Who drafted the affidavit

11   that was attached to the petition that's attached to

12   this proof of claim that Chris Wyatt signed?

13           MR. BALLASES:  Objection.  Form.

14       A.  I have no idea.

15       Q.  (BY MR. CHOUDHRI)  You don't know --

16       A.  It wasn't me.

17       Q.  -- who drafted -- it wasn't you.  Was it

18   Mr. Ballases?

19           MR. BALLASES:  Objection.  Form.

20           Instructing not to answer.  It violates

21   attorney work product, attorney-client privilege.

22       A.  I'm not answering on advice of counsel.

23       Q.  (BY MR. CHOUDHRI)  Does Mr. Ballases or Hoover

24   Slovacek represent Chris Wyatt?

25       A.  I don't think so.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
175

1        Q.    Does Ashish Mahendru represent Chris Wyatt?

2              MR. BALLASES:  Objection.  Form.

3        A.    I don't know.  I mean, ask Ashish.

4        Q.    (BY MR. CHOUDHRI)  Did you refer Chris Wyatt

5   to Ashish Mahendru?

6              MR. BALLASES:  Objection.  Form.

7        A.    I mean, again, I just told you I'm not

8   answering any questions about Chris Wyatt.

9        Q.    (BY MR. CHOUDHRI)  So can you explain to me

10  why the adversary where you claim alter ego and

11  fraudulent transfer has an attachment of Chris Wyatt

12  as a declaration?

13       A.    I mean, he had some evidence that you are an

14  alter ego, that you have alter egos that operate under

15  you, so he provided it.  It's evidence.

16       Q.    Do you hold any -- do you hold any contingency

17  claims or rights of any adverse parties to Ali

18  Choudhri or any of his related entities?

19             MR. BALLASES:  Objection.  Form.

20       A.    Do I hold any -- I mean, if I did, it's

21  attorney-client privilege, so I'm not answering that.

22       Q.    (BY MR. CHOUDHRI)  So any contingency claims

23  you hold against --

24       A.    Right.

25       Q.    -- Texas REIT or any other entity --



OMAR KHAWAJA
TEXAS REIT LLC

1      A.  Yes.

2      Q.  -- or party relating to Ali Choudhri is --

3  you're not going to answer because it's

4  attorney-client privilege?

5      A.  Yes.

6      MR. BALLASES:  Objection.  Form.

7      A.  And outside the scope of what you're allowed

8  to ask me about.

9      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, do you have

10  surveillance on me or any of my entities or companies?

11      MR. BALLASES:  Objection.  Form.

12      I'm going to instruct you not to answer.  It's

13  harassing and oppressive.  It has nothing to do with

14  the limited scope of this deposition.

15      A.  I'm not answering that.

16      Q.  (BY MR. CHOUDHRI)  Do you have any agreement

17  with George Lee?

18      MR. BALLASES:  Objection.  Form.

19      A.  I don't.

20      MR. BALLASES:  It's not relevant to the

21  limited scope of this deposition; therefore, I'm going

22  to instruct him not to answer.

23      A.  I should be asking you that question.  It's

24  gonna come up in trial.

25      Q.  (BY MR. CHOUDHRI)  Do you have any text



1   messages between you and George Lee?

2          MR. BALLASES:  Object --

3      A.  No --

4          MR. BALLASES:  Objection.  Form.

5      A.  -- I'm not gonna talk about that.

6          MR. BALLASES:  And I'm going to instruct

7   him not to --

8      A.  It has nothing to do with this.

9          MR. BALLASES:  I'm going to instruct you not

10  to answer.  It violates the scope of this deposition

11  that the judge indicated.  It's harassing and

12  oppressive.  This isn't a free-for-all discovery.

13         THE WITNESS:  Yeah.

14         MR. BALLASES:  It's just about why the proof

15  of claim was filed or why it's being withdrawn.

16     Q.  (BY MR. CHOUDHRI)  So is it your contention

17  that you have information you've received from Chris

18  Wyatt that has to do with the basis of your claim?

19         MR. BALLASES:  Objection.  Form.

20     A.  I mean, he provided an affidavit in this case,

21  so...

22     Q.  (BY MR. CHOUDHRI)  So again, when did he

23  become your client, and when did you establish that

24  attorney-client privilege?

25         MR. BALLASES:  Objection.  Form.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
178

1         A.   I'm not sure when.

2         Q.   (BY MR. CHOUDHRI)  Do you have text messages

3    between you and Chris Wyatt?

4         MR. BALLASES:  Objection.  Form.

5         A.   I mean, if I did, I wouldn't disclose them to

6    you, and nor would a court compel me to.  It's

7    attorney-client privilege.

8         Q.   (BY MR. CHOUDHRI)  Well, here's the thing,

9    Mr. Khawaja.  Here's the thing.  There's something

10   called a privilege log, right?  I'm entitled to know

11   if you have communications.  I'm not asking you --

12        MR. BALLASES:  Objection.  Sidebar.

13        Q.   (BY MR. CHOUDHRI)  -- about the content of

14   your communications.

15        MR. CHOUDHRI:  Mr. Ballases, please stop

16   interrupting.

17        Q.   (BY MR. CHOUDHRI)  Mr. Khawaja, I'm not asking

18   you about the contents of your --

19        MR. BALLASES:  (Unintelligible)

20        Q.   (BY MR. CHOUDHRI)  Let me finish my question

21   before you answer.  Okay?

22        I'm asking you not about -- so we're very

23   clear, I'm not eliciting or asking you for privileged

24   information.  I'm asking you if there are

25   communications, not the contents.  Do you have --



OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                  179

1          A.  Even if it existed --

2          Q.  -- communications with Chris -- can I finish?

3          Do you have communications with Chris Wyatt,

4    yes or no?

5          MR. BALLASES:  Objection.  Form.

6          A.  Even if it existed, I would not disclose that

7    to you, nor would I be compelled to, nor is it a part

8    of this case.

9          Q.  (BY MR. CHOUDHRI)  So why are you adding the

10   declaration of Chris Wyatt as a part of this case?

11         MR. BALLASES:  Objection.  Form.

12         A.  It's evidence.

13         Q.  (BY MR. CHOUDHRI)  Well, do you understand

14   what a sword --

15         A.  It's evidence of the alter (unintelligible).

16         Q.  -- and shield is?

17         THE REPORTER:  I'm sorry --

18         Q.  (BY MR. CHOUDHRI)  It's evidence of the alter

19   ego?

20         I'm sorry.  Finish your question -- your

21   answer, Mr. Khawaja.  It's --

22         A.  It's evidence --

23         Q.  -- evidence of what?

24         A.  -- of the alter ego.  It's evidence of the

25   alter ego.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

180

1          Q.  So Chris Wyatt has evidence of the alter ego.

2    That's your answer?

3          A.  Yes.

4          Q.  And you're refusing to answer any questions

5    about Chris Wyatt.

6          A.  I'm not gonna talk about any attorney-client

7    privileged communications.  Correct.

8          Q.  So do you have any communications with Chris

9    Wyatt, yes or no?

10              MR. BALLASES:  Objection.  Form.

11          A.  I'm not gonna talk about it.

12              MR. BALLASES:  Objection.  Form.

13              MR. CHOUDHRI:  Mr. Ballases, being emphatic on

14    your objection doesn't change the objection.

15          Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

16              MR. BALLASES:  Objection.  Sidebar.

17          Q.  (BY MR. CHOUDHRI)  -- are you refusing to --

18    are you refusing to answer the mere fact that

19    communications exist between you and Chris Wyatt?

20              MR. BALLASES:  Objection.  Form.

21          A.  I'm telling you that if they do exist -- I'm

22    not confirming that they do or don't, but they would

23    be privileged.  That's it.  And this is not the

24    case --

25          Q.  (BY MR. CHOUDHRI)  So how did --



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
181

```
 1        A.   This is not the case that you're going to get
 2   any of that information.
 3        Q.   Now, you'll agree with me that Chris Wyatt --
 4   that in your petition in adversary that you've
 5   attached to this proof of claim, you've attached a
 6   declaration of Chris Wyatt, true or false?
 7        A.   True.
 8        Q.   And you're refusing to provide me any
 9   communications or the fact that any communications
10   even exist between you and Chris Wyatt, true?
11             MR. BALLASES:  Objection.  Form.
12        A.   True.
13        Q.   (BY MR. CHOUDHRI)  Mr. Khawaja, would you
14   please stop looking at your phone?
15        A.   I'm not looking at my phone.  I'm looking at
16   the petition that you just asked me about, the
17   adversary.
18             MR. BALLASES:  Objection.  Sidebar.
19             Don't instruct my client again.
20        A.   This is the adversary petition I'm reading.
21        Q.   (BY MR. CHOUDHRI)  Mr. Khawaja, what
22   contingency claims, if any, do you hold, indirectly or
23   directly, against me or any of my entities?
24             MR. BALLASES:  Objection.  Form.
25        A.   Outside the scope of this discussion.  I'm not
```



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
182

1   answering.

2        Q.   (BY MR. CHOUDHRI)   So, Mr. Khawaja, it's your

3   contention that Texas REIT is an alter ego of every

4   one of those entities that I have interest in;

5   correct?  That's your contention.

6        MR. BALLASES:  Objection.  Form.

7        Q.   (BY MR. CHOUDHRI)  You're refusing to answer

8   what claims -- so is your statement or answer here,

9   under oath, that you're refusing to answer what

10  motivations and rights or claims or contingencies you

11  have against Texas REIT?  Now, when I --

12       MR. BALLASES:  Objection.  Form.

13       Q.   (BY MR. CHOUDHRI)  -- say "Texas REIT," that

14  applies to any and all entities that I have ownership

15  in, directly or indirectly; correct?

16       A.  Yes, based on alter ego.  Yeah, I'm not gonna

17  give you any -- whether I have any contingency-related

18  litigation against you on that.  If I do, you'll find

19  out about it at some point.

20       Q.  So you're refusing to disclose any claims you

21  have against the debtor.

22       MR. BALLASES:  Objection.  Form.

23       A.  Any claims I have against the debtor?  I don't

24  have any claims against the debtor other than the ones

25  I presented in this case.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

183

1      Q.   (BY MR. CHOUDHRI)   So when you have

2   contingencies or claims against me, under your theory,

3   those would be claims against the debtor as well.

4           MR. BALLASES:   Objection.   Form.

5      A.   I don't know about that.

6      Q.   (BY MR. CHOUDHRI)   Do you use WhatsApp?

7      A.   Yes.

8           MR. BALLASES:   Objection.   Form.

9      Q.   (BY MR. CHOUDHRI)   Have you communicated --

10     A.   We're in some group -- we're in some groups

11   together on WhatsApp, I think.   Yes.

12     Q.   Mr. Khawaja, did you come to me for a job?

13          MR. BALLASES:   Objection.   Form.

14     A.   A job?   I'm not talking about that, no.

15     Q.   (BY MR. CHOUDHRI)   You never came to me for a

16   job.

17     A.   No.   Look, that's outside the scope of this

18   conversation.

19          MR. CHOUDHRI:   Mr. Osama Abdullatif needs to

20   stop talking in the background and coaching the

21   witness.

22          MR. BALLASES:   Objection.   Sidebar.

23          MR. CHOUDHRI:   Mr. Ballases, please stop.

24   Control Mr. Osama --

25          MR. BALLASES:   Objection.   Sidebar.



OMAR KHAWAJA                          September 11, 2024
TEXAS REIT LLC                                      184

```
 1          MR. CHOUDHRI:  -- (unintelligible) your

 2   witnesses.

 3          Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

 4          MR. BALLASES:  Objection.  Sidebar.

 5          Q.  (BY MR. CHOUDHRI)  -- would you mind sharing

 6   the camera around your office there?

 7          A.  We're not gonna do that.

 8          Q.  You're not gonna do that?  Okay.  You're

 9   refusing to do that.

10          MR. BALLASES:  Objection.  Sidebar.

11          Objection.  Form.

12          Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, did you ever

13   seek employment from Jetall Companies?

14          MR. BALLASES:  Objection.  Form.

15          I'm going to instruct the client not to

16   answer.  It's harassing and oppressive.  It exceeds

17   the limited scope of this deposition per the judge's

18   instructions.

19          Stop wasting time, sir.

20          Q.  (BY MR. CHOUDHRI)  You can answer,

21   Mr. Khawaja.

22          A.  On advice of counsel, I'm not gonna answer

23   that question.  Sorry.

24          Q.  Are you upset at Jetall Companies in any way,

25   shape, or form?
```



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

185

1     A.  No.

2     Q.  Are you upset at Ali Choudhri in any shape,

3  way, or form?

4     A.  I mean, I want the money that I'm owed.  Just

5  pay me the money that you owe.  This will -- this will

6  go away.  It's nothing personal.

7     Q.  And how much money would it take to make this

8  go away?

9     MR. BALLASES:  Objection.  Form.

10    We're not -- I'm going to instruct my client

11  not to answer.  It has nothing do with the limited

12  scope of this deposition and exceeds what the judge's

13  orders were.

14    Q.  (BY MR. CHOUDHRI)  Are you going to answer the

15  question, Mr. Khawaja?

16    A.  I'm gonna follow the advice of counsel and not

17  answer.

18    Q.  So you say this is about money; Just pay me

19  the money you owe me, and I'll go away.  But you won't

20  tell me what that amount is.  Is that your answer?

21    MR. BALLASES:  Objection.  Form.

22    A.  Yeah, we're not --

23    MR. CHOUDHRI:  Is Osama Abdullatif --

24    A.  -- in a settlement --

25    Q.  (BY MR. CHOUDHRI)  No, this is not a



1   settlement.  I'm asking you -- again, this is not

2   settlement discussion.  This is a deposition under

3   oath on the record.

4        I'm asking you a follow-up to your answer that

5   this is not personal; it's about money.  That's all

6   you want.  You want money, and you'll go away.  That's

7   what you said.  Did I hear -- did I hear your

8   answer --

9        MR. BALLASES:  Objection --

10   Q.  (BY MR. CHOUDHRI)  -- incorrectly, or do we

11  need the court reporter to repeat your answer?

12        MR. BALLASES:  Objection.  Form.

13        Objection.  Sidebar.

14   Q.  (BY MR. CHOUDHRI)  Are you answering the

15  question --

16   A.  You need to move along, sir.  I'm not going to

17  answer that question.

18        MR. CHOUDHRI:  Ms. Court Reporter, would you

19  read back his statement or his answer earlier:  This

20  is not personal; it's just money; if you pay me the

21  money you owe me, I'll go away.

22        Would you read that back into the record so

23  it's clear?  There's been a lot of objections, and

24  I've been distracted.

25        THE REPORTER:  I'll need a minute to go



1  through and find that answer.

2          MR. CHOUDHRI:  Take your time.  No problem.

3          Mr. Khawaja is not on the screen any longer,

4  for the record.

5          MR. BALLASES:  Yeah, he is.

6          MR. CHOUDHRI:  Mr. --

7          THE REPORTER:  Sorry.  Just off the record.  I

8  just need to go off the record because I can't type

9  and look for the testimony at the same time.

10          MR. CHOUDHRI:  So why don't we take a five --

11          THE WITNESS:  Can you see me?

12          MR. CHOUDHRI:  I'll tell you what.  Why don't

13  we do this, Ms. Court Reporter.  It looks like we've

14  been going for a little bit here.  So it's 2:42.  Why

15  don't we come back in 15 minutes at 3:00.

16          MR. BALLASES:  No, we'll take a five-minute

17  break.

18          THE WITNESS:  We'll take a five-minute break,

19  and that's it.  We're done.

20          MR. CHOUDHRI:  Again, Mr. Khawaja, this is my

21  deposition.  I get to ask questions.  And with all due

22  respect, you really don't dictate the -- but if you

23  need to take a break, I'm happy to let you take a

24  break --

25          THE WITNESS:  I'll take a five-minute break,



1    and that's it.

2              No?  Okay.  No, we don't need a break.  Thank

3    you.

4              MR. CHOUDHRI:  So, Court Reporter, while

5    you're looking for the answer, let's go and take a

6    five-minute break.  We'll come back in five minutes.

7    We're off the record.

8              (A recess was taken.)

9              THE REPORTER:  So we are back on the record.

10   And I just please ask everybody, in order to keep the

11   record clear, please, one speaker at a time.

12             And, Mr. Khawaja, if your counsel does have an

13   objection, just please allow him to make the objection

14   and then answer afterwards, just so I don't have both

15   of you speaking.  Thank you.

16             THE WITNESS:  All right.  Thank you.

17             MR. BALLASES:  So just for the record,

18   Ms. Court Reporter, we've looked at the live schedule

19   that was filed by the debtor under declaration of

20   penalty and was signed by Mr. Ali Choudhri, and it

21   does not list Mr. Choudhri as a debtor anywhere on

22   here, and therefore -- or excuse me -- as a creditor

23   anywhere on here.  And so, therefore, him not being a

24   creditor based upon his own sworn document, he has no

25   legal basis to continue to ask questions here today.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
189

1       So I'd like to have -- if Ms. Hood or

2   Mr. Sather have any more questions, I'd like to finish

3   it up.  Mr. Khawaja does have to go because he has a

4   relative who is probably passing away relatively soon

5   in the hospital.  We can then move on --

6           MR. CHOUDHRI:  So --

7           MR. BALLASES:  -- with the next deponents.

8           MS. HOOD:  So --

9           MR. CHOUDHRI:  So, Mr. Ballases --

10  Mr. Ballases, this is my deposition.  If you want --

11  if there is a life/death situation, I'm not -- I'm

12  happy to work with you and Mr. Khawaja on schedules.

13  I have no problem doing that.  Family's important.  So

14  if we need to reset this deposition to tomorrow or

15  another day, I'm happy to accommodate that.

16          But what I don't want to do is have you

17  control the deposition and who can ask questions and

18  who can't, because I'm in the middle of my questioning

19  of Mr. Ballases (sic).  So --

20          MR. BALLASES:  Okay.  So --

21          MR. CHOUDHRI:  -- let's continue on with the

22  questions.

23      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, are you ready

24  to answer more questions?

25          THE WITNESS:  What do you think, Michael?



1    MR. BALLASES:  It's up to you.  If you've got

2    to go to the hospital, then --

3        A.   Okay.  I can go for a little bit longer.

4        MR. CHOUDHRI:  Okay.  Madam Court Reporter,

5    would you please read the answer back while we took a

6    break?

7        THE REPORTER:  Okay.  One second.  Okay.  So

8    the question and answer was (Reading:)  Question:  Are

9    you upset at Ali Choudhri in any way, shape, or form?

10       Answer:  I mean, I want the money that I'm

11   owed.  Just pay me the money that you owe.  This will

12   go away.  It's nothing personal.

13       Q.   (BY MR. CHOUDHRI)  Mr. Khawaja, did she read

14   your answer correctly and accurately?

15       A.   Yes.

16       Q.   And so to follow up on that answer, what is

17   the amount of the money that you claim you're owed?

18       A.   Well, there's a certain amount of -- there's a

19   certain amount that's claimed in the judgment that

20   probably has gone up since we filed it.  And, you

21   know, you can go through that.  Your attorney can

22   discuss that with my attorney if you want to make an

23   offer.  Someone will --

24       Q.   I'm not asking about a settlement,

25   Mr. Khawaja.  I'm just asking about how much money

1   you're owed, because I can go to the oral ruling

2   that -- from Judge Robinson about how you came up with

3   the number, how you calculated it, and what that

4   number is.  And that's what we're here today to ask

5   you questions about on your proof of claim.

6          So you said, Owe me -- pay me the money you

7   owe, so my question is --

8       A.   Right.

9       Q.   -- what are you claiming you're owed?

10      A.   Do you have a copy of the adversary?

11      Q.   Go ahead, Mr. Khawaja.  What is the amount of

12   money you're owed?  That's my question.  Do you know?

13      A.   Yeah, it's somewhere north of $500,000.  Give

14   me one second here.

15          The total amount is $4,847,894.68.

16      Q.   I'm sorry.  Would you repeat that again?  The

17   total amount that you're owed is what?

18      A.   $4,847,894.68.

19      Q.   Sorry.  There's somebody talking in the

20   background.  I think Osama's helping you and talking,

21   so --

22          MR. BALLASES:  Objection.  Sidebar.

23      Q.  (BY MR. CHOUDHRI)  So what is the total amount

24   that you need to be paid so you can go away?

25          MR. BALLASES:  Objection.  Form.



OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                              192

1        A.   $4,847,894.68.

2        Q.   (BY MR. CHOUDHRI)  Okay.  Thank you for your

3   answer, Mr. Khawaja.

4             And you stand behind that number as being

5   truthful, accurate with all lawful offsets?

6        A.   I mean, I don't -- I don't know what that

7   means, but yeah, it's truthful, for sure.

8        Q.   Okay.

9        A.   There are no offsets.

10       Q.   There are no offsets?

11       A.   No.

12       Q.   Is that what you said?

13            Okay.  So there are no offsets; is that

14   correct?

15       A.   That's correct.

16       Q.   Okay.  Mr. Khawaja, is that the basis of -- so

17   let me just kind of set the table for a second.

18            So we said this earlier, and I just want to

19   make sure that I don't have to go through a list of,

20   you know, all these entities and all these other

21   parties.

22            So when we talk about Texas REIT, when you

23   answer the question that -- against Texas REIT, your

24   position is that any entity that I have ownership,

25   directly in or indirectly, is an alter ego of Texas



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

193

1    REIT; correct?

2              MR. BALLASES:  Objection.  Form.

3         A.   Alter ego of Ali Choudhri.  Yes.

4         Q.   (BY MR. CHOUDHRI)  Okay.  So --

5         A.   And Jetall Companies.

6         Q.   -- that's the basis?

7              THE REPORTER:  I'm sorry?

8         Q.   (BY MR. CHOUDHRI)  And Jetall.  So when the --

9              THE REPORTER:  And who?  Sorry.

10             THE WITNESS:  Sorry.  Of Ali Choudhri and

11   Jetall Companies.

12             THE REPORTER:  Thank you.

13        Q.   (BY MR. CHOUDHRI)  And so that is the basis of

14   several lis pendenses that have been filed; is that

15   correct?

16        A.   I don't know about several.  There's one

17   that's filed in this case.

18        Q.   Well, if you contend that any and all

19   liabilities and assets of Texas REIT's are alter egos

20   of Ali Choudhri, you have -- in this adversary that is

21   the basis of your proof of claim -- back up.

22             This proof -- the adversary is the basis of

23   your proof of claim; correct?

24        A.   Yes.

25        Q.   So in that adversary, you have filed many lis



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

194

1    pendenses on various properties, true or false?

2         A.   Yes.

3         Q.   And what real property interest do you contend

4    that you own in any of these properties?

5         A.   We're a judgment creditor.  So if you own it,

6    we own it.

7         Q.   So it's your contention that -- again, I just

8    want to get the whole scope here.  It's your

9    contention that, based on the fact that you're a

10   judgment creditor, you have real property interest in

11   all these various properties, true or false?

12        A.   Yes.

13        Q.   Is that true?

14        A.   True.

15        Q.   Outside of that, do you have any other real

16   property interest that you contend you own in any of

17   these properties?

18        A.   No.

19        Q.   And do you know where I live?

20             MR. BALLASES:  Objection.  Form.

21        A.   I think you live in 9201 Arabella.

22        Q.   (BY MR. CHOUDHRI)  9201 Arabella?

23             MR. BALLASES:  Objection.  Form.

24        A.   Let me see here.  Ninety -- sorry -- 9201.

25   You live at Arabella PH, whatever property Arabella PH



1   3201, LLC, owns.  At the Arabella, I think, unless you

2   moved.

3        Q.  (BY MR. CHOUDHRI)  And you have knowledge that

4   I've lived there for how long?

5        MR. BALLASES:  Objection.  Form.

6        A.  I mean, I guess at least a few years.  Maybe

7   two.

8        Q.  (BY MR. CHOUDHRI)  And are you aware that --

9        A.  You sold your house and then -- I think so.  I

10   mean, look, I -- I'm not sure, to be honest with you.

11   I think you live there.  I can find out if you want me

12   to.

13        Q.  So you said I sold my house?

14        MR. BALLASES:  Ali, can -- Mr. Choudhri, can

15   you put yourself on the screen again so we know it's

16   you asking questions?

17        Q.  (BY MR. CHOUDHRI)  So you said --

18        MR. BALLASES:  Thank you.

19        Q.  (BY MR. CHOUDHRI)  -- I sold my house,

20   Mr. Khawaja, that you know I sold my house?

21        A.  Yeah.

22        MR. BALLASES:  Objection.  Form.

23        A.  You sold the River Oaks house; right?

24        Q.  (BY MR. CHOUDHRI)  I'm asking you,

25   Mr. Khawaja.  You said I sold my house.  What do you

```
 1   mean by that?

 2        A.   Yes.   I think you sold your River --

 3             MR. BALLASES:   Objection.   Form.

 4        A.   I think you sold the River Oaks house, and

 5   then you moved.

 6        Q.   (BY MR. CHOUDHRI)   And how do you know that?

 7             MR. BALLASES:   Objection.   Form.

 8        A.   I think -- I mean, that's just -- that's the

 9   rumors.

10        Q.   (BY MR. CHOUDHRI)   And who told you that?

11             MR. BALLASES:   Objection.   Form.

12        A.   I think it was in The Real Deal.

13        Q.   (BY MR. CHOUDHRI)   Is that where you -- are

14   you saying that's where you know about it?

15        A.   Possibly.

16             MR. BALLASES:   Objection.   Form.

17        A.   I don't know, to be honest with you.

18        Q.   (BY MR. CHOUDHRI)   Do you know who Kevin

19   Powers is?

20             MR. BALLASES:   Objection.   Form.

21        A.   He's an attorney.   Yes.

22        Q.   (BY MR. CHOUDHRI)   Have you communicated with

23   Kevin Powers?

24             MR. BALLASES:   Objection.   Form.

25        A.   I think he called me once or twice, but no
```



OMAR KHAWAJA
TEXAS REIT LLC

1    real communication with him.

2        Q.   (BY MR. CHOUDHRI)   Have you ever texted him or

3    received texts from him?

4            MR. BALLASES:  Objection.  Form.

5        A.   Not that I recall.  I don't think so.

6        Q.   (BY MR. CHOUDHRI)   Do you know who WCW is?

7            MR. BALLASES:  Objection.  Form.

8        A.   Some entity that you owe money, I think.

9        Q.   (BY MR. CHOUDHRI)   Do you know who Steven Wu

10   is?

11       A.   Another guy that you --

12           MR. BALLASES:  Objection.  Form.

13       A.   -- that you owe money to.

14       Q.   (BY MR. CHOUDHRI)   And your contention is I

15   owe money to Steven Wu?

16       A.   You owe money --

17           MR. BALLASES:  Objection.  Form.

18       A.   -- to a lot of people, including me, but yes.

19       Q.   (BY MR. CHOUDHRI)   And what do you know about

20   what I owe to Steven Wu?

21           MR. BALLASES:  Objection.  Form.

22       A.   That you defrauded him, and they have --

23   they're seeking to recover the money that you owe them

24   and --

25       Q.   (BY MR. CHOUDHRI)   And how much money is



OMAR KHAWAJA
TEXAS REIT LLC

1  that --

2       A.  -- defrauded them in the Texas REIT --

3            THE REPORTER:  I'm sorry --

4       Q.  (BY MR. CHOUDHRI)  I defrauded in the Texas

5  REIT case, you said?

6       A.  Yes.  I think some Texas REIT case.  I'm not

7  sure which one, but it's millions of dollars.

8       Q.  And so is it Steven Wu that you contend that I

9  defrauded?

10      A.  Yes.

11           MR. BALLASES:  Objection.  Form.

12      Q.  (BY MR. CHOUDHRI)  And Steven Wu is owed money

13  by Texas REIT is your contention?

14           MR. BALLASES:  Objection.  Form.

15      A.  Yes, and there's probably many other creditors

16  out there I'm not aware of.

17      Q.  (BY MR. CHOUDHRI)  Which creditors are you

18  aware of?

19           MR. BALLASES:  Objection.  Form.

20      A.  Only the ones that I would know.  I mean, I'm

21  one of them.  So, I mean, whoever's listed in these

22  schedules, I guess.

23      Q.  (BY MR. CHOUDHRI)  Have you contacted TIG

24  Romspen?  Do you know who Romspen is?

25      A.  No.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

199

```
1              MR. BALLASES:  Objection.  Form.
2       A.  I know who they are, but I have not -- I read
3  about them in The Real Deal, but I've not contacted
4  them.
5       Q.  (BY MR. CHOUDHRI)  Do you know who Mansoor
6  Chaudhry is?
7       A.  Yes.
8       Q.  Do you have an attorney-client privilege with
9  him?
10      A.  No, I don't.
11             MR. BALLASES:  Objection.  Form.
12      Q.  (BY MR. CHOUDHRI)  Have you ever texted him or
13  received texts from him?
14      A.  No.
15             MR. BALLASES:  Objection.  Form.
16      A.  I mean, yes, he's texted me.  Yes, he has.
17      Q.  (BY MR. CHOUDHRI)  So when did you meet
18  Mansoor Chaudhry?
19      A.  Maybe two years --
20             MR. BALLASES:  Objection.  Form.
21      Q.  (BY MR. CHOUDHRI)  Under what circumstance?
22             MR. BALLASES:  Objection.  Form.
23      A.  He's a -- he has a title company, and I've
24  done some title work with him.
25      Q.  (BY MR. CHOUDHRI)  So you do some title work
```



```
 1   with him?

 2        A.  Yes.

 3             MR. BALLASES:  Objection.  Form.

 4        Q.  (BY MR. CHOUDHRI)  What is the name of his

 5   title company?

 6             MR. BALLASES:  Objection.  Form.

 7        A.  I think it's called Transact Title.

 8        Q.  (BY MR. CHOUDHRI)  And is Transact Title a

 9   tenant at 1001 West Loop?

10             MR. BALLASES:  Objection.  Form.

11        A.  Yes.

12        Q.  (BY MR. CHOUDHRI)  And have you filed a lis

13   pendens against 1001 West Loop?

14             MR. BALLASES:  Objection.  Form.

15        A.  If it's an alter ego of yours -- no, I don't

16   think so.  Maybe not.

17        Q.  (BY MR. CHOUDHRI)  You're looking at Osama to

18   answer the questions.  Do you understand this

19   deposition is me asking you, not Osama answering the

20   questions?  You understand that; right?

21             MR. BALLASES:  Objection.  Sidebar.

22             Don't pretend like you know what's happening

23   over here.

24             Objection.  Sidebar.

25        A.  I'm not looking at anybody.  But I don't know.
```



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
201

```
 1   Do you want me to file a lis pendens on 1001 West

 2   Loop?

 3        Q.  (BY MR. CHOUDHRI)  As we sit here today, are

 4   you telling me that you have not caused any lis

 5   pendens to be filed on 1001?

 6        A.  No.  I don't know.  I don't think so.

 7        Q.  Do you contend 1001, the property, 1001, or

 8   the entity that owns 1001, is an alter ego of Ali

 9   Choudhri or Texas REIT?

10        A.  Yes.  Yes, it is.

11        Q.  Do you contend --

12        A.  Even if it's not listed by -- even if it's not

13   here, it is -- anything that you control or own is an

14   alter ego, because that's how you operate.

15        Q.  Okay.  Do you know who BridgeCo is,

16   Mr. Khawaja?

17        A.  Yes.

18        MR. BALLASES:  Objection.  Form.

19        Q.  (BY MR. CHOUDHRI)  Have you spoken to anybody

20   at BridgeCo?

21        A.  No.

22        MR. BALLASES:  Objection.  Form.

23        Q.  (BY MR. CHOUDHRI)  But you've sued BridgeCo;

24   correct?

25        A.  Yes.
```



OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                202

```
 1              MR. BALLASES:  Objection.  Form.

 2         Q.  (BY MR. CHOUDHRI)  And are you aware that

 3    BridgeCo made six loans?

 4         A.  Yeah.

 5              MR. BALLASES:  Objection.  Form.

 6         Q.  (BY MR. CHOUDHRI)  Do you know which

 7    properties BridgeCo made loans on?

 8         A.  There were --

 9              MR. BALLASES:  Objection.  Form.

10         A.  -- some properties in Austin and some

11    properties in Houston, but I don't know -- I couldn't

12    tell you it's this one or that one.

13         Q.  (BY MR. CHOUDHRI)  And you contend those

14    properties are alter egos of Ali Choudhri or Texas

15    REIT.

16              MR. BALLASES:  Objection.  Form.

17         A.  I mean, they would be.  If you own them, they

18    would be.  But I don't know if we're making that claim

19    in this case anymore.

20         Q.  (BY MR. CHOUDHRI)  Have you sued Cypress

21    BridgeCo and Magnolia BridgeCo in this case?

22         A.  I think we did.  And I'm not sure if we still

23    have maintained those claims.  But I know they

24    foreclosed on their interest.

25         Q.  So you're aware that BridgeCo foreclosed on
```



1  the properties that you filed lis pendenses on.

2        A.  Yes.

3        Q.  And you realize that a lis pendens frustrates

4  and interferes with the sale of a property.

5            Please don't look at Osama for an answer.  I

6  know you really want to.

7            MR. BALLASES:  Objection --

8            MR. CHOUDHRI:  But, Mr. Abdullatif, would you

9  please stop helping Mr. Khawaja?

10           MR. BALLASES:  Objection.  Sidebar.

11           You don't know what you're talking about.

12           (Crosstalk)

13           MR. CHOUDHRI:  Madam Court Reporter, did you

14  get -- did --

15           (Crosstalk)

16           THE REPORTER:  Sorry.  What is your question,

17  Mr. Choudhri?

18           MR. CHOUDHRI:  What did Osama say?  I couldn't

19  hear him.

20           THE REPORTER:  I couldn't hear him either.  If

21  I can't hear him, I can't transcribe him.  And he's

22  not on the record.  Like, he's not --

23       A.  Let's please continue with the deposition.

24           MR. CHOUDHRI:  Mr. Osama Abdullatif, I can

25  hear you in the background calling me a liar.  That's



```
 1   unprofessional.
 2           MR. BALLASES:  Objection.  Sidebar.
 3           Ask your question, or I'll --
 4       A.  Or we're gonna cut this -- or we're gonna shut
 5   this thing down.
 6       Q.  (BY MR. CHOUDHRI)  So, Mr. Khawaja, you're
 7   aware -- let me back up.
 8           You're in the real estate business as well;
 9   right?
10           MR. BALLASES:  Objection.  Form.
11       A.  Not really.  A little bit.
12       Q.  (BY MR. CHOUDHRI)  Do you own real estate
13   outside of your home?
14       A.  Yes.
15       Q.  Which real estate?
16           MR. BALLASES:  Objection.  Form.
17       A.  I'm not gonna get -- I'm not gonna get into
18   that.
19       Q.  (BY MR. CHOUDHRI)  Are you refusing to answer
20   the question about what real estate you own --
21       A.  Yes, I'm --
22       Q.  -- outside of your house?
23       A.  I am -- I am refusing to answer that.
24           MR. BALLASES:  I'm instructing him not to
25   answer because it's outside the scope of the limited
```



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024

205

1    deposition that the judge ordered.

2        Q.  (BY MR. CHOUDHRI)  So, Mr. Khawaja, we've

3    already established many, many, many times it's your

4    contention that any entity I own or control is an

5    alter ego of Texas REIT; correct?

6        A.  Yes.

7            MR. BALLASES:  Objection.  Form.

8        Q.  (BY MR. CHOUDHRI)  And so you're also aware,

9    Mr. Khawaja, that when you file a lis pendens on a

10   piece of property, you have to meet certain elements

11   to have a lis pendens on a piece of property.  Are you

12   aware of that?

13       A.  Yes.

14       Q.  And do you know what those elements are?

15           MR. BALLASES:  Objection.  Form.

16       A.  I don't.

17       Q.  (BY MR. CHOUDHRI)  You're unaware what the

18   elements are to file a lis pendens against real

19   property.

20       A.  I'm not sure.

21           MR. BALLASES:  Objection.  Form.

22       Q.  (BY MR. CHOUDHRI)  You're unaware, or you're

23   aware?

24       A.  I'm not aware.

25           MR. BALLASES:  Objection.  Form.



```
 1           MR. CHOUDHRI:  Mr. Ballases, it doesn't change
 2    by you yelling on the objection, so --
 3           MR. BALLASES:  Objection.  Sidebar.
 4           Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, how many
 5    lawsuits have you been involved in where you have
 6    instructed, sponsored litigation against Texas REIT or
 7    any other entity that I own or control?
 8           MR. BALLASES:  Objection.  Form.
 9           A.  I don't know.  I don't -- I don't think many
10    at all.  Not as many as I could.  That's for sure.
11           Q.  (BY MR. CHOUDHRI)  And so you have filed a lis
12    pendens against a property at 2232 Swift Boulevard.
13    Are you aware of that?
14           A.  Yes.  Yes.
15           Q.  And you contend 2232 Swift Boulevard -- that
16    property and any interest in that property is an alter
17    ego of Texas REIT?
18           A.  Or Ali Choudhri.
19           MR. BALLASES:  Objection.  Form.
20           A.  Or Ali Choudhri.
21           Q.  (BY MR. CHOUDHRI)  Texas REIT or Ali --
22           A.  Or Jetall.
23           Q.  -- Choudhri; correct?
24           A.  Or Jetall.
25           Q.  Sorry?
```



1        A.   Or Jetall Companies, Inc.

2        Q.   Okay.  So basically any and all entities that

3   I have any ownership in -- directly, indirectly --

4   it's an alter ego, and that's what you believe.

5        A.   I believe the evidence will show that, yes.

6             MR. BALLASES:  Objection.  Form.

7        Q.   (BY MR. CHOUDHRI)  But as we sit here today,

8   you don't have any evidence --

9        A.   No, we have plenty --

10             MR. BALLASES:  Objection.  Form.

11        A.   We've been talking about it all day.

12             MR. BALLASES:  Objection.  Form.

13        Q.   (BY MR. CHOUDHRI)  So outside of whatever we

14   talked about today, you don't have any other evidence.

15             MR. BALLASES:  Objection.  Form.

16        A.   Not until we get into the discovery, which

17   you're obstructing, but yes.

18        Q.   (BY MR. CHOUDHRI)  So this is your opportunity

19   to tell --

20        A.   You'll find out more after you and, I think,

21   your mom's deposition coming up.

22        Q.   Oh, okay.  So you've sued my mom; correct?

23        A.   Yes.  Don't try to get out of that deposition

24   either.  I'm gonna have a court reporter, translator,

25   everything.  So don't try to get out of that.

1      Q.  Mr. Khawaja, have you -- let me pull this up.

2   Hold on.

3          Have you contacted anybody related to QB Loop

4   Property?

5          MR. BALLASES:  Objection.  Form.

6      A.  No.

7      Q.  (BY MR. CHOUDHRI)  Have you contacted --

8      A.  What's going on with that?

9          THE WITNESS:  Sorry.  Sorry.

10     A.  I have not.

11     Q.  (BY MR. CHOUDHRI)  Have you contacted -- would

12   you dispute if third parties made statements that you

13   contacted them and told them not to do business with

14   me?

15         MR. BALLASES:  Objection.  Form.

16     A.  I would dispute that, yeah.  I mean, tell

17   them -- who said that I said that?

18         MR. BALLASES:  Objection.  Form.

19     Q.  (BY MR. CHOUDHRI)  Have you ever contacted

20   anybody who I do business with, or any of my related

21   entities, and told them not to do business with me?

22         MR. BALLASES:  Objection.  Form.

23     A.  I mean, that's outside the scope of what we're

24   talking about, but no, unless I was specifically

25   asked.



1      Q.   (BY MR. CHOUDHRI)  Have you contacted Anwar

2   Qadeer (phonetic) in relation to --

3      A.   No.

4           MR. BALLASES:  Objection.  Form.

5      A.   No.  Are you trying to sue Anwar now?  No.

6      Q.   (BY MR. CHOUDHRI)  Have you contacted Qasim --

7   Abdul Qasim (phonetic)?

8           MR. BALLASES:  Objection --

9      A.   Abdul Qasim?

10     Q.   (BY MR. CHOUDHRI)  Abdul Qasim.

11          THE REPORTER:  Sorry.  One at a time, please.

12     A.   I never contacted -- no, he's a friend of --

13          THE REPORTER:  Sorry.  One at a time, please.

14          Mr. Khawaja, could you please repeat your

15   answer?

16     A.   I have not.

17          MR. BALLASES:  Objection.  Form.

18          Please stick to the limited purpose of this

19   deposition.

20     Q.   (BY MR. CHOUDHRI)  And --

21     A.   Don't get those guys in trouble.

22     Q.   -- Mr. Khawaja, are you -- are you -- are you

23   done laughing?

24     A.   Yes.  Yes.

25     Q.   Thank you.  You understand this is a serious

```
 1   situation we're here, right?  This is a deposition.
 2   It's not a joke --
 3        A.  Oh, very much.
 4            MR. BALLASES:  Objection.  Sidebar.
 5        A.  Very much.  Very much so.
 6        Q.  (BY MR. CHOUDHRI)  And, Mr. Khawaja, you're
 7   taking this serious; correct?
 8        A.  Oh, yeah, absolutely.
 9            MR. BALLASES:  Objection.  Sidebar.
10        Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, can you tell
11   me why -- you know, why you believe that the BridgeCo
12   entities are an alter ego of Texas REIT?
13            MR. BALLASES:  Objection.  Sidebar.
14            No, excuse me.  I'm gonna go ahead, and I'm
15   gonna actually object to this exceeding the scope of
16   the deposition that the judge ordered and instruct him
17   not to answer.
18        A.  I'm gonna take the advice of counsel.
19        Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, you're not
20   going to answer the question, I understand; is that
21   correct?
22        A.  Yes.
23        Q.  Mr. Khawaja, are you aware that when a lis
24   pendens is filed on a property, a property -- the
25   title is clouded, and it interferes with the ability
```



1   for the property to be sold or refinanced?

2        A.   I mean --

3             MR. BALLASES:  Objection.  Form.

4        A.   -- you filed many of those, so you're pretty

5   aware of what it does, so yes.

6        Q.   (BY MR. CHOUDHRI)  And besides whatever we've

7   covered today, you don't have any other -- are you --

8        A.   Plans?

9        Q.   -- familiar with the -- sorry?

10       A.   Other plans?  I don't know.  I'm just trying

11  to guess what you were gonna say.

12       Q.   I'm sorry, Mr. Khawaja.  What was your

13  statement?

14       A.   I said -- you said, You don't have any other,

15  and then you just trailed off.  So I said, What,

16  plans?

17       Q.   What -- so I think I've asked this earlier,

18  and you've refused to answer.  I just want to make

19  sure the record is clear.  You're refusing to answer

20  any contingency claims or any claims you own or hold,

21  indirectly or directly, against me or any of my

22  entities.  You're refusing to answer any of those

23  questions.

24       A.   Yes --

25            MR. BALLASES:  Objection --



1     A.  -- that's correct.

2          MR. BALLASES:  Objection.  Form.

3     Q.  (BY MR. CHOUDHRI)  And you're aware that

4  2727 Kirby was foreclosed on.

5          MR. BALLASES:  Objection.  Form.

6     A.  That's what I understand.

7     Q.  (BY MR. CHOUDHRI)  And you're aware that

8  that's one of the properties you filed a lis pendens

9  on.

10         MR. BALLASES:  Objection.  Form.

11    A.  Sure.  You owe a lot of money on it.

12    Q.  (BY MR. CHOUDHRI)  Is there money owed to you

13 on 2727 Kirby?

14    A.  I mean, it's an alter --

15         MR. BALLASES:  Objection.  Form.

16    A.  -- ego of Jetall Companies, so yeah, we

17 should've gotten something out of it.

18    Q.  (BY MR. CHOUDHRI)  Is that why you filed a

19 lis pendens, so you could get something out of it?

20         MR. BALLASES:  Objection.  Form.

21    A.  To prevent you from committing fraudulent

22 transfers and defrauding people like you do.

23    Q.  (BY MR. CHOUDHRI)  And so let's elaborate.

24 How do I defraud people?

25         MR. BALLASES:  Objection.  Form.

OMAR KHAWAJA
TEXAS REIT LLC

1    A.   I mean -- I mean, come on.

2    Q.   (BY MR. CHOUDHRI)  I just want to --

3         (Crosstalk)

4    A.   You really want me to answer that question?

5    Q.   (BY MR. CHOUDHRI)  Absolutely.  Go ahead.

6         MR. BALLASES:  Objection.  Sidebar.

7         It's not the opportunity to ask an improper

8    question.

9         THE WITNESS:  No.

10        MR. BALLASES:  It is your opportunity to ask

11   about why a proof of claim was filed and why it was

12   withdrawn.  You are mistaken, and you're exceeding the

13   Court's order.  Please stick to the Court's limited

14   deposition order.

15        Q.   (BY MR. CHOUDHRI)  Are you going to refuse to

16   answer the question, Mr. Khawaja?

17        A.   Yes.

18        MR. BALLASES:  Objection.  Form.

19        Q.   (BY MR. CHOUDHRI)  Mr. Khawaja, you're aware

20   that following the filing of lis pendenses on various

21   properties, those properties were foreclosed after you

22   filed those lis pendenses, true or false?

23        MR. BALLASES:  Objection.  Form.

24        A.   After -- I mean, what does that mean, after I

25   filed those lis pendenses?  You lost those properties



1   because you refused to pay on them, like you've done

2   on so many properties throughout your entire life.

3            So, you know, you excel at losing properties.

4   That's what happened.  That's what happened to

5   2425 West Loop.  Don't try to put that on me unless

6   you want more lawsuits.  We're happy to oblige.

7            Q.  (BY MR. CHOUDHRI)  Do you --

8            A.  Yes.

9            MR. BALLASES:  Objection.  Sidebar.

10           A.  No, I'm not done.  I'm just getting started.

11           Q.  (BY MR. CHOUDHRI)  So continue on.  I'm

12   listening.

13           MR. BALLASES:  There's no question on the

14   table.

15       Q.  (BY MR. CHOUDHRI)  You're just getting

16   started?

17           THE REPORTER:  I'm sorry --

18       Q.  (BY MR. CHOUDHRI)  What do you mean by "just

19   getting started" --

20           THE REPORTER:  I'm sorry.  Mr. Ballases, what

21   was your objection or your comment?

22           MR. BALLASES:  Objection.  Form.

23           There was no question on the table.

24       Q.  (BY MR. CHOUDHRI)  Go ahead, Mr. Khawaja.  If

25   you want to talk, you can talk.  You said you're just



1  getting started --

2         MR. BALLASES:  Objection.  Sidebar.

3     A.  Stick --

4     Q.  (BY MR. CHOUDHRI)  Do you want to --

5     A.  Stick to the questions, please.  Stick to the

6  questions.

7     Q.  You're answering -- you're answering the

8  questions, so I'm allowing you to finish your answers.

9  And you said --

10        MR. BALLASES:  Objection.  Sidebar.

11    Q.  (BY MR. CHOUDHRI)  -- you're just getting

12 started.  What do you mean by, "I'm just getting

13 started"?  That was your answer.

14    A.  Yes.  We have --

15    Q.  (Unintelligible)

16    A.  We have a lot of -- we have discovery to

17 complete in this case.

18    Q.  And so what do you mean, "I'm just getting

19 started"?  Elaborate on that --

20        MR. BALLASES:  Objection.  Form.

21    A.  Yeah, we need -- we have to complete

22 discovery.

23    Q.  (BY MR. CHOUDHRI)  And what evidence or

24 information do you have that my mom is an alter ego of

25 Texas REIT?



1        MR. BALLASES:  Objection.  Form.

2        A.  Have you reviewed the -- have you reviewed our

3   evidence in this case?  Have you looked at what we've

4   been able to uncover, or no?  I hope your attorneys

5   are sharing it with you.  There's a lot.

6        Q.  (BY MR. CHOUDHRI)  So what evidence do you

7   have that Shahnaz Choudhri is an alter ego --

8        A.  Yes.

9        Q.  -- of Texas REIT?

10       A.  There's money flowing through bank accounts.

11  There's checks that she's written to entities that you

12  control.  There's personal payments going out to her

13  from entities that you control.  I mean, there's a

14  lot.  There's a lot.  We're gonna get into all of

15  that.

16       Q.  And so the evidence is all within your

17  pleadings.  Is that --

18       A.  Not all of it.

19       MR. BALLASES:  Objection.  Form.

20       A.  Not all of it.  There's just something --

21  there's discovery.  There's subpoenas.  There's --

22  there's things.  There's a deposition coming up that

23  you're aware of that you're gonna try to get out of.

24  We're not gonna let you.

25       Q.  (BY MR. CHOUDHRI)  Have you made statements to



1  third parties that Judge Norman is gonna do whatever

2  you ask him to do because you have him on payroll?

3        MR. BALLASES:  Objection.  Form.

4        And objection.  Sidebar.

5      A.  Man, come on.  Don't do stuff like that.

6  That's gonna get you --

7      Q.  (BY MR. CHOUDHRI)  Have you made a

8  statement to anybody --

9      A.  -- in a lot of trouble.

10        THE REPORTER:  I'm sorry.

11      Q.  (BY MR. CHOUDHRI)  Have you made --

12        THE REPORTER:  One person at a time, please.

13      A.  That's -- that's gonna get you into a lot of

14  trouble with the FBI.  I wouldn't do that.  That's a

15  mistake on your part.

16      Q.  (BY MR. CHOUDHRI)  Have you ever made any

17  statements like that?  Have you ever made any

18  statements --

19      A.  No.

20      Q.  -- like that?

21        MR. BALLASES:  Objection.  Form.

22      A.  That's very dangerous of you to say that.  I'm

23  just warning you.  It's very dangerous.

24        MR. CHOUDHRI:  Mr. Ballases --

25      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

1    THE WITNESS:  Make sure you get a copy of this

2  transcript, please --

3    Q.  (BY MR. CHOUDHRI)  -- you've never made --

4    THE WITNESS:  -- and provide that.

5    Q.  (BY MR. CHOUDHRI)  You --

6    THE REPORTER:  Sorry --  okay.

7    A.  I would stop if I were you.  I would stop

8  right now if I were you.

9    Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, please.  I'm

10  asking the questions.  Okay?

11    A.  Yeah, you are.

12    Q.  Have you met with Anthony Gill or Kenneth

13  Shaitelman?

14    MR. BALLASES:  Objection.  Form.

15    A.  I'm not gonna --

16    (Crosstalk)

17    MR. BALLASES:  I'm going to instruct you not

18  to answer.  That has nothing to do with the proof of

19  claim that was filed or the reason that we've offered

20  to withdraw it, and therefore, I'm instructing not to

21  answer.  It exceeds the scope of the judge's order.

22    So I object to the form of the question.

23    A.  I'm not answering.

24    Q.  (BY MR. CHOUDHRI)  Mr. Khawaja, were you

25  present on September 6, 2023, when Chris Wyatt, your



1   client, testified on the stand in Judge Manor's court?

2        MR. BALLASES:  Objection --

3   A.  No.

4        MR. BALLASES:  Objection.  Form.

5   A.  I wasn't.

6   Q.  (BY MR. CHOUDHRI)  Were you present around

7   September 2023 in front of Judge Manor regarding a

8   case styled Naissance versus Zaheer?

9        MR. BALLASES:  Objection.  Form.

10  A.  I don't even know if I was or not, but that's

11  outside the scope of this purpose of this deposition,

12  so move on.

13  Q.  (BY MR. CHOUDHRI)  Are you aware that Chris

14  Wyatt, your client, testified that he has given you

15  my -- Jetall Companies' hard drive?

16       MR. BALLASES:  Objection.  Form.

17  A.  Not -- not in the -- within the scope of this

18  conversation -- I mean this deposition.  But if he

19  testified to that, I'd have to look back and see.

20  Maybe he did.

21  Q.  (BY MR. CHOUDHRI)  Is Chris Wyatt truthful?

22       MR. BALLASES:  Objection.  Form.

23  A.  You hired him.  What do you think?

24  Q.  (BY MR. CHOUDHRI)  Have you hired --

25       THE WITNESS:  Look, I'm done, Michael.  This



```
 1   is it.  This is getting into things --
 2              MR. BALLASES:  Okay.
 3              THE WITNESS:  -- that are unrelated.  So we
 4   can --
 5              MR. BALLASES:  And you've got to go see your
 6   family --
 7              THE WITNESS:  I have to go see my family --
 8              MR. BALLASES:  Then we'll take it up with a
 9   judge.
10              THE WITNESS:  Thank you.
11              (Crosstalk)
12       Q.  (BY MR. CHOUDHRI)  Are you going to walk out
13   of this deposition?
14              THE REPORTER:  I'm sorry --
15       A.  Yes.
16       Q.  (BY MR. CHOUDHRI)  No --
17              THE REPORTER:  Sorry.  One at a -- sorry.  One
18   at a time, please.  Thank you.
19              MR. CHOUDHRI:  I am not done with my --
20              THE WITNESS:  I have a medical --
21              MR. CHOUDHRI:  -- questions.
22              THE WITNESS:  -- emergency.
23       Q.  (BY MR. CHOUDHRI)  If you have a medical
24   emergency, we can agree to a rescheduling.  Your
25   medical emergency, Mr. Khawaja, is you have a family
```



1  member in the hospital; correct?

2      A.  Yes, I do.

3          MR. BALLASES:  You don't need to answer any

4  more questions.

5          He has to get out of here.  You took up enough

6  time --

7          THE WITNESS:  We'll take it up with a judge.

8      Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

9          MR. BALLASES:  Do you want a five-minute

10  break, or do you want to start?

11     Q.  (BY MR. CHOUDHRI)  Mr. Khawaja --

12         MR. BALLASES:  You go.  I got it.

13     Q.  (BY MR. CHOUDHRI)  -- the deposition is still

14  going.  Are you going to get up and walk out?

15         MR. CHOUDHRI:  Madam Court Reporter --

16         MR. BALLASES:  Yes, he's got to --

17         MR. CHOUDHRI:  -- would you --

18         MS. HOOD:  Okay.  If I can weigh in here, I

19  had some follow-up questions for him; very few, but I

20  do have follow-up questions.

21         MR. BALLASES:  How much time?  Like, how much

22  would you estimate, Ms. Hood?

23         MS. HOOD:  Ten minutes.

24         MR. BALLASES:  It's up to you.  If you've got

25  to get out of here --



1      MR. CHOUDHRI:  But I'm not done --

2      MS. HOOD:  But it's -- I need -- Mr. Choudhri

3  hasn't passed the witness.  But I did want to go on

4  the record that I do have a few more questions for

5  him.

6      MR. BALLASES:  Okay.  Well --

7      THE WITNESS:  We'll take it up if we need to

8  with a judge.

9      MR. BALLASES:  Okay.  Then unless we're going

10 to go directly to your ten minutes, then he's got to

11 get to the hospital.

12     MR. CHOUDHRI:  Mr. Ballases, if he's got to go

13 to the hospital, is there a mutually agreeable time

14 before he leaves that we can agree to maybe --

15     MR. BALLASES:  No.

16     MR. CHOUDHRI:  -- pick this up?

17     MR. BALLASES:  No.

18     MR. CHOUDHRI:  Are you not agreeing to resume

19 the deposition at a convenient time after his

20 emergency for his visitor -- for his family member in

21 the hospital?

22     MR. BALLASES:  I'm not right now.  You've had

23 plenty of time to ask questions.  You've asked

24 questions that had nothing to do with the limited

25 scope of the deposition.  I let you ask them.  I



1  probably shouldn't have.  And so you used your time as

2  you saw fit.

3          Do you all want to take a two-minute break or

4  five-minute break before we start the next one, or no?

5          MR. CHOUDHRI:  Mr. Ballases, I am -- this is

6  still my deposition that I'm asking questions on.  I

7  want the record to be clear.  Have you instructed your

8  witness to leave?  Have you instructed the witness to

9  leave --

10         MR. BALLASES:  He's gone.  Yes, he is gone.

11  He is gone.  I've instructed him to leave because he

12  has a family member who is dying.  I don't know how

13  much clearer I can make that.  Stop repeating

14  yourself.

15         MR. CHOUDHRI:  Well, Mr. Ballases --

16         MR. BALLASES:  So you can either --

17         MR. CHOUDHRI:  -- as you know -- can I finish

18  talking, please, before you keep --

19         MR. BALLASES:  No --

20         MR. CHOUDHRI:  -- cutting me off?

21         MR. BALLASES:  -- you can't.  You waste

22  everybody's time.

23         So we can start with the next deposition.

24         It's clear that --

25         MR. CHOUDHRI:  Mr. Ballases --



1      MR. BALLASES:  -- he's left, and it's clear

2  you want to ask questions.

3      So we can start with the next deposition now

4  or in two minutes.  Please make your decision.

5      Stephen, if you want to make it because you're

6  the lead, that's fine.

7      MS. HOOD:  Can I just say on the record that I

8  would like to finish my questioning of the deponent

9  when he has the next available opportunity that's

10  convenient for everybody so I can ask my four

11  questions.

12      MR. BALLASES:  And I would -- that's fine.

13  You can take it up with the Court.  He was on record

14  for five hours.  Take away maybe the 30 minutes where

15  we argued about the judge's oral order.  Four and a

16  half hours, that's plenty of time for this deposition

17  to go forward and for y'all to complete it.

18      We have two more people here, and I have till

19  4:30.  I'd like to get started to go as fast as

20  possible, but it's y'all's call.

21      MS. HOOD:  Okay.  Well, I'll just --

22      MR. CHOUDHRI:  Mr. Ballases, the time is --

23  the time is 3:30 p.m.  Is that --

24      Or, Court Reporter, would you just confirm

25  what time we have right now?



1      MR. BALLASES:  No one needs to confirm the

2   time.  Do you want to get started with the next one or

3   not?  I mean, stop wasting everybody's time?

4      MS. HOOD:  I just want to -- for my part of

5   this, I wasn't -- I didn't adjourn the deposition with

6   regard to this deponent for my questioning.  I was

7   waiting for it to come back, to cycle around with me

8   again.  I have a few more questions for him, and I

9   want to finish those.

10      And I understand he's left, and I understand

11   the basis for it, and I wish all Godspeed to his

12   family member.  And I don't want to get involved in

13   any sort of issue about whether someone needs to

14   leave, doesn't need to leave, that sort of thing,

15   right?  I just -- and if we have to go back to the

16   judge for my four questions, I'm happy to do it.

17      I just want that on the record for me.  What

18   the other lawyer does and what Mr. Choudhri does --

19      MR. BALLASES:  (Unintelligible)

20      MS. HOOD:  -- I'm not in control of that.

21      MR. BALLASES:  I understand.  You've made

22   it -- you've put it on the record twice.  That's fine.

23   I understand, and I'll stipulate that you do have more

24   questions.

25      Do we want to go to the next witness now?



1    MR. CHOUDHRI:  Mr. Ballases, would you at

2  least provide, subject to your client's availability,

3  times you're available to resume the deposition of

4  Omar Khawaja?

5    MR. BALLASES:  No.  No, I will not.  I've said

6  that twice now.

7    MR. CHOUDHRI:  Are you not --

8    MR. BALLASES:  Do we want to move to the next

9  deposition?

10    MR. CHOUDHRI:  Are you going to refuse to make

11  him available --

12    MR. BALLASES:  Stop wasting time.  I'm not

13  going to provide it unless we have an order from a

14  judge.  Do you understand?  Stop wasting time.  We've

15  got a limited amount --

16    MR. CHOUDHRI:  Well, I just want to --

17    MR. BALLASES:  -- of time --

18    MR. CHOUDHRI:  -- get this on the --

19    (Crosstalk)

20    MR. BALLASES:  -- basis to take a deposition.

21    Do we want to move to the next person or not?

22  Please tell me.

23    MR. CHOUDHRI:  Before --

24    MR. BALLASES:  I would say, Stephen, it's your

25  job to say it.



OMAR KHAWAJA
TEXAS REIT LLC

September 11, 2024
227

```
 1            MR. SATHER:  Yeah, I'm prepared --

 2            MR. CHOUDHRI:  Mr. --

 3            MR. SATHER:  -- to move to the next --

 4            MR. CHOUDHRI:  Mr. Ballases --

 5            MR. SATHER:  -- witness --

 6            MR. BALLASES:  All right.  Let's go.

 7            MR. SATHER:  Who do you have --

 8            MR. CHOUDHRI:  Mr. Ballases --

 9            MR. SATHER:  -- up next?

10            THE REPORTER:  I'm sorry --

11            MR. BALLASES:  Osama.

12            THE REPORTER:  Okay.

13            MR. CHOUDHRI:  Mr. Ballases --

14            MR. BALLASES:  Osama's ready to go.

15            MR. CHOUDHRI:  Time out.  I just want to get

16    this on the record very clearly, Mr. Ballases.

17            MR. BALLASES:  Oh, Jesus.

18            MR. CHOUDHRI:  I just want to make it --

19            MR. BALLASES:  It's on the record clearly.

20    Stop wasting time.

21            MR. CHOUDHRI:  You are not willing to

22    cooperate to resume the deposition of Omar Khawaja

23    absent a court order.  Is that your position?

24            MR. BALLASES:  I've stated my position.  Let's

25    move forward.
```



1         Let's take a two-minute break, and then

2  Osama's going to be in this chair.

3         THE REPORTER:  Okay.  So I am going off the

4  record.

5         (End of proceedings at 3:31 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



OMAR KHAWAJA                                    September 11, 2024
TEXAS REIT LLC                                                229

```
 1                    CERTIFICATE OF REPORTER

 2

 3           I, CHERYL MADRIAGA, a Shorthand

 4    Reporter and Notary Public in and for the State of

 5    Texas, do hereby certify:

 6

 7           That the proceeding took place before me at

 8    the time and place herein set forth; that the

 9    testimony and proceedings were accurately captured

10    stenographically by me during the proceeding.

11

12           I further certify that I am not related to any

13    of the parties to this action by blood or marriage and

14    that I am not interested in the outcome of this

15    matter, financially or otherwise.

16

17           IN WITNESS THEREOF, I have hereunto set my

18    hand this 18th day of September 2024.

19              CMadriaga

20           _____

21           CHERYL MADRIAGA, SHORTHAND REPORTER

22

23

24

25
```

