**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: § § | | CASE NO. 24-10120-smr |
| TEXAS REIT, LLC § § | | |
| Debtor § § | | CHAPTER 11 |

### WCW'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

WCW HOUSTON PROPERTIES, LLC ("WCW") files this Motion ("Motion") to Appoint a Chapter 11 Trustee, and states as follows:

### PRELIMINARY STATEMENT

1. ***Considering it has been over a year*** since this case was filed (and over eight (8) months since the Court found that there is no evidence that the Debtor will be able to sell its properties within six months, see Transcript at pp. 26-29 (Oral ruling regarding Docket No. 9 made on June 7, 2024), the Court should appoint a Chapter 11 Trustee based on the following: (i) the Debtor is either unwilling or unable to close the sale regarding the Standalone Parcel (defined below) after an order (and an amended order) approving the sale has been entered; (ii) the tax claims related to the Standalone Parcel are unnecessarily accruing interest on a daily basis based on the Debtor's unwillingness to close the sale; (iii) the Debtor is either unwilling or unable to market and sell the Strip Mall Parcel (defined below) as evidenced by the Debtor disobeying this Court's order to work with WCW to obtain a broker; (iv) the docket and the proceedings in this case demonstrate serious concerns about fiduciary duty issues (which are fundamental to ensuring fairness and transparency) based on, among other things, Ali Choudhri's (the Debtor's principal who controls the Debtor) connections and different capacities (continually asserting positions for Dalio, Jetall, and himself individually); and Ali Choudhri's length of time and handling of the

negotiations of these sales when the Debtor has no equity in the properties; (v) the Debtor has not filed its December 2024 and January 2025 monthly operating reports; (vi) the Debtor has been using cash collateral without a court order and without requesting the consent of WCW; (vii) the proposed plan on file (without approval of a disclosure statement) contemplates the sale of the properties by a "Trustee," an individual chosen by the Debtor's principal; (viii) the Debtor has little or no role in the lien priority Adversary (discussed below) considering the Debtor has no equity in the properties and the issues are limited to the equitable subordination of Dalio's lien and the amount of damages owed to WCW; (ix) because this situation is an orderly liquidation with little or no equity in the real property, appointment of a Chapter 11 Trustee would not harm the Debtor.

2.  Although this case is in a liquidating posture, WCW asserts that remaining in Chapter 11 is in the best interests of creditors considering operation of the Strip Mall Parcel (including continuity with respect to tenant management) is critical. Remaining in Chapter 11 will also provide an efficient mechanism for payment of the fees of the Chapter 11 Trustee using sections 326 and 330 of the Bankruptcy Code, avoiding a presumptively conclusive commission amount. See *In re Arboretum Crossing,* LLC, 659 B.R. 516 (Bankr. W.D. Tex. 2024). Accordingly, the costs related to the appointment of a Chapter 11 Trustee will be overwhelmed by (i) the benefits he/she will provide including independence and transparency; and (ii) the avoided further unnecessary surcharge that Mr. Choudhri will impose on this estate.

3.  Alternatively, at a minimum, the Court should (i) compel the sale of the Standalone Parcel to Amina (the purchaser that this Court has ordered the property to be sold to); and (ii) appoint an independent broker to market and sell the Strip Mall Parcel.

## JURISDICTION

4.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

5. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**RELEVANT BACKGROUND**

6. ***Over a year ago,*** on February 6, 2024 ("Petition Date"), Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the Western District of Texas Bankruptcy Court ("Bankruptcy Court" or "Court").

7. Although the Court should take judicial notice of the entire docket in this case, the relevant facts discussed below demonstrate cause for the appointment of a Trustee.

**Standalone Parcel**

8. ***Almost a year ago,*** on May 14, 2024, the Debtor filed its original motion to sell the real property at 8098 Westheimer Road (the "Standalone Parcel"). Docket No. 110.

9. On June 25, 2024, Debtor filed an amended motion to sell the Standalone Parcel. Docket No. 164.

10. On August 19, 2024, the Court held a hearing on the amended motion to sell the Standalone Parcel.

11. The Court granted the amended motion to sell the Standalone Property contingent on Debtor and the buyer finalizing the Amended REA.

12. On October 3, 2024, the Court sua sponte set a status conference to, among other things, obtain the status on the sale of the Standalone Parcel. Docket No. 309.

13. On October 7, 2024, the Court held the status conference.

14. On December 3, 2024, the Court entered the Order approving the sale of the Standalone Parcel. Docket No. 401.

15. On December 17, 2024, the Debtor filed a motion to amend the Order approving sale of the Standalone Parcel. Docket No. 425.

16. On December 19, 2024, the Debtor filed a Notice of Filing Redlines to indicate

3

changes to the proposed amended order. Docket No. 431.

17. On December 27, 2024, the Court entered the amended sale order approving the sale of the Standalone Parcel. Docket No. 436.

18. ***As of today, the sale of the Standalone Parcel has not been closed because, upon information and belief, the Debtor will not turn over certain corporate documents of the Debtor to the title company.***

**Strip Mall Parcel**

19. ***Over seven months ago,*** on August 7, 2024, the Debtor filed the motion to sell the real property at 8052-8090 Westheimer Road ("Strip Mall Parcel"). Docket No. 216.

20. On September 9, 2024, the Debtor filed a motion to continue the hearing on the motion to sell the Strip Mall Parcel. Docket No. 281.

21. On September 10, 2024, the Court granted the motion to continue and reset the hearing on the motion to sell the Strip Mall Parcel for October 7, 2024. Docket No. 282.

22. On October 4, 2024, Debtor served (but did not file) a new contract with a different buyer for the motion to sell the Strip Mall Parcel.

23. On October 7, 2024, the Court continued the hearing on the motion to sell the Strip Mall Parcel and, on October 8, 2024, entered an Order Setting Deadlines regarding same. Docket No. 317.

24. On October 11, 2024, the Debtor filed the amended motion to sell the Strip Mall Parcel. Docket No. 320.

25. The Court set a hearing on the amended motion to sell the Strip Mall Parcel for October 30, 2024, which was continued until December 2, 2024, and continued again until January 8, 2024.

4

26. On December 31, 2024, the Debtor filed a notice of withdrawal of the amended motion to sell the Strip Mall Parcel. Docket No. 440.

27. ***The Court has orally ordered counsel for the Debtor to work with counsel for WCW to get a broker to market and sell the Strip Mall Parcel. Counsel for WCW has attempted numerous times to provide a recommendation for an independent broker. Counsel for the Debtor has not responded to these attempts.***

**Monthly Operating Reports and Cash Collateral**

28. The Debtor has failed to file its monthly operating reports for the months of December, 2024 and January, 2025.

29. On August 15, 2024, the Court entered the Order Granting Motion to Extend Use of Cash Collateral and Granting Adequate Protection (the "Last Entered Cash Collateral Order"). Docket No. 244. The Last Entered Cash Collateral Order stated that the "…authority to use cash collateral shall continue up through and including October 31, 2024 unless sooner terminated or extended by the Court." Last Entered Cash Collateral Order at paragraph 7. Further, "To the extent the Secured Creditor agrees in writing to extend the term of this Order, such term shall be extended as provided in such writing without further order, notice or hearing." "Secured Creditors" is defined as "…parties with interests in cash collateral."

30. WCW is a secured creditor, and WCW did not agree in writing to extend the term of the Last Entered Cash Collateral Order. Indeed, the Debtor never asked WCW to agree to extending cash collateral usage. ***Although WCW does not oppose use of cash collateral for the specific uses that this Court has approved in the past, WCW believes that it is more than appropriate in this case to have an order that memorializes exactly what the Debtor can and can't pay***.

**Lien Determination Adversary**

31. In 2023, WCW sought and obtained judgment against the Debtor and Dalio Holdings I, LLC's ("Dalio I") and Dalio Holdings II, LLC's ("Dalio II") (Dalio I and Dalio II are collectively referred to as "Dalio") in Cause No. 2017—35320 in the 151st District Court of Harris County (the "State Court Lawsuit" or "Adversary").

32. On June 6, 2024, the 14th Court of Appeals ("State Appeal Court") affirmed in part and reversed in part the final summary judgment order. The State Appeal Court concluded, "We affirm the trial court's summary judgment finding in favor of WCW on its breach of note claim except the amount of damages. We reverse the trial court's summary judgment finding of damages on WCW's breach of note claim and of equitable subordination of Dalio I's lien to WCW's lien. We remand to the trial court for proceedings consistent with this opinion."

33. Therefore, it is clear that the issues in the Adversary are confined to (i) whether Dalio I's lien should be equitably subordinated; and (ii) the amount of damages owed to WCW for breach of the note.

34. On August 2, 2024, after removal from state court, the Adversary was transferred to this Court.

35. On November 18, 2024, WCW filed the Amended Complaint in the Adversary primarily to conform the Amended Complaint to the Federal Rules of Civil Procedure.

36. On December 17, 2024, the Debtor and Dalio answered the Amended Complaint and also asserted counterclaims.

37. On January 6, 2025, WCW filed motions to dismiss the Debtor's and Dalio's counterclaims.

38. On January 13, 2025, the Debtor amended its answer withdrawing its counterclaims.

6

39. On January 28, 2025, Dalio filed its response to WCW's motion to dismiss and the Court set a hearing on the motion to dismiss for March 19, 2024.

40. ***Although (i) it <u>has been almost four months</u> since WCW filed its Amended Complaint and (ii) WCW attempted to get an agreed upon scheduling order with the Debtor and Dalio, the parties uploaded separate orders for the Court to consider essentially because the Debtor and Dailo believe they need more time than what was proposed by WCW.***

**Debtor's Plan**

41. On May 15, 2024, the Debtor filed its plan ("Plan"). Docket No. 115. The Plan is a liquidating plan proposing to sell the Standalone Parcel and Strip Mall Parcel and to distribute the proceeds according to the priority scheme of the Bankruptcy Code.

42. The Plan contemplates that a "Trustee," Angelo DeCaro ("DeCaro"), will sell the real properties with full authority to control the process and the operations (including hiring a management company) of the Debtor as a Chapter 11 Trustee would do. Importantly, DeCaro has been selected by the Debtor's principal while a Chapter 11 Trustee will be appointed by the U.S. Trustee.

43. During the case, the Debtor withdrew DeCaro's employment application to be Debtor's restructuring officer after objections asserting that the appropriate remedy for displacing the Debtor In Possession would be appointment of a Trustee pursuant to section 1104.

44. The Court has made findings in this case that the Plan has no reasonable prospect for a successful reorganization within a reasonable time. See Transcript at pp. 26-29 (Oral ruling regarding Docket No. 9 made on June 7, 2024).

45. The Debtor has unsuccessfully attempted numerous times to obtain approval of a disclosure statement for a liquidating Plan. It should be noted that exclusivity has terminated because the Debtor has not confirmed its Plan within 180 days of the Petition Date.

**RELIEF REQUESTED**

46. The Motion should be granted. WCW incorporates paragraphs 1-45 to this relief requested.

**Legal Standard for Appointment of a Trustee**

47. Upon a request by a party in interest prior to confirmation of a plan, and after notice and a hearing, the court shall order the appointment of a trustee: (i) for cause, including fraud, dishonesty, incompetence, gross mismanagement of the affairs of the debtor by current management (either before or after the commencement of the case), or similar cause; or (ii) if such appointment is in the interests of the creditors, equity security holders, and the bankruptcy estate. See 11 U.S.C. § 1104(a).

48. According to the Supreme Court, "[t]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'" *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) (quoting *Wolf v. Weinstein*, 372 U.S. 633, 651 (1963)).

49. When determining whether the appointment of a trustee would be in the best interests of the creditors, equity security holders, and the bankruptcy estate; the courts will consider: the trustworthiness of the debtor, the reasons the debtor acted as he did, the reliance and harm to another party, the conclusive evidence of detriment to the estate, and the possibilities of future rehabilitation. *In re Evans*, 48 B.R. 46, 47 (Bankr. W.D. Tex. 1985).

50. The inquiry into whether "cause" exists for such an appointment is not limited to the enumerated list of fraud, dishonesty, incompetency or gross mismanagement, but extends to "similar cause." *In re Nartron Corp.*, 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005). "Factors on which the decision whether to appoint a trustee have turned include: Materiality of misconduct;

8

Evenhandedness or lack thereof in dealings with insiders and affiliated entities in relation to other creditors or customers; The existence of pre-petition voidable preferences or fraudulent transfers; Unwillingness or inability of management to pursue estate causes of action; Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor; Self-dealing by management or waste or squandering of corporate assets." *Id*. (citations omitted); s*ee also In re Oklahoma Refining Co.*, 838 F.2d 1133, 1135 (10th Cir. 1988) ("[t]he court need not find any of the enumerated wrongs in order to find cause for the appointing of a trustee . . . It is sufficient that the appointment be in the interest of creditors.") (citing *In re William H. Vaughn & Co.*, 40 B.R. 524 (Bankr. E.D. Pa. 1984)); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (a court should consider practical realities such as the trustworthiness of the debtor; past and present performance; prospects for rehabilitation; the confidence, or lack thereof, of the business community and of creditors in present management; and the benefits derived by the appointment of a trustee, balanced against the cost of the appointment).

**Cause Exists for this Court to Appoint a Chapter 11 Trustee**

51. Based on the totality of the circumstances in this case as described above, cause exists for this Court to appoint a Chapter 11 Trustee. The Debtor is not being evenhanded in its dealings with insiders in relation to other creditors. There are pre-petition transfers to the management company controlled by the Debtor's principal that are suspect. As discussed, the Debtor's principal has multiple conflicts of interest that are interfering with his ability to fulfill fiduciary duties of the Debtor. The Court should also consider the practical realities including (i) the lack of trustworthiness of the Debtor's principal demonstrated at prior hearings in this case and in other cases, and (ii) the lack of confidence of the business community and of the creditors in the Debtor's principal. The costs of a Chapter 11 Trustee will be overwhelmed by the costs that the Debtor's principal has inflicted and will continue to inflict on this estate.

52. Because the Court cannot be assured that the Debtor and its principal will carry out the fiduciary responsibilities they are charged with as an objective trustee would, the Court should appoint a Chapter 11 Trustee for cause.

**Appointment of a Chapter 11 Trustee is in the Best Interests of the Estate and Creditors**

53. Based on the totality of the circumstances in this case as described above, this Court should appoint a Chapter 11 Trustee because it is in the best interests of the estate and creditors.

54. Based on the facts described above, (i) the Debtor has demonstrated its unwillingness or inability to sell the Standalone Parcel; (ii) the Debtor has demonstrated its unwillingness or inability to sell the Strip Mall Parcel; (iii) the Debtor has demonstrated continued disobedience of the Bankruptcy Rules; (iv) a Chapter 11 Trustee can sell the real properties in this case without questions as to independence; and (v) the Debtor has little or no role in the Adversary. The Debtor will not be harmed by the appointment of a Trustee. Dalio, which is controlled by the Debtor's principal, will still be able to assert its rights in the Adversary.

55. Because there are substantial doubts as to whether the Debtor's principal can act in the best interests of the estate and all of the creditors, it is in the best interests of the estate and the creditors for the Court to appoint a Chapter 11 Trustee.

Dated: March 10, 2025

Respectfully submitted,

*/s/ Eric Terry*
**Eric Terry**
Texas Bar No.  00794729
**Tom A. Howley**
Texas Bar No.  24010115
HOWLEY LAW PLLC
700 Louisiana St., Suite 4545
Houston, Texas 77002
Telephone:  713-333-9125
Email:  tom@howley-law.com
Email:  eric@howley-law.com

-and-

10

> **Kevin Powers**
> Texas Bar No. 24041715
> SPENCER FANE LLP
> 3040 Post Oak Blvd., Suite 1400
> Houston, TX 77056-6560
> Telephone: 713.552.1234
> Email : kpowers@spencerfane.com
>
> ***Counsel to WCW Houston Properties, LLC***

## CERTIFICATE OF SERVICE

I certify that on March 10, 2025, I caused a copy of the foregoing document to be served by electronic transmission to all registered ECF users appearing in this case and on March 10, 2025, I served the attached service list by regular mail.

>  */s/ Eric Terry*
> Eric Terry