**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | Case No. 24-10120-smr |
| Texas REIT, LLC | § | |
| | § | |
| Debtor | § | |

**A**MENDED **D**ISCLOSURE **S**TATEMENT UNDER **11 U.S.C. §1125**
**F**OR THE **D**EBTOR'S **P**LAN OF **R**EORGANIZATION
**D**ATED **M**AY **15, 2024**

**Stephen W. Sather**
BARRON & NEWBURGER, P.C.
7320 N. Mopac Expwy, Ste. 400
Austin, Texas 78701
(512) 476-9103
ssather@bn-lawyers.com

ATTORNEYS FOR DEBTOR

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1
    A.   IDENTITY OF THE DEBTOR ...................................................................... 1
    B.   GENERAL INFORMATION RE DISCLOSURE STATEMENT AND PLAN ........ 1
    C.   DISCLAIMERS ......................................................................................... 2
    D.   ANSWERS TO COMMONLY ASKED QUESTIONS .................................... 3
II.  INFORMATION CONCERNING THE DEBTOR ...................................................... 7
    A.   OVERVIEW OF THE DEBTOR ................................................................. 7
    B.   SIGNIFICANT EVENTS PRIOR TO BANKRUPTCY FILINGS ................... 7
        1.    *Background* ...........................................Error! Bookmark not defined.
        2.    *Events Leading to Bankruptcy* ............................................... 7
    C.   SIGNIFICANT EVENTS SINCE FILING BANKRUPTCY ....................... 8
    D.   AFTER BANKRUPTCY .......................................................................... 11
        1.    Proposed Operations After Bankruptcy ................................... 11
    2.    FUTURE MANAGEMENT OF THE DEBTOR ....................................... 11
III.  FINANCIAL INFORMATION ................................................................................ 11
    A.   PRE-BANKRUPTCY ............................................................................. 11
    B.   FINANCIAL RESULTS SINCE FILING BANKRUPTCY ......................... 12
    C.   ESTIMATED FUTURE INCOME AND EXPENSES .................................. 12
IV.  ANALYSIS AND VALUATION OF PROPERTY ................................................... 13
    A.   REAL PROPERTY ................................................................................. 13
    B.   PERSONAL PROPERTY ......................................................................... 13
    C.   LIQUIDATION VALUE .......................................................................... 13
V.  SUMMARY OF PLAN OF REORGANIZATION ................................................... 13
    A.   OVERVIEW OF THE PLAN .................................................................... 13
    B.   ANALYSIS AND TREATMENT OF CLAIMS ........................................... 14
    C.   FEASIBILITY OF THE PLAN AND RISK TO CREDITORS ..................... 17
    D.   REMEDIES FOR DEFAULT .................................................................... 17
    E.   CLAIMS ALLOWANCE PROCEDURE .................................................. 18
    F.   ASSUMPTION AND REJECTION OF LEASES AND CONTRACTS ........... 18
    G.   RELEASES ............................................................................................ 18
    H.   RETENTION OF JURISDICTION ............................................................ 19
    I.   POST-CONFIRMATION PROCEDURE ................................................... 19
VI.  ALTERNATIVES TO THE DEBTOR'S PLAN ..................................................... 19
    A.   CONVERSION ....................................................................................... 19
    B.   DISMISSAL .......................................................................................... 20
VII.  RELATIONSHIP OF DEBTOR WITH AFFILIATES ......................................... 20
VIII.  TAX CONSEQUENCES ....................................................................................... 20
IX.  PENDING AND POTENTIAL LITIGATION ........................................................ 21
    A.   PENDING PRE-BANKRUPTCY LITIGATION ........................................ 21
    B.   CLAIMS CREATED UNDER THE BANKRUPTCY CODE ....................... 22
        1.    Preferences ................................................................................. 22
        2.    Fraudulent Conveyances ........................................................... 22
        3.    Other Claims Created By the Bankruptcy Code ....................... 23
    C.   NON-BANKRUPTCY CAUSES OF ACTION ........................................... 23

**X.  SOLICITATION OF VOTES**................................................................................................. **23**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | Case No. 24-10120-smr |
| Texas REIT, LLC | § | |
| | § | |
| Debtor | § | |

**AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. §1125
for DEBTOR'S PLAN OF REORGANIZATION
DATED MAY 15, 2024**

**IMPORTANT**

**THIS DISCLOSURE STATEMENT IS SUBMITTED TO ALL CREDITORS OF THE DEBTOR ENTITLED TO VOTE ON ACCEPTANCE OF THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION REQUIRED BY THE BANKRUPTCY CODE AS TO THE DEBTOR'S PLAN OF REORGANIZATION. ALL CREDITORS ARE URGED TO READ THE DISCLOSURE STATEMENT AND ATTACHMENTS WITH CARE AND IN THEIR ENTIRETY.**

Creditors may read the specific provisions applicable to their class in Section V(B) of this Disclosure Statement.

## I. INTRODUCTION

### A. Identity of the Debtor

Texas REIT, LLC is the Debtor. It is Texas limited liability company which owns real property in Houston, Texas. The Debtor is owned by Ali Choudhri. Mr. Choudhri is an entrepreneur from Houston, Texas.

### B. General Information RE Disclosure Statement and Plan

The Plan which this Disclosure Statement accompanies is being promulgated by the Debtor It has attempted to provide the maximum recovery to each Class of Claims in light of the assets and anticipated funds available for distribution to Creditors. The Debtor believes that the Plan permits the maximum possible recovery for all Classes of Claims while facilitating the

reorganization of the Debtor.

Texas REIT, LLC submits this Disclosure Statement pursuant to 11 U.S.C. § 1125 and Fed. R. Bankr. P. 3016 to all known claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for creditors and the Debtor's equity interests in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of this Joint Plan.

This Disclosure Statement describes the operations of the Debtor as it impacts the distributions to creditors proposed under the Plan. However, it is not intended to replace a careful review and analysis of the Plan, including the specific treatment you as a creditor or equity holder will receive under the Plan. It is submitted as an aid and supplement to your review of the Plan in an effort to explain the terms and implications of the Plan. Every effort has been made to fully explain various aspects of the Plan as it affects Creditors and Equity Holders. If any questions arise, Movant urges you to contact the Debtor' counsel and every effort will be made to address your questions. You are, of course, also urged to consult with your own counsel.

A copy of the Plan is enclosed. Capitalized terms used therein, if not separately defined, have the meanings assigned to them in the Plan or in the Bankruptcy Code and Bankruptcy Rules. Any accounting information contained herein has been provided by the Debtor and has been prepared using the cash method of accounting.

## C.    Disclaimers

NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND 11 U.S.C. § 1125 AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTOR TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTOR OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR SUBMITTED HEREWITH.

EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTOR, ITS ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF.

NEITHER DELIVERY OF THE DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET

FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.

THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED HERETO SHOULD BE READ IN THEIR ENTIRETY PRIOR TO VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY.

THE INFORMATION IN THIS DISCLOSURE STATEMENT WAS OBTAINED BY THE DEBTOR FROM THE RECORDS OF THIS CASE AND THEIR BUSINESS RECORDS.

## D.  Answers to Commonly Asked Questions

As part of the Debtor' effort to inform Creditors regarding the Debtor' Plan and the plan confirmation process, the following summary provides answers to various questions which are often asked by a party receiving a disclosure statement.

THE FOLLOWING SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY.

### 1.  WHO IS THE DEBTOR?

Texas REIT, LLC

### 2.  HOW LONG HAS THE DEBTOR BEEN IN CHAPTER 11?

Since February 6, 2024.

### 3.  WHAT IS CHAPTER 11?

Chapter 11 is the business reorganization provision of the Bankruptcy Code. It permits a Debtor or a third party to submit a Plan providing for the sale, distribution, or retention of Debtor's assets to be used for the repayment of its debts.

### 5.  WHAT ARE THE DEBTOR ATTEMPTING TO DO IN CHAPTER 11?

The principal objective of a Chapter 11 case is confirmation of a plan of reorganization that enables a financially distressed debtor to restructure its assets

and its debts. A plan of reorganization sets forth the means for treating impaired and unimpaired claims against a debtor. A claim is impaired under a plan of reorganization if the plan provides that such claim will not be repaid in full or that the legal, equitable, or contractual rights of the holder of such claim will be altered. A claim is unimpaired if it will be paid in full or the legal, equitable, or contractual rights of the holder of such claim are not altered by the plan of reorganization. A holder of an impaired claim generally is entitled to vote on a plan of reorganization if such claim has been allowed under Section 502 of the Bankruptcy Code.

**6. HAVE THE DEBTOR PROPOSED A PLAN OF REORGANIZATION?**

Yes. The Debtor has filed a Plan as well as this Disclosure Statement.

**7. IF THE PLAN OF REORGANIZATION GOVERNS HOW MY CLAIM IS TREATED, WHY AM I RECEIVING THIS DISCLOSURE STATEMENT?**

The Bankruptcy Code requires that a plan proponent solicit acceptances and rejections of its proposed plan before the plan can be confirmed by the Bankruptcy Court. Before a plan proponent can solicit acceptances of its plan, the Bankruptcy Court must approve the disclosure statement and determine that the disclosure statement contains information adequate to allow creditors to make informed judgments about the plan. After Bankruptcy Court approval of the disclosure statement, the disclosure statement, the proposed plan, and a ballot are sent to the holders of claims. The creditors then have the opportunity to vote on the Plan and should consider this Disclosure Statement for such vote.

**8. HAS THE COURT APPROVED THIS DISCLOSURE STATEMENT?**

Before a plan of reorganization can be sent to creditors for voting, the Bankruptcy Court must find that the disclosure statement contains information of a kind, and insufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records to enable a hypothetical, reasonable investor typical of holders of claims of the relevant classes to make an informed judgment whether to vote to accept or reject the Plan. The Bankruptcy Court's has approved the Disclosure Statement in this case but this approval does not constitute an endorsement of any of the information contained in either the Disclosure Statement or the Plan. Likewise, although the Debtor and their counsel have utilized information believed to be accurate in preparing this Disclosure Statement, neither the Debtor nor their counsel warrant the accuracy of the information contained in or relied upon in preparing this Disclosure Statement nor should the Disclosure Statement be construed to be any representation or warranty whatsoever--express, implied or otherwise--that the Plan is free from risk, that acceptance or confirmation of the Plan will result in a risk-free or assured restructuring of the debts of the Debtor, or that the projections or plans of the Debtor for payment will be realized.

### 9.    WHY IS CONFIRMATION OF THE PLAN IMPORTANT?

Confirmation of the Plan by the Bankruptcy Court is necessary for the Debtor to provide the proposed treatment to Creditors under the Plan. Unless the Plan is confirmed, the Debtor are legally prohibited from providing you what has been proposed in the Plan.

### 10.    WHAT IS NECESSARY TO CONFIRM A PLAN OF REORGANIZATION?

At the hearing scheduled by the Court, the Court will consider whether the Plan of Reorganization should be confirmed. Section 1129 of the Bankruptcy Code contains the requirements for confirmation of a Plan of Reorganization. **YOUR VOTE IS IMPORTANT.** In order for the Plan to be accepted, at least two-thirds in amount and more than one-half in number of the **voting creditors** in each class must affirmatively vote for the Plan.  Even if all classes of claims accept the Plan, the Bankruptcy Court may refuse to confirm the Plan. The Court must find that the Plan complies with the applicable provisions of the Bankruptcy Code and that the proponent of the Plan has also complied with the Bankruptcy Code. The Court must also find that the Plan has been proposed in good faith and not by any means forbidden by law. The Court must find that the proponent of the Plan has disclosed the identity and affiliation of the persons who will manage the Reorganized Debtor after confirmation, that the appointment of such persons is consistent with the interest of creditors and equity security holders and with public policy, and that the identity and compensation of any insiders that will be employed or retained by the reorganized Debtor has been disclosed.  The Court must additionally find that each class of claims has either accepted the Plan or will receive at least as much as it would under a Chapter 7 liquidation. The Code also provides for the treatment of certain priority claims. If any classes of claims are impaired under the Plan, the Court must find that at least one class of claims that is impaired has accepted the Plan without counting any votes by insiders. The Court must also find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further reorganization of the Debtor. Additionally, the Plan must provide for payment of fees to the United States Trustee.

If the Plan is not accepted by all classes of claims or interests, the Debtor may attempt to obtain confirmation under what is known as "cram-down."  To obtain confirmation by cram-down, the Court must find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired by the Plan and has not accepted the Plan. The Code provides several options for a Plan to be "fair and equitable" to a secured creditor, which includes the secured creditor retaining its lien and receiving deferred cash payments at a market interest rate totaling either the value of the property securing the claim or the amount of the allowed claim as found by the Court, whichever is less.  With respect to a class of unsecured claims, the requirement that a Plan be "fair and equitable" requires that the holder of an unsecured claim be paid the allowed amount of its claim or that no junior interest receive or retain any property on account of its prior claim. In the event that the Plan is not accepted by all classes, the Debtor will seek to obtain confirmation through "cram-down."

### 11. ARE CREDITORS ENTITLED TO VOTE ON THE PLAN?

Yes. Each impaired Creditor is entitled to vote on the Debtor's Plan. If you are a Creditor, a ballot to be used for voting on the Plan has been distributed to you with this Disclosure Statement. If you lose your Ballot, you may request another one from Debtor' Counsel. Instructions for completing and returning the Ballot are set forth on the Ballot and should be reviewed carefully.

### 12. HOW WILL THIS PLAN TREAT MY CLAIM?

People who are owed money by the Debtor hold what is known as a "claim." The Plan organizes claims into classes based upon the type of claim and the treatment which it will receive under the Plan. In order to determine how the Plan treats your claim, you must first determine which class covers your claim. To find the treatment of your claim, look in the Table of Contents to find the category which best describes your claim or in the Claims Analysis attached hereto.

### 13. WHEN IS THE DEADLINE FOR RETURNING MY BALLOT?

The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots must be received by the Debtor no later than 5:00 p.m. Austin time, on the date set by the Court, at the following address:

> PLAN BALLOTS—Texas REIT, LLC
> BARRON & NEWBURGER, P.C.
> ATTN: Stephen Sather
> 7320 N. Mopac Expwy, Suite 400
> Austin, Texas 78731

You may also vote by facsimile transmission by sending your ballot to PLAN BALLOT—Texas REIT, LLC, Barron & Newburger, P.C., ATTN: Stephen Sather, (512) 476-9103 or by sending a "pdf" file of your scanned ballot attached to an email addressed to SSATHER@BN-LAWYERS.COM with the language "Texas REIT, LLC Ballot" in the subject line.

**IT IS IMPORTANT THAT ALL CREDITORS VOTE ON THE PLAN. THE DEBTOR BELIEVE THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS. FOR THIS REASON, THE DEBTOR BELIEVE THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE CREDITORS AND RECOMMEND THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

## II.  INFORMATION CONCERNING THE DEBTOR

**A.  OVERVIEW OF THE DEBTOR**

Texas REIT, LLC. is a Texas limited liability company. It was formed on August 30, 2006. It acquired real property located at 8050-8098 Westheimer in Houston, Teas. The company is owned by Ali Choudhri, an entrepreneur and investor based out of Houston, Texas.

.

**B.  SIGNIFICANT EVENTS PRIOR TO Bankruptcy Filings**

### 1.  Background

Texas REIT, LLC acquired real property located at 8050 and 8098 Westheimer from Westheimer Old Farm I Limited Partnership on June 3, 2008. The property was appraised by MB Lane & Associates as of May 11, 2024 in the amount of $18,615,000 as is. This property consists of a strip center and a vacant outbuilding which was previously occupied by a CVS pharmacy. CVS vacated the property and stopped paying rent pre-petition. The strip center contains 29,000 sq. ft. The center has seven units. Presently, six units containing 27,000 sq. ft. are leased and one unit containing 2,000 sq. ft. is vacant. The strip center brings in monthly rentals of $79,328.50.

### 2.  Events Leading to Bankruptcy

The Debtor acquired its property on June 3, 2008. It granted two liens upon the property as follows:

| | | |
|---|---|---|
| International Bank of Commerce | 5/28/08 | $8,640,000 |
| Architectural Services International, Inc. | 6/04/08 | $1.500,000 |

Steven Wu approached the Debtor about selling its real property. The Wu Family Trust submitted a proposed contract in the amount of $10,500.000. At the same time, the Debtor contends that Mr. Wu was attempting to purchase the liens against the property.

On or about May 28, 2018, Dalio I Holdings, LLC, an entity owned by Ali Choudhri, successfully acquired the first lien debt from International Bank of Commerce. Dalio I Holdings, LLC conducted a foreclosure sale on the two properties on July 3, 2018. On or about May 5, 2018,

WCW Houston Properties, LLC ("WCW")acquired the second lien debt from Architectural Services International, Inc.  WCW contended that the foreclosure sale was conducted in an improper manger.        On or about September 1, 2020, Dalio I Holdings, LLC rescinded the foreclosure sales.

WCW Houston Properties, LLC. intervened in a suit brought by Architectural Services International, Inc.  In its suit, it sought to obtain a judgment on the note against Texas REIT, LLC and sought to subordinate the lien held by Dalio I Holdings, LLC. On August 5, 2022, WCW

obtained a final summary judgment which it was awarded damages on its note against the Debtor for $6,967,483.00 and obtained a judgment subordinating the lien of Dalio I Holdings, LLC.

The Debtor and Dalio I Holdings, LLC appealed the judgment to the Fourteenth Court of Appeals.

The Debtor submitted a Declaration of Net Worth on November 14, 2022 seeking to stay execution on the WCW judgment without posting a supersedeas bond. On August 7, 2023, the District Court of Harris County found that Texas REIT's net worth was $9,809,522 based on thee rules applicable to determining net worth under the Texas Rules of Appellate Procedure. The District Court ruled that Texas REIT would be required to post a bond in the amount of $4,904,761.00 to supersede collection. This ruling was sustained on appeal.  Texas REIT did not post the required bond.

On August 1, 2023, John Quinlan, Omar Khawaja and Osama Abdullatif filed Adv. No.23-3141 in the U.S. Bankruptcy Court for the Southern District of Texas asserting that multiple entities, including Texas REIT, LLC were alter egos of Ali Choudhri and Jetall Companies. Osama Abdullatif filed a Notice of Lis Pendens against the property owned by Texas REIT,

WCW posted the property for a foreclosure sale to occur on February 6, 2024.

## C.    Significant Events Since Filing Bankruptcy

The Debtor filed its bankruptcy petition on February 6, 2024.

On February 20, 2024, WCW filed a motion to annul the automatic stay.

The Debtor filed an application to employ Barron & Newburger, P.C. on March 4, 2024.

The Debtor filed a motion to use cash collateral on March 5, 2024. The court has entered interim orders on March 14, 2024, March 28, 2024, April 29, 2024, May 17, 2024 and May 31, 2024 and a final order on June 7, 2024. The The Court entered a subsequent order extending the use of cash collateral through October 31, 2024. The Debtor has further filed a motion to extend use of cash collateral. This motion is set for hearing on March 20, 2025.

The Debtor filed its schedules and statement on March 5, 2024 and filed amended schedules on June 28, 2024.

The Court entered an order lifting the stay to allow the state court appeal to go forward on April 8, 2024.

The Debtor filed a motion to sell the real property located at 8098 Westheimer to Smart Partners, LLC for $4,600.000 on May 14, 2024.  The Debtor then filed a Motion to Sell the property to Amina Properties, LLC for $5,350,000 and an Amended Motion to Sell to Amina Properties for $5,500,000.

The Debtor filed its Plan of Reorganization on May 15, 2024.

On May 16, 2024, the Court conducted a hearing on the Motion to Annul Automatic Stay filed by WCW Houston Properties. On June 7, 2024, the Court announced a ruling that the automatic stay would be lifted but would not be annulled. The Order would have allowed a foreclosure sale to take place in August 2024.

On June 4, 2024, the U.S. Trustee filed a Motion to Dismiss or Convert the Case. The U.S. Trustee withdrew the motion after the Debtor filed amended schedules, filed operating reports and resolved other issues raised by the U.S. Trustee.

On June 6, 2024, the 14th Court of Appeals for the State of Texas entered an order reversing the District Court in Part and Affirming in Part. The Court of Appeals reversed the summary judgment equitably subordinating the debt of Dalio I Holdings, LLC and the judgment by WCW against Texas REIT, LLC.

On June 21, 2024, the Debtor filed a Motion to Reconsider the Order Lifting the Automatic Stay. On August 6, 2024, the Court entered an order granting the motion.

On June 25, 2024, the Debtor filed an Objection to Claim of John Quinlan, Omar Khawaja and Osama Abdulatif. The claim was based on Adv. No. 23-3141.  The creditors filed a motion to withdraw the claim. The Debtor deposed Mr. Khawaja on September 11, 2024 and deposed Mr. Abdulatif on September 11, 2024 and October 18, 2024 and deposed Mr. Quinlan on October 18, 2024. On December 19, 2024, the Court conducted a hearing on the request to withdraw the proof of claim. The Court allowed the claim to be withdrawn with prejudice on condition that the notices of lis pendens filed be withdrawn, that the claims against the Debtor in Adv. No. 23-3141 be dismissed with prejudice and that the Debtor's rights against the creditors be preserved.

On July 5, 2024, WCW Houston Properties filed a Notice of Removal of the state court action to the U.S. Bankruptcy Court for the Southern District of Texas. On August 2, 2024, this action was ordered transferred to the U.S. Bankruptcy Court for the Western District of Texas. The Court conducted several hearings and status hearings. WCW Houston Properties, LLC filed an Amended Complaint on November 18, 2024.  The Debtor, Dalio I Holdings, LLC and Dalio II Holdings, LLC each filed answers on December 17, 2024.

On July 10, 2024, George Lee filed Adv. No. 24-1039 seeking a determination that the Debtor was the alter ego of Ali Choudhri and Jetall Companies. The Debtor  filed a motion to dismiss this adversary proceeding.  The Court conducted a hearing on the Motion to Dismiss and ordered that the adversary proceeding be dismissed with leave to filed an amended complaint. On Marchy 14, 2025, George Lee filed an amended complaint.. On December 10, 2024, the Debtor filed a Motion to Expunge Lis Pendens. The Debtor withdrew the motion after George Lee released the notice of lis pendens.

On July 29, 2024, the first meeting of creditors was concluded.

On August 7, 2024, the Debtor filed a motion to sell the strip center portion of the property

to Jimin Wang for $10,000,000. On October 11, 2024, the Debtor filed an Amended Motion to Sell the same property to Peiling Wang. This motion was withdrawn.

On October 7, 2024, the Court conducted a status hearing. The Court accepted the Debtor's status report and admitted exhibits 1-3.

On October 11, 2024, the Debtor filed an Application to Employ Dave Crist as special counsel. The Court granted this motion on October 31, 2024.

On October 15, 2024, the Court entered an Order granting Barron & Newburger's First Interim Fee Application. The Order awarded the firm fees in the amount of $37,515.00 and expenses in the amount of $1,058.40 and allowed the firm to apply its retainer in the amount of $14,462.00.

On November 1, 2024, the Court entered an order continuing the hearing on the Disclosure Statement to January 30, 2025 and requiring that an amended disclosure statement be filed by December 30, 2024. The Court subsequently continued the hearing on the disclosure statement to March 27 and required the Debtor to file an amended disclosure statement by March 17, 2025.

On December 3, 2024, the Court entered an order approving the sale of the Walgreen's tract to Amina Properties, LLC. On December 27, 2024, the Court entered an Order Allowing Motion to Amend Order with Amended Order with respect to the sale of the Walgreen's tract. The Debtor subsequently determined that the purchaser had not deposited earnest money and requested a conference with the purchaser.

On December 11, 2024, Osama Abdulatif and Ali Mokaram filed a Motion to Determine That Stay Does Not Apply. The Court conducted an initial hearing on this motion on December 19, 2024 and concluded the hearing to January 6, 2025.

On January 17, 2025, Ali Choudhri filed an Amended Motion to Enforce Automatic Stay. The Court conducted a hearing on this motion on February 13, 2025.

On February 20, 2025, the Court gave its ruling on the Motion to Determine that Stay Does Not Apply and Amended Motion to Enforce Automatic Stay. The motions were granted in part and denied in part. The Court will enter an order. Debtor's understanding of the ruling is that the automatic stay does not apply to efforts to collect from Ali Choudhri but that the stay does apply to any attempts to collect from the Debtor or property of the Debtor.

On February 28, 2025 Holland & Knight filed its First Interim Application for Compensation seeking fees in the amount of $25,422.50 and no expenses.

On March 6, 2025, creditor WCW Properties filed a Motion for Status Conference. The status conference will take plan on March 20, 2025.

On March 10, 2025, creditor WCW Properties filed a Motion to Appoint Chapter 11 Trustee. A hearing on this motion has not been set.

The Debtor is presently preparing several motions regarding the administration of the estate. These include:

a. Motion to Employ Property Manager. The Debtor will seek to employ a third party property manager to manage its real property.
b. Motion to Employ Broker. The Debtor will seek to employ a broker to market its property.
c. Motion for Expanded Use of Cash Collateral. The Debtor will seek permission to expand funds to repair and improve the strip center property for the purpose of enhancing its value in a sale.

## D. After Bankruptcy

### 1. Proposed Operations After Bankruptcy

The Debtor proposes to continue operating its property while it sells its two tracts. The Debtor has two pending motions to sell. The sales proceeds will be held until such time as a final order is entered determining lien priority. The Debtor will continue to collect rents while it is pursuing the sales of its property.

### 2. Future Management of the Debtor.

The Plan provides for Angelo DeCaro to serve as Plan Trustee. Mr. DeCaro will have the authority to market the Debtor's property, to engage a third-party management company and to pursue claims and causes of action belonging to the estate. Angelo DeCaro is a Strategic Partner with Harney Partners. He has over 30 years of experience in operational leadership and business turnarounds. He is a Certified Turnaround Professional. His bio is attached. Mr. DeCaro was originally proposed as Chief Restructuring Officer in this case. That motion was withdrawn after the U.S. Trustee objected that the case did not warrant a CRO. Mr. DeCaro has also assisted the Debtor with its Monthly Operating Reports. He did so at the behest of Jetall Companies and did not bill the Debtor for his services. As Plan Trustee Mr. DeCaro would bill the Debtor at his usual hourly rate of $125 per hour. Mr. DeCaro has worked with both Stephen Sather and Mark Taylor in the past. Mr. DeCaro's resume is attached as Exhibit A.

## III. FINANCIAL INFORMATION

## A. Pre-Bankruptcy

The Debtor has attached its pre-petition financial results as Exhibit B. These financials cover the period from 2021 to 2023. Net monthly income averaged $96,209 in 2021, $ 48,455.81 in 2022 and $83,744 in 2023. The 2021 results were inflated by two months where large amounts were received which were not representative.

**B.** **Financial Results since Filing Bankruptcy**

The Debtor has filed Monthly Operating Reports for the months of February 2024through February 2025. The reports are summarized as follows:

| Category | February 5-29 | March | April | May | June |
|---|---|---|---|---|---|
| Starting Cash | $156 | $13,378 | $52,907 | $90,696 | $162,457 |
| Total Receipts | $13,200.00 | $52,446 | $56,488 | $85,560 | $62,760 |
| Total Disbursements | $5 | $12,917 | $18,699 | $14,798 | $19,111 |
| Ending Cash | $13,351 | $52,907 | $90,696 | $161,458 | $206,106 |

| Category | July | August | September | October | November |
|---|---|---|---|---|---|
| Starting Cash | $206,106 | $253,314 | $291,774 | $322,976 | $354,874 |
| Total Receipts | $57,760 | $97,761 | $57,761 | $54,561 | $56,562 |
| Total Disbursements | $10,552 | $59,300 | $26,559 | $22,663 | $19,255 |
| Ending Cash | $253,314 | $291,775 | $322,976 | $354,874 | $392,181 |

| Category | December | January | February | | |
|---|---|---|---|---|---|
| Starting Cash | $392,181 | $429,321 | $458,241 | | |
| Total Receipts | $52,561 | $52,561 | $44,763 | | |
| Total Disbursements | $15,419 | $15,419 | $2,750 | | |
| Ending Cash | $429,323 | $466,463 | $500,254 | | |

**C.** **ESTIMATED FUTURE INCOME AND EXPENSES**

The Debtor has included a pro forma through December 2025 as Exhibit C. The pro forma assumes that the Effective Date of the Plan is in September 2024. It assumes that professional fees incurred by the Debtor will be $75,000, that the Plan Trustee will charge approximately $2,500.00 per month and that the Plan Trustee will hire a third party management company which will charge a fee equal to 5% of rents collected. Actual expenses may be different. The pro forma does not include sales proceeds. The Plan pro forma is more conservative than current results. For example, it projects that the Debtor would have net cash of $133,621 in June when the actual number was $206,106. The pro forma assumes rental collections of $50,445 per month while the last two months have averaged $77,760.50. As a result, the pro forma understates Debtor's likely performance.

## IV.  ANALYSIS AND VALUATION OF PROPERTY

### A.  Real Property

The Debtor owns real property located at 8050 and 8098 Westheimer.  The property has been appraised . MB Lane & Associates as of May 11, 2024 in the amount of $18,615,000 as is. The Harris County Appraisal District has valued the tract at 8050 Westheimer at $6,868,038 and the tract at 8098 Westheimer at $4,305,041   The Debtor received an offer to sell the 8098 Westheimer tract for $5.5 million and an offer on 8052-8098 Westheimer for $10,000,000.

### B.  Personal Property

The Debtor's personal property assets consist of the following:

Bank account (as of 2/28/25)          $500,254

Accounts Receivable                   $1,128,182.11

The accounts receivable consist of $204,205.477 owed by Blue Nile One Ethiopean and $923,976.64 owed by Happy Tea House. The collectability of these receives is doubtful.

The Debtor has a possible cause of action against Socotra REIT I, LLC. The Debtor was deeded certain condominium units by Princess Tiffany Properties, LLC, a former tenant. Socotra REIT foreclosed upon these units without notice to the Debtor.

The Debtor also intends to pursue claims against Osama Abdulatif, Omar Khawaja, John Quinlan, Ali Mokaram and George Lee.

### C.  Liquidation Value

In a Chapter 7 liquidation, a trustee would sell the Debtor's real property and would seek to recover upon causes of action. Debtor's liquidation analysis is attached as Exhibit D. . Debtor assumes that a Chapter 7 trustee would pursue the prior proposed sales of $5,500,000 and $10,000,000. The sales proceeds would not be sufficient to satisfy the liens against the property so that there would not be a distribution to unsecured creditors.

## V.  SUMMARY OF PLAN OF REORGANIZATION

### A.  OVERVIEW OF THE PLAN

The plan proposes to sell the Debtor's real property and distribute the funds to the parties determined to be entitled to receive such proceeds. Angelo DeCaro would administer the Plan as

Plan Trustee. Because the Debtor already has sales pending before the Court, the liquidation of the real estate assets is expected to be concluded within a short period of time after Plan Confirmaton.

## B.    ANALYSIS AND TREATMENT OF CLAIMS

### Class 1—Allowed Administrative Expense Claims.[1]

(a)    Class 1 consists of all Administrative Expense Claims (including, but not limited to, those arising under 11 U.S.C. § 503(b)(9)). Claimants in this Class include Barron & Newburger, P.C. and Holland and Knight, who represent the Debtor.

(b)    Each holder of an Allowed Administrative Expense Claim shall be paid the amount of its Allowed Administrative Expense Claim on the later of the Effective Date or within seven (7) days after the date a Final Order is entered approving the Administrative Expense Claim, unless otherwise agreed to by and between the Debtor and the holder of such claim or as otherwise set forth herein. Payment will be made from the Debtor's available funds.. The professionals will seek to have their fees paid from the cash being held by the Debtor.

(c)    No Administrative Expense claims, except for fees payable under 28 U.S.C. Sec. 1930 ("U.S. Trustee Fees") and expenses incurred in the ordinary course of operating Debtor' business, shall be paid except as approved by Court Order. Proofs of claim asserting Administrative Expense Claims, even if not objected to, shall not be sufficient to constitute approval of an Administrative Expense Claim. U.S. Trustee fees shall be paid as incurred without the need for court order.

(d)    Allowed Fee Claims incurred through Confirmation of professionals retained by the Debtor and of the Debtor will be paid upon entry of an Order by the Bankruptcy Court approving same with such fees to be paid on the later of the Effective Date or within seven (7) days after entry of a Final Order approving said Claim unless the parties agree to a later date.  After the Confirmation Date, the Debtor and his professionals may estimate fees necessary to complete these cases through the entry of a Final Decree.

(e)    Claims for United States Trustee's fees and expenses incurred in the ordinary course of business will be paid by the Debtor as they come due, both before and after the Effective Date.

### Class 2—Secured Claims of Harris County Taxing Authorities

(a)    Class 2 consists of the Secured Claims of the Harris County Taxing Authorities.   They have filed claims as follows:

City of Houston          $128,310.75

---

[1] While administrative and priority claims are usually not "classified", the proponent of the Plan has done so in this case for ease of reference; the "classification" of these claims does not alter the statutory rights of such claimants under the Bankruptcy Code.

Houston Community College $22,793.59
Houston ISD            $214,588.46
Harris County          $1,356.23

(b)    Class 2 shall retain its liens.

(c)    The Class 2 claims shall accrue interest at the statutory rate of 1% per month from and after the Petition Date until paid.

(d)    The Class 2 claims will be paid upon sale of each Tract provided that the entire Allowed Claim together with post-petition interest shall be paid not later than one year after the Effective Date.

(e)    Class 3 is impaired.

## Class 3—Secured Claim of Caz Creek Lending/Tax Lien Loan SPV, LLC

(a) Class 3 consists of the Secured Claim of Caz Creek Holdings 2, LLC. Caz Creek Holdings has filed a proof of claim in the amount of $1,940,504.71. Caz Creek Holdings 2, LLC has transferred its claim to Tax Lien Loan SPV, LLC.

(b) Class 3 shall retain its liens.

(c) Class 3 is an oversecured claim and is entitled to recover post-petition interest at the non-default contract rate as well as reasonable fees and expenses as provided in the contract.  All post-petition interest accrued as well as any reasonable fees and expenses allowed by the Court shall be added to the amount of the Allowed Claim.

(d) The Class 3 claim will be paid upon sale of the sale of the first Tract to close, provided that the entire Allowed Claim together with post-petition interest and fees shall be paid not later than one year after the Effective Date.

(e) Class 3 is impaired.

## Class 4—Secured Claim of FGMS, LLC

(a) Class 4 consists of the Secured Claim of FGMS, LLC. FGMS has filed a claim in the amount of $374,223.88.

(b) Class 4 shall retain its liens.

(c) Class 4 is an oversecured claim and is entitled to recover post-petition interest at the non-default contract rate as well as reasonable fees and expenses as provided in the contract.  All post-petition interest accrued as well as any reasonable fees and expenses allowed by the Court shall be added to the amount of the Allowed Claim.

(d) The Class 4 claim will be paid upon sale of the sale of the first Tract to close, provided that the entire Allowed Claim together with post-petition interest and fees shall be paid not later than one year after the Effective Date.

(e) Class 4 is impaired.

**Class 5—Secured Claims of WCW Houston Properties, LLC and Dalio Holdings I, LLC**

(a) Class 5 consists of the Secured Claims of WCW Houston Properties, LLC and Dalio Holdings, I, LLC. WCW Houston Properties, LLC shall be designated as the Class 5(a) claim. Dalio Holdings I, LLC shall be designated as the Class 5(b) claim. WCW has filed a proof of claim in the amount of $9,230,960.53. Dalio I Holdings, LLC filed a proof of claim in the amount of $13,855,502.34.

(b) The liens of the Class 5 creditors shall be preserved to the same extent, priority and validity as exists under applicable non-bankruptcy law. Upon sale of the Tract or Tracts, the liens of the Class 5 creditors shall attach to such proceeds to the same extent, priority and validity as exists under applicable non-bankruptcy law.

(c) The relative rights, priority and validity of the claims of the Class 5(a) and Class 5(b) creditors shall be determined in Adv. No. 24-1045 or as may be agreed upon between the parties.

(d) Upon entry of a judgment that is not subject to further appeal or review, the Plan Trustee shall pay the Class 5 creditors in order of their priority.

(e) Class 5 is impaired.

**Class 6—Unsecured Claims**

(a) Class 6 shall consist of Allowed Claims of Unsecured Creditors.   The Debtor is aware of the following claims in Class 6:

| | |
|---|---|
| Affordable Dumpster Rentals | $275.00 |
| AGAPE | $280.00 |
| Akin Gump | $182.00 |
| Ali Choudhri | Unliquidated (per POC) |
| Clark Hill, PC | $2,447.73 |
| Competition Roofing | $4,708.25 (per POC) |
| Drew Dennett | $51,500.00 (per POC) |
| IPFS Corporation | $38,233.14 (per POC) This claim has been withdrawn. |
| Jetall Companies | $2,347,887.79 (per POC) |
| JLM Law, PLLC | $48,469.82 (per POC) |
| George Lee | $6,724,402.62 + $143,057.49 (per Adv. No. 24-1039) |
| Nationwide Security | $47,548.81 |
| John Quinlan, et al | $0 (per POC—claim withdrawn) |
| Steadfast 829 Holdings | Unknown |
| US Insurance Funding | $3,449.50 |

16

Wrinkle, Gardner & Company     $41,575.00

Any party in interest may object to any scheduled or filed claim.

(b) Upon payment of the creditors in Classes 1-5, the Plan Trustee shall pay the remaining assets of the estate to the Class 6 creditors to the extent of their Allowed Claims. The Class 6 claims shall not be entitled to post-petition interest.

(c) Class 6 is impaired.

## Class 7—Equity Interests

(a) Class 7 shall consist of the Equity Interests of the Debtor. The equity interests in the Debtor are believed to be held by Ali Choudhri (65%), Ali Mokaram (30%) and Estate of Nemeti (5%). There is a court order providing for transfer of the Mokaram and Nemeti interests to Ali Choudhri upon payment of a judgment.

(b) The Class 7 Equity Interests shall be retained.

(c) Class 7 is impaired.

### C.  Feasibility of the Plan and Risk to Creditors

Feasibility of the Plan and Risk to Creditors measures the likelihood that creditors will receive the payments promised to them. The feasibility of the Plan depends on the ability of the Plan Trustee to sell the real property. The Debtor believes that the property is in a desirable area and should be able to sell for a fair price..

### D.    Remedies for Default

In the event of a default by the Debtor under the Plan and to the extent that the treatment of a particular class does not conflict with the provisions of this paragraph, creditors may exercise any rights granted to them under documents executed in connection with the Plan or any rights available to creditors under applicable non-bankruptcy contract law. In the absence of documents executed to consummate or otherwise evidence the Plan, the Plan itself may be enforced as a contract. Notwithstanding any other provision, any creditor alleging a default in its treatment under the Plan shall give the Debtor twenty-eight days (28 days) notice and an opportunity to cure before exercising any rights available upon default.

In the event of a default by a creditor, the Debtor may enforce this Plan as a contract in a court of competent jurisdiction. The Debtor may escrow payments to any creditor whose claim has not yet been allowed or who defaults under the Plan. In the event of a default, the Debtor shall give the creditor twenty-eight (28) days' notice and an opportunity to cure before exercising this provision.

In the event that the Debtor's case is converted to one under chapter 7 after consummation of the Plan, these assets will revest in the Bankruptcy Estate and be subject to administration by the chapter 7 Trustee.

E.      **Claims Allowance Procedure**

No Administrative Expense Claims shall be allowed except pursuant to Court Order. Any application for allowance of an Administrative Expense Claim shall be filed within twenty-eight (28) days after the Confirmation Date or shall be barred. Any claims for reimbursement of fees and expenses pursuant to 11 U.S.C. § 506(b) shall be filed within this same period of time or shall be barred.

Any Claims arising from the rejection of unexpired leases or executory contracts shall be filed by the earlier of the date specified in the order rejecting such lease or contract or twenty-eight (28) days after the Confirmation Date or shall be barred unless agreed otherwise.

A person who is found to have received a voidable transfer shall have twenty eight (28) days following the date from which the order ruling such transfer to be avoidable or approving the settlement of a suit on an avoidable transfer becomes a Final Order in which to file a Claim in the amount of the settlement or the avoided transfer, whichever is less. Similarly, the claim of any party relating to contribution or indemnity against the Debtor which is contingent as of the Effective Date shall not be allowed unless: (i) demand is made upon said creditor; (ii) the creditor satisfies the obligation in whole or in part; (iii) the creditor files a claim according to the procedures set forth in the Plan*;* and (iv) such Claim becomes an Allowed Claim.

A claim to which an objection has been made shall at the request of the Creditor be estimated by the Court for the purposes of voting on the Plan.

F.      **Assumption and Rejection of Leases and Contracts**

Under the Bankruptcy Code, the Trustee must assume or reject any leases or contracts to which it is a party. The Debtor intends to assume all of its tenant leases as follows:

| 8052 | Domain Bar / Dental | 8,000 | 22,666.67 | 10/01/2021 | 04/30/2026 |
| 8062 | Unfold Beauty Bar Inapark Inc & Gary P | 2,000 | 4,200.00 | 08/12/2019 | 09/30/2024 |
| 8066 | Kwok | 5,500 | 20,000.00 | 07/01/2024 | 06/30/2029 |
| 8078 | Pawn TX, Inc. | 5,000 | 12,916.67 | 05/14/2021 | 04/26/2030 |
| 8090 | Clinica Hispana | 2,000 | 4,200.00 | 04/01/2024 | 03/31/2026 |
| 8092A | Vacant | 2,000 | 0.00 | | |
| 8092B | Happy Teahouse | 4,500 | 15,345.16 | 07/28/2020 | 07/31/2030 |

Debtor does not believe that any amounts are required to be paid to cure arrearages. Debtor will serve its plan on the existing tenants.

G.      **RELEASES**

The Plan also contains a permanent injunction as follows:

**Permanent Injunction.** *Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against either Debtor that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141.*

**H.      Retention of Jurisdiction**

After confirmation of the plan, the Court will retain jurisdiction to the extent provided by 28 U.S.C. § 1334.  Basically, this means that the Court will retain jurisdiction over matters relating to the Plan and to rule on any matters which are still pending in the case.

**I.      Post-Confirmation Procedure**

After confirmation of the Plan, the Court will rule upon any timely filed objections to claims and applications for compensation of professionals. Once the court has ruled upon these matters and distributions have begun, the Reorganized Debtor will file an application for final decree. The Plan requires the Debtor to file its application for final decree within six (6) months after confirmation.  Following the Effective Date, the Reorganized Debtor will be liable for all quarterly fees that become due to the United States Trustee under 28 U.S.C. § 1930(a)(6).

## VI.  <u>ALTERNATIVES TO THE DEBTOR'S PLAN</u>

The alternatives to a Plan of Reorganization in this case are: (i) conversion to a chapter 7 liquidation; and (ii) dismissal of the bankruptcy case.

**A.      Conversion**

In a conversion, a Trustee would sell the Debtor's real property. As discussed above, a liquidation would have a similar result with respect to sale of the Debtor's properties. However, the Debtor believes that a plan would distribute funds to creditors more quickly than in a Chapter 7 and would involve less cost of administration.

B.     **Dismissal**

If the case was dismissed, the parties would continue to litigate their respective positions. Dalio I Holdings, LLC could attempt to foreclose its interest, although WCW Houston Properties would likely oppose such action. .

## VII.  <u>RELATIONSHIP OF DEBTOR WITH AFFILIATES AND INSIDERS</u>

Under the Bankruptcy Code, an "affiliate" is an entity which owns at least 20% of the Debtor's equity interests or an entity in which Debtor owns at least 20% of its equity interests, as well as a person whose business is operated by the Debtor under a lease or operating agreement or a person who operates the Debtor's business under a lease or operating agreement.. See 11 U.S.C. §101(2). An insider is defined as including an officer, director or person in control of the Debtor, a partnership in which the Debtor is the general partner, the general partner of the Debtor and a relative of a general partner, , director, officer or person in control of the Debtor.

Mr. Ali Chouhdri is both an affiliate and an insider of the Debtor by virtue of his ownership of at least 65% of the membership interest in the Debtor.  Ali Mokaram claims a 30% equity interest in the Debtor.

Dward Darjean and Drew Dennett may be insiders by virtue of acting as managers for the Debtor. Mr. Dennett is scheduled as an unsecured creditor in an unknown amount.

Dalio Holdings I, LLC  and Jetall Companies are all entities owned by Mr. Choudhri which assert claims against the Debtor. While they do not fit the statutory definition of an insider, they could be considered to be "non-statutory insiders."

## VIII.  <u>TAX CONSEQUENCES</u>

The transactions contemplated by confirmation of the Plan may have an impact on the tax treatment received with respect to distributions under the Plan. That impact may be adverse to the creditor or interest holder.

An analysis of federal income tax consequence of the plan to creditors, interest holders, and the Debtor requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice. The Plan and its related tax consequences are complex. The Debtor has not requested a ruling from the Internal Revenue Service or an expert opinion with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of this Plan.

The federal income tax consequences of the implementation of the Plan to a creditor will depend in part on whether, for federal income tax purposes, the obligation from which a creditor's claim arose constitutes a "security."  The determination as to whether an obligation for which a creditor's claim arose constitutes a "security" for federal income tax purposes is complex. It

depends on the facts and circumstances surrounding the origin and nature of the obligation. Generally, corporate debt obligations evidenced by written instruments with maturities, when issued five (5) years or less, or arising out of the extension of trade credit, do not constitute "securities," whereas corporate debt obligations evidenced by written instruments with original maturities often (10) years or more constitute "securities." Although it appears that most of the creditors' claims do not constitute "securities," the Debtor express no view with respect to whether the obligation for which a particular creditor's claim arose constitutes a "security" for federal income tax purposes. Creditors are urged to consult their own tax advisor in this regard.

Generally, creditors whose claims arise from obligations that do not constitute "securities" or whose claims are for wages or services will be fully taxable exchanges for federal income tax purposes. Such creditors who receive solely cash in discharge of their claims will recognize gain or loss, as the case may be, equal to the difference between (i) the amount realized by the creditor in respect of its claim (other than any claim for accrued interest) and (ii) the creditor's tax basis in its claim (other than any claim for accrued interest). For federal income tax purposes, the "amount realized" by a creditor who receives solely cash in discharge of its claim will be the amount of cash received by such creditor. Where gain or loss is recognized by a creditor, the character of such gain or loss as a long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which a claim arose has been held for more than six (6) months, and whether and to what extent the creditor has previously claimed a bad debt deduction. The capital gains deduction for individuals and the alternate tax for corporate net capital gains have been repealed and capital gain is currently taxed to individuals and corporations at their respective maximum tax rates. However, the definitions of long-term and short-term capital gain or loss have to be repealed.

To the extent any amount received (where cash or other property) by a creditor is received in discharge of interest accrued on its claim during its holding period, such amount will be taxable to the creditor as interest income (if not previously included in the creditor's gross income). Conversely, a creditor will recognize a deductible loss (or, possibly, a write-off against a reserve for bad debts) to the extent any interest accrued on its claim was previously included in the creditor's gross income and is not paid in full.

**THE TRANSACTIONS CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR INTEREST HOLDER. THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR INTEREST HOLDER.  NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR INTEREST HOLDER. EACH CREDITOR OR INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.**

## IX.  PENDING AND POTENTIAL LITIGATION

### A.    PENDING PRE-BANKRUPTCY LITIGATION

The Debtor was a party to Case No. 14-22-00827-CV, *Texas REIT, LLC v. WCW Houston Properties, LLC*, an appeal pending in the 14th District Court of Appeals. The Court of Appeals affirmed in part and reversed in part. WCW Houston Properties then removed the district court case to the Bankruptcy Court for the Southern District of Texas which transferred it to the Western District of Texas.. This case is now pending as Adv. No. 24-1045.

The Debtor was a party to Adv. No. 23-3141 pending in the U.S. Bankruptcy Court for the Southern District of Texas. The claims against Texas REIT, LLC were ordered severed from the main case on March 5, 2024 and were later dismissed with prejudice..

The Debtor is a party to Case No. 4:22-cv-0095, Steadfast 829 Holdings, Inc. v. Choudhri. If the Plan is confirmed, Debtor will be dismissed from this action.

## B.    Claims Created Under the Bankruptcy Code

There are four primary types of actions established by the Bankruptcy Code for the benefit of bankruptcy estates: (1) certain actions which could be brought by trustees, creditors or a good faith purchaser under 11 U.S.C. § 544, (2) actions to recover avoidable preferences under 11 U.S.C. § 547, (3) actions to recover fraudulent conveyances under U.S.C. §548 and (4) actions to recover unauthorized post-petition transfers under U.S.C. § 549.  A summary of these types of causes of action are listed below and, where possible, specific potential causes of action noted.

### 1.    Preferences.

Section 547 allows a Trustee to recover "voidable preferences"—*to wit,* payments made within ninety (90) days prior to bankruptcy (or within one (1) year if made to an insider) on an antecedent debt while the Debtor is insolvent which allows a creditor to recover more than it would have if the payment had not been made and the Debtor's assets were liquidated under chapter 7.  Certain payments are protected from recovery as preferences. These include payments made in the ordinary course of business or upon ordinary business terms and payments representing a substantially contemporaneous exchange. Additionally, transfers under the amount of $7,575. Attached as Exhibit C is a list of the payments made during the 90 days before bankruptcy. Exhibit D is a list of payments made to Jetall Companies during the year prior to bankruptcy. Jetall Companies is a Debtor in Case No. 24-35761 in the Southern District of Texas. The case was filed as an involuntary proceeding under Chapter 11 and converted to Chapter 7. The Plan Trustee will have authority to investigate these payments and bring claims where appropriate.

### 2.    Fraudulent Conveyances.

Section 548 allows a Trustee to recover certain transfers made within two (2) years of the Petition Date while the Debtor was insolvent which either was made with fraudulent

intent or was made without receiving reasonably equivalent value, as well as certain transfers avoidable under State law.

3.      **Other Claims Created By the Bankruptcy Code.**

Bankruptcy Code § 549 permits the Trustee to avoid a transfer of property that was not authorized under title 11 or the Court.

## C.      NON-BANKRUPTCY CAUSES OF ACTION

The Plan preserves the Debtor's non-bankruptcy causes of action which may be investigated and pursued by the Plan Trustee. This specifically includes any claims to recover accounts receivable. It also includes claims to be filed against Osama Abdulatif, Omar Khawaja, John Quinlan, Ali Mokaram and George Lee among others.

## X  SOLICITATION OF VOTES

The Debtor has devoted substantial effort to prepare its Plan of Reorganization.  The Debtor believes that the Plan represents a fair adjustment of its relationship with its creditors. It believes that the Plan is superior to liquidation or forced sale of its assets outside of bankruptcy. Therefore, the Debtor request that all parties approve the plan of Reorganization.

DATED:         March 17, 2025

Respectfully submitted,

**BARRON & NEWBURGER, P.C.**
7320 N. Mopac Expwy, Suite 400
Austin, Texas 78731
(512) 476-9103

By:      _/s/Stephen W. Sather_
         Stephen W. Sather
         State Bar No. 17657520
         **ATTORNEY FOR DEBTOR**
         **TEXAS REIT, LLC**



## Angelo DeCaro, CTP
*Interim C-level Executive*

Cell: 512.423.0063
decaro@quadrusconsulting.com

### 30+ years in operational leadership and business turnarounds

Angelo is a strong proponent of simplification, organization, and key process indicators when supporting his client engagements, utilizing 5S Lean Concepts where applicable. With dozens of engagements under his belt, including interim executive roles, he has extensive expertise to apply to a variety of complex situations to maximize value and opportunity. A Certified Turnaround Professional, he has broad experience in asset liquidation and as bankruptcy trustee, in which he has served in roles both inside and outside of court.

### Representative Roles

- Interim Operations Manager
- Strategic Advisor
- Operations Improvement Advisor
- Chief Restructuring Officer
- Chapter 11 Trustee

### Education & Certifications

- Certified Turnaround Professional
- MBA, Pace University
- B.S., Engineering, Northeastern University

## REPRESENTATIVE EXPERIENCE

- **Interim and Operational Engagements** – Interim GM for Product Transition of Celestica (Electronics Manufacturing); Interim Director of Operations for GlassCraft Door Company; VP and Site GM of Solectron (Electronics Manufacturing); CEO and Board Member of XeTel Corporation (Electronics Manufacturing); various senior management engagements for IBM

- **Board of Director Positions** – 2024 Central Texas TMA President; Austin-Bergstrom Landhost Enterprise (Hilton Hotel at Airport); Continental Circuits (Printed Circuit Board Manufacturer) and Image Craft Corporation (Trade Show Exhibit Manufacturer)

- **CH 11 Trustee Assignments** – asset disposition, cash distribution and company shutdown of XeTel Corporation, Leggitt Corporation and Xtreme Power

- **Bankruptcy and Legal Case Assignments** – Court Appointed CRO for Jet Oil Field Services; Business Process Consultant for KB Custom Pools; Court Assigned Receiver for Car Wash Lawsuit

- **Strategic Assessments and Overall Business Planning** – includes Upward Restaurant Corporation; MRC (Medical Records Retrieval and Management); DWD International (Industrial HVAC Supplier); Silicon Hills Design (Overall Business Valuation for Possible Increased Investments)

- **Company Shutdowns and Asset Dispositions** – led the asset disposition and cash settlements with bank and creditors for Concept Walls (Metal Partition Wall Supplier); Floor Tech (Flooring Material Supplier); and Ainsworth Trucking (Oil Field Equipment Trucking).

- **Sr Line Management Positions at IBM** – Plant Manager of 1500 person, 500k SF Printed Circuit Board Plant; Assistant Plant Manager of 1250 person 350K SF High Technology Computer Module and Final Assembly Module Operations for IBM's Main Frame and Personal Computer Product Lines.



**Income Statement - 12 Month**

**Properties:** 8052 - 8092 Westheimer Rd Houston, TX 77063
**Period Range:** Jan 2021 to Dec 2021

| Account Name | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Operating Income & Expense | | | | | | | | | | | | | |
| Income | | | | | | | | | | | | | |
| RENTS | | | | | | | | | | | | | |
| Rent Income | 65,545.43 | 404,119.16 | 66,862.49 | 46,171.24 | 312,786.50 | 58,083.32 | 15,000.00 | 54,355.64 | 39,983.33 | 17,066.66 | 28,351.14 | 46,184.48 | 1,154,509.39 |
| | | | | | | | | | | | | | |
| Total Operating Income | 65,545.43 | 404,119.16 | 66,862.49 | 46,171.24 | 312,786.50 | 58,083.32 | 15,000.00 | 54,355.64 | 39,983.33 | 17,066.66 | 28,351.14 | 46,184.48 | 1,154,509.39 |
| Expense | | | | | | | | | | | | | |
| CLEANING AND MAINTENANCE | | | | | | | | | | | | | |
| General Maintenance Labor | 730.00 | 937.60 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,667.60 |
| Waste Removal | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Cleaning and Maintenance -Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total CLEANING AND MAINTENANCE | 730.00 | 937.60 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,667.60 |
| INSURANCE | | | | | | | | | | | | | |
| Property Insurance | 5,983.10 | 0.00 | 0.00 | 14,448.51 | 2,990.20 | 2,771.95 | 2,771.95 | 2,771.95 | 2,771.95 | 2,771.95 | 2,771.95 | | 40,053.51 |
| Total INSURANCE | 5,983.10 | 0.00 | 0.00 | 14,448.51 | 2,990.20 | 2,771.95 | 2,771.95 | 2,771.95 | 2,771.95 | 2,771.95 | 2,771.95 | 0.00 | 40,053.51 |
| LEGAL FEES | | | | | | | | | | | | | |
| Legal | 18,000.00 | 15,000.00 | 10,000.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,500.00 | 15,321.55 | 64,821.55 |
| Total LEGAL FEES | 18,000.00 | 15,000.00 | 10,000.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,500.00 | 15,321.55 | 64,821.55 |
| MANAGEMENT FEES | | | | | | | | | | | | | |
| Management Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total MANAGEMENT FEES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| REPAIRS | | | | | | | | | | | | | |
| HVAC (Heat, Ventilation, Air) | 1,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,000.00 |
| External Repairs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Repairs | 0.00 | 0.00 | 0.00 | 5,865.00 | 0.00 | 0.00 | 1,180.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,045.98 |
| Total REPAIRS | 1,000.00 | 0.00 | 0.00 | 5,865.00 | 0.00 | 0.00 | 1,180.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,045.98 |
| UTILITIES | | | | | | | | | | | | | |
| Electricity | 0.00 | 415.15 | 1,594.95 | 302.01 | 0.00 | 570.11 | 260.37 | 271.01 | 285.94 | 281.67 | 284.00 | 0.00 | 4,265.21 |
| Water | 102.06 | 109.46 | 1,618.32 | 1,656.57 | 1,714.97 | 2,161.44 | 1,117.37 | 1,451.74 | 1,661.46 | 3,696.37 | 2,352.18 | 1,549.69 | 19,191.63 |
| Total UTILITIES | 102.06 | 524.61 | 3,213.27 | 1,958.58 | 1,714.97 | 2,731.55 | 1,377.74 | 1,722.75 | 1,947.40 | 3,978.04 | 2,636.18 | 1,549.69 | 23,456.84 |
| Security Service | 0.00 | 6,516.66 | 4,243.40 | 6,440.88 | 0.00 | 6,365.10 | 4,243.40 | 8,562.58 | 2,121.70 | 5,853.62 | 2,121.70 | 4,243.40 | 50,712.44 |
| Contract Labor | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 550.00 | 550.00 | 550.00 | 550.00 | 2,200.00 |
| Bank Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 95.81 | 106.41 | 202.22 |
| Broker Commissions | 6,250.00 | 6,250.00 | 0.00 | 0.00 | 493.38 | 0.00 | 0.00 | 0.00 | 0.00 | 878.41 | 0.00 | 0.00 | 13,871.79 |
| Survey/Appraisal | 0.00 | 6,300.00 | 0.00 | 3,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9,800.00 |
| Architecture | 0.00 | 0.00 | 0.00 | 2,968.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,968.66 |
| Tax Payment | 0.00 | 0.00 | 0.00 | 17,438.40 | 17,438.40 | 17,438.40 | 17,438.40 | 0.00 | 0.00 | 52,315.20 | 0.00 | 0.00 | 122,068.80 |
| Mortgage Payment | 0.00 | 32,127.95 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32,127.95 |
| Total Operating Expense | 32,065.16 | 67,656.82 | 17,456.67 | 52,620.03 | 22,636.95 | 34,307.00 | 27,012.47 | 13,057.28 | 7,391.05 | 66,347.22 | 9,675.64 | 21,771.05 | 371,997.34 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Net Operating Income** | 65,545.43 | 404,119.16 | 66,862.49 | 46,171.24 | 312,786.50 | 55,083.32 | 15,000.00 | 54,355.64 | 39,983.33 | 17,066.66 | 28,351.14 | 46,184.48 | 1,154,509.39 |
| | | | | | | | | | | | | | |
| **Total Expense** | 32,065.16 | 67,656.82 | 17,456.67 | 52,620.03 | 22,636.95 | 34,307.00 | 27,012.47 | 13,057.28 | 7,391.05 | 66,347.22 | 9,675.64 | 21,771.05 | 371,997.34 |
| | | | | | | | | | | | | | |
| **Net Income** | 33,480.27 | 336,462.34 | 49,405.82 | -6,448.79 | 290,149.55 | 23,776.32 | -12,012.47 | 41,298.36 | 32,592.28 | -49,280.56 | 18,675.50 | 24,413.43 | 782,512.05 |

**Income Statement - 12 Month**
**Exported On:** 02/10/2024 06:21 PM

**Properties:** 8050 - 8092 Westheimer Rd Houston, TX 77063
**Period Range:** Jan 2023 to Dec 2023

| Account Name | Jan 2023 | Feb 2023 | Mar 2023 | Apr 2023 | May 2023 | Jun 2023 | Jul 2023 | Aug 2023 | Sep 2023 | Oct 2023 | Nov 2023 | Dec 2023 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Operating Income & Expense | | | | | | | | | | | | | |
| Income | | | | | | | | | | | | | |
| RENTS | | | | | | | | | | | | | |
| Rent Income | 92,459.34 | 92,459.34 | 91,926.34 | 86,317.01 | 67,087.84 | 90,202.42 | 86,587.84 | 79,687.84 | 90,792.53 | 66,520.84 | 78,595.84 | 82,295.84 | 1,004,933.02 |
| | | | | | | | | | | | | | |
| Total Operating Income | 92,459.34 | 92,459.34 | 91,926.34 | 86,317.01 | 67,087.84 | 90,202.42 | 86,587.84 | 79,687.84 | 90,792.53 | 66,520.84 | 78,595.84 | 82,295.84 | 1,004,933.02 |
| Expense | | | | | | | | | | | | | |
| CLEANING AND MAINTENANCE | | | | | | | | | | | | | |
| General Maintenance Labor | 1,252.29 | 1,172.09 | 1,431.60 | 1,197.38 | 1,343.44 | 1,228.22 | 1,163.20 | 1,444.62 | 1,682.06 | 1,655.47 | 1,582.49 | 1,738.04 | 16,890.90 |
| Waste Removal | 516.00 | 0.00 | 516.00 | 258.00 | 443.00 | 0.00 | 516.00 | 258.00 | 0.00 | 544.00 | 272.00 | 272.00 | 3,595.00 |
| Cleaning and Maintenance -Other | 2,254.88 | 1,965.21 | 2,679.41 | 2,157.51 | 1,909.89 | 1,960.46 | 1,193.79 | 1,345.78 | 1,205.27 | 1,247.79 | 1,266.82 | 1,185.99 | 20,372.80 |
| Total CLEANING AND MAINTENANC | 4,023.17 | 0.00 | 4,627.01 | 3,612.89 | 3,696.33 | 3,188.68 | 2,872.99 | 3,048.40 | 2,887.33 | 3,447.26 | 3,121.31 | 3,196.03 | 37,721.40 |
| INSURANCE | | | | | | | | | | | | | |
| Property Insurance | 5,023.92 | 3,449.50 | 3,449.50 | 0.00 | 1,900.08 | 3,628.98 | 3,628.98 | 3,628.98 | 0.00 | 0.00 | 3,780.02 | 9,476.33 | 37,966.29 |
| Total INSURANCE | 5,023.92 | 3,449.50 | 3,449.50 | 0.00 | 1,900.08 | 3,628.98 | 3,628.98 | 3,628.98 | 0.00 | 0.00 | 3,780.02 | 9,476.33 | 37,966.29 |
| LEGAL FEES | | | | | | | | | | | | | |
| Legal | 350.00 | 2,511.00 | 0.00 | 0.00 | 0.00 | 2,500.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 20,361.00 |
| Total LEGAL FEES | 350.00 | 2,511.00 | 0.00 | 0.00 | 0.00 | 2,500.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 20,361.00 |
| MANAGEMENT FEES | | | | | | | | | | | | | |
| Management Fees | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 227,603.40 |
| Total MANAGEMENT FEES | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 227,603.40 |
| REPAIRS | | | | | | | | | | | | | |
| HVAC (Heat, Ventilation, Air) | 0.00 | 0.00 | 713.37 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.20 | 0.00 | 0.00 | 0.00 | 803.57 |
| Total REPAIRS | 0.00 | 0.00 | 713.37 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.20 | 0.00 | 0.00 | 0.00 | 803.57 |
| UTILITIES | | | | | | | | | | | | | |
| Electricity | 304.79 | 585.38 | 263.92 | 525.84 | 471.02 | 243.18 | 235.82 | 246.96 | 264.03 | 278.27 | 500.63 | 254.05 | 4,173.89 |
| Water | 0.00 | 2,200.85 | 4,205.03 | 2,242.92 | 379.58 | 2,129.41 | 2,699.75 | 2,449.93 | 1,487.53 | 2,557.24 | 1,749.08 | 1,770.35 | 23,871.67 |
| Total UTILITIES | 304.79 | 2,786.23 | 4,468.95 | 2,768.76 | 850.60 | 2,372.59 | 2,935.57 | 2,696.89 | 1,751.56 | 2,835.51 | 2,249.71 | 2,024.40 | 28,045.56 |
| Security Service | 1,193.46 | 0.00 | 0.00 | 0.00 | 6,603.25 | 6,495.00 | 0.00 | 3,788.75 | 0.00 | 0.00 | 3,247.50 | 0.00 | 21,327.96 |
| Total Operating Expense | 29,862.29 | 27,713.68 | 32,225.78 | 25,348.60 | 32,017.21 | 37,152.20 | 28,404.49 | 42,129.97 | 23,696.04 | 25,249.72 | 31,365.49 | 38,663.71 | 373,829.18 |
| | | | | | | | | | | | | | |
| Net Operating Income | 92,459.34 | 92,459.34 | 91,926.34 | 86,317.01 | 67,087.84 | 90,202.42 | 86,587.84 | 79,687.84 | 90,792.53 | 66,520.84 | 78,595.84 | 82,295.84 | 1,004,933.02 |
| | | | | | | | | | | | | | |
| Total Expense | 29,862.29 | 27,713.68 | 32,225.78 | 25,348.60 | 32,017.21 | 37,152.20 | 28,404.49 | 42,129.97 | 23,696.04 | 25,249.72 | 31,365.49 | 38,663.71 | 373,829.18 |
| | | | | | | | | | | | | | |
| Net Income | 62,597.05 | 64,745.66 | 59,700.56 | 60,968.41 | 35,070.63 | 53,050.22 | 58,183.35 | 37,557.87 | 67,096.49 | 41,271.12 | 47,230.35 | 43,632.13 | 631,103.84 |

**Income Statement - 12 Month**
**Exported On:** 02/10/2024 06:21 PM

**Properties:** 8050 - 8092 Westheimer Rd Houston, TX 77063
**Period Range:** Jan 2023 to Dec 2023

| Account Name | Jan 2023 | Feb 2023 | Mar 2023 | Apr 2023 | May 2023 | Jun 2023 | Jul 2023 | Aug 2023 | Sep 2023 | Oct 2023 | Nov 2023 | Dec 2023 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Income & Expense** | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | |
| **RENTS** | | | | | | | | | | | | | |
| Rent Income | 92,459.34 | 92,459.34 | 91,926.34 | 86,317.01 | 67,087.84 | 90,202.42 | 86,587.84 | 79,687.84 | 90,792.53 | 66,520.84 | 78,595.84 | 82,295.84 | 1,004,933.02 |
| | | | | | | | | | | | | | |
| **Total Operating Income** | **92,459.34** | **92,459.34** | **91,926.34** | **86,317.01** | **67,087.84** | **90,202.42** | **86,587.84** | **79,687.84** | **90,792.53** | **66,520.84** | **78,595.84** | **82,295.84** | **1,004,933.02** |
| **Expense** | | | | | | | | | | | | | |
| **CLEANING AND MAINTENANCE** | | | | | | | | | | | | | |
| General Maintenance Labor | 1,252.29 | 1,172.09 | 1,431.60 | 1,197.38 | 1,343.44 | 1,228.22 | 1,163.20 | 1,444.62 | 1,682.06 | 1,655.47 | 1,582.49 | 1,738.04 | 16,890.90 |
| Waste Removal | 516.00 | 0.00 | 516.00 | 258.00 | 443.00 | 0.00 | 516.00 | 258.00 | 0.00 | 544.00 | 272.00 | 272.00 | 3,595.00 |
| Cleaning and Maintenance -Other | 2,254.88 | 1,965.21 | 2,679.41 | 2,157.51 | 1,909.89 | 1,960.46 | 1,193.79 | 1,345.78 | 1,205.27 | 1,247.79 | 1,266.82 | 1,185.99 | 20,372.80 |
| **Total CLEANING AND MAINTENANC** | **4,023.17** | **0.00** | **4,627.01** | **3,612.89** | **3,696.33** | **3,188.68** | **2,872.99** | **3,048.40** | **2,887.33** | **3,447.26** | **3,121.31** | **3,196.03** | **37,721.40** |
| **INSURANCE** | | | | | | | | | | | | | |
| Property Insurance | 5,023.92 | 3,449.50 | 3,449.50 | 0.00 | 1,900.08 | 3,628.98 | 3,628.98 | 3,628.98 | 0.00 | 0.00 | 3,780.02 | 9,476.33 | 37,966.29 |
| **Total INSURANCE** | **5,023.92** | **3,449.50** | **3,449.50** | **0.00** | **1,900.08** | **3,628.98** | **3,628.98** | **3,628.98** | **0.00** | **0.00** | **3,780.02** | **9,476.33** | **37,966.29** |
| **LEGAL FEES** | | | | | | | | | | | | | |
| Legal | 350.00 | 2,511.00 | 0.00 | 0.00 | 0.00 | 2,500.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 20,361.00 |
| **Total LEGAL FEES** | **350.00** | **2,511.00** | **0.00** | **0.00** | **0.00** | **2,500.00** | **0.00** | **10,000.00** | **0.00** | **0.00** | **0.00** | **5,000.00** | **20,361.00** |
| **MANAGEMENT FEES** | | | | | | | | | | | | | |
| Management Fees | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 18,966.95 | 227,603.40 |
| **Total MANAGEMENT FEES** | **18,966.95** | **18,966.95** | **18,966.95** | **18,966.95** | **18,966.95** | **18,966.95** | **18,966.95** | **18,966.95** | **18,966.95** | **18,966.95** | **18,966.95** | **18,966.95** | **227,603.40** |
| **REPAIRS** | | | | | | | | | | | | | |
| HVAC (Heat, Ventilation, Air) | 0.00 | 0.00 | 713.37 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.20 | 0.00 | 0.00 | 0.00 | 803.57 |
| **Total REPAIRS** | **0.00** | **0.00** | **713.37** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **90.20** | **0.00** | **0.00** | **0.00** | **803.57** |
| **UTILITIES** | | | | | | | | | | | | | |
| Electricity | 304.79 | 585.38 | 263.92 | 525.84 | 471.02 | 243.18 | 235.82 | 246.96 | 264.03 | 278.27 | 500.63 | 254.05 | 4,173.89 |
| Water | 0.00 | 2,200.85 | 4,205.03 | 2,242.92 | 379.58 | 2,129.41 | 2,699.75 | 2,449.93 | 1,487.53 | 2,557.24 | 1,749.08 | 1,770.35 | 23,871.67 |
| **Total UTILITIES** | **304.79** | **2,786.23** | **4,468.95** | **2,768.76** | **850.60** | **2,372.59** | **2,935.57** | **2,696.89** | **1,751.56** | **2,835.51** | **2,249.71** | **2,024.40** | **28,045.56** |
| Security Service | 1,193.46 | 0.00 | 0.00 | 0.00 | 6,603.25 | 6,495.00 | 0.00 | 3,788.75 | 0.00 | 0.00 | 3,247.50 | 0.00 | 21,327.96 |
| **Total Operating Expense** | **29,862.29** | **27,713.68** | **32,225.78** | **25,348.60** | **32,017.21** | **37,152.20** | **28,404.49** | **42,129.97** | **23,696.04** | **25,249.72** | **31,365.49** | **38,663.71** | **373,829.18** |
| | | | | | | | | | | | | | |
| **Net Operating Income** | **92,459.34** | **92,459.34** | **91,926.34** | **86,317.01** | **67,087.84** | **90,202.42** | **86,587.84** | **79,687.84** | **90,792.53** | **66,520.84** | **78,595.84** | **82,295.84** | **1,004,933.02** |
| | | | | | | | | | | | | | |
| **Total Expense** | **29,862.29** | **27,713.68** | **32,225.78** | **25,348.60** | **32,017.21** | **37,152.20** | **28,404.49** | **42,129.97** | **23,696.04** | **25,249.72** | **31,365.49** | **38,663.71** | **373,829.18** |
| | | | | | | | | | | | | | |
| **Net Income** | **62,597.05** | **64,745.66** | **59,700.56** | **60,968.41** | **35,070.63** | **53,050.22** | **58,183.35** | **37,557.87** | **67,096.49** | **41,271.12** | **47,230.35** | **43,632.13** | **631,103.84** |

**8050-8098 Westheimer**      **Case Number: 24-10120**
*Texas Reit. LLC*
**Plan Budget**
**2024-2025**

| | Proforma | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 |
|---|---|---|---|---|---|---|
| **Rental Income** | $ 50,445 | $ 53,446 | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 |
| **Operating Expenses** | | | | | | |
| General Maintenance Labor | $1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 |
| Waste Removal | $272 | $ 272 | $ 272 | $ 272 | $ 272 | $ 272 |
| Security | $7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 |
| Utilities | $3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 |
| Insurance | $6,400 | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 |
| Landscape | $1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 |
| Administration | | | | | | |
| **Total Operating Expenses** | $21,072 | $21,072 | $21,072 | $21,072 | $21,072 | $21,072 |
| **Professional Fees** | | | | | | |
| US Trustee | | | $250 | | | $253 |
| Attorneys' Fees | | | | | | |
| Plan Trustee | | | | | | |
| **Total Professional Fees** | $- | $- | $250 | $- | $- | $253 |
| **Net Cashflow** | $ 29,373 | $ 32,374 | $ 29,123 | $ 29,373 | $ 29,373 | $ 29,120 |

| Cumulative Cashflow | $ 13,378 | $ 45,752 | $ 74,875 | $ 104,248 | $ 133,621 | $ 162,741 |
|---|---|---|---|---|---|---|

| | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 |
|---|---|---|---|---|---|---|---|---|---|
| | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 |
| | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 |
| | $ 272 | $ 272 | $ 272 | $ 272 | $ 272 | $ 272 | $ 272 | $ 272 | $ 272 |
| | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 |
| | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 |
| | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 |
| | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 |
| | $ 2,522 | $ 2,522 | $ 2,522 | $ 2,522 | $ 2,522 | $ 2,522 | $ 2,522 | $ 2,522 | $ 2,522 |
| | $23,594 | $23,594 | $23,594 | $23,594 | $23,594 | $23,594 | $23,594 | $23,594 | $23,594 |
| | | $ 75,000.00 | | | | | | | |
| | | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 |
| | $- | $77,500 | $480 | $2,500 | $2,500 | $480 | $2,500 | | $ 480.00 |
| | $ 26,851 | $ (50,649) | $ 26,371 | $ 24,351 | $ 24,351 | $ 26,371 | $ 24,351 | $ 26,851 | $ 26,371 |

| $ | 189,592 | $ | 138,943 | $ | 165,313 | $ | 189,664 | $ | 214,015 | $ | 240,386 | $ | 264,736 | $ | 291,587 | $ | 317,958 |

| | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 |
|---|---|---|---|---|---|---|---|---|
| | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 | $ 50,445 |
| | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 |
| | $ 272 | $ 272 | $ 272 | $ 272 | $ 272 | $ 272 | $ 272 | $ 272 |
| | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 | $ 7,800 |
| | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 |
| | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 | $ 6,400 |
| | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 |
| | $ 2,522 | $ 2,522 | $ 2,522 | $ 2,522 | $ 2,522 | $ 2,522 | $ 2,522 | $ 2,522 |
| | $23,594 | $23,594 | $23,594 | $23,594 | $23,594 | $23,594 | $23,594 | $23,594 |
| | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 |
| | | | $ 480.00 | | | $ 480.00 | | |
| | $ 26,851 | $ 26,851 | $ 26,371 | $ 26,851 | $ 26,851 | $ 26,371 | $ 26,851 | $ 26,851 |

| $ | 344,809 | $ | 371,659 | $ | 398,030 | $ | 424,881 | $ | 451,732 | $ | 478,102 | $ | 504,953 | $ | 531,804 |

Exhibit D

Liquidation Analysis

| | Gross Value | Liq. Pct. | Liq. Value | |
|---|---|---|---|---|
| Assets | | | | |
| 8052-8090 Westheimer | $ 10,000,000.00 | 95% | $ 9,500,000.00 | Per Contract |
| 8098 Westheimer | $ 5,500,000.00 | 95% | $ 5,225,000.00 | Per Contract |
| Cash | $ 206,106.00 | 100% | $ 206,106.00 | Per MOR |
| Accounts Receivable | $ 1,128,102.00 | 10% | $ 112,810.20 | Per Schedules |
| Total | | | $ 15,043,916.20 | |
| | | | | |
| Less Secured Claims | | | | |
| Harris County Taxing Authorities | | | $ 367,049.03 | Per Proof of Claim |
| Cas Creek Lending | | | $ 1,940,504.71 | Per Proof of Claim |
| FGMS, LLC | | | $ 374,223.88 | Per Proof of Claim |
| Dalio I Holdings, LLc | | | $ 13,855,502.34 | Per Proof of Claim |
| WCW Houston Properties | | | $ 9,230,960.53 | Per Proof of Claim |
| Total | | | $ 25,768,240.49 | |
| | | | | |
| Funds Avaiable for Unsecured Creditors | | | $ - | |

EXHIBIT E

Schedule 3(a)

## Check Register

**Properties:** 8098 Westheimer Rd - 8098 Westheimer Rd Houston, TX 77063, 8050 - 8092 Westhelmer - 8050 - 8092 Westheimer Rd Houston, TX 77063
**Date Range:** 11/05/2023 to 02/05/2024
**Bank Accounts:** All
**Payees:** All
**Payment Type:** All
**Include Voided Checks:** No
**Exclude Cleared Checks:** No

| Bank Account | Check # | Cleared | Check Date | Payee Name | Amount | Check Memo |
|---|---|---|---|---|---|---|
| **Texas REIT LLC - 1653** | | | | | | |
| Texas REIT LLC - 1653 | 1653 | No | 11/06/2023 | Affordable Dumpster Rentals LLC | 272.00 | |
| Texas REIT LLC - 1653 | Credit on account | No | 11/09/2023 | APG&E | 247.79 | |
| Texas REIT LLC - 1653 | 1054 | No | 11/15/2023 | City of Houston Water | 396.78 | |
| Texas REIT LLC - 1653 | 1653 | No | 11/15/2023 | Bowen, Miclette & Britt | 1,010.00 | |
| Texas REIT LLC - 1653 | 1653 | No | 11/15/2023 | Bowen, Miclette & Britt | 2,770.02 | |
| Texas REIT LLC - 1653 | Credit on account | No | 11/17/2023 | APG&E | 247.79 | |
| Texas REIT LLC - 1653 | 1055 | No | 11/20/2023 | APG&E | 5.05 | |
| Texas REIT LLC - 1653 | 1653 | No | 12/01/2023 | Jetall Companies, Inc | 18,996.95 | |
| Texas REIT LLC - 1653 | 1653 | No | 12/18/2023 | ISCENTIAL, INC | 9,476.33 | |
| Texas REIT LLC - 1653 | 1653 | No | 12/26/2023 | City of Houston Water | 1,770.35 | |
| Texas REIT LLC - 1653 | 1653 | No | 12/26/2023 | Affordable Dumpster Rentals LLC | 272.00 | |
| Texas REIT LLC - 1653 | Credit on account | No | 12/27/2023 | APG&E | 254.05 | |
| Texas REIT LLC - 1653 | Cashiers Check 1653 | No | 12/29/2023 | Harris County Clerk | 5,000.00 | |
| Texas REIT LLC - 1653 | 1056 | No | 01/02/2024 | APG&E | 5.05 | |
| Texas REIT LLC - 1653 | 1653 | No | 01/02/2024 | Barron & Newburger, PC | 20,000.00 | |
| Texas REIT LLC - 1653 | 1653 | No | 01/03/2024 | City of Houston Water | 396.78 | |
| Texas REIT LLC - 1653 | 1653 | No | 01/03/2024 | City of Houston Water | 1,438.02 | |
| Texas REIT LLC - 1653 | 1057 | No | 01/12/2024 | Commercial Building Services | 2,145.00 | |
| Texas REIT LLC - 1653 | 1653 | No | 01/16/2024 | Affordable Dumpster Rentals LLC | 272.00 | |
| Texas REIT LLC - 1653 | 1653 | No | 01/19/2024 | IPFS Corporation | 6,700.80 | |
| Texas REIT LLC - 1653 | Credit on account | No | 01/31/2024 | APG&E | 269.63 | |
| Texas REIT LLC - 1653 | 1058 | No | 02/02/2024 | APG&E | 5.30 | |
| Texas REIT LLC - 1653 | 1653 | No | 02/02/2024 | City of Houston Water | 396.78 | |
| Texas REIT LLC - 1653 | 1653 | No | 02/05/2024 | Jetall Companies, Inc | 18,996.95 | |

## Check Register

| Bank Account | Check # | Cleared | Check Date | Payee Name | Amount | Check Memo |
|---|---|---|---|---|---|---|
| Texas REIT LLC - 1653 | 1653 | No | 02/05/2024 | Affordable Dumpster Rentals LLC | 272.00 | |
| Texas REIT LLC - 1653 | 1653 | No | 02/05/2024 | The Rhodes Law Firm | 3,000.00 | |
| | | | | | 94,617.42 | |
| **Total** | | | | | 94,617.42 | |

Payments to Jetall Companies

| | | Transfer to | | Transfer from |
|---|---|---|---|---|
| 2/6/2024 | $ | 18,996.95 | | |
| 2/2/2024 | $ | 11,000.00 | | |
| 2/1/2024 | $ | 3,000.00 | | |
| 1/19/2024 | | | $ | 6,372.19 |
| 1/11/2024 | $ | 6,000.00 | | |
| 1/2/2024 | $ | 15,000.00 | | |
| 12/15/2023 | $ | 7,000.00 | | |
| 12/1/2023 | $ | 18,996.95 | | |
| 11/14/2023 | | | $ | 7,000.00 |
| 11/14/2023 | $ | 2,000.00 | | |
| 11/10/2023 | $ | 18,966.95 | | |
| 11/1/2023 | $ | 12,000.00 | | |
| 10/30/2023 | $ | 2,660.83 | | |
| 10/17/2023 | $ | 8,000.00 | | |
| 10/16/2023 | $ | 10,000.00 | | |
| 10/12/2023 | $ | 1,000.00 | | |
| 10/6/2023 | $ | 5,000.00 | | |
| 10/5/2023 | $ | 5,000.00 | | |
| 10/2/2023 | $ | 12,000.00 | | |
| 9/29/2023 | $ | 3,631.70 | | |
| 9/27/2023 | $ | 2,000.00 | | |
| 9/14/2023 | $ | 18,966.95 | | |
| 9/5/2023 | $ | 5,000.00 | | |
| 9/5/2023 | $ | 20,000.00 | | |
| 8/18/2023 | $ | 2,000.00 | | |
| 8/11/2023 | $ | 10,000.00 | | |
| 8/8/2023 | $ | 4,000.00 | | |
| 8/7/2023 | $ | 5,100.00 | | |
| 8/1/2023 | $ | 32,400.00 | | |
| 7/14/2023 | $ | 3,966.95 | | |
| 7/14/2023 | $ | 15,000.00 | | |
| 7/12/2023 | $ | 7,000.00 | | |
| 7/10/2023 | $ | 10,000.00 | | |
| 7/10/23 | $ | 20,000.00 | | |
| 7/6/2023 | $ | 1,351.92 | | |
| 6/28/2023 | $ | 43,000.00 | | |
| 6/27/2023 | $ | 1,500.00 | | |
| 6/13/2023 | $ | 18,966.95 | | |
| 6/1/2023 | $ | 18,966.95 | | |
| 6/1/2023 | $ | 20,000.00 | | |
| 5/1/2023 | $ | 2,600.00 | | |
| 5/26/2023 | $ | 18,966.95 | | |

| | | |
|---|---|---|
| 5/19/2023 | $ | 10,825.00 |
| 5/3/2023 | $ | 2,000.00 |
| 4/12/2023 | $ | 18,966.95 |
| 4/12/2023 | $ | 18,966.95 |
| 4/6/2023 | $ | 18,966.95 |
| 4/4/2023 | $ | 18,966.95 |
| 3/29/2023 | $ | 3,677.05 |
| 3/29/2023 | $ | 23,000.00 |
| 3/15/2023 | $ | 20,000.00 |
| 3/13/2023 | $ | 22,809.99 |
| 3/10/2023 | $ | 15,000.00 |
| 3/8/2023 | $ | 25,000.00 |
| 3/1/2023 | $ | 3,698.37 |
| 2/28/2023 | $ | 10,000.00 |
| 2/24/2023 | $ | 3,698.37 |
| 2/15/2023 | $ | 7,396.74 |
| | $ 664,013.37 | $ 13,372.19 |