**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 11, 2025.**



_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 24-10120-SMR |
| | § | |
| TEXAS REIT, LLC, | § | |
| | § | |
| Debtor. | § | Chapter 11 |

**ORDER GRANTING TRUSTEE'S EMERGENCY MOTION FOR APPROVAL OF BID PROCEDURES WITH RESPECT TO SALE OF PROPERTY, AND SETTING SALE HEARING**
(Relates to Dkt. No. 638)

On July 11, 2025, the Court held a hearing on the Trustee's *Emergency Motion for Approval of Bid Procedures with Respect to Sale of Property* (the "Motion" at Docket No. 638). Having considered the Motion and the proposed Bid Procedures, the record, and for cause shown, the Court finds that it is in the best interest of the Chapter 11 estate and creditors thereof to grant the relief requested in the Motion as set forth herein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

The Bid Procedures attached hereto as **Exhibit 1** are hereby approved in their entirety, and the Trustee is hereby granted the power and authority to take all steps necessary or appropriate to carry out the provisions of this Order and the Bid Procedures. The Bid Procedures are incorporated herein by reference as if fully set forth herein. Notwithstanding the foregoing, the consummation of a 363 Sale shall remain subject to the entry of the Sale Order approving the Sale of the Debtor's Property.

**IT IS FURTHER ORDERED** that the Sale Hearing, as defined in **Exhibit 1** attached hereto, shall be conducted on **Friday, October 10, 2025 at 10:00 a.m. (CT) in Austin Courtroom 1, located at 903 San Jacinto Blvd., Austin, Texas 78701.**

# # #

# EXHIBIT 1

# BID PROCEDURES

## BIDDING AND SALE PROCEDURES

Set forth below are the bidding and sale procedures (the "Bid Procedures") to be employed with respect to the proposed disposition (the "Sale") of all or a substantial portion of the assets of Texas REIT, LLC (the "Debtor"), Debtor in the above-captioned Chapter 11 case (the "Bankruptcy Case").

## BID PROCEDURES MOTION

On July 3, 2025 Dawn M. Ragan, the chapter 11 trustee ("Trustee") for Texas REIT LLC (the "Debtor") filed an *Emergency Motion for Approval of Bid Procedures with Respect to Sale of Property* (the "Bid Procedures Motion") in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court"), seeking the entry of an order establishing a sales process and bidding procedures for the sale of the Property free and clear of liens, claims, and encumbrances. These Bid Procedures were approved and authorized by the Bankruptcy Court's *Order Authorizing and Approving Bid Procedures With Respect to Sale of Property* (the "Bid Procedures Order") in the Bankruptcy Case.

## DESCRIPTION OF PROPERTY TO BE SOLD

The Trustee is seeking to sell real property located at 8050 & 8098 Westheimer Rd, Houston, TX, 77063, together with all structures and improvements thereon, all fixtures therein or thereto and all privileges, easements, appurtenances, development rights and air rights pertaining thereto, including all of Seller's right, title and interest in and to any adjacent or adjoining streets, alleys, or rights-of-ways and any strips or gores adjacent or adjoining thereto, or used in connection with the beneficial use and enjoyment thereof and all licenses and permits used in connection with the beneficial use and enjoyment thereof (the "Real Property"), (ii) all right, title, and interest of Seller in and to those certain lease agreements affecting the Real Property ("Leases"); (iii) all right, title, and interest of Seller, if any, in and to any fixtures, furniture, equipment, racking, conveyors, appliances, machinery, furniture, furnishings, tools, supplies and other tangible personal property located on the Real Property that is not otherwise owned by the any respective tenant under the Leases; and (iv) all right, title, and interest of Seller, if any, in and to any intangible personal property (including any intellectual property, if any, without representation or warranty, to the extent the foregoing can be assigned or transferred without the joinder or consent of any third party) that is necessary or useful in connection with the ownership, improvement or operation of the Real Property, including permits, plans and specifications, licenses, and certificates of occupancy (clauses (ii), (iii), and (iv) together with the Real Property, collectively, the "Property" or "Assets").

## SUBMISSIONS TO THE TRUSTEE

All submissions to the Trustee required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "Bid Notice Parties"):

    a. **Broker.** PCR Brokerage Houston, LLC d/b/a Partners ("Partners"), 5847 San

Felipe St., Suite 1400, Houston, TX 77057 (marc.peeler@partnersrealestate.com; joan.collum@partnersrealestate.com)

b. **Chapter 11 Trustee.** Dawn M. Ragan, CR3 Partners, 13355 Noel Road, Suite 2005, Dallas, TX 75240 (dawn.ragan@cr3partners.com).

c. **Trustee's Counsel**. Stephen W. Lemmon and Rhonda Mates, Streusand Landon Ozburn & Lemmon LLP, 1801 S. MoPac, Suite 320, Austin, Texas 78739, (lemmon@slollp.com; mates@slollp.com).

### **KEY DATES**

These Bid Procedures provide interested parties with the opportunity to complete diligence, to submit competing bids for the Assets, and to participate in an auction to be conducted by Partners as Agent herein, to perform real estate consulting and advisory services and to market and sell the Real Property, subject to any tenant leases. The key dates and deadlines for the sale process are as follows:

| Date | Event |
| --- | --- |
| July 15, 2025 | Deadline to serve Bid Procedures Notice and Auction Date, Initial Contract and Lease Assumption Notice, and Notice of Proposed Cure Costs |
| September 26, 2025, at 5:00 p.m. (CT) | Qualified Bid Submission Deadline |
| September 29, 2025, at 5:00 p.m. (CT) | Deadline to Object to Assumption and Assignment and Notice of Proposed Cure Costs |
| September 29, 2025, at 5:00 p.m. (CT) | Qualified Bidder Notification Deadline |
| October 2, 2025, at 10:00 a.m. (CT) | Auction (in-person and Virtual), if necessary |
| October 3, 2025 | Deadline to file Sale Motion and Notice of Successful Bid |
| October 10, 2025, at 10:00 a.m. (CT) | Sale Hearing (in person) |
| October 17, 2025, at 5:00 p.m. (CT) | Deadline to Close |

## PROCEDURES FOR CURE CLAIMS AND ASSUMPTION NOTICES

1. **Notice of Proposed Cure Costs**. The Trustee will file a notice of cure costs associated with unexpired leases and executory contracts (the "Notice of Proposed Cure Costs"), identifying all of the Estate's executory contracts and unexpired leases subject to Section 365 (collectively, the "Assumed Contracts" and each an "Assumed Contract") proposed to be assumed and assigned to the Successful Bidder under the Winning Bid (or such other person or entity that is approved as the Purchaser) and will serve a copy of the Notice of Proposed Cure Costs upon the counterparties to each Assumed Contract identified therein. For each Assumed Contract listed, the notice will indicate the amount, if any, that must be paid in connection with the assumption of such contract or lease to satisfy the requirements of Section 365(b)(1)(A) (such amount, the "Cure Amount"), including the amounts necessary to cure any outstanding default or other deficiency in the Estate's obligations in connection with the assumption of the Assumed Contract. The Cure Amounts identified in the Notice of Proposed Cure Costs are the only amounts necessary to be paid to cure any and all outstanding defaults under the Assumed Contracts identified therein, and no other defaults exist under said contract or lease. If the Trustee receives any Qualifying Bid that contemplates the assumption and assignment of any additional executory contracts and unexpired leases subject to Section 365 not listed on the Notice of Proposed Cure Costs, the Trustee shall file a revised notice identifying such executory contracts and unexpired leases and the corresponding Cure Amounts, if any, and such executory contracts and unexpired leases shall be deemed Assumed Contracts. By the Bid Procedures Motion, the Trustee has sought authority to assume and assign to the Successful Bidder (defined below) each of the Assumed Contracts in accordance with the provisions and requirements of Section 365, and all defaults, if any, under such Assumed Contracts shall be deemed cured by the payment of the Cure Amount, if any, corresponding to such Assumed Contracts.

2. **Objections Based on Cure Amounts**. Any party objecting to the proposed assumption or assignment of an Assumed Contract solely on the basis of the proposed Cure Amount, if any, to be paid in connection with the assumption of such Assumed Contract (within the meaning of Section 365) shall file and serve such objection on or before **5:00 p.m. prevailing Central Time on September 29, 2025**. To the extent any such objection is filed and cannot be resolved agreement between the Trustee and the objecting party without the need for Bankruptcy Court adjudication, the hearing on such objection shall be scheduled for the same date as the Sale Hearing. Failure to timely file an objection to the proposed assumption of an Assumed Contract, including any proposed Cure Amount associated therewith, shall constitute consent to the assumption and assignment of such Assumed Contract, including the Cure Amount, if any, payable in connection therewith, and an acknowledgment that such assumption and assignment satisfies all requirements of Sections 365(b), (c) and (f). If any person files an objection to the proposed assumption or assignment of an Assumed Contract, the Trustee reserves the right to delete such Assumed Contract from the Notice of Proposed Cure Costs.

3

## THE BIDDING PROCESS

3. Set forth below is the general process to be employed by Trustee to determine the highest and best offer for all or substantially all of the Estate's Assets:

   a. From and after the Bankruptcy Court's entry of the Bid Procedures Order, Trustee, through Agent, shall take reasonable steps to market and sell the Assets.

   b. Trustee shall conduct the bidding process and related marketing and due diligence services with support from Agent.

   c. Agent shall maintain a data room available to facilitate due diligence and all other information reasonably requested in response to requests from Potential Bidders (the "Due Diligence Information"). If determined advisable by the Trustee, the Due Diligence Information will only be provided to parties executing a Confidentiality Agreement or Non-Disclosure Agreement in a form approved by Trustee (as described below). Trustee shall have no obligation to comply with any due diligence request she deems onerous, unreasonable, or impractical.

   d. Trustee will provide and include in the data room (i) a form of a purchase agreement (the "Form Purchase Agreement"); and (ii) a form of a proposed sale order (the "Form Sale Order").

   e. Any person interested in making an offer to purchase the Estate's Assets shall comply with these Bid Procedures. Any person interested may make, and the Trustee shall consider, a bid for the Estate's Assets in accordance with these Bid Procedures.

   f. Only Qualified Bids (as defined below) shall be considered by the Trustee and Trustee's Counsel.

   g. The Trustee, in her sole discretion, may designate a stalking horse bidder so long as it submits the required documents to be a Qualified Bidder by the Bid Deadline (the "Stalking Horse Bidder"). If the Trustee designates a Stalking Horse Bidder and it is not the Successful Bidder, the Stalking Horse Bidder may be entitled to a break-up fee and reimbursement of its out of pocket expenses, including legal fees, incurred in conducting due diligence and bidding upon the Assets, up to three (3%) percent of the Stalking Horse designated bid (the "Stalking Horse Protections"), subject to approval of the Court. In no event shall Stalking Horse Protections be available for any breach, failure to disclose, or other non-compliance with the Bidding Procedures. For the avoidance of doubt, Stalking Horse Protections are not available to any other Bidder besides the Stalking Horse Bidder. Trustee shall file a notice of any designated Stalking Horse Bidder and Stalking Horse Protections prior to commencement of the Auction.

    h.    If the Trustee receives only one (1) Qualified Bid prior to the expiration of the Bid Deadline then the Trustee will evaluate that Qualified Bid to determine if it is the Successful Bid. For the avoidance of doubt the Trustee shall not be required to hold an Auction if she receives only one (1) Qualified Bid.

    i.    If the Trustee receives two (2) or more Qualified Bids prior to the expiration of the Bid Deadline, the Trustee shall hold an Auction (described below) to determine the Successful Bid. After such Auction, the Trustee shall select the highest or otherwise best Qualified Bid as the Successful Bid, considering, among other things, the financial and contractual terms relevant to the Transaction, including those factors affecting speed and certainty of consummating the Transaction, or the overall value to be provided thereby in the Trustee's sole discretion.

    j.    Upon failure to consummate the Transaction because of a breach on the part of the Successful Bidder (as defined below) after an order entered at the Sale Hearing, the Trustee on behalf of the Estate shall be permitted to (i) retain the Successful Bidder's Deposit (as defined below) as liquidated damages, and (ii) select the next highest or otherwise best Qualified Bid to be the Successful Bid and to consummate the Transaction subject to order of the Bankruptcy Court.

    k.    All Qualified Bidders (as defined below) shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Trustee, the Estate, the Case, the Bid Procedures, the Form Purchase Agreement, the Form Sale Order, the Auction, or the construction and enforcement of documents relating to any Transaction and to have waived any right to a jury trial in connection with any disputes relating to the Trustee, the Trustee, the Estate, the Case, the Bid Procedures, the Form Purchase Agreement, the Form Sale Order, the Auction, or the construction and enforcement of documents relating to the Transaction.

    l.    The Trustee reserves the right to, at her discretion, solicit and accept offers for the assets in one parcel or multiple parcels.

    m.    The Trustee may deviate from these Bid Procedures, if she determines that it is in the best interest of the Estate, subject to any necessary approvals of the Bankruptcy Court.

## PARTICIPATION REQUIREMENTS

4.    **Qualified Bid Requirements**. Any person desiring to participate in the Auction (each, a "Potential Bidder") must satisfy each of the conditions set forth below, as determined by the Trustee. A competing bid (the "Bid") will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions (collectively, a "Bid Package"):

5

a. Each Bid must be substantially based on the Form Purchase Agreement, detail the key terms of the proposed offer, be signed by an authorized representative of such Potential Bidder, and include any revisions to the Form Sale Order, along with a redline showing changes to the Form Purchase Agreement, and a redline showing changes to the Form Sale Order.

b. Each Bid must not be conditioned on obtaining financing and must include written evidence based upon which the Trustee reasonably concludes that the Potential Bidder has the necessary financial ability to close the Transaction on or before October 17, 2025 at 5:00 p.m. Such information must include, inter alia, the following: (1) contact names and telephone numbers for verification of financing sources; (2) evidence of the Potential Bidder's internal resources sufficient to close and consummate the Transaction, and, if the Transaction is contemplated to be consummated through debt financing, proof of debt funding commitments from a recognized financial institution and, if applicable, equity commitments, in both cases in an aggregate or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Estate in such amount, in each case, as are needed to close the Transaction, or such other evidence as the Trustee, reasonably requests; (3) the Potential Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Trustee, or if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current financial statements of the equity holder(s) of the Potential Bidder; and (4) any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Trustee demonstrating that such Potential Bidder has the ability to close the Transaction.

c. Each Bid must be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information"), including (i) information about the Potential Bidder's financial condition, such as federal tax returns for two years, a current financial statement, or bank account statements, (ii) information demonstrating (in the Trustee's reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact name of the Potential Bidder (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale), and (v) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include. By submitting a Bid, Potential Bidders agree that the Trustee may disseminate such Adequate Assurance Information to affected lessees and contract counterparties in the event that the Trustee determines such bid to be a Qualified Bid.

d. Each Bid shall remain open, enforceable, and irrevocable in accordance with the terms of these Bid Procedures until after the Trustee closes the purchase and sale of the Assets.

e. Each Bid must include written evidence reasonably acceptable to the Trustee demonstrating appropriate corporate authorization to submit the Bid and consummate the proposed Transaction.

f. Fully disclose the identity of the entity that will be bidding or participating in connection with such Bid, as well as evidence sufficient to show all owners of the bidding entity.

g. Include an earnest-money deposit (the "Deposit") in cash, or in other form of immediately available U.S. funds acceptable to the Trustee, equal to ten percent (10%) of the Potential Bidder's proposed purchase price, to be held by the Title Company or an escrow agent until, as applicable, the Release Date (as defined below) or the Back-Up Release Date (as defined below).

h. Provide that all of the Estate's Assets are being purchased "as is, where is," and that such Potential Bidder is not relying upon any representation or warranty from Trustee, the Estate, Trustee's professionals or any person or entity, except as otherwise provided in the Purchase Agreement, if any.

i. List all executory contracts and unexpired leases to be assumed and assigned as part of the Transaction.

j. Specify how the Potential Bidder intends to fund any Cure Amounts for the assumption and assignment of the Assumed Contracts—*i.e.*, to be paid by the Trustee out of the Transaction proceeds or to be paid by the Potential Bidder in addition to the cash consideration offered in the Bid Package.

k. Contains no (a) contingencies of any kind or character other than Bankruptcy Court approval, (b) indemnities, (c) purchase price adjustments, or (d) qualification relating to due diligence, financing, or board approval.

l. Contain no conditions to closing of the Transaction or the receipt of any third-party approvals (excluding required Bankruptcy Court approval).

m. Provide that the Bid is irrevocable through the later of (i) one (1) business day after entry of the Sale Order approving the Transaction, and (ii) the Transaction closing.

n. Provide an express statement that: (a) the Potential Bidder agrees to all terms of the Bid Procedures; (b) the Potential Bidder has not engaged in any collusive discussion with any other Potential Bidder; and (c) the Potential

        Bidder has obtained the appropriate corporate authorization to submit the Bid and consummate the proposed Transaction, provided that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the Transaction, then the Potential Bidder must furnish written evidence reasonably acceptable to the Trustee of the submission of the Bid and consummation of the Transaction by the equity holder(s) of such Potential Bidder.

    o.    Each Bid, together with the foregoing, must be received by Trustee on or before the Bid Deadline.

5. **Qualified Bidder**. A Potential Bidder will be considered a "Qualified Bidder" if such Potential Bidder delivers to Agent the documents described in Paragraph 4 (including all subparagraphs) above, together with the Deposit, on or before the Bid Deadline and Trustee determines, in her sole discretion, that such Potential Bidder is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Transaction. A Bid received from a Qualified Bidder shall constitute a "Qualified Bid" for the Assets. Upon such a determination, Trustee shall provide written notice of her determination to such Potential Bidder and to each existing Qualified Bidder.

## ACCESS TO TRUSTEE'S DILIGENCE MATERIALS

6. To receive access to due diligence materials and to participate in the bidding process, an interested party must submit to Agent or already be bound by the following: (i) an executed Confidentiality Agreement or nondisclosure agreement ("NDA"), in a form acceptable to Trustee, by email to marc.peeler@partnersrealestate.com and joan.collum@partnersreaklestate.com and (ii) a statement that such party has a bona fide interest in purchasing all or some of the Assets; and (iii) any other information that Trustee reasonably requests so that it is **actually received** prior to receiving access to any non-public materials related to the Assets.

7. A party who, in Trustee's reasonable discretion, satisfies the requirements set forth in the immediately preceding sentence for receiving access to diligence materials shall be a "Diligence Party." As promptly as practicable after the Trustee determines that a party is a Diligence Party, Agent will deliver to the Diligence Party access to Agent's confidential electronic data room. Agent will afford any Diligence Party the time and opportunity to conduct reasonable due diligence before the Bid Deadline. Notwithstanding the foregoing, the Trustee reserves the right, in the exercise of her business judgment, to withhold any diligence materials that the Trustee determines are sensitive or otherwise not appropriate for disclosure to a Diligence Party. Neither the Trustee nor her representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Diligence Party.

8. Each Diligence Party and Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access by Trustee or her advisors regarding such Diligence Party or Qualified Bidder and its contemplated transaction. Failure by a

8

Diligence Party to comply with requests for additional information and due diligence access may be a basis for Trustee to determine that such Diligence Party is not a Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access may be a basis for Trustee to determine that a bid made by such Qualified Bidder is not a Qualified Bid. Trustee reserves the right, in her reasonable discretion, to permit a Diligence Party or Qualified Bidder to remedy any such failure to comply.

## BID DEADLINE AND REQUIREMENTS

9. **Bid Deadline**. A Potential Bidder that desires to make a bid shall deliver written copies of its Bid Package by email so that such is **actually received** no later than **5:00 p.m. prevailing Central Time on September 26, 2025** (the "Bid Deadline") by Trustee.

10. **Bid Rejection**. In determining whether a bid is a Qualified Bid, the Trustee may reject any bid, including a bid that: (a) is on terms that are materially more burdensome or conditional than the terms of the Purchase Agreement; (b) requires the Trustee to indemnify the Potential Bidder or any other person; (c) includes non-cash consideration which is not freely marketable; (d) is subject to any due diligence, financing condition or other contingencies or conditions that are not included in the Purchase Agreement; or (e) is received after the Bid Deadline.

## AUCTION

11. **When Necessary**. If the Trustee receives two (2) or more Qualified Bids on or prior to the Bid Deadline, Agent shall conduct a competitive auction (the "Auction") to determine the highest and best offer. **The Auction, if one is necessary, may be held in-person or virtually, via Zoom, at the discretion of the Trustee. The Trustee will establish a video connection to allow eligible participants to participate virtually. Such participation instructions will be circulated to all Qualified Bidders at least 24 hours prior to the commencement of such Auction**.

12. **Participation**. Only Qualified Bidders (and their professionals) are eligible to participate in the Auction. Secured lenders and the U.S. Trustee may also participate in the Auction. No later than 24 hours prior to the Auction, each Qualified Bidder must inform the Trustee whether it intends to participate in the Auction in-person or by video. The Trustee may determine in her sole discretion that each Qualified Bidder must have a representative attend in-person.

13. **Auction Procedures**. The Trustee and her professionals shall direct and preside over the Auction, which may be transcribed. Other than as expressly set forth in the Bid Procedures, Agent may conduct the Auction in the manner she determines will result in the highest or otherwise best offer for the Assets. The Auction shall be governed by the following procedures:

   a. <u>Attendance</u>. Unless otherwise determined by the Trustee, any Qualified Bidders,

and each of their representatives and advisors will be entitled to attend the Auction, and only the Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction. The Trustee and her professionals shall direct and preside over the Auction, which may be transcribed. Other than as expressly set forth herein, the Trustee may conduct the Auction in the manner she determines will result in the highest or otherwise best offer for any of the Assets.

b. <u>Qualified Bidder Acknowledgements; No Collusion</u>. Each Qualified Bidder participating in the Auction must confirm that (i) it has not engaged in any collusion with respect to the bidding or sale of any of the Assets described herein, (ii) it has reviewed, understands, and accepts the Bidding Procedures, (iii) it has consented to the core jurisdiction of the Bankruptcy Court (as described more fully below), and (iv) its Qualified Bid is a good-faith bona fide offer that it intends to consummate if selected as the Successful Bidder.

c. <u>Initial Bid</u>. At the start of the Auction, the Trustee shall describe the material terms of the Initial Bid for the Action.

d. <u>Minimum Overbid</u>. The Auction shall begin with the Initial Bid and proceed in minimum additional cash increments of $100,000.00 (the "<u>Minimum Overbid</u>"), provided however, the first bid over the Minimum Bid shall also include the value of the Stalking Horse Protections, which the Trustee shall announce no later than the commencement of the Auction. Trustee reserves the right to announce reductions or increases in the Minimum Overbid at any time during the Auction. An "<u>Overbid</u>" is any bid made at the Auction in accordance with the requirements set forth in the Bid Procedures. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Form Purchase Agreement or Form Sale Order, as the case may be, in connection therewith.

e. <u>Consideration of Overbids</u>. Trustee reserves the right, in her reasonable business judgment, to make one or more continuances of the Auction to, among other things: facilitate discussions between Trustee and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide Trustee with such additional evidence as Trustee, in her reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources, or has received sufficient debt and/or equity funding commitments, to consummate the proposed Transaction at the prevailing Overbid amount.

f. <u>Bidding Disclosure</u>. The Auction shall be conducted such that all Bids will be made and received in one room (which may be a virtual room), on an open basis, and all Qualified Bidders will be entitled to be present for all bidding with the understanding that the true identity of each bidder will be fully disclosed to all other Qualified Bidders and that all material terms of each subsequent bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

g. **Bidding Conclusion**. The Auction shall continue in one or more rounds of bidding and may conclude after (i) each participating Qualified Bidder has had the opportunity to submit one or more additional bids with full knowledge of the then-existing highest or best bid, and (ii) there is only one (1) offer the Trustee determines is the Successful Bid (defined below).

h. **No Post-Auction Bids**. Unless otherwise determined by the Trustee, no bids will be considered for any purpose after the Auction has concluded.

i. **Additional Procedures**. Trustee, in the exercise of her fiduciary duties, as applicable, for the purpose of maximizing value for the Estate from the sale process, may modify the Auction Procedures and implement additional procedural rules for conducting the Auction.

## SELECTION OF SUCCESSFUL BID

14. **Successful Bid Selection**. The Auction (if applicable) shall continue until there is only one Qualified Bid for the Assets that Trustee determines, in her reasonable business judgment, (i) is the highest or otherwise best Qualified Bid at the Auction and (ii) is in the best interest of the Estate, after considering all relevant factors and potential alternatives, including, among other things, (a) the amount of the purchase price, (b) the form of consideration being offered, (c) the likelihood of the Qualified Bidder's ability to close a Transaction (including obtaining any regulatory approvals) and the timing thereof, and the cost to the Estate of any delay, (d) the net benefit to the Estate, and (e) the number, type, and nature of any changes to the Form Purchase Agreement or the Form Sale Order. Thereafter, the Trustee shall select such Qualified Bid as the overall highest or otherwise best Qualified Bid (such Bid, the "Successful Bid," and the Bidder submitting such Successful Bid, the "Successful Bidder"). Trustee will announce the Successful Bid before the conclusion of the Auction.

15. **Successful Bid Acknowledgement**. Within one (1) business day after the conclusion of the Auction (if applicable), and if no Auction is held, as soon as practicable, but in no event later than one (1) business day following the date scheduled for the Auction, the Successful Bidder and the Back-up Bidder shall complete and execute all agreements, contracts, instruments **or** other documents evidencing and containing the terms and conditions upon which the Successful Bid or Back-up Bid was made.

16. **Notice of Successful Bid & Sale Motion**. By October 3, 2025, Trustee shall file a "Notice of Auction Results and Proposed Sale of Assets to Successful Bidder" (the "Sale Notice") and the Sale Motion seeking approval pursuant to Bankruptcy Code 363(f) of the sale of the Assets with the Bankruptcy Court. Such Sale Notice and Sale Motion shall provide, at a minimum: (a) the identity of the Successful Bidder and the Back-Up Bidder (defined below); (b) the Assets to be sold to the Successful Bidder or the Back-Up Bidder; (c) the consideration to be paid by the Successful Bidder or the Back-Up Bidder; (e) the executory contracts and unexpired leases affected by the proposed Transaction and how the

Successful Bidder or the Back-Up Bidder will pay Cure Amounts and provide adequate assurances of future performance; (e) the date and time of the Sale Hearing; (f) the deadline for objections to the proposed Transaction, unless such deadline has already passed; (g) a summary of all bids received and the terms of such bids; and (h) any other information Trustee determines, in her business judgment, is necessary to include in the Sale Notice. Trustee shall serve the Sale Notice on all parties appearing in the case and any other party required by order of the Bankruptcy Court or applicable Bankruptcy Rules.

## THE SALE HEARING

17. **Sale Hearing**. Trustee will seek entry of an order from the Bankruptcy Court approving the Transaction on the terms described in the Sale Notice. The Sale Hearing will be held on **October 10, 2025, at 10:00 a.m. prevailing Central Time.**

18. **Sale Objections**. All objections, if any, to the Transaction or entry of the Sale Order (collectively, the "Sale Objections"), the Successful Bidder's revisions to the Form Purchase Agreement and the Form Sale Order, and the identity of the Successful Bidder or the Back-Up Bidder and their respective ability to provide adequate assurance of future performance under Section 365 of the Bankruptcy Code, must be filed with the Bankruptcy Court and received by Trustee so that it is received no later than **12:00 p.m. prevailing Central Time on October 4, 2025** (the "Objection Deadline").

19. **Back-Up Bidding**. At the conclusion of the Auction, Trustee may designate the second highest or best Qualified Bidder to serve as the "Back-Up Bidder" and such Qualified Bidder shall remain obligated to close the Transaction on the terms set forth in its last bid (the "Back-Up Bid") in the event that the Transaction with the Successful Bidder does not close. The Back-Up Bidder shall be obligated to close on the Back-Up Bid until one (1) business day after the closing date of any Transaction, or such other time period as agreed to by the Back-Up Bidder and Trustee (the "Back-Up Release Date"). The deposit provided by the Back-Up Bidder shall be returned to the Back-Up Bidder on the Back-Up Release Date, provided that Trustee may, in the exercise of her business judgment, return any deposit provided by the Back-Up Bidder prior to the Back-Up Release Date. The Sale Motion shall include a request to approve the Back-Up Bidder and the Sale Order shall provide authority for the Trustee to close upon the Transaction with the Back-Up Bidder if the Successful Bidder fails to timely close.

## RETURN OF DEPOSIT

20. **Return Date**. The Deposits of all Qualified Bidders will be held in an account and all Qualified Bids (other than the Successful Bid and the Back-Up Bid) will remain open until two (2) business days following the Sale Hearing (the "Release Date"). The Deposit submitted by the Successful Bidder or the Back-Up Bidder, as applicable, will be applied against the payment of the purchase price upon the closing of the Transaction with the Successful Bidder. Notwithstanding the foregoing, the Trustee may, in the exercise of her business judgement, return any Deposit provided by any other Qualified Bidder any time prior to the Release Date.

12

## RESERVATION OF RIGHTS

21. **Sellers' Reservation of Rights**. Trustee, in her reasonable discretion, may (a) determine, which Qualified Bid, if any, is the highest or otherwise best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures or the terms and conditions of any Transaction, or (iii) contrary to the best interests of the Estate and creditors.

## FREE OF ANY AND ALL INTERESTS

22. **Sale Free and Clear**. Except as otherwise provided in the Bid Procedures Motion and any exhibits thereto, all of the Estate's rights, title, and interest in and to the Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets. However, notwithstanding anything contained in these Bid Procedures or the Bid Procedures Motion to the contrary, no sale under 11 U.S.C. § 363 shall occur without approval by the Bankruptcy Court.

## FIDUCIARY DUTIES

23. **Fiduciary Duties**. Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Trustee from exercising her fiduciary duties under or otherwise complying with applicable law.