UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 24-10120-SMR |
| TEXAS REIT, LLC, | § | |
| | § | CHAPTER 11 |
| DEBTOR. | § | |

### TRUSTEE RESIGNATION AND STATUS REPORT

Dawn M. Ragan, Chapter 11 Trustee ("Trustee") for Texas REIT, LLC ("Debtor") files this notice of her resignation and status report of case matters.

### RESIGNATION

1. The Trustee's appointment was approved by this Court on April 21, 2025 (DKT #584), and the Trustee has worked diligently on operating and case matters since her appointment. The Trustee has informed the Office of the United States Trustee that she would be submitting her resignation today, due to a personal matter that requires her withdrawal. The Trustee has also informed counsel for the secured lender, and the receiver. Further, the Trustee has advised the foregoing parties that she will remain available to complete transition, and assist as necessary, and will be available for the status conference scheduled on August 14, 2025. In that regard, the Trustee files the status report below to update all parties and this Court on status of the case, and the assets.

### STATUS REPORT

**Real Property Assets**

2. The Debtor is a Texas Limited Liability Corporation that owns a nearly 30-year old shopping center located at 8050 – 8098 Westheimer, Houston, Texas (the "Property"). The

property consists of an abandoned former Walgreens pad site, and a partially occupied strip center. Three different creditors claim liens on the Property:

- A tax lien lender
- Dalio Holdings, LLC (now in receivership with Mr. Travis Vargo, Receiver)
- WCW Houston Properties, LLC ("WCW")

3. The Dalio Holdings and WCW debts are the subject of litigation among each other and the Debtor. The tax lien debt, held by a third party, requires further investigation of the amount claimed.

4. The Property was not properly managed or maintained and has been the subject of significant vandalism. A significant homeless population had been living in both interior vacant spaces, as well as encamped around the exterior. Doors, locks and glass had been broken, presumably by the homeless as well as vandals. Interior ceiling tiles and walls were destroyed. Copper wiring had been stripped, including from roof top units, and one of the neighboring tenants, a medical clinic, had lost both their electrical power and water as a result, threatening them with a shut-down. The exterior was not maintained, and walls were covered with graffiti. Significant trash was piled up by the outside dumpster, which was no longer getting picked up by the vendor due to non-payment.

5. The Trustee engaged a restoration company to clean and sanitize the Property. Upon inspection, the company declared the spaces a biohazard due to the feces, urine and needles that were scattered throughout the interior, requiring hazmat and protective gear to complete the cleanup. The property cleanup was completed primarily in May 2025, including boarding up broken glass and access points. The Trustee hired a laborer to clean up and maintain the exterior,

which includes visiting the Property 6-7 days a week, and advising homeless persons they are trespassing and need to leave the Property.

6. The Trustee also filed a police report to ensure police will continue to patrol the property and began investigation of an insurance claim for vandalism.

7. The insurance finance company had issued a notice of cancellation at the time of the Trustee's appointment for lack of payment. The Trustee discovered that insurance on the Walgreens location had previously lapsed in January 2025. The Trustee paid the past due premiums for the strip center, which coverage remains in place.

8. In addition to the Property, the Debtor had noted two condominiums on the Statement of Financial Affairs which may have been foreclosed and should be investigated further.

**Sale Process**

9. The Trustee identified and interviewed several brokers to market and sell the Property. An Order approving Partners Real Estate ("Partners") was entered by this Court on July 11, 2025 [DKT #649]. Partners and the Trustee engaged several vendors to complete information needed for the sale process, including a survey, property condition report, phase 1 study, and marketing materials. All information has been uploaded to a data room, available to potential buyers, once executing an NDA. The data room went live on August 1, 2025, and there have already been more than 400 inquiries regarding the property. The Trustee and Partners have engaged in discussions with several parties regarding potentially becoming a stalking horse bidder.

10. The Trustee has informed Partners of her pending resignation, and will continue to coordinate and transition as appropriate, so that there is no impact to the sale process.

11. Counsel for the Trustee has a draft asset purchase agreement ("APA") in process.

12. The key upcoming sale dates proposed under the Bid Procedures are as follows:

3

| | |
|---|---|
| September 26, 2025; 5:00 p.m. CT | Qualified Bid Submission Deadline |
| September 29, 2025; 5:00 p.m. CT | Deadline to Object to Assumption and Assignment and Notice of Proposed Cure Costs |
| September 29, 2025; 5:00 p.m. CT | Qualified Bidder Notifcation Deadline |
| October 2, 2025; 10:00 a.m. CT | Auction |
| October 3, 2025 | Deadline to file Sale Motion and Notice of Successful Bid |
| October 10, 2025; 10:00 a.m. CT | Sale Hearing |
| October 17, 2025; 5:00 p.m. CT | Deadline to Close |

**Financial & Reporting**

13. The Trustee filed the July monthly operating report on August 7, 2025 [DKT #661].

14. Certain tenants are in arrears, and the Trustee has been working with them to stay current on prospective rents.

15. UST fees are paid currently.

16. An order authorizing use of cash collateral [DKT 244] through October 31, 2025, is in effect.

17. The Trustee is the only signer on the Debtor's bank account, maintained at Wells Fargo, which will be turned over to her replacement trustee upon their appointment.

**Transition**

18. The Trustee is in possession of limited hard copy files, including certain leases, which will be turned over to her replacement trustee upon their appointment, together with any electronic files.

19. The Trustee has spent more than 140 hours to date since her April appointment to secure and improve the assets, ready them for sale and develop the bid procedures. The majority of work to be completed at this point will largely be on the broker, until bids are received and the auction and sale process commences. Operational requirements include monitoring rent payments and maintenance of the exterior.

20. The Trustee will remain available for questions and to assist the new trustee upon their appointment.

21. The Trustee does not expect to file an application for compensation at this time, until the sale process has been completed.

Dated: August 12, 2025

STREUSAND, LANDON, OZBURN & LEMMON, LLP

By: */s/ Stephen W. Lemmon*
    Stephen W. Lemmon
    State Bar No. 12194500
    Email: lemmon@slollp.com
    Rhonda B. Mates
    State Bar No. 24040491
    Email: mates@slollp.com
    1801 South Mopac, Suite 320
    Austin, TX 78746
    Telephone: 512-236-9900
    Facsimile: 512-236-9904

*Counsel for Dawn M. Ragan, Chapter 11 Trustee for Texas REIT, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2025, a true and correct copy of this pleading was served, via the Court's CM/ECF notification system, all parties registered to receive notice, as set forth below:

*/s/ Stephen W. Lemmon*
Stephen W. Lemmon